UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 21-CR-119 |
| : | |
| GARRET MILLER, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION TO CONTINUE AND
TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America hereby moves this Court for a 60-day continuance of the above-captioned proceeding, [1] and further to exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv). In support of its motion, the government states as follows:

**FACTUAL BACKGROUND**

Defendant is charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.   In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.

---

[1] To be clear, the government is not asking for a continuance of the hearing scheduled for April 1, 2021, to address the defendant's detention. The government is, however, asking for a 60-day continuance thereafter and tolling under the Speedy Trial Act for the reasons stated herein.

Scores of individuals entered the U.S. Capitol without authority to be there. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence. Over 300 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that at least one hundred additional individuals will be charged. While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021. The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

Defendants charged and under investigation come from throughout the United States, and a combined total of over 900 search warrants have been executed in almost all fifty states and the District of Columbia. Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department

of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington County Police Department, the Prince William County Police Department, the Maryland State Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police. Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps. As the Capitol Attack investigation is still on-going, the number of defendants charged and the volume of potentially discoverable materials will only continue to grow. In short, even in cases involving a single defendant, the volume of discoverable materials is likely to be significant.

The United States is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500. Accordingly, the government, in consultation with the Federal Public Defender, is developing a comprehensive plan for handling, tracking, processing, reviewing and producing discovery across the Capitol Attack cases. Under the plan, the discovery most directly and immediately related to pending charges in cases involving detained defendants will be provided within the next thirty to sixty days. Cases that do not involve detained defendants will

follow thereafter. Such productions will also be supplemented on an on-going basis. In the longer term, the plan will include a system for storing, organizing, searching, producing and/or making available voluminous materials such as those described above in a manner that is workable for both the government and hundreds of defendants. This latter portion of the plan will require more time to develop and implement, including further consultation with the Federal Public Defender.

Defendant Garret Miller in this case is charged in a twelve count indictment for illegally entering the U.S. Capitol, disorderly and disruptive conduct, obstruction, civil disorder, impeding law enforcement, and threats for his actions on January 6, 2021 and thereafter. After the "Stop the Steal" rally on January 6, 2021 in D.C., Miller forcibly entered the Capitol at about 2:43 p.m. Surveillance video from inside the Capitol shows him entering the building by pushing past officers who were trying to keep rioters from entering. When asked in a Facebook chat, "[W]ere you in the building?," Defendant admitted, "Yah . . . we charged . . . We where [*sic*] going in . . . No matter what . . . Decided before the trump speech . . . I charged the back gates myself with an anti masker."

Body-worn camera video from the Metropolitan Police Department ("MPD") shows Miller inside the Rotunda at about 3:07 p.m. A large crowd had formed and officers were attempting to control the crowd. Miller went to the police line, at the front of the crowd, and refused to move. When officers attempted to push him back Miller fell to the ground but quickly got up and again refused to move. He yelled, "Hooah! Hooah!" at the officers. He then got into a fighting stance with one of his legs in front of the other and yelled, "OOOH! OW! OW! OW!" Officers eventually pushed him back.

On January 11, 2021, Miller sent a photograph of himself with another unidentified individual inside the Capitol Rotunda to another Facebook user. After seeing the photograph, the Facebook user commented, "bro, you got in?! Nice!" to which Miller replied, "[J]ust wanted to incriminate myself a little lol."

On the day of the riots, Miller posted several messages on Twitter directed at Congresswoman Alexandria Ocasio-Cortez. In one he wrote, "We acted with honor and we where [*sic*] not armed. We where [*sic*] gentle with the police. They murdered a child." After Congresswoman Ocasio-Cortez tweeted on her Twitter page, "Impeach," Miller tweeted back to her, "Assassinate AOC."

