## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | **1:21-CR-00119-CJN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GARRET MILLER,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF DEFENDANT'S CLAIM OF SELECTIVE PROSECUTION AS IT RELATES TO COUNTS ONE, TWO AND FOUR OF THE SUPERSEDING INDICTMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...................................................................................2

TABLE OF AUTHORITIES............................................................................3

I. BACKGROUND.........................................................................................4

    A. Garret Miller..........................................................................................4

    B. Portland Riots.........................................................................................6

        1. Portland Riot Cases Dismissed to Date...........................................8

        2. Portland Riot Cases Headed for Dismissal.....................................13

        3. Portland Riot Cases with Extremely Favorable Plea Agreements......15

II. DISCUSSION............................................................................................16

III. RELIEF REQUESTED.............................................................................19

CERTIFICATE OF SERVICE.......................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Attorney General v. Irish People, Inc.*, 684 F.2d 928 (D.C. Cir. 1982)......................18

*Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11 (D.D.C. 1997)...............17, 18

*United States v. Armstrong*, 517 U.S. 456 (1996)...................................................16, 19

*United States v. Banks*, 368 F.Supp. 1245 (D.S.D. 1973)...........................................17

*United States v. Crowthers*, 456 F.2d 1074 (7th Cir. 1972)...........................................4

*United States v. Cyprian*, 23 F.3d 1189, (3rd Cir.), *cert. denied*, 513 U.S. 879 (1994)........................................................................................................................17

*United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997), *cert. denied*, 523 U.S. 1060 (1997).........................................................................................................................17

## <u>Statutes</u>

18 U.S.C. § 111...........................................................................................5, 8, 18

18 U.S.C. § 231(a)(3).................................................................................5, 8, 18

The government "may not pick and choose for the purpose of selecting expressions of viewpoint pleasing to it and suppressing those that are not favored." *United States v. Crowthers*, 456 F.2d 1074, 1078 (7th Cir. 1972).

## I.  BACKGROUND

### A.  Garret Miller

Defendant Garrett Miller is charged in the Superseding Indictment with several offenses, often in multiplicious counts, related to his entry into the United States Capitol Building on January 6, 2021.  It appears from the discovery provided by the government that Mr. Miller entered the Capitol Building *after* the electoral proceedings had been stopped.  While in the Capitol Building, Mr. Miller remained in the Rotunda.  He did not damage any property, nor did he take any property.  Mr. Miller was not armed with weapons when he entered the Capitol.  The government has described, Mr. Miller's assaultive conduct while in the Capitol Rotunda as follows:

> Miller went to the police line, at the front of the crowd, and refused to move.  When officers attempted to push him back Miller fell to the ground[1] but quickly got up and again refused to move.  He yelled, "Hooah! Hooah!" at the officers.  He then got into a fighting stance with one of his legs in front of the other and yelled, "OOOH! OW! OW!

---

[1]Video reveals that Mr. Miller was actually pushed to the ground with the assistance of a night stick to his mid-section.

OW!"  Officers eventually pushed him back.

Doc. 16 .[2]  Mr. Miller left the Capitol Building after learning that President Trump told his supporters to go home.

Mr. Miller is charged in Counts One and Two,[3] with committing civil disorder, in violation of 18 U.S.C. § 231(a)(3), in relation to his entry into the Rotunda.  He is charged in Count Four with assault on a federal officer, in violation of 18 U.S.C. § 111, presumably related to his alleged refusal to move and yelling "Hooah! Hooah!" and "OOOH! OW! OW! OW!" while in a "fighting stance" in the Rotunda after being pushed to the ground with an officer's night stick.

Mr. Miller has become familiar with how the Department of Justice has handled the bulk of the 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111 charges arising out of the Portland riots, which took place during the summer of 2020.  Unlike simply getting into an alleged "fighting stance" while yelling "Hooah! Hooah!" and "OOOH! OW! OW! OW!" at officers, many of those Portland assault cases involved punching officers, attempting to break bones of officers, putting officers in choke holds or head locks, and alike.  Moreover, often the assaults by rioters in Portland were committed in order to prevent officers from arresting other rioters.

