UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-119 (CJN) |
| v. | : | |
| | : | |
| GARRET MILLER, | : | |
| | : | |
| Defendant. | : | |

### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT THREE OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully opposes defendant Garret Miller's Motion to Dismiss Count Three of the Superseding Indictment, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2). In his motion, he claims the indictment fails to state a cognizable offense and attempts to convince the Court—without authority—to circumscribe the nature of the offense to only prohibiting obstruction of congressional hearings that are related to the "administration of justice." But nowhere does the defendant address the fact that a Joint Session of Congress—a proceeding enshrined in and prescribed by the United States Constitution and federal law—plainly constitutes "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and therefore is an "official proceeding" under § 1512(c)(2). Defendant's motion is unsupported by the law and should be denied.

### PROCEDRUAL HISTORY

The Grand Jury returned a superseding indictment charging the defendant, Garret Miller, with obstructing the Electoral College vote that took place at the United States Capitol on January 6, 2021, in violation of 18 U.S.C. 1512(c)(2). The Grand Jury further charged him with two counts of civil disorder, in violation of 18 U.S.C. § 231(a)(3); one count of assaulting, resisting, or

1

impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1); two counts of making interstate threats to injure, in violation of 18 U.S.C. § 875(c); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct, in violation of 18 U.S.C. § 1752(a)(2); one count of impeding ingress and egress in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(3); and three misdemeanor offenses under 40 U.S.C. § 5104(e)(2). Doc. 20, at 1-6. These charges implicate the defendant's conduct at the U.S. Capitol on January 6, 2021 and in the following days.

The defendant filed a motion to dismiss Count Three of the superseding indictment, ECF No. 34, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2).

## **LEGAL STANDARD**

A defendant may move to dismiss an indictment or count for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The government agrees with the defendant that "[a]n indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed. *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or

each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

## ARGUMENT

**A.  The certification of the Electoral College vote is an official proceeding.**

In his motion, the defendant argues that as a matter of law, the Joint Session of Congress convened for the Electoral College vote certification is not an "official proceeding" under § 1512(c) and therefore the indictment does not state a cognizable offense.  Yet he fails to grapple with the plain language of § 1515(a)(1)(B), which defines "official proceeding" as a "proceeding before the Congress," which is precisely what he is charged with obstructing.

1. Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote.  Two separate provisions in the Constitution mandate that the Vice President, while acting as the President of the Senate, "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted."  U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII.  Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors."  3 U.S.C. § 15.  Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives."  *Id.*  The President of the Senate is empowered to "preserve order" during the Joint Session.  3 U.S.C. § 18.  Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and Representative "may speak to such objection . . . five minutes, and not more than once."  3 U.S.C. § 17.  The Electoral

3

Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared."  3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding.  18 U.S.C. § 1512(c)(2).  An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) *a proceeding before the Congress*;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

> 2. <u>Certification of the Electoral College vote is a "proceeding before the Congress"</u>

The certification of the Electoral College vote as set out in the Constitution and federal statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2).  That conclusion flows principally from the obstruction statute's plain text.  Skipping past the text, the defendant argues that Congress's intent and other language in the obstruction statute import a "quasi-judicial" requirement into the term "official proceeding."  Mot. 8-11.  That argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as,

4

among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term.

In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com). The defendant does not meaningfully contest that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is a "proceeding"—and indeed an "official proceeding"—under that general definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 in this fashion. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in Section

5

1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few events are as solemn and formal as a Joint Session of the Congress. That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute. Required by law to begin at 1:00 p.m. on January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body." *See* Black's Law Dictionary, *supra*. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors

6

throughout the country in a presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).

       3. <u>The proceeding before Congress is not limited to proceedings solely related to the administration of justice</u>

The defendant incorrectly asks this Court to limit the interpretation of "proceeding before the Congress" to encompass only "Congressional hearing[s] affecting the administration of justice." Mot. at 11. As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress. Whatever the merits of the defendant's argument for other provisions in Section 1515(a)(1), it finds no textual support when applied to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed to look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Indeed, § 1505 expressly criminalizes

7

obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). Section 1505 shows that Congress knew how to limit an obstruction prohibition to congressional investigations, and that it could have also done so in the text of § 1515(a)(1)(B). But it did not. Instead, Congress enacted language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. That distinctively broader definition includes the Electoral College vote certification. *See, e.g., Russello v. United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.").

Rather than engage with Section 1515's text, the defendant relies on "surrounding statutory provisions" and "legislative intent" to argue that the certification of the Electoral College vote is not an "official proceeding" because it does not affect the "administration of justice." Mot. 8-14. That approach fails in three respects. First, it is methodologically flawed. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is "a proceeding before the Congress." Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). The defendant offers no rationale for looking past the statute's plain text to reach for other interpretive tools.

Second, the other statutory tools on which the defendant relies do not aid his argument. For example, the defendant contends (Mot. 10-11) that Section 1512's title—"Tampering with a

8

witness, victim, or an informant"—implies that the "official proceeding" definition in Section 1515 does not cover the Electoral College vote certification. But this contention runs headlong into "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text." *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947).[1] In any event, the specific statutory provision under which the defendant is charged, 18 U.S.C. § 1512(c)(2), explicitly reaches beyond tampering: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2104)).

The defendant also suggests that the obstruction statute's "preamble and legislative history" shows that the statute "was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." Mot. 13-14. Putting aside that the "best evidence of [a statute's purpose] is the statutory text adopted by both Houses of Congress and submitted to the President," *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991), the obstruction statute's legislative history confirms that Congress intended the provision to reach "broadly," and to encompass "the rare type of conduct that is the product of the inventive criminal mind." S. Rep. No. 97-532, at 17-18.

