**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-119 (CJN)** |
| **v.** | : | |
| | : | |
| **GARRET MILLER,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF DEFENDANT'S CLAIM OF SELECTIVE PROSECUTION AS IT RELATES TO COUNTS ONE, TWO AND FOUR OF THE SUPERSEDING INDICTMENT**

Defendant Garrett Miller seeks discovery and an evidentiary hearing on his claim that the government selectively targeted him for prosecution due to his political beliefs.  Because Miller's motion (Doc. 32) does not satisfy the rigorous standard for discovery in this setting, this Court should deny it.

**Factual Background**

The grand jury charged Miller with two counts of civil disorder, in violation of 18 U.S.C. § 231(a)(3); one count of obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) and (2); one count of assaulting, resisting, or impeding a federal officer, in violation of 18 U.S.C. § 111(a)(1); two counts of making interstate threats to injure, in violation of 18 U.S.C. § 875(c); one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); one count of disorderly and disruptive conduct, in violation of 18 U.S.C. § 1752(a)(2); one count of impeding ingress and egress in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(3); and three misdemeanor offenses under 40 U.S.C. § 5104(e)(2).

Doc. 20, at 1-6.  These charges implicate Miller's conduct at the U.S. Capitol on January 6, 2021 and in the following days.[1]

On January 6, a joint session of Congress convened to certify the votes of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020.  At 1:30 p.m., the House and Senate adjourned to their respective chambers to resolve an objection.  Vice President Michael Pence, as the President of the Senate, presided over the joint session and, later, the Senate proceedings.

As the House and Senate proceedings continued, a large crowd gathered outside the U.S. Capitol.  Officers with the United States Capitol Police ("USCP") and the Metropolitan Police Department ("MPD") attempted to keep the crowd away from the building.  Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol by, among other things, breaking windows and by assaulting both USCP and MPD officers as others in the crowd encouraged and assisted those acts.  In response to this intrusion, representatives, senators, and Vice President Pence evacuated their respective chambers around 2:20 p.m.

Surveillance video from inside the Capitol shows Miller entering the building at 2:43 p.m. by pushing past officers who were trying to keep rioters from entering.  When asked in a Facebook chat, "[W]ere you in the building?," Miller admitted, "Yah . . . we charged . . . We where [*sic*] going in . . . No matter what . . . Decided before the trump speech . . . I charged the back gates myself with an anti masker."

Body-worn MPD camera video shows Miller inside the Capitol Rotunda at 3:07 p.m.  A large crowd had formed and officers attempted to control it.  Miller went to the police line at the

---

[1] The government's opposition to Miller's motion to revoke his detention order contains a detailed recitation of his alleged conduct.  *See* Doc. 16, at 3-6.

front of the crowd and refused to move.  When officers attempted to push him back, Miller fell to the ground but quickly got up and again refused to move.  He yelled, "Hooah! Hooah!" at the officers.  He then got into a fighting stance with one of his legs in front of the other and yelled, "OOOH! OW! OW! OW!"  Officers eventually pushed him back.

The same day, Miller posted threatening messages on Twitter directed at Congresswoman Alexandria Ocasio-Cortez.  In subsequent days, he posted messages on Instagram and Facebook threatening to kill a USCP officer.  Miller also sent a photograph of himself with another unidentified individual inside the Capitol Rotunda to another Facebook user.  After seeing the photograph, the user commented, "bro, you got in?! Nice!" to which Miller replied, "[J]ust wanted to incriminate myself a little lol."

Law enforcement arrested Miller at his Dallas, Texas home in late January 2021.  In ordering the defendant detained, the magistrate judge found "clear and convincing evidence that [Miller is] a danger."  Doc. 14-1, at 107 (Tr. 106:3-4).  The judge specifically cited Miller's "intrusion into the Capitol" and "threats to the Capitol Police officer," *id*. at 106 (Tr. 105:20-23), and expressed concern that "[Miller was] going to assassinate [the officer]," *ibid*. (Tr. 106:13).  The judge further observed that Miller "had numerous firearms," "cross-bows," "knives," and "ropes."  *Id*. at 107-108 (Tr. 106:24, 107:1-2).

This Court subsequently denied Miller's motion to revoke the magistrate judge's detention order.  The Court agreed that "Miller poses a danger to the community," citing his "disregard for violence occurring around the Capitol, [his] failure to follow police orders that day, his decision to resist officers, his threats against Congresswoman Oc[a]sio-Cortez and most importantly his specifically-formulated and articulated plans to track and potentially kill a U.S. Capitol police

3

officer." 4/1/21 Hr'g Tr. 20:8-15. It characterized the totality of Miller's conduct as "forward-looking" and his threats as "well-documented. *Id*. at 19:10, 20.

