# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **CRIMINAL ACTION NO.** |
| ) | |
| Plaintiff, ) | **1:21-CR-00119-CJN** |
| ) | |
| v. ) | |
| ) | **[Oral Argument Requested]** |
| **GARRET MILLER,** ) | |
| ) | |
| Defendant. ) | |

## SUPPLEMENT TO MOTION TO DISMISS COUNT THREE OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE

F. Clinton Broden
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS..................................................................................................2

CONGRESS'S ATTEMPTS IN 1979 AND 1981 TO OVERHAUL TITLE 18 RESOLVES THE QUESTION AS TO WHAT WAS MEANT BY THE TERM "OFFICIAL PROCEEDING."...................................................................................3

    1. 1979................................................................................................................4

        a. The Model for What Became Section 1512 is Proposed........................4

        b. The "Rosetta Stone" as to the Meaning of "Official Proceeding."........8

        c. The Origins of Section 1512(c)(2)- the "Residual Clause."...................9

    2. 1981..............................................................................................................11

        a. Congress Again Attempts to Pass the Precursor to Section 1512........11

        b. Senate Judiciary Committee Reports Provide Fuller Context.............13

    3. Congress Finally Passes Section 1512 in 1982............................................15

    4. The Legislative History Strongly Supports Mr. Miller's Position................16

CERTIFICATE OF SERVICE.......................................................................................18

In opposing Garret Miller's Motion to Dismiss Count 3 for failure to state an offense, the Government advances two essential arguments. First, the Government asserts that the term "official proceeding" as used in 18 U.S.C. § 1515(a)(1)(B) is textually clear, unambiguous, and was intended to incorporate the non-legal definition of "proceeding." Second, the Government claims that, if the term "official proceeding" is narrowly construed and applies only to formal hearings, the Electoral College certification constitutes such a "formal hearing" within the meaning of 18 U.S.C. § 1512(c)(2). Recently obtained legislative history related to these statutes refutes the Government's arguments.

**Congress's Attempts in 1979 and 1981 to Overhaul Title 18 Resolves the Question as to What Was Meant by the Term "Official Proceeding."**

The origins of Sections 1512 and 1515 lie in Congress's attempt to streamline, simplify, and reorganize the federal criminal code. Actually, as Georgetown University Law Professor Julie O'Sullivan observed, there is no federal criminal "code," *i.e.*, "a comprehensive, thoughtful, and internally consistent system of criminal law."[1] Instead, Congress has promulgated "a haphazard grab-bag of statutes accumulated over 200 years[.]" *Id*. In 1979 and 1981, Congress made attempts to reform and organize Title 18. Although unsuccessful, the proposed bills and Senate

---

[1] Julie O'Sullivan, *The Federal Criminal "Code" is a Disgrace: Obstruction Statutes as Case Study*, 96 J. Crim. L. & Criminology 643, 643-44 (2006).

reports surrounding Congress's efforts are highly educational as to the issue at hand: What did Congress intend by using the term "official proceeding" when it passed Sections 1512 and 1515 in 1982?

**1. 1979**

**a. The Model for What Became Section 1512 is Proposed.**

In 1979, Senate Judiciary Chairman Ted Kennedy (D-MA) and minority ranking member Sen. Strom Thurmond (R-SC) co-sponsored the Criminal Code Reform Act of 1979, or Senate Bill 1722 ("S. 1722"). S. 1722 was Congress's first effort to reorganize federal criminal statutes[2]. Styled as a bill "[t]o codify, revise, and reform title 18 of the United States Code," *id.*, S. 1722 is important to the instant case as it appears to document Congress's first attempt to pass what would later become 18 U.S.C. § 1512. The language of the 1979 bill and the accompanying Senate Judiciary Committee report are, accordingly, informative.

S. 1722 included a proposed a new obstruction of justice statute, § 1323 ("1979 legislation"), which provided:

---

[2] "The Committee strongly believes that the time has come to create, for the first time since the founding of our nation, a systematic, consistent, and comprehensive Federal criminal code to replace the hodgepodge that now exists." S. Rep. No. 96-553, at 5 (1979).

