# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **CRIMINAL ACTION NO.** |
| ) | |
| Plaintiff, ) | **1:21-CR-00119-CJN** |
| ) | |
| v. ) | |
| ) | **[Oral Argument Requested]** |
| **GARRET MILLER,** ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## SECOND SUPPLEMENT TO MOTION TO DISMISS COUNT THREE OF THE SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE

**F. Clinton Broden**
**Broden & Mickelsen**
**2600 State Street**
**Dallas, Texas 75204**
**214-720-9552**
**214-720-9594 (facsimile)**
**clint@texascrimlaw.com**

**Attorney for Defendant**
**Garret Miller**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................................2

I.  WHETHER SECTION 1512(C)(2)'S "OTHERWISE OBSTRUCTS" HAS ANY LIMITATIONS AT ALL AND WHETHER IT IS COMPLETELY UNTETHERED FROM SECTION 1512(C)(1)...........................................................................................3

II. WHETHER "CORRUPTLY OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING" AND THE LACK OF A LIMITING PRINCIPLE MAKES SECTION 1512(C)(2) UNCONSTITUTIONALLY VAGUE AS APPLIED BASED ON THE ALLEGATIONS IN THE INDICTMENT........................................7

    A.  Problems with Using the Term "Corruptly" to Apply to Mr. Miller's Conduct............................................................................................................9

    B. "Corruptly" as "Obstructing Justice"............................................................14

CERTIFICATE OF SERVICE......................................................................................18

As the Court is no doubt aware, the scope of 18 U.S.C. § 1512 has been raised in several of the January 6th cases. This Second Supplement discusses two additional questions regarding that statute that were raised in oral argument before Judge Moss in *United States v. Montgomery, et. al.* (No 1:21-CR-046). *See* Attachment A.

### I.  WHETHER SECTION 1512(C)(2)'S "OTHERWISE OBSTRUCTS" HAS ANY LIMITATIONS AT ALL AND WHETHER IT IS COMPLETELY UNTETHERED FROM SECTION 1512(C)(1).

At the beginning of the *Montgomery* hearing, Judge Moss raised the question of what the phrase "otherwise obstructs, influences or impedes" means. *See* Attachment A at 5. Judge Moss noted, "That sentence follows a sentence which is focused on the alteration, destruction, mutilation or concealment of a record, document or other object." *Id*. This then led Judge Moss to the more critical question of "whether the otherwise clause needs to be construed in light of what comes before it to do two things" that is (1) "actually add[ing] something and to be meaningful in addition to what is in clause one" or (2) "whether it needs to be also construed in a similar vein to the terms that are in clause one." *See* Attachment A at 5–6.

The answer to that question not only comes from the Supreme Court decision in *Begay v. United States*, 553 U.S. 137 (2008) and *Yates v. United States*, 574 U.S. 528 (2015), but, ironically, from the former Attorney General for the United States. *See* Memorandum from William Barr to Deputy Attorney General Rod Rosenstein and

3

Assistant Attorney General Steve Engel of June 8, 2018 (hereafter Barr Memo), available at https://s3.documentcloud.org/documents/5638848/June-2018-Barr-Memo-to-DOJ-Muellers-Obstruction.pdf. Relying on *Begay* and *Yates*, the former Attorney General explained in that memo:

> [I]t is clear that use of the word 'otherwise' in the residual clause [of Section 1512(c)(2)] expressly links the clause to the forms of obstruction specifically defined elsewhere in the provision. Unless it serves that purpose, the word 'otherwise' does no work at all and is mere surplusage. [An] interpretation of the residual clause as covering any and all acts that influence a proceeding reads the word 'otherwise' out of the statute altogether. But any proper interpretation of the clause must give effect to the word 'otherwise'; it must do some work.

Barr Memo at 4. After discussing *Begay* and *Yates* and how those cases emphasized that "specific examples enumerated prior to the residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clause," he continued:

> Consequently, under the statute's plain language and structure, the most natural and plausible reading of 1512(c)(2) is that it covers acts that have the same kind of obstructive impact as the listed forms of obstruction — i.e., impairing the availability or integrity of evidence — but cause this impairment in a different way than the enumerated actions do. Under this construction, then, the "catch all" language in clause (c)(2) encompasses *any conduct*, even if not specifically described in 1512, that is *directed at undermining a proceeding's truth-finding function through actions impairing the integrity and availability of evidence.*

*Id*. at 4–5 (emphasis added).