After the riots, Miller returned to Texas but was consumed with identifying the USCP officer involved in the fatal shooting of a rioter, Ashli Babbitt, on January 6, 2021. On January 10, 2021, Miller asked on Instagram about the USCP officer, "How could he execute an unarmed woman feet away. His execution must be televised." Later in the conversation, Miller states, "I'm threatening justice on criminals," and sent a picture of a rope tied to a noose. He then stated about the USCP officer, whom Miller believed to be African-American, "He's a prize to be taken" and "He will swing. . . . I had a rope in my bag on that day," meaning January 6, 2021.

In a January 11, 2021, Facebook chat Miller wrote, "Hey im [*sic*] banned on [Facebook] but I wanted to share a lead on the Babbit murder. Im [*sic*] not positive but it can be confirmed." He then sent several photographs of a police officer whom he believed killed Ms. Babbitt. Later that day he circulated the photographs to another Facebook user and stated, "Think this might

5

be the guy . . . He's part of the swamp. Gay police officer[.] Thats [*sic*] why they are protecting him."

Later in a Facebook chat on January 18, 2021, Miller asked, "Who killed Ashli Babbit?" The other Facebook user responded, "Well it was her fault [because] she entered the building to try to stop a constitutional process but I've seen reports it was a cop that killed her." Miller then said, "Yah but notice they won't tell you his name or release a picture of him. Some people are more equal than others. You see right?" During the chat, Miller wrote, "He's everyone's favorite cop now. We going to get a hold of him and hug his neck with a nice rope." He then threatened, "[A]nyways that cops [*sic*] not going to survive long," to which the other Facebook user responded, "That lady deserved to die." Miller retorted, "nah but he does lol." Miller then said, "[S]o its huntin season" and told the Facebook user that, "Ashli was a sister in battle were bravery achieve victory and she paid the ultimate price. . . Dead serious she fought fir me now I fight fir her."

Prior to the riots, on November 7, 2020, Miller stated on Instagram, "Never been shot at in school. Been shot near at work [emoji] but some people need to be shot and in America [emoji] you get to decide who deserves to be shot."

Miller was arrested on January 20, 2021, at his home in Dallas, Texas. Following a detention hearing in Dallas, Miller was ordered detained. Miller is currently detained at the Federal Transfer Center in Oklahoma City. He broke his collarbone while playing in the recreation yard at the facility in Dallas. After he was transferred to the FTC, he was seen by an orthopedist, who has recommended significant medical services, including possible surgery. For that reason, Miller's transport to D.C. has been put on hold.

6

## ARGUMENT

Pursuant to the Speedy Trial Act, an indictment charging an individual with the commission of an offense generally must be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. 18 U.S.C. § 3161(a). Further, as a general matter, in any case in which a plea of not guilty is entered, a defendant charged in an information or indictment with the commission of an offense must commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1).

Section 3161(h) of the Speedy Trial Act sets forth certain periods of delay which the Court must exclude from the computation of time within which a trial must commence. As is relevant to this motion for a continuance, pursuant to subsection (h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). This provision further requires the Court to set forth its reasons for finding that that any ends-of-justice continuance is warranted. *Id.* Subsection (h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

(i)  Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel

7

        questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

        . . .

    (iv)    Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An interests of justice finding is within the discretion of the Court. *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). As described above, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice. Developing a system for storing and searching, producing and/or making available voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will take time. Even after a system generally agreeable to the government and the Federal Public Defender is designed and

implemented, likely through the use of outside vendors, it will take time to load, process, search and review discovery materials. Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution.

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (Upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (Upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (Upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and

separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice. Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendant in a speedy trial.

Government counsel notified the defense of the filing of this motion, and counsel consents to the motion if his client is released but opposes it if his client remains detained.

WHEREFORE, the government respectfully requests that this Court grant the motion for a 60-day continuance of the above-captioned proceeding, and that the Court exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on

the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

                Respectfully submitted,

                CHANNING D. PHILLIPS
                Acting United States Attorney
                DC Bar No. 415793

By:        /s/
                ELIZABETH C. KELLEY
                Assistant United States Attorney
                Bar No. 1005031
                555 Fourth Street, N.W., Room 3142
                Washington, DC   20530
                Elizabeth.Kelley@usdoj.gov
                (202) 252-7238