_____

[2]Government's Opposition to Defendant's Motion to Revoke Magistrate Judge's Detention Order.

[3]Counts he submits are multiplicious

Based upon the handling of the Portland cases by the new Department of Justice and the recent completely one-sided and draconian plea agreement offer recently made to Mr. Miller, Mr. Miller submits he has a "colorable claim" of selective prosecution. To be absolutely clear, Mr. Miller is not attempting to excuse his actions on January 6, 2021. Indeed, Mr. Miller has previously stated that many of his actions were completely wrong. Nevertheless, Mr. Miller should not be treated differently based upon the political views he espoused viz-a-viz the political views espoused by the Portland rioters.

## B. Portland Riots

In May and June of 2020, the City of Portland was the scene of several riots. Much of the rioting took place on a city block in Portland occupied by the Hatfield federal courthouse. *See* Attachment 1. The federal government owns that entire Portland City block. *Id*. According to the government:

> ...Portland protests have often been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson and assault. As a result, the Hatfield Courthouse and ICE facility have experienced significant damage to the facade and building fixtures during the last year. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. Other federal properties in Portland which have experienced heavy vandalism over the last 10 months include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, the Edith Green Wendall Wyatt Federal Office Building and the Citizenship and Immigration Services Building. Federal officials estimate $2.3 million in damage has been inflicted on

federal buildings in Oregon during the year's protests, including $1.6 million in damage to the Hatfield US Courthouse.  FPS law enforcement officials, Deputy U.S. Marshals, Boarder and Customs Enforcement Agents, and other federal law enforcement officers working to protect the Hatfield Courthouse have been subjected to threats, aerial fireworks (including mortars), high intensity lasers targeting officers' eyes,[4] thrown rocks, bottles, and balloons filled with paint from demonstrators while preforming their duties.

*Id*.

Undersigned Counsel has undertaken an extensive review of pleadings filed on PACER, press releases issued by the United States Attorney's Office for the District of Oregon, and various news accounts as they relate to the Portland riots.  From that review, it appears that approximately **74 persons** were charged with criminal offenses arising out of the riots.[5]  Of those 74 persons, to date, approximately **30 persons** have had their cases dismissed (often with prejudice) upon motion of the government, **12 persons** appear to have been offered dismissals upon completing a pre-trial diversion program, and at least **3 persons** have been allowed by the government to plead guilty to significantly reduced charges.[6]

---

[4]According to the government, such lasers "can temporarily blind an officer and may cause significant and lasting eye damage to an officer."  *See* Attachment 2.

[5]This analysis does not include 18 persons who were charged with simply failure to obey an order.

[6]The analysis by Undersigned Counsel appears consistent with one done by the news media.  "Almost Half of Federal Cases Against Portland Rioters Have Been Dismissed," *Wall Street Journal* (April 16, 2021)

Most of the Portland rioters were charged with a violation of  18 U.S.C. §

231(a)(3) (civil disorder) and/or a violation of 18 U.S.C. § 111 (assault on a federal

officer).  These are the same charges brought against Mr. Miller in Counts One, Two

and Four of the Superseding Indictment based upon his participation in the

Washington, D.C. riots.

Significantly, a large majority of the prosecutions arising out of the Portland

riots appear to have been initiated under former District of Oregon United States

Attorney Bill Jay Williams, who was appointed to that office by former President

Donald Trump.  Meanwhile, most if not all of the dismissals, offers of pretrial

diversion, and pleas to significantly reduced charges in these cases came after

President Biden requested the resignation of various United States Attorneys,

including Williams.

### 1.  Portland Riot Cases Dismissed to Date

*United States v. Travis Williams*, NO. 20-CR-296 (D. Or.)
(Attachment 3)- After taunting law enforcement officials,
the Defendant lunged toward the face and neck of a Deputy
United States Marshal.  When officers attempted to arrest
the Defendant, he ripped the communication devices off
two Marshals' vests and partially ripped the ballistic vest
off of one of the Marshals.  Tasering the Defendant had no
affect and he continued fighting the Marshals.  He then

---

(https://www.wsj.com/articles/almost-half-of-federal-cases-against-portland-rioters-have-been-di
smissed-11618501979)

tried to break a Marshal's arm.  Following his arrest, the Defendant told a jailer, "I almost ripped your buddy's arm off, I am a state wrestler."