The defendant's effort to invoke other provisions in Chapter 73 has even less bearing on the plain meaning of § 1512(c)(2). Mot. 12-13 (citing 18 U.S.C. §§ 1503, 1504, 1507, 1521). If

---

[1] The defendant's invocation of the Justice Manual similarly has no bearing on the Court's analysis (Mot. 14-15). The USAM (the previous name of the Justice Manual) "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *United States v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995) (quoting USAM §1-1.100). *Cf. United States v. Caceras*, 440 U.S. 741, 754 (1979) (IRS manual does not confer any substantive rights on taxpayers but is instead only an internal statement of policy and philosophy).

anything, those neighboring provisions—which criminalize obstruction of other types of investigations and protect judges, jurors, witnesses, and the like—underscore that Congress robustly sought to penalize obstructive conduct across a vast range of settings. That Congress wished to penalize efforts to obstruct everything from a federal audit and a bankruptcy case to an examination by an insurance regulatory official only crystallizes the government's construction here: the acts of obstructing, influencing, or impeding—rather than the particular type of hearing— lie at "'the very core of criminality' under the statute[s]." *Williamson*, 903 F.3d at 131.

Finally, the defendant's narrowed reading of "proceeding before the Congress" in 18 U.S.C. § 1515(a)(1)(B)—importing an extra-textual "administration of justice" requirement— would undercut the broad statute that Congress enacted. Nowhere does the defendant explain which congressional proceedings would qualify for protection under his narrowed definition. His crabbed approach additionally fails to recognize that the certification of the Electoral College vote is an official proceeding that is "crucial to the conduct of government" and therefore "entitled to go forward free of corrupting influences that not only delay [it] but increase the chances of false and unjust outcomes." *Sutherland*, 921 F.3d at 426. Under any permissible construction of the phrase "proceeding before the Congress," the Electoral College vote certification falls squarely within it.

4. <u>In any event, certification of the Electoral College vote is quasi-judicial in nature</u>

The defendant's challenge fails even if he is correct—and he is not—that a proceeding must be related to the "administration of justice" to qualify under 18 U.S.C. § 1512(c)(2). Far from informal, the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding. It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]."

3 U.S.C. § 15.  That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id.*  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

        5.    <u>Judicial interpretations of the obstruction statute support that a Joint Session of Congress to certify the Electoral College vote constitutes a "proceeding before the Congress"</u>

The defendant's remaining arguments lack merit.  First, the defendant implies (Mot. 8-10) that courts have agreed with his narrowed approach.  As noted above, those cases, like *Ermonian*, 752 F3d. 1165, addressed an entirely different question, namely, whether law enforcement investigations qualified as "official proceedings" under a subsection defining that term as a "proceeding before a Federal Government agency which is authorized by law."  18 U.S.C. § 1515(a)(1)(C).  Specifically, those courts grappled with questions such as when an agency investigation is a proceeding; whether the requirement in § 1512(f)(1) that a proceeding "need not be pending or about to be instituted at the time of the offense" as applied to agency investigations would reach "conduct that occurred even pre-criminal-investigation," *Ermoian*, at 752 F.3d at 1172; and whether the "official" modifier "implies something more formal than a mere investigation," *Sutherland*, 921 F.3d at 426.  Those questions do not arise here.  The certification of the Electoral College vote is a congressional proceeding, not an investigation, and involves a degree of formality distinct from any agency investigations.  And, in any event, the pertinent

statutory definition—a "proceeding before the Congress"—is phrased more broadly than the definition at issue in those decisions.[2]

The defendant briefly invokes the "fair warning requirement" discussed in *United States v. Lanier*, 520 U.S. 259 (1997), to suggest that he lacked notice his obstructive actions directed at the Joint Session of Congress on January 6, 2021 would be subject to penalty. Mot. 7-8. As explained above, however, the obstruction statute's plain text—which prohibits specified conduct targeting "a proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B)—provided him with more than "a fair warning . . . of what the law intends to do if a certain line is passed." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (citation omitted).

### 6. The certification of the Electoral College vote may also be a "federally protected function" and "official business"

The defendant incorrectly argues (Mot. 15) that the certification of the Electoral College vote cannot be a "federally protected function," "official business," and "a proceeding by the Congress"—terms employed in the various criminal statutes charged in this case. But that argument fails to recognize that criminal statutes often carry overlapping coverage. *See e.g.*, *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014) ("No doubt, the overlap between the two clauses is substantial on our reading, but that is not uncommon in criminal statutes."); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14 (1995) (opinion of Stevens, J.) ("Congress may,

---

[2] In a footnote, the defendant invokes the rule of lenity. Mot. 7, n. 1. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *see Shular v. United States*, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring). There is no grievous ambiguity here. Section 1512(c)(2) criminalizes obstructing an "official proceeding"; Section 1515(a)(1)(B) defines that term to include a "proceeding before the Congress," which, as discussed above, encompasses the certification of the Electoral College vote. No guess work is needed.

and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

Whether or not the defendant faces potential criminal penalty under another criminal statute has no bearing on whether the government properly charged 18 U.S.C. 1512(c)(2) in this case.  "[W]hen an act violates more than one criminal statute, the Government may prosecute under either." *Batchelder*, 442 U.S. at 123-124.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant's motion be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:   /s/ *Elizabeth Kelley*
Elizabeth C. Kelley
Assistant United States Attorney
D.C. Bar No. 1005031
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7238
Elizabeth.Kelley@usdoj.gov