**Argument**

In a motion riddled with speculations and insinuations, Miller alleges that the government selectively targeted him for prosecution based on his political beliefs. He specifically references the felony charges—Counts One and Two (violations of the civil-disorder statute) and Count Four (assaulting, resisting, or impeding a federal officer)—and contends that the government failed to prosecute similar conduct occurring during protests around the Portland, Oregon federal courthouse in May and June 2020.

Miller's motion fails the threshold evidentiary showing for a selective-prosecution claim. His request for discovery should be denied.

**I.      A defendant must make a "rigorous" showing on each element of selective prosecution before he can obtain discovery on the issue.**

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Ibid.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is . . . at its most limited when reviewing the Executive's charging determinations" because "the Judiciary . . .

4

generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

This presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465. To overcome it and obtain dismissal of the criminal charges, a defendant must present "clear evidence" that the government's decision to prosecute was "based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 464-65 (citations omitted).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent." *Ibid.* (citation omitted). The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470. "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).

**II.     Miller fails to proffer any evidence supporting an inference of selective prosecution.**

Miller has failed to make the threshold showing on either selective-prosecution element. He has not presented any evidence suggesting "that (1) [he] was singled out for prosecution from among others similarly situated and (2) that [his] prosecution was improperly motivated." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)). "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463.

      **a.**      **Miller has not made a colorable showing that the government singled him out for prosecution.**

Miller must first adduce evidence that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted." *Irish People, Inc.*, 684 F.2d at 946 (citation omitted).  As a judge of this Court explained, an individual may be similarly situated if he "committed the same basic crime in substantially the same manner as the defendant— so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.").

Miller fails this showing.  A selective-prosecution claim requires the defendant to identify "similarly situated" individuals who "have not been prosecuted," *Irish People, Inc.*, 684 F.2d at 946 (citation omitted), and Miller has pointed to no such individual.  He instead cites 45 cases (from a sample of 74) where the government charged the defendant with federal offenses arising from riots around the federal courthouse in Portland, Oregon, and where the government subsequently dismissed the charges, entered a deferred-prosecution agreement, or acceded to the defendant's guilty plea on reduced charges.  Doc. 32, at 7.[2]

---

[2] Miller's motion further references pleadings from 31 of these cases where, in his view, the defendant's conduct in Portland mirrored his actions on January 6, 2021.  Doc. 32, at 8-16; *see also* Doc. 32-1 (Attachments 1-31).

This comparison fails, first and foremost, because the government actually charged nearly all defendants in the listed Oregon cases with civil-disorder or assault offenses.  *See* Doc. 32-1 (Attachments 2-31).  Miller has accordingly shown no disparate treatment in the government's charging approaches.  He instead focuses on the manner in which the government ultimately resolved the Oregon cases, and contrasts it with, in his opinion, the "one-sided and draconian plea agreement offer" that the government recently transmitted to him.  Doc. 32, at 6.  This presentation—which compares the government's initial plea offer to him with the government's final resolution in 45 hand-picked Oregon cases—"falls woefully short of demonstrating a consistent pattern of unequal administration of the law."[3]  *United States v. Bernal-Rojas*, 933 F.2d 97, 99 (1st Cir. 1991).  In fact, the government's initial plea offer here rebuts any inference that that it has "refused to plea bargain with [Miller], yet regularly reached agreements with otherwise similarly situated defendants."  *Ibid*.

More fundamentally, the 45 Oregon cases serve as improper "comparator[s]" because those defendants and Miller are not similarly situated.  *Stone*, 394 F. Supp. 3d at 31.  Miller unlawfully entered the U.S. Capitol and resisted the law enforcement officers who tried to move him.  Doc. 16, at 4.  He did so while elected lawmakers and the Vice President of the United States were present in the building and attempting to certify the results of the 2020 Presidential Election in accordance with Article II of the Constitution.  *Id*. at 2-3.  And he committed a host of federal offenses attendant to this riot, including threatening to kill a Congresswoman and a USCP officer. *Id*. at 5-6.  All this was captured on video and Miller's social-media posts.  *See* 4/1/21 Hr'g Tr. 19:14-15 ("[T]he evidence against Mr. Miller is strong.").  Contrast that with the 45 Oregon