## § 1323.  Tampering With a Witness, Victim, or an Informant

(a) OFFENSE.—A person is guilty of an offense if he—

> (1) uses force, threat, intimidation, or deception with intent to—

>> (A) influence the testimony of another person in an official proceeding; or

>> (B) cause or induce another person to—

>>> (i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

>>> (ii) engage in conduct constituting an offense under section 1325 (Tampering With Physical Evidence);

>>> (iii) evade legal process summoning him to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

>>> (iv) absent himself from an official proceeding to which he has been summoned by legal process; or

>> (C) hinder, delay, or prevent the communication to a law enforcement officer of information relating to an offense or a possible offense;

> (2) with intent to annoy, harm, or injure another person, hinders, delays, prevents, or dissuades—

>> (A) a witness or a victim from attending or testifying in an official proceeding; or

>> (B) a witness, victim, or a person acting on behalf of a victim, from—

>>> (i) making a report of an offense or a possible offense

to a judge, a law enforcement officer, a probation officer, or an officer of a correctional facility;

  (ii) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted or assisting in such prosecution or proceeding; or

  (iii) arresting, or causing or seeking the arrest of, a person in connection with an offense; or

(3) does any other act with intent to influence improperly, or to obstruct or impair, the—

 (A) administration of justice;

 (B) administration of a law under which an official proceeding is being or may be conducted; or

 (C) exercise of a legislative power of inquiry.[3]

That the 1979 legislation set forth above served as the model for what would later become 18 U.S.C. § 1512 is clear for several reasons. Significantly, the 1979 legislation and Section 1512 have identical titles: "**Tampering with a Witness, Victim, or an Informant**."[4] Additionally, the 1979 legislation, like Section 1512, makes multiple references to the term "official proceeding." Significantly, the 1979

---

[3] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1323 (1979).

[4] *See* Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 2, 96 Stat. 1248 (1982).

legislation, like Section 1512, eliminated the "pending proceeding" requirement[5].

The most obvious proof of kinship between the two sections, however, is that every portion of the current Section 1512 is taken from the 1979 legislation. Sections 1512(b)(1)-(3) and (d)(1)-(4), for instance, which passed as part of the original Section 1512 in 1982, were respectively drawn from the 1979 bill's subsections (a)(1)(A)-(C) and (a)(2)(A)-(B). Section 1512(c)(1)'s text, the subject of the *Arthur Anderson* case, was copied from a proposed 1979 evidence tampering statute (§ 1325), which is cross-referenced in the 1979 legislation's subsection (a)(1)(B)(ii)[6]. Section 1512(c)(2), which was added to Section 1512 as part of Sarbanes-Oxley in 2002, bears a striking resemblance to the 1979 legislation's "residual clause" found in subsection (a)(3)[7]. In short, the statutory DNA of Section 1512 traces back to Congress's 1979 failed attempt to pass a new obstruction of justice statute within the context of a sweeping overhaul of Title 18.

---

[5] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1323(d)(1) (1979) ("It is not a defense to a prosecution . . . that . . . an official proceeding was not pending or about to be instituted[.]").

[6] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1325 (1979).

[7] In addition to Section 1512's subsections (b), (c), and (d), the 1979 legislation included a separate proposed statute, § 1324, which covered acts of witness intimidation, which are now codified in subsection (a) of Section 1512. *Id.*, § 1324.

### b. The "Rosetta Stone" as to the Meaning of "Official Proceeding."

Unlike Sections 1512 and 1515, the 1979 legislation included a detailed definition as to what Congress meant when it used the term "official proceeding" in relation to obstruction of justice. Section 111 of the proposed 1979 legislation defined, for purposes of § 1323, the term "official proceeding" as follows:

> 'official proceeding' means a proceeding *convened* pursuant to lawful authority, or a portion of such a proceeding, that is or may be *heard* before (a) a government branch or agency; or (b) a public servant who is *authorized to take oaths*, including a judge, *a chairman or a Member of Congress authorized by a legislative committee or subcommittee*, a bankruptcy judge, an administrative law judge, a hearing examiner, and a notary[.][8]

As used in the 1979 legislation, the term "official proceeding" obviously applied to administrative, judicial, and congressional *hearings*. *Id*. Instead of routine business, an "official proceeding" was a "proceeding" that was "convened." *Id*. When used in a legal context and as a transitive verb, (*i.e.*, "convene a proceeding"), "convened" or "to convene" means "to summon before a tribunal,"[9] "to order to appear before a

---

[8] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 111 (1979) (emphasis added).