The former Attorney General noted that caselaw reflects this application of the residual clause as only applying to "attempts to interfere with, or render false, evidence that would become available to a proceeding" or "to prevent the flow of evidence to a proceeding." *Id.* at 5 (citing *United States v. Volpendesto*, 746 F.3d 273 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance); *United States v. Phillips*, 583 F.3d 1261 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation)).[1]

Moreover, this interpretation is also entirely consistent with the legislative history of Section 1512(c)(2). As the former Attorney General noted, the legislative history of Section 1512(c)(2) "was expressly designed to 'clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records.'" Barr Memo at 5–6 (quoting S. REP. NO. 107-146, at 14–15). Stated differently, "The legislative history thus confirms that § 1512(c) was not intended as a sweeping provision supplanting wide swathes of

---

[1] *See also e.g. United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (involving false testimony to a grand jury); *United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (involving intentional false statements to court during a preliminary injunction hearing); *United States v. Lucas*, 499 F.3d 769, 780–81 (8th Cir. 2007) (involving a defendant having others falsely claim ownership of a firearm); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir. 2007) (involving defendant's "attempt[s] to orchestrate" grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness); *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (involving false statements in a court proceeding); *United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (involving destruction of several USB drives and deletion of data).

obstruction law, but rather as a targeted gap-filler designed to strengthen prohibitions on the impairment of evidence." Barr Memo at 6.

The former Attorney General also addressed a question raised by Judge Moss in *Montgomery* as to whether interpreting Section 1512(c)(2)'s residual clause broadly does "in fact render superfluous virtually every other provision of title 73." *See* Attachment A at 9. As former General Barr explained, "[R]eading the residual clause as an all-encompassing proscription cannot be reconciled either with the other subsections of § 1512, or with the other obstruction provisions in Title 18 that must be read *in pari passu* with those in § 1512." Barr Memo at 5.

Indeed, if this Court were to interpret Section 1512(c)(2) as the Government wants to — as an all-encompassing catch-all to include something so unique as protesting the election certification proceedings — "it would swallow up all the specific prohibitions in the remainder of § 1512 — subsections (a), (b), and (d)." *Id.* And, as the former Attorney General noted, "More than that, it would subsume virtually all other obstruction provisions in Title 18. . . . It is not too much of an exaggeration to say that, if § 1512(c)(2) can be read as broadly as being proposed, then virtually all federal obstruction law could be reduced to this single clause." *Id. See also Marx v. General Revenue Corp.*, 568 U.S. 371, 386, 133 S. Ct. 1166, 1178, 185 L. Ed. 2d 242 (2013) ("[T]he canon against surplusage is strongest when an

interpretation would render superfluous another part of the same statutory scheme.").

In sum, the canons of construction employed by the Supreme Court in *Begay* and *Yates*, the text, structure, the practical application of Section 1512(c)(2) as demonstrated in caselaw, as well as its legislative history all support a holding that the "otherwise clause" in Section 1512(c)(2) must be "construed in a similar vein to the terms that are in clause one. There must be some allegation that Mr. Miller's conduct undermined an official proceeding's "truth- finding function through actions impairing the integrity and availability of evidence." Barr Memo at 4–5. Because no such allegation exists in the indictment here (nor can there ever be one), this Court should dismiss Count Three of the Superseding Indictment alleging a violation of Section 1512(c)(2).

## II. WHETHER "CORRUPTLY OBSTRUCTS, INFLUENCES, OR IMPEDES ANY OFFICIAL PROCEEDING" AND THE LACK OF A LIMITING PRINCIPLE MAKES SECTION 1512(C)(2) UNCONSTITUTIONALLY VAGUE AS APPLIED BASED ON THE ALLEGATIONS IN THE INDICTMENT.

During argument in *Montgomery*, Judge Moss also raised another concern by noting:

> [T]here may be a constitutional vagueness problem that you walk into at that point in time if you can't articulate to the Court sort of what 'corruptly' means in a way that would put the average person on notice of when they're violating this statute versus engaged in trespass or unlawful parading; and you say oh, at this point I am now moving from

7

committing a misdemeanor to committing a felony. And unless we can tell the public where that line is, there's a problem."

*See* Attachment A at 40. Indeed, the allegation of "corruptly" is all that takes the charges against Mr. Miller from an offense punishable up to six months imprisonment to an offense punishable by up to twenty years imprisonment.[2]

In order to comply with the requirements of due process, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964). A statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)[3]

---

[2] *Compare* Counts Eight and Ten (charging Mr. Miller with knowingly engaging "in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress") with Count Three (charging Mr. Miller with attempting to, "and did, *corruptly* obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct.").

[3] *See also Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983)) ("a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries ... pursue their personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.).