*United States v. Taylor Charles Lemons,* NO. 20-CR-374 (D. Or.) (Attachment 4)- Charged a Deputy United States Marshal and struck him with a shield while the Marshal was performing his official duties. When arrested, Defendant was found with a loaded pistol.

*United States v. Thomas Johnson*, NO. 20-MJ-00170 (D. Or.) (Attachment 5)- Assaulted a Deputy United States Marshal in the face with a shield.  Defendant was arrested in possession of an asp, OC spray, plated body armor, helmet, gas mask, and goggles.

*United States v. Nicholas Joseph Bantista*, NO. 20-CR-431 (D. Or.) (Attachment 6)- Defendant had a previous conviction for aggravated assault of a police officer in Illinois.  During the Portland riots, he struck a federal law enforcement official in the head with a rock.  Upon arrest, he was found in possession of a pellet gun and a nail gun power load cartridges.

*United States v. Caleb Willis*, NO. 20-CR-296 (D. Or.) (Attachment 7)- Along with two other individuals, he began punching a Deputy United States Marshal and tried to steal the Marshal's gas mask while the Marshal was performing his official duties.

*United States v. Joshua Webb*, NO. 20-MJ-00169 (D. Or.) (Attachment 8)- Struck a Deputy United States Marshal in the face with a shield and then punched him in the face while the Marshal was performing his official duties. When arrested, the Defendant was found in possession of a tactical vest.

*United States v. David Michael Bouchard*, NO. 20-MJ-00165 (D. Or.) (Attachment 9)- Assaulted a federal law enforcement officer using a headlock maneuver while the officer was performing his official duties. When arrested, Defendant was found in possession of a shield and leaf blower.

*United States v. Rebecca Mota Gonzalez*, NO. 20-MK-00168 (D. Or.) (Attachment 10 )- Punched a Deputy United States Marshal in the face while the Marshal was performing his official duties. When arrested, Defendant was found in possession of a gas mask and goggles.

*United States v. Evan Louis Kriechbaum*, NO. 20-MJ-00178 (D. Or.) (Attachment 11 )- Elbowed a uniformed law enforcement officer in the face while the officer was performing his official duties.

*United States v. Giovanni Terrance Bondurant*, NO. 20-CR-302 (D. Or.) (Attachment 12)- Forcibly assaulted a law enforcement officer from behind when the office was in the process of arresting another rioter. When arrested, Defendant was found in possession of a shield and gas mask.

*United States v. Patrick Stafford*, NO. 20-CR-295 (D. Or.) (Attachment 13)- Slammed a Deputy United States Marshal with a shield allowing another rioter who the Marshal was attempting to arrest to escape.

*United States v. Taimane Jame Teo*, NO. 20-CR-205 (D. Or.) (Attachment 14)- Shined laser into the eyes of a federal law enforcement officer while the officer was performing his official duties. The officer could still see spots 15 minutes after the assault.

*United States v. Gretchen Margaret Blank*, NO. 20-CR-224 (D. Or.) (Attachment 15)- Assaulted a federal law enforcement officer using a shield while the officer was in the process of making an arrest.

*United States v. Christopher Fellini*, NO. 20-CR-212 (D. Or.) (Attachment 16)- Assaulted a federal law enforcement officer with a laser while the officer was performing his official duties, resisted arrest, and was found with pepper gel and a knife upon his arrest.

*United States v. Stephen Edward Odonnell*, NO. 20-MJ-00166 (D. Or.) (Attachment 17)- Threw a hard object that struck a federal law enforcement officer in the face while the officer was performing his official duties.

*United States v. Nathan Onderdonk-Snow*, NO. 20-CR-293 (D. Or.) (Attachment 18)- Shoved a Deputy United States Marshal from behind with a shield while the Marshal was performing his official duties and resisted arrest.