---

[3] Miller's motion notably omits reference to the remaining 29 Oregon cases in his survey, presumably because the government's litigation decisions in those cases do not conform to his inference of selective treatment.

defendants, who—despite committing serious offenses—never entered the federal courthouse structure, impeded a congressional proceeding, or targeted a specific federal official or officer for assassination.   Additionally, the government's evidence in those cases often relied on officer recollections (*e.g*., identifying the particular offender on a darkened plaza with throngs of people) that could be challenged at trial—rather than video and well-documented incriminating statements available in this case.   These situational and evidentiary differences represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in Miller's case. *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)); *see also Price v. U.S. Dep't of Justice*, 865 F.3d 676, 681 (D.C. Cir. 2017) (observing that a prosecutor may legitimately consider "concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of a defendant's cooperation" in plea negotiations) (brackets and citation omitted).

This Court's detention ruling recounts several of these prosecutorial distinctions.   It found that Miller "poses a danger to the community" based, in particular, on his "articulated plans to track and potentially kill a U.S. Capitol police officer" in connection with the riot.   4/1/21 Hr'g Tr. 20:12-15.   The Court further explained that "Miller was not a passive, fleeting or peaceful participant.   He arrived armed and ready to fight." *Id*. at 18:5-7.   Multiple decisions from this jurisdiction have also documented the *sui generis* nature of this criminal conduct.   The D.C. Circuit has observed that "the violent breach of the Capitol on January 6 was a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir.).   Members of this Court have similarly described it as "a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself." *United States v. Cha*, No. 21-cr-107, 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021); *see also*

*United States v. Fox*, No. 21-cr-108 (D.D.C. Jun. 30, 2021) (Doc. 41, Hrg. Tr. at 14) ("This is not rhetorical flourish.  This reflects the concern of my colleagues and myself for what we view as an incredibly dangerous and disturbing attack on a free electoral system."); *United States v. Chrestman*, No. 21-mj-218, 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021) ("The actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law.").

These decisions confirm that the actions taken by Miller and others on January 6 differ in kind and in degree from the 45 cited Oregon cases.  Miller was part of a mob who traveled to the Capitol grounds, breached the Capitol building, and assaulted law enforcement with the goal of impeding congressional certification of the 2020 Presidential Election.  Indeed, he is one of more than 500 defendants already charged for participating in the riot, and he does not suggest that he has been treated differently than any of those similarly situated defendants.

Miller's effort to draw comparisons to the 45 Oregon cases accordingly stumbles.  Lacking colorable evidence that the government singled him out for prosecution, Miller's discovery request fails at the first step.

  **b.**   **Miller has not made a colorable showing that the government harbored an improper motive in prosecuting him.**

With respect to the second prong, Miller has failed to adduce any evidence that improper motives undergird this prosecution.

Miller instead intimates that the government accepted favorable dispositions in the 45 Oregon cases, but withheld a similar plea offer here because he espouses political views that the government disfavors.  Doc. 32, at 6; *see also id*. at 17 ("[I]t appears at first blush that Mr. Miller has been treated differently by the government than the Portland rioters based upon the politics involved.").  But Miller presents no evidence linking any Oregon defendant to a particular political

viewpoint, and his attached pleadings make no reference to such information.[4]  Stripped to its core, Miller relies on rank conjecture in suggesting that political favoritism has guided the government's charging and plea decisions.  That is not enough to warrant discovery here; "a defendant must provide something more than mere speculation or 'personal conclusions'" of selective prosecution. *Stone*, 394 F. Supp. 3d at 31 (quoting *Armstrong*, 517 U.S. at 470).

At bottom, the government has determined that Miller's offense conduct warrants a penalty more significant than the 45 Oregon defendants cited in his motion.  That reflects an appropriate exercise of its prosecutorial discretion in balancing the seriousness of Miller's conduct, the strength of the evidence against him, the need for his rehabilitation, the need to deter him and others from future criminal activity targeting the electoral process, and the allocation of the government's resources.  All these factors constitute permissible prosecutorial considerations. *See Price*, 865 F.3d at 681.

Miller has adduced no evidence that the government initiated these charges in response to his political views.  The Acting U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that such a consideration plays no role in his office's charging policies— be it in this investigation or elsewhere.  Miller accordingly fails his burden on the second element.