[9] *Convene*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2001).

court of law, judge, tribunal, etc.,"[10] or "to summon before a court of law."[11]

An "official proceeding," moreover, was a proceeding "that is or may be heard," *i.e.*, an event that involves a *hearing*. More telling, subsection (b) of the 1979 legislation, in the context of Congress, specifically referred to "a chairman" or "Member of Congress" who is "authorized to take oaths" at "legislative committee or subcommittee" hearings. *Id*. In short, the definition of "official proceeding" as used in the template for what would three years later become Sections 1512 and 1515(a)(1)(B), completely validates the proposition that Congress intended the term "official proceeding" as used in Section § 1515(a)(1)(B) to be limited to congressional inquiry hearings.

### c. The Origins of Section 1512(c)(2)- the "Residual Clause."

Mr. Miller is charged under Section 1512's "residual clause," which makes it a crime to "otherwise obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so[.]" 18 U.S.C. § 1512(c)(2). Significantly, the 1979 legislation also included a "residual clause," § 1323(a)(3), which declared: "A person is guilty of an

---

[10]*Convene*, COLLINS DICTIONARY OF LAW © (W.J. Stewart 2006) (definition used in British English). The word "convene," interestingly, is derived "from Latin *convenīre* to assemble, from *venīre* to come." *Id*.

[11]*Convene*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed. 2010) (definition used in American English).

9

offense if he--. . .

>   (3) does any other act with intent to influence improperly, or to obstruct or impair, the—
>
>   >   (A) administration of justice;
>   >
>   >   (B) administration of a law under which an official proceeding is being or may be conducted; or
>   >
>   >   (C) exercise of a legislative power of inquiry.[12]

The 1979 legislation's "residual clause" targeted obstructive acts aimed at hearings ("administration of justice"), administrative hearings ("administration of law"), and congressional inquiry hearings ("exercise of legislative power of inquiry"). *Id*. Section 1512(c)(2), in comparison, targets obstructive acts aimed at "official proceeding[s]," *i.e.*, "a proceeding before a judge," "a proceeding before the Congress," and "a proceeding before a Federal Government agency." 18 U.S.C. § 1515(a)(1)(A)-(C). Considered in the context of the 1979 legislation's detailed definition of "official proceeding," Congress clearly viewed the term "official proceeding" as synonymous with the proceedings listed in the 1979 legislation's "residual clause."

Section 1512(c)(2) was not added to Section 1512 until 2002 when, without fanfare or legislative history, it was inserted into the massive Sarbanes-Oxley

---

[12] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1323(a)(3) (1979).

legislation[13]. A textual comparison of residual clauses, however, demonstrates that Section 1512(c)(2)'s origins lie in the 1979 legislation: ("does any other act" vs. "otherwise"), ("obstruct" vs "obstructs"), ("impair" vs. "impedes"), ("influence improperly" vs. "influences"). The 1979 legislation's "residual clause" was clearly limited to punishing obstructive acts related to Congress's *legislative power of inquiry*.

### 2. 1981

#### a. Congress Again Attempts to Pass the Precursor to Section 1512.

In 1981, Congress again attempted a sweeping overhaul of Title 18 via the Criminal Code Reform Act of 1981 (S. 1630), co-sponsored by Judiciary Committee Chairman Strom Thurmond and ranking member Senator Joseph R. Biden. Like the 1979 legislation, the 1981 proposal included an identically titled and worded § 1323 ("1981 legislation")[14]. The 1981 legislation, however, included a somewhat broader definition for the term "official proceeding":

> 'official proceeding' means a proceeding or inquiry, including an investigative proceeding or inquiry, convened or instituted pursuant to lawful authority, or a portion of such a proceeding or inquiry, that is or may be heard before or conducted by (a) a government branch or

---

[13] Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.