### A.  Problems with Using the Term "Corruptly" to Apply to Mr. Miller's Conduct

Although "corruptly" is defined in Section 1515 as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information," as set out in that same section, that definition is *only applicable to Section 1505*. 18 U.S.C. § 1515(b). Congress has never amended Section 1515 to define "corruptly" as used in Section 1512. Accordingly, this Court must look elsewhere for that definition. In this Circuit, that discussion starts with *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

The defendant in *Poindexter* was charged with a similar offense that involved "corruptly influencing, obstructing, or impeding"; in that case, it was congressional inquiries that were allegedly obstructed by, among other things, making false and misleading statements to members of Congress. *Poindexter*, 951 F.2d at 377. On appeal, the court held the term "corruptly" as used in Section 1505 "is too vague to provide constitutionally adequate notice that it prohibits lying to Congress." *Id*. at 379. In so ruling, the court relied on the definitions of "corrupt" and "corruptly" applied in *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990):

> '[C]orruptly' is the adverbial form of the adjective 'corrupt,' which means 'depraved, evil: perverted into a state of moral weakness or

9

> wickedness ... of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements. A 'corrupt' intent may also be defined as 'the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others.'

*Poindexter*, 951 F.2d at 378 (quoting *North*, 910 F.2d at 881–82).

The *Poindexter* court noted several problems with the use of the term "corruptly." For one, it noted "that, on its face, the word 'corruptly' is vague." *Id.* It further added that "[t]he various dictionary definitions of the adjective 'corrupt' quoted in *North* do nothing to alleviate the vagueness problem involved in attempting to apply the term 'corruptly' to Poindexter's conduct." *Id.* ("Vague terms do not suddenly become clear when they are defined by reference to other vague terms.").

As further support for its holding, the *Poindexter* court also considered the legislative histories of Section 1503, 1505 and 1512, as well as cases interpreting Section 1505, to determine whether those statutes provided a narrowing interpretation of the term "corruptly" to provide adequate notice that it criminalized false and misleading statements to Congress. *Id*. at 379–386. The court ultimately concluded that no such narrowing interpretation was provided by legislative history or case law. *Id.* at 386.

There are several things worth noting about *Poindexter* before turning to the allegations against Mr. Miller in Count Three. First, in noting that the word

"corruptly" was vague on its face, the court added, "in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id.* at 378. To make its point, the court noted "'corruptly influencing' a congressional inquiry does not at all clearly encompass lying to the Congress, which is, by way of contrast, clearly a violation of § 1001, the False Statements statute.'" *Id.* Second, as the court pointed out, the term "corruptly" "must have some meaning . . . because otherwise the statute would criminalize all attempts to 'influence' congressional inquiries — an absurd result that the Congress could not have intended in enacting the statute." *Id.* at 377–78. Third, the court found that "corruptly" would only not be unconstitutionally vague if one corruptly influenced another person to violate their legal duty. *Id.* at 379 ("Narrowing the transitive interpretation to include only 'corrupting' another person by influencing him to violate his legal duty would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'"). In so finding, however, the court pointed out that either a transitive or an intransitive interpretation of "corruptly" would still be unconstitutionally vague if more specific content is not given to that word. *Id.* ("corrupt" may be used transitively ("A corrupts B," i.e., "A causes B to act corruptly") or intransitively ("A corrupts," i.e., "A becomes corrupt, depraved, impure, etc.")).

Turning to the allegations against Mr. Miller, it appears all these problems exist

in this case as well. Mr. Miller is accused in Count Three of corruptly obstructing, influencing, and impeding an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct.

Regarding the first problem from *Poindexter*, "in the absence of some narrowing gloss," Mr. Miller "must 'guess at its meaning and differ as to its application.'" *Id.* at 378. Just as the court in *Poindexter* exemplified this point by noting "'corruptly influencing' a congressional inquiry does not at all clearly encompass lying to the Congress, which is, by way of contrast, clearly a violation of § 1001, the False Statements statute,'" the same point can be made here. *Id.* That is, *corruptly* obstructing, influencing, and impeding a proceeding before Congress does not at all clearly encompass entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct. By way of contrast, however, clearly such conduct violates other statutes, namely, 18 U.S.C. § 1752 and 40 U.S.C. § 5104. It is entirely unclear whether an "act of civil disorder" and "disorderly and disruptive conduct" is inherently "depraved," "evil," "immoral," "wicked," or "improper." *See Poindexter*, 951 F.2d at 379. In short, nothing in the allegation in Count Three provides a "narrowing gloss"

making it clear that Mr. Miller's alleged conduct was "corrupt."