*United States v. Brodie Storey*, NO. 20-CR-330 (D. Or.) (Attachment 19)- Lunged at and tackled a Deputy United States Marshal while the Marshal was performing his official duties.

*United States v. Jeffrie Cary*, NO. 20-CR-329 (D. Or.) (Attachment 20)- Attacked a Deputy United States Marshal with a shield while the Marshal was performing his official duties.

*United States v. Jordan Matthew Johnson*, NO. 20-MJ-00179 (D. Or.) (Attachment 21)- Attempted to grab a smoke grenade and struck a Deputy United States Marshal in the head while resisting arrest.

11

*United States v. Jesse Herman Bates*, NO. 20-CR-245 (D. Or.) (Attachment 22)- Shot medic in the chest with a metal ball bearing.  Defendant was arrested with a crowbar.

*United States v. Michelle Peterson O'Connor*, NO. 20-CR-00023 (D. Or.) (Attachment 23)- Struck a law enforcement officer in the head with a helmet and "rung his bell."

*United States v. William Grant Reuland*, NO. 20-CR-460 (D. Or.) (Attachment 24)- Engaged in civil disorder by shining lasers at various law enforcement officials.

*United States v. Travis Hessel*, NO. 20-CR-450 (D. Or.)- Arrested and later indicted for civil disorder by interfering with law enforcement officials engaged in their official duties.  The details are unknown because the complaint was never unsealed.

*United States v. Richard Singlestad*, NO. 20-MJ-00028 (D. Or.)- Arrested for civil disorder by interfering with law enforcement officials engaged in their official duties.  The details are unknown because the complaint was never unsealed.

*United States v. Benjamin Wood-Pavich*, NO. 20-CR-209 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties.  The details are unknown because a complaint was not filed.

*United States v. Jerusalem Callahan*, NO. 20-CR-247 (D. Or.)- Charged with destruction of federal property. The details are unknown because a complaint was not filed.

*United States v. Zachary Roy Duffly*, NO. 20-CR-241 (D. Or.)- Charged with impeding and obstructing governmental employees in performance of their official duties. The details are unknown because a complaint was not filed.

12

*United States v. Jennifer Lynne Kristiansen*, NO. 20-CR-45 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties and failure to obey lawful orders.  The details are unknown because a complaint was not filed.

*United States v. Douglas Robert Dean*, NO. 20-CR-279 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties.  The details are unknown because a complaint was not filed.

*United States v. Pablo Avvacato*, NO. 20-CR-278 (D. Or.)- Charged with assault of a federal official while the official was performing his official duties. The details are unknown because a complaint was not filed.

## 2.  Portland Riot Cases Headed for Dismissal

*United States v. Pedro Aldo Ramos, Jr.*, NO. 20-CR-290 (D. Or.) (Attachment 25)- Punched a law enforcement officer in the face.  Defendant was charged with civil disorder.

*United States v. Kristopher Michael Donnelly*, NO. 20-CR-436 (D. Or.) (Attachment 26)- Destroyed a police station window with a hammer and forcefully elbowed an officer in the face who attempted to arrest him.  Defendant also was throwing frozen eggs and other hard objects at officers.  Defendant was charged with civil disorder.

*United States v. Lillith Etienne Grin*, NO. 20-CR-290 (D. Or.) (Attachment 27)- Assaulted a Deputy United States Marshall with a laser, thereby affecting his vision "for 30 minutes after the incident" that resulted in "blurry vision and 'sunspots'" for the officer.  Defendant also resisted arrest.

13

*United States v. Joshua Warner*, NO. 20-CR-442 (D. Or.) (Attachment 2)- Assaulted law enforcement officials by pointing a laser at their eyes and resisted arrest. Defendant was indicted for civil disorder.

*United States v. Charles Randolph Comfort*, NO. 20-CR-290 (D. Or.) (Attachment 28)- Assaulted a law enforcement officer by repeatedly charging at him with a shield. Defendant was indicted for civil disorder.