\* \* \*

---

[4] Miller briefly references (Doc. 32, at 15 n.7) one criminal complaint (*United States v. Amoss*, No. 3:21-mj-113) where the affidavit observed that "[p]rotest events in Portland are primarily attended by people in 'black bloc,' a term used to describe the all black, nondescript clothing." Doc. 32-1, at 12 (Attachment 1, ¶ 16).  The affidavit further stated that "ANTIFA and other groups have stated that the intent of wearing 'black block' is to protect members of the group willing to take 'direct action' by making it difficult for law enforcement to identify individuals and further anonymizing them."  *Ibid*.  This general description did not attach a particular political ideology to the defendant in *Amoss* or to black clothing generally; it merely stated that protestors typically wore this attire and that several groups promoted it.

To this point, the government has accepted Miller's comparator group—45 defendants charged with federal offenses arising from the Portland federal courthouse riots, *see* Doc. 32, at 6-16—at face value and demonstrated that no impermissible inference arises under *Armstrong*. That alone forecloses Miller's request for discovery. But Miller's motion suffers an additional defect: even a cursory inspection of the District of Oregon's public docket reveals that his list of 45 cases is incomplete and unreliable.[5]

First, Miller's list is underinclusive because it conspicuously omits discussion of any Portland courthouse case where the government has proceeded with the prosecution. *See, e.g.*, *United States v. Berteau-Pavy*, No. 3:20-cr-434 (D. Or.) (targeting officers with high-powered laser); *United States v. Horton*, 3:20-cr-419 (D. Or.) (assault on officer with baseball bat); *United States v. Gaines*, 3:20-cr-223 (D. Or.) (assault on officer with hammer).

Second, Miller's list is overinclusive.  Although Miller purports to compare this prosecution to defendants charged with assaulting a federal officer or a civil-disorder violation around the Portland federal courthouse, he cites cases occurring miles away, on non-federal property, involving defendants who assaulted or resisted state officers. *See, e.g.*, *United States v. Warner*, No. 3:20-cr-442 (D. Or.); *United States v. O'Connor*, No. 3:20-mj-223 (D. Or.); *United States v. Ramos*, 3:20-cr-463 (D. Or.); *United States v. Donnelly*, No. 3:20-cr-436 (D. Or.); *United States v. Comfort*, No. 20-cr-443 (D. Or.); *United States v. Eutin*, No. 20-cr-459 (D. Or.).[6]

---

[5] Given the press of time and the limited nature of the discovery question before this Court, the government has not conducted an exhaustive review of the public docket associated with each cited case.

[6] Miller's attachment (Doc. 32-1) appends the criminal complaints associated with these proceedings.  *See* Attachments 2, 23, 25, 26, 28, 29.

Third, Miller's list contains inaccuracies.  For instance, he states that the government allowed the defendant in *United States v. Amoss* to plead to a citation.  Doc. 32, at 17.  To the contrary, the government charged the defendant with criminal destruction of federal property, in violation of 18 U.S.C. § 1361.  That proceeding is pending and an arraignment is scheduled for next month.  *See United States v. Amoss*, 3:21-mj-113 (D. Or.).

Fourth, several of Miller's cases involve parallel criminal charges before the Oregon courts and a decision by the Oregon U.S. Attorney to defer to state counterparts.  *See, e.g.*, *United States v. Fox*, 3:20-cr-501 (D. Or.) (information recited in motion to continue trial date at Doc. 15); *United States v. Donnelly*, No. 3:20-cr-436 (D. Or.) (information recited in declaration at Doc. 26). Such considerations are not present in the District of Columbia.

In a selective-prosecution claim, the defendant has the right to allege a class of defendants who purportedly received more favorable treatment.  But the defendant just as assuredly carries the obligation to proffer accurate information with respect to his alleged class so that the government can provide a fair response and this Court can decide whether a prima facie case has been made.  Miller—in proffering a cherry-picked list of 45 cases—has fallen well short on that obligation.  His motion should be denied on that basis as well.

## **Conclusion**

Because Miller has failed to carry his burden, he is not entitled to discovery on his selective-prosecution claim and his motion should be denied.

Respectfully submitted,

CHANNING PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Elizabeth C. Kelley*
ELIZABETH C. KELLEY
Assistant United States Attorney
D.C. Bar Number 1005031
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7238
Elizabeth.Kelley@usdoj.gov

13

**<u>Certificate of Service</u>**

I hereby certify that on July 22, 2021, I caused a copy of the foregoing opposition motion

to be served on counsel of record via electronic filing.


*/s/ Elizabeth C. Kelley*
ELIZABETH C. KELLEY
Assistant United States Attorney

14