[14] Criminal Code Reform Act of 1981, S.B. 1630, 97th Cong. § 1323 (1981).

>agency, or (b) a public servant who is authorized to take oaths, including a judge, a chairman or a Member of Congress authorized by a legislative committee or subcommittee, a bankruptcy judge, an administrative law judge, a hearing examiner, and a notary[.][15]

The 1981 legislation's definition of "official proceeding" was expanded in two important respects. First, instead of "proceeding[s]," the term now applied to "a proceeding or inquiry." As will be documented *infra*, this change suggests that Congress was tracking language from 18 U.S.C. § 1505, which criminalizes obstructive acts aimed at a "proceeding . . . before any department or agency of the United States" or "any inquiry or investigation . . . being had by either House, or any Committee of either House or any joint committee of the Congress[.]" 18 U.S.C. § 1505. Second, the broader definition now applied to ancillary "investigative proceeding[s] or inquir[ies]," which confirms that the D.C. Circuit's holding in *Kelley* was correct. *See United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (finding that the term "official proceeding" included an Inspector General investigation of AID as the I.G. was empowered to "issue subpoenas and compel sworn testimony in conjunction with an investigation of agency activities.").

A carbon copy of the 1979 legislation in every other respect, the 1981 legislation included an identical "residual clause," which proscribed "any other act

---

[15]*Id.*, § 111.

with intent to influence improperly, or to obstruct or impair, the (A) administration of justice; (B) administration of a law under which an official proceeding is being or may be conducted; or (C) exercise of a legislative power of inquiry."[16] Once again, Congress intended for the "residual clause" to be limited to congressional inquiry hearings.

### b. Senate Judiciary Committee Reports Provide Fuller Context.

The 1981 Senate Judiciary Committee report, importantly, detailed Congress's intent behind the "residual clause" in the 1981 legislation:

> Subsection (a)(3) [(the residual clause)] provides that a person is guilty of an offense if he "does any other act with intent to influence improperly, or to obstruct or impair," the administration of justice, the administration of law under which an official proceeding is being conducted, or the exercise of a legislative power of inquiry.
>
> *This provision is derived from the general residual clause at the end of 18 U.S.C. 1503 and 1505*[.][17]

Congress was quite explicit: The "residual clause" in the 1981 legislation was *derived* from the residual clauses in §§ 1503 and 1505. The Senate report highlighted that the "residual clause" was intended to proscribe "rare" types of obstructive conduct:

> In the Committee's view . . . *the purpose of preventing an obstruction or miscarriage of justice* cannot fully be carried out by a simple

---

[16] *Id.*, § 1323(a)(3).

[17] S. Rep. No. 97-307, at 351-52 (1981) (emphasis added).

13

enumeration of the commonly prosecuted obstruction offenses. There must also be protection *against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice*.[18]

Notably, the residual clause was designed to punish conduct intended to "thwart[] justice." Congress intended, moreover, that the "residual clause" reach unique fact-patterns involving obstructive conduct by those with "inventive criminal mind[s]," and highlighted several examples in its report[19]. The Senate report further recommended that courts interpret the residual clause "to cover conduct the function of which is to tamper with a witness, victim, or informant in order to *frustrate the ends of justice*."[20]

While neither the 1979 nor 1981 legislation became law, these bills obviously served as the model for Section 1512. These unpassed bills had unanimous, bipartisan support in the Senate Judiciary Committee.[21] Significantly, the 1981 Senate report excerpts quoted above were copied verbatim from the original 1979

---

[18]*Id*. (emphasis added).