This leads to the second problem from *Poindexter*. Allowing the government to proceed on Count Three would, similar to what the court pointed out in *Poindexter*, criminalizes all attempts to "influence" congressional proceedings — "an absurd result that the Congress could not have intended in enacting the statute." *Id.* at 377–78. Nevertheless, the allegation in Count Ten does exactly what the court was concerned about in *Poindexter*; it criminalizes any attempts to obstruct any congressional proceeding without any limiting principle.

The third issue from *Poindexter* also presents a problem here. The only non-vague interpretation of "corruptly," according to *Poindexter*, is when, as applied, the person's action "corruptly influenced another person to violate their legal duty." *Id.* at 379. No such allegation exists in this case. The allegation is simply that Mr. Miller corruptly obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder and engaging in disorderly and disruptive conduct. There is no allegation that Mr. Miller either (a) influenced others to engage in obstructive behavior or (b) did so in violation of some legal duty. More important, there is no context given to what specific conduct they engaged in that made their conduct "corrupt."

13

While the government might maintain that these problems were alleviated by amending the definition of "corruptly" in Section 1515, there are two problems with using that definition. First, as mentioned *supra*, that definition is only applicable to Section 1505. 18 U.S.C. § 1515(b). Congress never amended Section 1515 to define "corruptly" as used in Section 1512 even though it explicitly made other definitions ("official proceeding," for instance) applicable to that section.[4] Second, and more important, a reading of the definition of "corruptly" in Section 1515 demonstrates that the definition applies to some act that interferes with evidence. *See* 18 U.S.C. § 1515(b) ("corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information); *Yates*, 574 U.S. at 544 (applying *noscitur a sociis* to interpret Section 1519 as applying to records and documents). Because there is no allegation that Mr. Miller affected the availability and integrity of evidence, Section 1515's definition serves no purpose here.

### B. "Corruptly" as "Obstructing Justice"

As an alternative to finding that Section 1512(c)(2)'s prohibition against

---

[4] *See* 18 U.S.C. § 1515(a); *Bates v. United States*, 522 U.S. 23, 29–30, 118 S. Ct. 285, 139 L.Ed.2d 215 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)) ("'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'").

"corrupt" obstructing, influencing, or impeding of a proceeding based on the disruptive behavior alleged here is unconstitutionally vague, this court could consider an alternative definition of "corruptly."

During the hearing in *Montgomery*, the government referenced the Seventh Circuit pattern jury instruction for "corruptly," stating, "So we think that the jury instruction that the Seventh Circuit uses to interpret 'corruptly' is helpful." *See* Attachment A at 41. It is indeed helpful — for the January 6 defendants charged under this statute. The pattern instruction defining "corruptly" as that term is used in Section 1512(c)(2) states that, "A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the *due administration of Justice*." Criminal Jury Instructions of the Seventh Circuit (2020 Ed.) at 629 (emphasis added). This is consistent with the Ninth Circuit which defines "corruptly" as one acting "with the purpose of *obstructing justice*." *See United States v. Bonds*, 784 F.3d 582, 583 (9th Cir. 2015) (citing *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir. 1981)). This, of course, brings one back to the arguments raised *supra* that, in order to prove a violation of Section 1512(c)(2), there must be something to show the corrupt obstruction of a proceeding related to the administration of justice.

Such an interpretation of the statute is a fair, non-vague interpretation because typically when someone is obstructing justice by interfering with the flow of evidence

to law enforcement, there is something inherently wrong about that conduct. *See, e.g. United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017) ("the wrongdoing alleged here [namely, pressuring a witness to lie to investigators], falls comfortably within the ambit of the statute"); *United States v. Jones*, 207 F. Supp. 3d 576, 584 (E.D.N.C. 2016) (attempting to cause a federal magistrate judge to compel a phone company to produce text messages to a law enforcement officer for which no law enforcement basis exists is understood to be proscribed by the statute).

Of course, as discussed *supra*, there is no allegation that Mr. Miller's conduct interfered with the flow of evidence or otherwise impeded a proceeding related to the administration of justice on January 6. Thus, if this court were to adopt the Seventh Circuit's definition of "corruptly" as that term is applied in Section 1512(c)(2), the allegation in Count Three of the indictment would still be insufficient and its dismissal would still be required.

Respectfully submitted,


/s/ F. Clinton Broden
F. Clinton Broden

Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

## **CERTIFICATE OF SERVICE**

I, F. Clinton Broden, certify that, on November 15, 2021 I caused a copy of the above document to be served by electronic means on:

Elizabeth C. Kelley
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20350

/s/ F. Clinton Broden
F. Clinton Broden