*United States v. Alexandra Eutin*, NO. 20-CR-459 (D. Or.) (Attachment 29)- Struck a law enforcement officer in the head with a wood sign/shield while officer was attempting to arrest another rioter. Defendant was indicted for civil disorder.

*United States v. Skyler Ward Rider*, NO. 20-CR-496 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3) *and* felony assault on a federal officer in violation of 18 U.S.C. § 111. The details are unknown because a complaint was not filed.

*United States v. Sebastián Dunbar*, NO. 20-CR-289 (D. Or.)- Defendant was indicted for assault on a federal officer in violation of 18 U.S.C. § 111. The details are unknown because a complaint was not filed.

*United States v. Meganne Elizabeth Englich-Mills*, NO. 20-CR-458 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

*United States v. Phillip John Wenzel* , NO. 20-CR-464 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

14

*United States v. Ty John Fox*, NO. 20-CR-501 (D. Or.)- Defendant was indicted for civil disorder in violation of 18 U.S.C. § 231(a)(3). The details are unknown because a complaint was not filed.

*United States v. Alexa Daron Graham*, NO. 20-CR-449 (D. Or.)- Defendant was indicted for pointing a laser at an aircraft in violation of 18 U.S.C. § 39a.

### 3. Portland Riot Cases with Extremely Favorable Plea Agreements

*United States v. Jeffrey Richard Singer*, NO. 20-CR-218 (D. Or.) (Attachment 30)- Defendant had a "reoccurring role" in the Portland riots and charged at an officer who was trying to arrest him and injured the officer's thumb. Defendant also broke several windows at a private business and stole a United States flag. Although the defendant was charged with civil disorder *and* theft of government property, the civil disorder charge was dismissed, and Defendant was allowed to plead to simply stealing the flag. Because the government "appreciated" the Defendant not engaging in further rioting after his arrest, it recommended a sentence of "time served" and one year supervised release.

*United States v. Anthony Amoss*, NO. 21-MJ-00113 (D. Or.) (Attachment 1)- Defendant broke a window of the federal courthouse with a rock. The cost to replace windows was over $1,000 a piece. Defendant was allowed to plead to a citation only.[7]

---

[7]In the complaint against Amoss, the government noted: "Protest events in Portland are primarily attended by people in 'black bloc,' a term used to describe the all black, nondescript clothing. ANTIFA and other groups have stated that the intent of wearing 'black block' is to protect members of the group willing to take 'direct action' by making it difficult for law enforcement to identify individuals and further anonymizing them ('direct action' is most often a criminal act of vandalizing property or assaulting people)."

*United States v. Carly Anne Ballard*, NO. 20-MJ-000083
(D. Or.) (Attachment 31)- Resisted arrest by kicking a
United States Marshal.  Defendant was allowed to plead to
a citation only.

## II.  DISCUSSION

While the government has "broad discretion" in "enforc[ing] the Nation's
criminal laws," that discretion is, nevertheless, "subject to constitutional constraints."
*United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citations omitted).  "One of
these constraints, imposed by the equal protection component of the Due Process
Clause of the Fifth Amendment" is that the government cannot pursue criminal
charges against a citizen that amounts to a "'practical denial' of equal protection of
law." *Id*. (citations omitted).  Such a pursuit would give rise to a claim of "selective
prosecution." *Id*.

While "selective prosecution" claims generally involve claims of disparate
treatment based upon race or religion, it is clear that a claim of selective prosecution
can be based upon the disparate treatment of those espousing different political
viewpoints.

It is clear that discriminatory enforcement of the law, by either state or
federal officials, constitutes a denial of equal protection.  *Yick Wo v.
Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Washington
v. United States*, 130 U.S.App.D.C. 374, 401 F.2d 915 (1968).  The
primary way in which discriminatory law enforcement can be exhibited
is by the use of the prosecutorial prerogative itself to discriminate

16

against those whose constitutionally protected views or activities are not
popular with the government (selective prosecution).