[19]The Senate report cited exotic scenarios not covered by §§ 1503 and 1505, such as a criminal defendant who had "an unnecessary abdominal operation" to cause a mistrial, a con artist who plied an "illiterate estate administrator with liquor" in order to obtain documents to use to dismiss a civil suit, and a defendant who attempted to discredit a witness by planting "an illegal bottle of liquor" at the witness's home. *Id*. at 352-53.

[20]*Id*. at 353 (emphasis added).

[21]The 1979 and 1981 bills were sponsored by a diverse and respected bipartisan cross-section of the Senate, including Senators Kennedy, Thurmond, Biden, Hatch, Dole, DeConcini, Laxalt, East, Denton, and Specter.

Senate Judiciary report regarding § 1323, which was authored by the Chief Counsel to the Senate Judiciary Committee, Stephen Breyer.[22]

### 3. Congress Finally Passes Section 1512 in 1982.

In 1982, after changes were made through the legislative process, Section 1512 was enacted into law as "The Victim and Witness Protection Act of 1982." The original Senate version of this bill, S. 2420, eliminated the explanatory definition of "official proceeding" included in the 1979 and 1981 legislation in favor of the current definition as set forth in Section 1515. The proposed Senate bill also—again--included a "residual clause":

Whoever--. . .

3) with intent corruptly, or by threats of force, or by any threatening letter or communication, influences, obstructs, impedes, or attempts to corruptly, or by threats of force, or by threatening letter or communications. influences, obstructs, impedes the—

   (A) enforcement and prosecution of federal law;

   (B) administration of a law under which an official proceeding is being or may be conducted; or

   (C) exercise of a Federal legislative power of inquiry, shall be punished as provided in subsection (b).[23]

---

[22]S. Rep. No. 96-553, at 327-331 (1979).

[23]The Omnibus Victims Protection Act of 1982, S.B. 2420, 97th Cong. § 1512(a)(3).

15

The 1982 Senate report accompanying S. 2420 reiterated that its proposed "residual clause" was derived from Sections 1503 and 1505:

> Subsection (a) (3) . . . refer[s] to the "enforcement and prosecution of federal law" [and] is designed to carry forward the basic coverage in 18 U.S.C. 1503. The *latter two branches of the subsection*, referring to the "administration of a law under which an official proceeding is being conducted" and to the "exercise of a legislative power of inquiry," *are designed to continue the general scope of the final paragraphs of 18 U.S.C. 1505*.[24]

### 4.  **The Legislative History Strongly Supports Mr. Miller's Position**.

Three conclusions can be drawn from analyzing the legislative history derived from the 1979, 1981, and 1982 bills and reports. First, the term "official proceeding," defined in detail in the 1979 and 1981 bills, was intended by Congress to apply to judicial, administrative, and congressional hearings and their ancillary investigations.

Second, Congress, in three different iterations of the precursor to Section 1512(c)(2), clearly intended the "residual clause" to, in the words of the 1982 Senate report, "carry forward the basic coverage" of Sections 1503 and 1505[25].

Third, Congress intended the "residual clause" to be "broad," but only in the sense that it would reach unique criminal obstruction scenarios that were designed to

---

[24] S. Rep. No. 97-532, at 18-19 (1982) (emphasis added).

[25] *Id.* at 19.

16

"thwart," "frustrate," or cause a "miscarriage" of "justice."[26]

Finally, and most telling, not one iota of the unpassed, proposed bills that were the model for Sections 1512 and 1515, nor three detailed Senate Judiciary Committee reports, support the Government's position that Section 1512(c)(2) was intended to apply to the act of obstructing Congress outside of the context of inquiry hearings and related ancillary investigations.

Respectfully submitted,

/s/ F. Clinton Broden
F. Clinton Broden
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

---

[26] S. Rep. No. 97-307, at 352-53 (1981).

# CERTIFICATE OF SERVICE

I, F. Clinton Broden, certify that, on September 9, 2021 I caused a copy of the above document to be served by electronic means on:

Elizabeth C. Kelley
United States Attorney's Office
555 4th Street, N.W.
Washington, DC 20350

/s/ F. Clinton Broden
F. Clinton Broden