*United States v. Banks*, 368 F.Supp. 1245, 1251 (D.S.D. 1973).[8]  Moreover, while the

government will argue that Mr. Miller was not engaged in constitutionally protected

activities when he entered the Capitol on January 6, 2021, neither were the Portland

rioters engaged in constitutionally protected activities when they attacked federal

officers in Portland and assaulted various federal buildings.  Thus, it appears at first

blush that Mr. Miller has been treated differently by the government than the Portland

rioters based upon the politics involved.  Indeed, the fact that most, if not, all of the

Portland dismissals, offers of pretrial diversion, and pleas to significantly reduced

charges came after a change in the Department of Justice is strong evidence of Mr.

Miller's claim of potential selective prosecution.

Mr. Miller acknowledges that a person asserting a "selective prosecution"

claim has a "heavy burden."  *Branch Ministries*, 970 F.Supp. at 15.  He likewise

acknowledges that, to show selective prosecution, he must show that (1) he was

treated differently from others similarly situated with regard to his criminal

---

[8]*See also*, *United States v. Hastings*, 126 F.3d 310, 311 (4th Cir. 1997), *cert. denied*, 523
U.S. 1060 (1997) ("A prosecution also cannot be motivated by a suspect's exercise of
constitutional rights through participation in political activity."); *United States v. Cyprian*, 23
F.3d 1189, 1195 n. 10 (3rd Cir.), *cert. denied*, 513 U.S. 879 (1994) (""Selective prosecution is
grounds for acquittal only if the basis of selection is a forbidden ground, such as race, religion or
political opinion."); *Branch Ministries, Inc. v. Richardson*, 970 F.Supp. 11 (D. D.C. 1997)
(similar).

prosecution and (2) charges were improperly motivated based on his political beliefs. *See Attorney General v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982). Finally, he acknowledges that, to obtain discovery or an evidentiary hearing, he "must offer at least a colorable claim'" as to these two prongs. *Branch Ministries*, 970 F.Supp. at 16.

Still, Mr. Miller "is not required to produce direct evidence of intent; indeed, direct evidence of motive or intent is rarely available. As in any equal protection case, evidence concerning the unequal application of the law, statistical disparities and other indirect evidence of intent may be used to show bias or discriminatory motive." *Branch Ministries*, 970 F.Supp. at 17.

Here, Mr. Miller submits that he has made "a colorable claim" that, at least with regard to Counts One, Two, and Four, he is the subject of selective prosecution when compared with those arrested for violations of 18 U.S.C. § 231(a)(3) and 18 U.S.C. § 111 in relation to the Portland riots. First, as noted above, a large majority of the Portland rioters charged with identical offenses arising out of a "political riot" had their cases dismissed, were offered pretrial diversion, or plead to significantly reduced charges. And, unlike Mr. Miller, many of the Portland rioters engaged in serious assaultive conduct such as punching officers, attempting to break bones of officers, putting officers in choke holds or head locks, and alike. Second, as noted

18

above, it can easily be established that most, if not all, of the Portland dismissals, offers of pretrial diversion, and pleas to significantly reduced charges came *after* a change from the Republican administration to the Democratic administration running the Department of Justice.

### III.  RELIEF REQUESTED

Based upon the above showing of a "colorable claim" of selective prosecution, Mr. Miller respectfully requests this Court order discovery in which the "Government must assemble from its own files documents which might corroborate or refute his selective prosecution] claim." *See Armstrong*, 517 U.S. at 468.   In addition, Mr. Miller respectfully requests this Court hold an evidentiary hearing to which Mr. Miller can subpoena those officials overseeing the prosecutions of the Portland arrestees and those overseeing the officials in charge of Mr. Miller's case in order to "corroborate or refute" his selective prosecution claim.

Respectfully submitted,


/s/ F. Clinton Broden
F. Clinton Broden
TX Bar No. 24001495
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

## **<u>CERTIFICATE OF SERVICE</u>**

I, F. Clinton Broden, certify that, on June 24, 2021 I caused a copy of the above

document to be served by electronic means on:

Elizabeth C. Kelley
United States Attorney's Office
555 4th Street, N.W.
Washington, DC 20350

<u>/s/ F. Clinton Broden </u>
F. Clinton Broden
