**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-46 (RDM)** |
| **v.** | : | |
| | : | |
| **PATRICK MONTGOMERY and** | : | |
| **BRADY KNOWLTON,** | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT SUPPLEMENTAL BRIEF**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

RELEVANT BACKGROUND ........................................................................ 1

ARGUMENT ................................................................................................ 3

SECTION 1512(C)(2) APPLIES TO THE CONDUCT ALLEGED IN THE SUPERSEDING INDICTMENT .................................................................... 3

    I.     The certification of the Electoral College vote is an official proceeding. ........... 3

    II.    Section 1512(c)(2)'s text, structure, and history confirm that its prohibition on obstructive conduct covers the defendants' actions on January 6, 2021. ........................................................................................ 6

    III.   Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach. ...................................................................................................... 17

    IV.   Section 1512(c)(2) is not unconstitutionally vague or overbroad..................... 22

    V.    The Supreme Court's decision in *Yates v. United States* does not counsel a different interpretation. .................................................................. 30

    VI.   Even if Section 1512(c)(2) required that the obstructive act relate to documentary or tangible evidence, the defendants' alleged conduct would be covered. ........................................................................................ 40

CONCLUSION ........................................................................................... 43

# TABLE OF AUTHORITIES

## Cases

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008) ........................................................................................... 36

*American Communications Ass'n, CIO v. Douds*,
   339 U.S. 382 (1950) ........................................................................................... 24

*Apprendi v. New Jersey*,
   530 U.S. 466 (2000) ........................................................................................... 20

*Arthur Andersen LLP v. United States*,
   544 U.S. 696 (2005) ............................................................................. 19, 21, 25

*Barber v. Thomas*,
   560 U.S. 474 (2010) ........................................................................................... 38

*Beecham v. United States*,
   511 U.S. 368 (1994) ........................................................................................... 37

*Begay v. United States*,
   553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*,
   576 U.S. 591 (2015) ............................................................................. 32, 33, 36, 37

*Bostock v. Clayton Cnty., Georgia*,
   140 S. Ct. 1731 (2020) ....................................................................................... 39

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*,
   331 U.S. 519 (1947) ..................................................................................... 17, 34

*Chamber of Commerce of U.S. v. Whiting*,
   563 U.S. 582 (2011) ........................................................................................... 13

*Coates v. Cincinnati*,
   402 U.S. 611 (1971) ........................................................................................... 23

*Collazos v. United States*,
   368 F.3d 190 (2d Cir. 2004) ................................................................................. 8

*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) ........................................................................................... 11

*Dean v. United States*,
   556 U.S. 568 (2009) ........................................................................................... 13

*Gooch v. United States*,
   297 U.S. 124 (1936) ............................................................................................. 8

*Hubbard v. United States*,
514 U.S. 695 (1995)..........................................................................................9, 27

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)................................................................................................13

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
140 S. Ct. 768 (2020).............................................................................................40

*Johnson v. United States*,
576 U.S. 591 (2015)...................................................................................22, 23, 24

*Kolender v. Lawson*,
461 U.S. 352 (1983)................................................................................................23

*Lawson v. FMR LLC*,
571 U.S. 429 (2014)..................................................................................................6

*Los Angeles Police Dep't v. United Reporting Publ'g Corp.*,
528 U.S. 32 (1999) ...........................................................................................28, 30

*Loughrin v. United States*,
573 U.S. 351 (2014)...................................................................................13, 27, 36

*Marinello v. United States*,
138 S. Ct. 1101 (2018)........................................................................................7, 22

*Marks v. United States*,
430 U.S. 188 (1977)................................................................................................33

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013)................................................................................................10

*Members of the City Council v. Taxpayers for Vincent*,
466 U.S. 789 (1984)................................................................................................29

*Nash v. United States*,
229 U.S. 373 (1913)................................................................................................23

National Ass'n of Mfrs. *v.* Department of Defense,
138 S. Ct. 617 (2018)................................................................................................6

*New York v. Ferber*,
458 U.S. 747 (1982)................................................................................................28

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998)..................................................................................................39

*Parker v. Levy,*
    417 U.S. 733 (1974) ............................................................................................ 26

*Pasquantino v. United States,*
    544 U.S. 349 (2005) ............................................................................................ 12

*Republic of Iraq v. Beaty,*
    556 U.S. 848 (2009) ............................................................................................ 11

*Rose v. Locke,*
    423 U.S. 48 (1975) .............................................................................................. 23

*Roth v. United States,*
    354 U.S. 476 (1957) ............................................................................................ 23

*Russell Motor Car Co. v. United States,*
    261 U.S. 514 (1923) ........................................................................................ 4, 37

*Russello v. United States,*
    464 U.S. 16 (1983) ................................................................................................ 5

*S. D. Warren Co. v. Maine Bd. of Env't Prot.,*
    547 U.S. 370 (2006) ............................................................................................ 37

Shular *v.* United States,
    140 S. Ct. 779 (2020) .......................................................................................... 38

*Skilling v. United States,*
    561 U.S. 358 (2010) ............................................................................................ 23

*Smith v. Goguen,*
    415 U.S. 566 (1974) ............................................................................................ 23

*Texaco, Inc. v. Short,*
    454 U.S. 516 (1982) ............................................................................................ 22

*United States v. Aguilar,*
    515 U.S. 593 (1995) .................................................................................... passim

*United States v. Ahrensfield,*
    698 F.3d 1310 (10th Cir. 2012) ............................................................................ 9

*United States v. Batchelder,*
    442 U.S. 114 (1979) ............................................................................................ 27

*United States v. Brenson,*
    104 F.3d 1267 (11th Cir. 1997) .......................................................................... 25

*United States v. Bronstein*,
    849 F.3d 1101 (D.C. Cir. 2017) ...................................................... 22, 23

*United States v. Brown*,
    688 F.2d 596 (9th Cir. 1982) ................................................................ 12

*United States v. Burge*,
    711 F.3d 803 (7th Cir. 2013) ....................................................... 7, 9, 16

*United States v. Carson*,
    560 F.3d 566 (6th Cir. 2009) .................................................................. 9

*United States v. Cervantes*,
    No. 16-10508, 2021 WL 2666684 (9th Cir. June 29, 2021) ............... 9, 40

*United States v. De Bruhl-Daniels*,
    491 F. Supp. 3d 237 (S.D. Tex. 2020) .............................. 13, 37, 38, 40

*United States v. Edwards*,
    869 F.3d 490 (7th Cir. 2017) .......................................................... 25, 26

*United States v. Erickson*,
    561 F.3d 1150 (10th Cir. 2009) ............................................................ 20

*United States v. Espy*,
    145 F.3d 1369 (D.C. Cir. 1998) ........................................................... 36

*United States v. Frank*,
    354 F.3d 910 (8th Cir. 2004) ............................................................... 12

*United States v. Friske*,
    640 F.3d 1288 (11th Cir. 2011) ................................................. 18, 19, 21

*United States v. Gordon*,
    710 F.3d 1124 (10th Cir. 2013) ...................................................... 18, 19

*United States v. Howard*,
    569 F.2d 1331 (5th Cir. 1978) ........................................................ 8, 12

*United States v. Hutcherson*,
    No. 05-CR-39, 2006 WL 270019 (W.D. Va. Feb. 3, 2006) ............. 10, 40

*United States v. Jeter*,
    775 F.2d 670 (6th Cir. 1985) ............................................................... 17

*United States v. Kelly*,
    147 F.3d 172 (2d Cir. 1998) ................................................................ 25

*United States v. Kernell,*
   667 F.3d 746 (6th Cir. 2012) .......................................................................... 39

*United States v. Lanier,*
   520 U.S. 259 (1997)....................................................................................... 23

*United States v. Lefkowitz,*
   125 F.3d 608 (8th Cir. 1997) .......................................................................... 12

*United States v. Leisure,*
   844 F.2d 1347 (8th Cir. 1988) ........................................................................ 12

*United States v. Lester,*
   749 F.2d 1288 (9th Cir. 1984) ........................................................................ 12

*United States v. Martinez,*
   862 F.3d 223 (2d Cir. 2017), *vacated on other grounds,* 139 S. Ct. 2772 (2019).................. 9

*United States v. Matthews,*
   505 F.3d 698 (7th Cir. 2007) .......................................................................... 18

*United States v. McGainey,*
   37 F.3d 682 (D.C. Cir. 1994)........................................................................... 20

*United States v. Mintmire,*
   507 F.3d 1273 (11th Cir. 2007) ...................................................................... 18

*United States v. Morrison,*
   98 F.3d 619 (D.C. Cir. 1996)........................................................................... 25

*United States v. Moyer,*
   674 F.3d 192 (3d Cir. 2012)............................................................................ 39

*United States v. Nat'l Dairy Products Corp.,*
   372 U.S. 29 (1963)......................................................................................... 24

*United States v. North,*
   910 F.2d 843 (D.C. Cir. 1990) *withdrawn and superseded in part by*
   *United States v. North,* 920 F.2d 940 (D.C. Cir. 1990) .............................. 17, 18, 19

*United States v. Petruk,*
   781 F.3d 438 (8th Cir. 2015) .................................................................... passim

*United States v. Phillips,*
   583 F.3d 1261 (10th Cir. 2009) ........................................................................ 9

*United States v. Poindexter,*
   951 F.2d 369 (D.C. Cir. 1991) ................................................................. passim

*United States v. Ring*,
   628 F. Supp. 2d 195 (D.D.C. 2009) ........................................................ 7, 21, 37

*United States v. Rodgers*,
   466 U.S. 475 (1984) ...................................................................................... 40

*United States v. Sampson*,
   898 F.3d 287 (2d Cir. 2018) .......................................................................... 12

*United States v. Scott*,
   979 F.3d 986 (2d Cir. 2020) .......................................................................... 39

*United States v. Shotts*,
   145 F.3d 1289 (11th Cir. 1998) ..................................................................... 25

*United States v. Singleton*,
   No. 06-CR-80, 2006 WL 1984467 (S.D. Tex. July 14, 2006) ................. 10, 40, 42

*United States v. Sussman*,
   709 F.3d 155 (3d Cir. 2013) .......................................................................... 11

*United States v. Volpendesto*,
   746 F.3d 273 (7th Cir. 2014) ........................................................................ 8, 9

*United States v. Watt*,
   911 F. Supp. 538 (D.D.C. 1995) ................................................................... 11

*United States v. Watters*,
   717 F.3d 733 (9th Cir. 2013) ......................................................................... 18

*United States v. Williams*,
   553 U.S. 285 (2008) ................................................................................ passim

*United States v. Yielding*,
   657 F.3d 688 (8th Cir. 2011) ......................................................................... 39

*United States v. Young*,
   916 F.3d 368 (4th Cir.), *cert. denied*, 140 S. Ct. 113 (2019) ................... 4, 20, 21

*Virginia v. Hicks*,
   539 U.S. 113 (2003) .................................................................................. 28, 29

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) .................................................................................. 28, 29

*Yates v. United States*,
   574 U.S. 528 (2015) ................................................................................ passim

## Statutes and Constitutional Provisions

U.S. Const. amend. V ................................................................................................ 22

U.S. Const. amend. XII ........................................................................................ 4, 41

U.S. Const. amend. XIV ........................................................................................... 22

U.S. Const. art. 1, § 5 ........................................................................................... 5, 42

3 U.S.C. § 15 ................................................................................................... 4, 5, 41

3 U.S.C. § 16 ........................................................................................................ 4, 5

18 U.S.C. § 2 ........................................................................................................... 2

18 U.S.C. § 401 ...................................................................................................... 20

18 U.S.C. § 924 ................................................................................................ 32, 37

18 U.S.C. § 1341 .................................................................................................... 36

18 U.S.C. § 1344 .................................................................................................... 36

18 U.S.C. § 1503 ..................................................................... 8, 11, 13, 25

18 U.S.C. § 1505 ................................................................... 5, 13, 17, 25

18 U.S.C. § 1512 ............................................................................................. passim

18 U.S.C. § 1515 ............................................................................................. passim

18 U.S.C. § 1519 ............................................................................................. passim

26 U.S.C. § 7212 .................................................................................................... 25

28 U.S.C. § 2466 ...................................................................................................... 8

40 U.S.C. § 5104 .................................................................................................... 27

False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459 ................... 24

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 ...................................... passim

Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248 ........................ 14

**Other Authorities**

148 Cong. Rec. H4683-84 (daily ed. July 16, 2002) .................................................................. 14

148 Cong. Rec. S6550 (daily ed. July 10, 2002) ................................................................ 15, 16

Antonin Scalia & Bryan A. Garner, *Reading Law:  The Interpretation of Legal Texts*
(2012) ............................................................................................................................................... 4

Oxford English Dictionary ............................................................................................................. 7

S. 1722, 96th Cong. (1979) ............................................................................................................. 5

S. Rep. No. 107-146 (2002) .............................................................................................. 14, 15, 39

Seventh Circuit Pattern Criminal Jury Instructions ..................................................................... 18

Staff of Senate Committees on Homeland Security and Governmental Affairs and
Committee on Rules and Administration Report, *Examining the Capitol Attack: A
Review of the Security, Planning, and Response Failures on January 6* (June 7, 2021) ....... 28

United States House of Representatives Curator Farar Elliott, Statement before the House
Appropriations Subcommittee on the Legislative Branch (Feb. 24, 2021) ........................... 28

Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653
(2002) ............................................................................................................................................... 4

William Barr, *Mueller's "Obstruction" Theory* (June 8, 2018) ................................................. 10

# INTRODUCTION

On August 3, 2021, this Court ordered supplemental briefing on whether 18 U.S.C. § 1512(c)(2) applies to the defendants' obstruction of Congress's certification of the Electoral College vote on January 6, 2021.  The answer is yes.  Nothing in Section 1512(c)(2)'s text, structure, or history, or in the relevant precedent, limits that provision to obstruction tied to documentary or tangible evidence.  In any event, even if such a limitation existed, the defendants' alleged conduct falls within the scope of the statute.

# RELEVANT BACKGROUND

1.  Congress enacted a prohibition on "Tampering with a record or otherwise impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it within the pre-existing Section 1512 as subsection (c).  That prohibition applies to

> (c) [w]hoever corruptly--
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) *otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.*

18 U.S.C. § 1512(c) (emphasis added).

2.  At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building.  The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 U.S. Presidential Election.  The defendants, Patrick Montgomery and Brady Knowlton, joined a mass of others congregated outside the Capitol building.  Montgomery assaulted a police officer, kicking him in the chest and trying to rip away the officer's baton.  While outside the

building, Knowlton turned to law enforcement officers, asking them, "Are you our brothers?"  The defendants, one of them clad in a tactical vest, then penetrated the Capitol building and proceeded all the way to the Senate Chamber, where they stood in the Senate Gallery.  Shortly after leaving the Gallery, the defendants encountered additional law enforcement officers; Knowlton told the officers, "This is not about us.  This is bigger than me, it's bigger than you.  It's about everyone's right to self-government. . . .  This is happening.  Our vote doesn't matter, so we came here for change."   Montgomery told the officers, "You gotta quit doing your job and be an American."

As a result of the actions of these defendants and hundreds of others, Congress was forced to halt its proceedings and evacuate the House and Senate Chambers.  After the building was secured later that day, Congress reconvened and completed counting, certifying, and declaring the Electoral College vote result.

3.  On April 16, 2021, the grand jury returned an Indictment, charging the defendants with ten counts, including Count Ten, obstruction of an official proceeding and aiding and abetting that obstruction, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.  ECF 23.  The defendants moved to dismiss Count 10, ECF 39-1, 40, the government responded, ECF 41, and the defendants filed a reply, ECF 48.  On August 3, 2021, the Court heard argument on the defendants' dismissal motion.  At that hearing, the Court directed the parties to file supplemental briefs addressing whether the charged obstruction statute, 18 U.S.C. § 1512(c)(2), applies to the conduct alleged in the Superseding Indictment.  On September 17, 2021, the defendants filed a supplemental brief.  ECF 59, 60.

# ARGUMENT

## SECTION 1512(C)(2) APPLIES TO THE CONDUCT ALLEGED IN THE SUPERSEDING INDICTMENT

Section 1512(c)(2) provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding" has committed a crime.  A person violates that statute when, acting with the requisite *mens rea*, he engages in conduct that obstructs a specific congressional proceeding. *See* 18 U.S.C. § 1512(c)(2); § 1515(a)(1)(B).  Section 1512(c)(2) is not unconstitutionally vague or overbroad, and nothing in its text, structure, or history limits it to obstruction tied to documentary or tangible evidence.  Nor does the Supreme Court's decision in *Yates v. United States*, 574 U.S. 528 (2015)—which construed a different term in a different statute—support imposing such an atextual limitation in Section 1512(c)(2).  But even if such a limitation existed, the statute encompasses the defendants' alleged conduct.

## I.      The certification of the Electoral College vote is an official proceeding.

The defendants reiterate (Supp. Br. 3-18 (ECF 60)) their contention that the certification of the Electoral College vote is not an "official proceeding" for purposes of Section 1512(c)(2). *See* Def. Mot. to Dismiss, ECF 39-1, at 6-12.  As explained in the government's prior response, that contention is incorrect.  *See* Gov't Opp. to Def. Mot. to Dismiss, ECF 41, at 8-15.  Section 1515(a)(1)(B) defines an "official proceeding" as a "proceeding before the Congress," which encompasses the certification proceeding undertaken by the Joint Session on January 6, 2021.  *See id.* at 9-12.  None of the defendants' new arguments undermines that straightforward analysis.

First, the defendants suggest (Supp. Br. 4-7) that contextual features and interpretative canons support their reading that the certification of the Electoral College vote is not an official proceeding.  That approach overlooks the provision's plain language, *see* ECF 41, at 9-13, and fails on its own terms.  For example, the defendants argue (Supp. Br. 5-6) the preposition "before"

3

read in conjunction with the *noscitur a sociis* canon limits the definitions in Section 1515(a)(1) to proceedings that "qualify as 'tribunals.'"  Supp. Br. 6.  To the extent that "before" refers to "some formal convocation of the agency in which parties are directed to appear," *see United States v. Young*, 916 F.3d 368, 384 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 113 (2019), the certification of the Electoral College vote involves a "formal convocation" of Congress to assess the Electoral College vote and "declare[]" the "result" of the presidential election, 3 U.S.C. § 16.  And while the *noscitur a sociis* canon can provide clarity to a provision of "obscure or doubtful meaning," *Russell Motor Car Co. v. United States,* 261 U.S. 514, 520 (1923), it has no role to play where, as here, the term in question—"a proceeding before the Congress," § 1515(a)(1)(B)—is clear, *see* ECF 41, at 9-11; *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012).

Second, the defendants delve (Supp. Br. 7-10) into history to discern whether the certification of the Electoral College vote qualifies as an "adjudicatory" proceeding.  As an initial matter, the "adjudicatory" gloss the defendants purport to give to the "official proceeding" definition in Section 1515(a)(1) finds no support in the statute itself.  *See* ECF 41, at 12-15.  But even if such a gloss applied, the certification of the Electoral College vote as set out in the Electoral Count Act of 1887 would qualify.  Far from a "ministerial act" (Supp. Br. 7), the certification of the Electoral College vote involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15.  That Joint Session renders judgment on whether to certify the votes cast by Electors in the presidential election.  Under the Constitution, the Electors create "lists" of the presidential and vice-presidential candidates, which they "sign" and "certify" before sending to Congress.  U.S. Const. amend. XII.  Congress then decides whether to count those certified lists, or certificates in

conformity with the Electoral Count Act.  3 U.S.C. § 15; *see* Vasan Kesavan, *Is the Electoral Count Act Unconstitutional?*, 80 N.C. L. Rev. 1653, 1659 (2002) (Under the Electoral Count Act, "the President-elect is not elected by 'We the People' on election day, or even by the electors on the day they cast their votes, but by the joint convention of the Senate and House of Representatives on the day the electoral votes are formally counted").  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  3 U.S.C. § 15.  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.[1]  Nothing in the history the defendants describe suggests a different conclusion.

The defendants' "examples" (Supp. Br. 10-18) of proceedings "held pursuant to Congress' power of inquiry and to investigate" (*id.* at 11) offer no insight for how to interpret the term "official proceeding" in Section 1512.  To be sure, the proceedings the defendants identify—the Watergate investigation, the Iran-Contra investigation, the Major League Baseball investigation, the Russian election interference investigation, and the post-collapse inquiry and investigation of Enron, *id.* at 11-12—would each appear to qualify as a "proceeding before the Congress."  *See* 18 U.S.C. § 1515(a)(1)(B).  It does not follow, however, that *only* proceedings in which Congress is "exercising its power of inquiry" (Supp. Br. 14) satisfy the "official proceeding" definition.  Had Congress sought to limit the "official proceeding" definition in that way, it could have—but did not—import precisely that language from 18 U.S.C. § 1505, which applies to "due and proper exercise of the power of inquiry under which *any inquiry or investigation* is being had" (emphasis

---

[1] The defendants' discussion (Supp. Br. 9-10) of the House Judging Clause, U.S. Const. art. 1, § 5, sheds no light on the certification of the Electoral College vote under the ECA and the Twelfth Amendment.

added) by Congress.[2]  *See Russello v. United States,* 464 U.S. 16, 23 (1983) (refraining from concluding that "differing language in the two subsections has the same meaning in each").  The broader language Congress used in Section 1515(a)(1)(B) thus covers a broader range of proceedings than "inquir[ies] or investigation[s]" covered in Section 1505—including the Joint Session that meets to certify the Electoral College vote.

## II.    Section 1512(c)(2)'s text, structure, and history confirm that its prohibition on obstructive conduct covers the defendants' actions on January 6, 2021.

In Section 1512(c)(2), Congress comprehensively prohibited conduct that intentionally and wrongfully obstructs official proceedings.  The ordinary meaning of "obstruct[], influence[], or impede[]" encompasses a wide range of conduct designed to frustrate an official proceeding.  That conduct can include lying to a grand jury or in civil proceedings, exposing the identity of an undercover agent, and burning a building to conceal the bodies of murder victims.  It also includes storming into the Capitol to derail a congressional proceeding.  A defendant who, acting with the necessary *mens rea*, obstructs (or attempts to obstruct) Congress's certification of the Electoral College vote, commits a crime under Section 1512(c)(2).

1.  Section 1512(c)(2)'s text and structure demonstrate that it serves as a comprehensive prohibition on corrupt conduct that intentionally obstructs or impedes an official proceeding.  When interpreting a statute, courts look first to the statutory language, "giving the words used their ordinary meaning."  *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014) (internal quotation marks omitted).  If the statutory language is plain and unambiguous, this Court's "inquiry begins with

---

[2] The defendants' reliance on legislative history (*see* Supp. Br. 13-17) suffers a similar flaw. Congress considered, but ultimately did not enact a narrower prohibition on obstructing the "exercise of a legislative power of inquiry," *see* S. 1722, 96th Cong. § 1323(a)(2)(C) (1979), opting instead for the broader provision covering obstruction of any "proceeding before the Congress" currently found in Section 1515(a)(1)(B).  *See United States v. Poindexter*, 951 F.2d 369, 382 (D.C. Cir. 1991) (discussing the unenacted Senate version of Section 1512).

the statutory text, and ends there as well." *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted). Here, the meaning of "obstruct[], influence[], or impede[]" is controlled by the ordinary meaning of those words.

The verbs Congress selected in Section 1512(c)(2) reach broadly. For example, the words "obstruct" and "impede" can "refer to anything that 'blocks,' 'makes difficult,' or 'hinders.'" *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (brackets omitted) (citing dictionaries). Similarly, "influence" includes "affect[ing] the condition of" or "hav[ing] an effect on." *Influence*, Oxford English Dictionary, *available at* http://www.oed.com. By their plain meaning, therefore, the string of verbs in Section 1512(c)(2) are properly viewed as "expansive" in their coverage. *See United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013).

Section 1512(c)'s structure confirms that straightforward interpretation. Section 1512(c) consists of two provisions, which both require the defendant to act "corruptly." First, Section 1512(c)(1) criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . with the intent to impair the object's integrity or availability for use in an official proceeding." Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise obstruct[], influence[], or impede[]" an official proceeding. The term "otherwise," consistent with its ordinary meaning, conveys that Section 1512(c)(2) encompasses misconduct that threatens an official proceeding "beyond [the] simple document destruction" that Section 1512(c)(1) proscribes. *Burge*, 711 F.3d at 809; *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another manner" or "differently," implies that the obstruction prohibition in that statute applies "without regard to whether the action relates to documents or records") (internal quotation marks omitted); *see also United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17 (D.D.C. 2009) (noting that Section 1512(c)(2)

is "plainly separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section 1512(c)(2) "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering"); *Otherwise*, Oxford English Dictionary, *available at* http://www.oed.com (defining otherwise as "in another way" or "in any other way"); *see also Gooch v. United States*, 297 U.S. 124, 127-28 (1936) (characterizing "otherwise" as a "broad term" and holding that a statutory prohibition on kidnapping "for ransom or reward or otherwise" is not limited by the words "ransom" and "reward" to kidnappings for pecuniary benefit); *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466(1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different *means, i.e.*, by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2), in other words, "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar "[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Consistent with that interpretation, courts have upheld convictions under Section 1512(c)(2) for defendants who attempted to secure a false alibi witness while in jail for having stolen a vehicle, *Petruk*, 781 F.3d at 440, 447; disclosed the identity of an undercover federal agent to thwart a grand jury investigation, *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009); lied in written responses to civil interrogatory questions about past misconduct while a police officer, *Burge*, 711 F.3d at 808-09; testified falsely before a grand jury, *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009); solicited information about a grand jury investigation from corrupt "local police officers," *Volpendesto*, 746 F.3d at 286; and burned an apartment to conceal the bodies of two murder victims, *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (unpublished); *see also United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects before issuance or execution of search warrants), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target).

Section 1512(c)(2) also applies to the defendants' alleged conduct, which involved trespassing into the restricted Capitol area, confronting and assaulting law enforcement officers, and penetrating into the Gallery of the Senate Chamber to prevent a Joint Session of Congress from certifying the results of the 2020 Presidential election.  In so doing, the defendants hindered and delayed the certification of the Electoral College vote, an "official proceeding" as that term is defined in the obstruction statute.  *See* 18 U.S.C. § 1515(a)(1)(B).  Because construing Section 1512(c)(2) to reach that conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it."  *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted).

9

In contrast, reading Section 1512(c)(2) as limited only to obstructive acts akin to the document destruction or evidence tampering captured in Section 1512(c)(1) suffers at least three flaws. *First*, it would give rise to unnecessarily complex questions about what sort of conduct qualifies as "similar to but different from" the proscribed conduct "described in [Section 1512](c)(1)." *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (unpublished); *see id.* (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (unpublished) (concluding that a violation of Section 1512(c)(2) requires proof that "an individual corruptly obstructs an official proceedings [*sic*] through his conduct in relation to a tangible object").[3]   So construed, for example, Section 1512(c)(2) may not encompass false statements made to obstruct a proceeding—though courts have widely upheld convictions for such conduct. *See Petruk*, 781 F.3d at 447 (collecting cases).

*Second*, limiting Section 1512(c)(2) in that way would effectively render that provision superfluous in light of the comprehensive prohibitions against document and evidence destruction in both Sections 1512(c)(1) and 1519. *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (Section 1512(c)(1) provides a "broad ban on evidence-spoliation") (internal quotation marks omitted). By contrast, the straightforward interpretation that treats Section 1512(c)(2) as a catch-all for corrupt obstructive conduct not covered by Section 1512(c)(1) would "give effect to every clause and

---

[3] Similarly complex questions would dog the defendants' proposed limitation of Section 1512(c)(2) to "some conduct that impairs the integrity and availability of *some evidence*" Supp. Br. 21 (emphasis in original), and William Barr's proposed limitation to "'any conduct . . . directed at undermining a proceeding's truth-finding function through actions impairing the integrity and availability of evidence,'" *id.* at 20 (quoting William Barr, *Mueller's "Obstruction" Theory*, June 8, 2018) (emphasis omitted). Even if either such limitation applied, however, the alleged conduct in this case would satisfy it. *See infra*, Part VI.

word" of Section 1512(c).  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013); *cf. United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (explaining that limiting the catch-all provision in Section 1503's omnibus clause to obstructive acts "directed against individuals" would render that catch-all superfluous because "earlier, specific[] prohibitions" in Section 1503 "pretty well exhaust such possibilities") (internal quotation marks omitted); *United States v. Watt*, 911 F. Supp. 538, 546 (D.D.C. 1995) (rejecting interpretation of the Section 1503 omnibus clause that would "serve no other purpose than to prohibit acts already prohibited in the first part of the statute" because that reading would "reduce[] the omnibus clause to mere redundancy").

Nor does the fact that Congress adopted a more general catch-all in Section 1512(c)(2) render superfluous other obstruction prohibitions found in Chapter 73, the criminal code's chapter on obstruction of justice.  Instead, the catch-all in Section 1512(c)(2) serves to capture "known unknowns."  *See Yates*, 574 U.S. at 551 (Alito, J., concurring) (quoting *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009)).  Indeed, "the whole value of a generally phrased residual clause . . . is that it serves as a catchall" to ensure that the full range of conduct Congress sought to regulate comes within the statute, including "matters not specifically contemplated" by more specific provisions.  *Beaty*, 556 U.S. at 860.  In any event, "[r]edundancies across statutes are not unusual events in drafting," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992), and the "rule[] of thumb" that statutes should be interpreted to avoid superfluity necessarily yields to the "cardinal canon" that Congress "says in a statute what it means and means in a statute what it says there," *id.* at 253-54.

Judicial treatment of the nearby omnibus clause in Section 1503, which prohibits "corruptly . . . influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to influence, obstruct, or impede, the due administration of justice," 18 U.S.C. § 1503, is instructive.  Drafted in "very broad

11

language," the omnibus clause or "catchall provision," *see Aguilar*, 515 U.S. at 599, principally operates to criminalize obstructive conduct that falls outside the narrower prohibitions within Section 1503 and neighboring provisions.  *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168-70 (3d Cir. 2013) (removing gold coins from safe-deposit box); *United States v. Frank*, 354 F.3d 910, 916-19 (8th Cir. 2004) (removing car to avoid seizure); *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (instructing employee to remove documents from a house); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding a witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of heroin); *Howard*, 569 F.2d at 1333-34 (attempting to sell grand jury transcripts).  No court, however, has held that the omnibus clause's broad language should be given an artificially narrow scope to avoid any overlap with Section 1503's other, more specific provisions.  *Cf. Pasquantino v. United States*, 544 U.S. 349, 358 n.4 (2005) ("The mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either.").  The same is true for the catch-all provision in Section 1512(c)(2).

Similarly, Section 1512(c)(2)'s partial overlap with other obstruction statutes does not render those other provisions superfluous.  For example, the omnibus clause in 1503 and the congressional obstruction provision in 1505 both reach an "*endeavor*[] to influence, obstruct, or impede" the proceedings—a broader test for inchoate violations than Section 1512(c)(2)'s "attempt" standard.  *See United States v. Sampson*, 898 F.3d 287, 301 (2d Cir. 2018) ("[E]fforts to witness tamper that rise to the level of an 'endeavor' yet fall short of an 'attempt' cannot be prosecuted under § 1512."); *United States v. Leisure*, 844 F.2d 1347, 1366-67 (8th Cir. 1988) (collecting cases recognizing the difference between "endeavor" and "attempt" standards).  Section 1519, which covers destruction of documents and records in contemplation of an

investigation or agency proceeding, does not require a "nexus" between the obstructive act and the investigation of proceeding—but Section 1512(c)(2) does. *See infra* at 18-22 (describing "nexus" requirement in Section 1512(c)(2); 38-39 (citing cases holding that no such nexus requirement applies to Section 1519). The existence of even "substantial" overlap is not "uncommon" in criminal statutes. *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014). But given that Sections 1503, 1505, and 1519 each reach conduct that Section 1512(c)(2) does not, the overlap provides no reason to impose an artificially limited construction on the latter provision.

*Third*, importing into Section 1512(c)(2) a nexus-to-tangible-evidence-or-documents requirement would require inserting an extratextual gloss that would render the verbs in Section 1512(c)(2) nonsensical. *See Dean v. United States*, 556 U.S. 568, 572 (2009) (courts "ordinarily resist reading words or elements into a statute that do not appear on its face") (internal quotation marks omitted). The *actus reus* that those verbs encompass is obstructing, influencing, and impeding; a defendant cannot "obstruct" a document or "impede" a financial record. *Cf. Yates*, 574 U.S. at 551 (Alito, J., concurring) (rejecting interpretation of "tangible object" in Section 1519 that would include a fish in part because of a mismatch between that potential object and the statutory verbs: "How does one make a false entry in a fish?"); *id.* at 544 (plurality opinion) ("It would be unnatural, for example, to describe a killer's act of wiping his fingerprints from a gun as 'falsifying' the murder weapon.").

2. Because "the statutory language provides a clear answer," the construction of Section 1512(c)(2) "ends there" and resort to legislative history is unnecessary. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999); *see Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 599 (2011) ("Congress's authoritative statement is the statutory text, not the legislative history.") (internal quotation marks omitted); *see also United States v. De Bruhl-Daniels*, 491 F. Supp. 3d

237, 251-52 (S.D. Tex. 2020) (declining to consider Section 1512's legislative history in rejecting the claim that the statute was limited to document destruction).  Regardless, the legislative history of Section 1512(c)(2)—particularly when considered alongside the history of Section 1512 more generally—provides no support for a contrary conclusion.

When Congress in 1982 originally enacted Section 1512, that legislation did not include what is now Section 1512(c).  *See* Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249-50.  Its title then, as now, was "Tampering with a witness, victim, or an informant."  *Id.*; 18 U.S.C. § 1512.  As that title suggested, Section 1512 as originally enacted targeted conduct such as using intimidation, threats, or corrupt persuasion to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts as well as intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions.  *See* Pub. L. No. 97-291, § 4(a) (now codified as Section 1512(b) and Section 1512(d)).  For example, Section 1512 as enacted in 1982 included a prohibition on using intimidation, physical force, or threats, with the intent to "cause or induce any person to . . . alter, destroy, mutilate, or conceal an object with intent to impair that object's integrity or availability for use in an official proceeding."  *Id.* § 4(a) (originally § 1512(a)(2)(B); now codified at § 1512(b)(2)(B)).

Twenty years later, following the collapse of the Enron Corporation, Congress passed the Sarbanes-Oxley Act of 2002.  Pub. L. No. 107-204, 116 Stat. 745; *see Yates*, 574 U.S. at 535 (plurality opinion).  That legislation, which principally aimed to "prevent and punish corporate fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions," S. Rep. No. 107-146, at 2 (2002), included several different provisions, *id.* at 11 (describing different components of the law); *see also* 148 Cong. Rec. H4683-

84 (daily ed. July 16, 2002) (outlining new provisions).  Foremost among them were two new criminal statutes, 18 U.S.C. § 1519 and 18 U.S.C. § 1520, which were intended to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation of financial and audit records."  S. Rep. No. 107-146, at 14.  The Senate Judiciary Committee Report on the Sarbanes-Oxley Act discussed those two provisions in detail. *See id.* at 14-16.

By contrast, the Sarbanes-Oxley Act's legislative history provides limited explanation of Congress's objective in enacting Section 1512(c).  The only discussion of Section 1512 in the Senate Judiciary Committee Report, for example, noted that the pre-existing prohibition in Section 1512(b) made it a crime to induce "another person to destroy documents, but not a crime for a person to destroy the same documents personally"—a limitation that "forced" prosecutors to "proceed under the legal fiction that the defendants [in then-pending *United States v. Arthur Andersen*] are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves."  S. Rep. No. 107-146, at 6-7.  Similarly, Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who acts alone in destroying evidence."  148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch).  At a minimum, nothing in these passing references casts doubt on the plain meaning of Section 1512(c)(2), which is reflected in the interpretation described above.

Section 1512(c) also differed from the newly enacted Sections 1519 and 1520 in that Congress added the former to an existing statutory section: Section 1512.  *See Yates*, 574 U.S. at 541 (plurality opinion) (noting that, unlike Section 1519, Section 1512(c)(2) was placed among the "broad proscriptions" in the "pre-existing" Section 1512).  Moreover, although Section 1512(c) as enacted in the Sarbanes-Oxley Act recognized two distinct prohibitions, *see* Pub. L. No. 107-

204, § 1102, 116 Stat. 807 ("Tampering with a record *or* otherwise impeding an official proceeding") (emphasis added; capitalization altered), Congress did not amend Section 1512's title. That title, "Tampering with a witness, victim, or an informant," § 1512, thus encompassed the pre-existing provisions aimed at a defendant's obstructive conduct directed toward another person,[4] but did not reflect the newly enacted prohibitions in Section 1512(c) that criminalized a defendant's own obstructive act, either through destroying documents (§ 1512(c)(1)) or otherwise impeding a proceeding (§ 1512(c)(2)). *See Yates*, 574 U.S. at 541 n.4 (plurality opinion) (noting that Congress added Section 1512(c)(1), which covered evidence-spoliation, to Section 1512 "even though § 1512's preexisting title and provisions all related to witness-tampering").

Section 1512(c)'s legislative and statutory history thus offers two reasons to interpret Section 1512(c)(2) consistently with its plain text and structure. First, Section 1512(c) aimed at closing a "loophole" in Section 1512: the existing prohibitions did not adequately criminalize a defendant's *personal* obstructive conduct *not* aimed at another person. *See* 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). Read together in this light, Section 1512(c)(1) criminalizes a defendant's firsthand destruction of evidence (without having to prove that the defendant induced another person to destroy evidence) in relation to an official proceeding, and Section 1512(c)(2) criminalizes a defendant's firsthand obstructive conduct that *otherwise* impedes or influences an official proceeding (though not necessarily through another person). *See Burge*, 711 F.3d at 809-10. Second, no substantive inference is reasonably drawn from the fact

---

[4] *See* § 1512(a) (applies to killing, attempting to kill, or using physical force or the threat of physical force against a person to prevent testimony or induce a witness to withhold information); § 1512(b) (applies to using intimidation, threats, or corrupt persuasion against a person to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts); § 1512(d) (applies to intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions).

that the title of Section 1512 does not precisely match the "broad proscription" it in fact contains, given that the Sarbanes-Oxley Act unequivocally and broadly entitled the new provisions now codified in Section 1512(c), "Tampering with a record *or* otherwise impeding an official proceeding." Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered). Section 1512's title is more limited simply because Congress did not amend the pre-existing title when it added the two prohibitions in Section 1512(c) in 2002. *Cf. Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947) (describing "the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text").

III.    **Section 1512(c)(2)'s *mens rea* and nexus requirements limit the statute's reach.**

Although Section 1512(c)(2) applies to any conduct that "obstructs, influences, or impedes," a felony obstruction offense does not exist unless the defendant acts "corruptly" and targets his conduct at a specific "official proceeding." These two requirements—which require the government to prove a stringent *mens rea* and a nexus to an official proceeding—limit Section 1512(c)(2)'s reach. *Cf. United States v. Jeter*, 775 F.2d 670, 675 (6th Cir. 1985) (Section 1503 "contains a clear *mens rea* requirement that limits its scope to those who 'corruptly' or *intentionally* seek to obstruct").

1. To violate Section 1512(c)(2), the defendant must act "corruptly." To prove a defendant acted "corruptly" for purposes of Section 1512(c)(2), the government must prove the defendant acted (1) with intent to obstruct, impede, or influence; and (2) wrongfully.

Because "'corruptly'" is not defined in the statute, it is "understood . . . to have its ordinary meaning." *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990) (per curiam), *withdrawn and superseded in part by United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) (per curiam). In

*Poindexter*, the D.C. Circuit suggested, while construing 18 U.S.C. § 1505,[5] that "'corruptly'" was "vague . . . in the absence of some narrowing gloss."  951 F.2d at 378.  After surveying the obstruction statute's legislative history (including the "[o]rigins" of Sections 1503 and 1505) and case law interpreting Section 1505, the court reversed the defendant's conviction because Section 1505 failed to provide "constitutionally required notice" that the defendant's conduct—making false and misleading statements to Congress—fell within the statute's scope.  *Id.* at 380, 386.  The court disclaimed any conclusion that "'corruptly'" in Section 1505 was "unconstitutionally vague as applied to all conduct."  *Id.* at 385.  The court also declined to adopt as a standard that "'corruptly' means that in acting, the defendant aimed to obtain an 'improper advantage for [himself] or someone else inconsistent with official duty and rights of others.'"  *Id.* at 385-86 (quoting *North*, 910 F.2d at 881-82).

For purposes of Section 1512(c)(2), "corruptly" includes two components: (1) intent to obstruct, impede, or influence; and (2) wrongfulness.  *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (to act "corruptly" is to act "with an improper purpose" and "with the specific intent to subvert, impede or obstruct") (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing") (internal quotation marks omitted); *United States v. Matthews*, 505 F.3d 698, 705 (7th Cir. 2007) (upholding instruction defining "[c]orruptly" as acting "with the purpose of wrongfully impeding the due administration of

---

[5] Section 1505 applies to "[w]hoever corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress."  18 U.S.C. § 1505.

justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512(c) ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").[6] That the term "corruptly" requires the government to prove that a defendant acted not only with intent to obstruct but also with "consciousness of wrongdoing" ensures that Section 1512(c)(2) "reaches only" those who have committed felony obstruction.[7] *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005). That limitation is particularly important where, as here, the defendants are alleged to have obstructed a congressional proceeding. *See North*, 910 F.2d at 882 (noting that an "executive branch official" or a "political activist" may seek to persuade a representative to "stop[] spending her time pursuing a certain investigation" but instead pursue "some other legislative endeavor"; that conduct could be viewed as "endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly").

To prove that an attempted or actual obstruction of a congressional proceeding amounts to felony obstruction in violation of 18 U.S.C. § 1512(c)(2), the government must therefore adduce evidence establishing beyond a reasonable doubt that a defendant acted intentionally and with "consciousness of wrongdoing." *Andersen*, 544 U.S. at 706. That standard could be met where, for example, evidence showed that defendants dressed in tactical vests, assaulted a law enforcement officer by kicking the officer in his chest and grabbing his baton, joined a mob that was pushing to enter the Capitol building, penetrated the Capitol building, and, after watching the

---

[6] The defendants' suggestion (Supp. Br. 41) that the Seventh Circuit pattern instruction requires proof that a defendant "interfered with the flow of evidence or otherwise impeded a proceeding related to the administration of justice" adds a requirement not found in that instruction's text. But even if such a gloss applied, the defendants' alleged conduct would violate it. *See infra*, Part VI.

[7] Although Section 1512(c)(2)'s statutory text does not include the modifier "knowingly," the statute does require that the defendant "engage in conduct knowingly." *Gordon*, 710 F.3d at 1151; *Friske*, 640 F.3d at 1291.

assault of law enforcement officers who were standing guard there, entered and occupied the Gallery of the Senate Chamber, the very place the certification would otherwise have been occurring—all while harassing and badgering law enforcement officers as the officers sought to secure the area.[8]

2.    To violate Section 1512(c)(2), the government must also satisfy the "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an official proceeding." *Young*, 916 F.3d at 386 (internal quotation marks omitted).  "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of 'corruptly' obstructing or endeavoring to obstruct'—that is, the first element of proving a § 1512(c)(2) charge." *Id.* at 385 n.12 (quoting *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)).

The nexus requirement derives from the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995).  There, the defendant was convicted under the omnibus clause in Section 1503 for lying to an FBI agent "who might or might not testify before a grand jury." *Id.* at 600.  That uncertainty was too attenuated to give rise to criminal liability because an obstructive act must "have a relationship in time, causation, or logic" with the official proceeding. *Id.* 599-

---

[8] The "high maximum[] and no minimum[]" penalty provision that Congress enacted in Section 1512(c)(2), moreover, reflects that obstruction offenses "may run the gamut from major to minor," and empowers district court judges to "recognize differences between such cases" and to "try to make the punishment fit the crime." *Yates*, 574 U.S. at 569-70 (Kagan, J., dissenting); *see Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) (noting that "judges in this country have long exercised discretion" to impose sentences within a statutory sentencing range by "taking into consideration various factors relating both to offense and offender").  The same is true of the criminal contempt statute, 18 U.S.C. § 401, which has been applied to a wide range of conduct, *see United States v. McGainey*, 37 F.3d 682, 683 (D.C. Cir. 1994) (threatening gesture that led to "disruption" of a criminal trial constituted "'obstruction of the administration of justice'"); *id.* at 684-85 (citing other disruption case), and prescribes no maximum or minimum penalty, *see* 18 U.S.C. § 401 (permitting court the "power to punish by fine or imprisonment, or both, at its discretion").

20

600.  That was so, the Court held, because "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct."  *Id.* at 599.

The Supreme Court's decision in *Arthur Andersen* applied the nexus requirement to Section 1512(b)(2)(A) offenses, which prohibit "knowingly" and "corruptly persuad[ing]" another to destroy documents in contemplation of an official proceeding.  *See* 544 U.S. at 703.  Observing that "[i]t is . . . one thing . . . to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,'" *id.* at 707; *see* 18 U.S.C. § 1512(f), the Supreme Court found it "quite another to say a proceeding need not even be foreseen," 544 U.S. at 708.  To secure a conviction under Section 1512(b), therefore, the government must prove that the defendant has "in contemplation" a "particular official proceeding in which [the tampered-with] documents might be material."  *Id.*

The same logic applies to Section 1512(c)(2).  *See Ring*, 628 F. Supp. 2d at 223 (applying nexus requirement to Section 1512(c)(2)).[9]  Courts considering prosecutions brought under Section 1512(c)(2), moreover, have vacated convictions where the evidence failed to establish a sufficient nexus between the obstructive act and the alleged official proceeding.  *See Young*, 916 F.3d at 387-89 (defendant's general awareness that the government might be investigating him was insufficiently connected to "a *specific* and *reasonably foreseeable* official proceeding"); *Friske*, 640 F.3d at 1292-93 (government failed to prove that the defendant who, at a friend's request, retrieved items that were subject to criminal forfeiture, "knew that the natural and probable result of his actions would be the obstruction of [the friend's] forfeiture proceeding").  To be sure, establishing a "relationship in time, causation, or logic," *Aguilar*, 515 U.S. at 599, between the

---

[9] Although neither the Supreme Court nor the D.C. Circuit has extended the "nexus" requirement to Section 1512(c)(2), every court of appeals to have confronted the question has.  *See Young*, 916 F.3d at 386 (collecting cases).

obstructive conduct and the official proceeding in the defendants' case, where they are alleged to have forced their way into the Capitol to impede Congress's certification of the Electoral College vote at the very moment that certification was underway, does not raise the borderline questions at issue in other cases. But the nexus requirement nonetheless imposes a meaningful "restraint" on the "reach of a federal criminal [obstruction] statute." *Marinello*, 138 S. Ct. at 1106 (quoting *Aguilar*, 515 U.S. at 600).

3. The *mens rea* and nexus requirements in Section 1512(c)(2) ensure that only those who understand the character and import of their actions are punished. A defendant does not violate the statute unless, at minimum, he intentionally and wrongfully obstructs (or attempts to obstruct) a particular, foreseeable proceeding that qualifies as an "official proceeding" under Section 1515(a)(1).

**IV.    Section 1512(c)(2) is not unconstitutionally vague or overbroad.**

The defendants argue (Supp. Br. 26-43) that Section 1512(c)(2) is unconstitutionally vague or overbroad. They are wrong on both counts.

1. The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S.

516, 532 (1982)).  To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010).  "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'"  *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48, 50 (1975) (per curiam)).  Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application.  *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974).  The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'"  *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)).  A statute is instead vague where it fails to specify any "standard of conduct . . . at all."  *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971).  "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'"  *Johnson*, 576 U.S. at 603-04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

a.   The defendants fail to overcome the strong presumption that Section 1512(c)(2) passes constitutional muster.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").  Section 1512(c)(2) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604.  Section 1512(c)(2)'s prohibition on "corruptly . . . obstruct[ing], influenc[ing], or imped[ing]" an "official proceeding" gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306.  The statute requires that a defendant, acting with consciousness of wrongdoing and intent to obstruct, attempts to or does undermine or interfere with a statutorily defined official proceeding.  While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'"  *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).

b.   The defendants' more targeted attack on "corruptly," relying on *United States v. Poindexter*, *supra*, is equally unavailing.  As noted above, the D.C. Circuit in *Poindexter* held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss."  951 F.2d at 378. *Poindexter* is inapposite for three reasons.[10]

---

[10] *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459.  As codified at 18 U.S.C. § 1515(b), the Act provides

First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct." 951 F.2d at 385. Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. *Id*. at 629-30. Other courts have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances." *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). The defendants' invocation of *Poindexter* accordingly fails to establish that Section 1512(c) suffers the same constitutional indeterminacy.

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt" and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted). In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502. Third, and as noted above, courts have encountered little difficulty when addressing "corruptly" in Section 1512(c)(2) following *Arthur Andersen*. *See supra*, at 18-19. Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

---

that the term "corruptly" in § 1505 "means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement."

The defendants provide no support for their position.  Nor could they.  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).  In this case, the defendants are alleged to have entered the Capitol alongside a mob of rioters, who then destroyed property, broke into Congressional offices, and assaulted law enforcement officers.  One defendant, Montgomery, is also alleged to have assaulted an officer.  The defendants proceeded all the way to the Gallery of the Senate Chamber, the very location where the certification proceeding should have been occurring.  This was all part of their effort to stop Congress from certifying the Electoral College vote.  Along the way, the defendants harassed and berated law enforcement officers inside and outside the Capitol building.  Whatever the "uncertainty around the edges," *Edwards*, 869 F.3d at 502, Section 1512(c)'s "corruptly" element provided ample notice to the defendants that *their conduct* was criminal.

c.  The defendants' two arguments (Supp. Br. 34-38) that Section 1512(c)(2) permits arbitrary enforcement are incorrect.  First, the defendants suggest (Supp. Br. 34) that comments by government counsel during the hearing evinced "'personal predilections'" about the defendants' conduct and the conduct (whether real or hypothesized) of other individuals.  But as the Court observed, the discussion of hypotheticals throughout the hearing aimed to permit the Court "to decide what to do in this case" and in other cases prosecuted under Section 1512(c)(2).  Hearing Trans. 67.  In responding to those hypotheticals, the government identified the pertinent governing principles—that Section 1512(c)(2) requires "the actus reus of impeding, interfering, or obstructing" undertaken with "both intent to obstruct as well as wrongfulness," *id.* at 36—while acknowledging that certain fact patterns will present "hard, borderline cases."  *Id.* at 46; *see Williams*, 553 U.S. at 306 ("Close cases can be imagined under virtually any statute.  The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond

a reasonable doubt."). The unremarkable exercise of exploring the boundaries of a criminal statute through hypotheticals does not suggest, let alone establish, arbitrary enforcement of a facially neutral statute.

Second, the defendants' invocation (Supp. Br. 36-38) of a specific case and prior events at the U.S. Capitol does not alter the vagueness analysis. That Tighe Barry, who shouted at the confirmation hearing for then-Judge Brett Kavanaugh, *see United States v. Barry*, 18-mj-111 (RMM), and later, in a case unrelated to the hearings, congregated with others in a room in the Rayburn House Office Building in violation of a court order, *United States v. Barry*, 19-mj-49 (RMM), entered a guilty plea to misdemeanor obstruction in violation of 40 U.S.C. § 5104(e)(2)(D) does not imply that his conduct fell outside the scope of Section 1512(c)(2). Furthermore, the mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) those statutes suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin*, 573 U.S. at 358 n.4; *accord Hubbard*, 514 U.S. at 714 n.14 (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."). Nor does any overlap between misdemeanor and felony provisions give rise to a vagueness concern: "So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *United States v. Batchelder*, 442 U.S. 114, 123 (1979). And the exceptional violence and destruction on January 6, which involved more than a hundred assaults on law enforcement officers, assaults on members of the media, broken windows and doors, graffiti, and other extensive damage to government and private (including media) property, qualitatively and quantitatively distinguishes it from other "protest" events at the Capitol. *See, e.g.*, Staff of Senate Committees on Homeland Security and Governmental Affairs

27

and Committee on Rules and Administration Report, *Examining the Capitol Attack: A Review of the Security, Planning, and Response Failures on January 6* (June 7, 2021), at 27-30 (describing "'absolutely brutal' violent physical abuse" experienced by law enforcement officers, including chemical burns that had not healed nearly two months after January 6, "being pinned against surfaces," and being assaulted with a "range of objects"); United States House of Representatives Curator Farar Elliott, Statement before the House Appropriations Subcommittee on the Legislative Branch (Feb. 24, 2021) (describing damage to marble and granite statutes).

2.  The defendants also briefly posit (Supp. Br. 41-43) that Section 1512(c)(2) is facially overbroad.  In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).  Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to her, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal quotation marks omitted)—are even more exceptional.  "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'"strong medicine"'" to be employed "'"only as a last resort."'"  *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep."  *Williams*, 553 U.S. at 292.  "[T]he mere fact that one can conceive of some impermissible applications of a statute

is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; see *id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

The defendants' challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. As described above, Section 1512(c)(2) prohibits corruptly obstructing an official proceeding. The operative verbs—obstruct, influence, or impede—principally target conduct rather than speech, *see supra* at 8-9, and those verbs are paired with the "corruptly" scienter requirement, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad). At the very least, the defendants cannot show that Section 1512(c)(2) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted). The defendants' own prosecution—which involved physically trespassing into the restrict Capitol and assaulting law enforcement officers—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, the defendants fail to identify a single actual example of a prosecution based on protected speech. The limitations inherent in the crime of conviction, moreover, render the possibility of any such prosecutions marginal at best, and any

such case could be the subject of an as-applied challenge.  Nothing at all calls for the "strong

medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of

overbreadth invalidation.

## V.     The Supreme Court's decision in *Yates v. United States* does not counsel a different interpretation.

The Supreme Court's decision in *Yates v. United States*, which considered how to construe

the statutory term "tangible object" in Section 1519, 574 U.S. at 532 (plurality opinion), does not

undermine the interpretation of Section 1512(c)(2) articulated above.  In *Yates*, a plurality of the

Court undertook a "contextual reading" to narrow the scope of "tangible object" in Section 1519

to "only objects one can use to record or preserve information, not all objects in the physical

world."  *Id.* at 536 (plurality opinion).  The contextual features that animated that narrow

interpretation in Section 1519 are, however, absent in Section 1512(c)(2).[11]

1. The Court in *Yates* considered a prosecution brought under Section 1519, which makes

it a crime to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a

false entry in any record, document, or tangible object with the intent to impede, obstruct, or

influence" a federal investigation.  18 U.S.C. § 1519.  Yates was a commercial fisherman who

ordered his crew to throw his catch back into the sea to prevent federal authorities from

determining whether he had harvested undersized fish.  *Yates*, 574 U.S. at 531 (plurality opinion).

The question presented was whether "tangible object" as used in Section 1519 included a fish.  A

fractured Supreme Court produced three opinions.

---

[11] Although the defendants do not address *Yates* in detail in their supplemental brief, the Court asked whether the analysis in *Yates* would apply equally to Section 1512(c)(2).  *See* Hearing Tran. at 6-7.

a.  A four-Justice plurality concluded that Section 1519's "context" supported a "narrower reading." *Yates*, 574 U.S. at 539.  A holding that "tangible object" included "any and all objects," the plurality concluded, would "cut § 1519 loose from its financial-fraud mooring" in the Sarbanes-Oxley Act.  *Id.* at 532.  The plurality grounded its analysis in several "[f]amiliar interpretive guides."  *Id.* at 539.  First, neither Section 1519's caption, "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," nor the title within the Sarbanes-Oxley Act within which Section 1519 was placed, "Criminal penalties for altering documents," suggested that Congress aimed to "sweep" in "physical objects of every kind."  *Id.* at 539-40.

Second, the plurality relied on Section 1519's placement within Title 18's Chapter 73.  *Yates*, 574 U.S. at 540.  Specifically, its placement at the end of the chapter following several provisions "prohibiting obstructive acts in specific contexts," suggested that Congress did not intend Section 1519 as an "across-the-board" spoliation ban.  *Id.*  In contrast, the plurality noted, Congress directed codification of the Sarbanes-Oxley Act's "other additions . . . within or alongside retained provisions that address obstructive acts relating broadly to official proceedings and criminal trials."  *Id.*  To illustrate one such "broad[]" provision, the plurality specifically referred to the provision at issue in this case, Section 1512(c), which, as noted above, was titled "Tampering with a record or otherwise impeding an official proceeding," and which Congress placed (as Section 1512(c)) within the "broad proscription[]" found in the "pre-existing" Section 1512.  *Id.* at 541.

Third, the plurality compared Section 1519 with the "contemporaneous passage" in the Sarbanes-Oxley Act of Section 1512(c)(1).  *See* 574 U.S. at 541.  Because Section 1512(c)(1)'s reference to "'other object'" encompassed "any and every physical object," the plurality "resist[ed] a reading of § 1519" that would make Section 1512(c)(1) superfluous.  *Id.* at 542-43.  Moreover,

the plurality reasoned, the fact that Congress's formulation in Section 1519 did not track the language in Section 1512(c)(1) indicated that Congress intended Section 1519 to be construed differently from Section 1512.  *Id.* at 545 n.7.  More specifically, the plurality concluded that, by adopting those different formulations, Congress intended the phrase "tangible object" in Section 1519 to "have a narrower scope" than the phrase "'other object'" in Section 1512(c)(1).  *Id.* at 544-45.

Fourth, the plurality found support for its narrowing construction in the *noscitur a sociis* and *ejusdem generis* interpretive canons.  574 U.S. at 543-46.  Because "tangible object" in Section 1519 was the "last in a list of terms that begins 'any record [or] document,'" the *noscitur a sociis* canon counseled interpreting that term "to refer . . . specifically to the subject of tangible objects involving records and documents."  *Id.* at 544.  That reading, moreover, "accord[ed] with" Section 1519's verbs, which include "'falsif[ying]'" and "'mak[ing] a false entry in'"—terms that commonly "take as grammatical objects records, documents, or things used to record or preserve information."  *Id.* (emphasis omitted).  Similarly, application of the *ejusdem generis* canon—that "general words" following "specific words" when listed in a statute are "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," *id.* at 545 (internal quotation marks omitted)—indicated that Congress "would have had no reason to refer specifically to 'record' or 'document'" if it intended Section 1519 to "capture physical objects as dissimilar as documents and fish."  *Id.* at 546.[12]

---

[12] By way of example, the Supreme Court cited its decision in *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), where the Court interpreted the residual clause in the Armed Career Criminal Act (ACCA), which covered "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C.  § 924(e)(2)(B)(ii).  The ACCA's enumeration of specific crimes suggested that the

Finally, the plurality stated that, to the extent its "recourse to traditional tools of statutory construction" left "any doubt" about how to interpret "'tangible object'" in Section 1519, the rule of lenity favored a narrow interpretation of that phrase.  574 U.S. at 547-48.  Because a broad reading of Section 1519 would criminalize "tampering with *any* physical object that *might* have evidentiary value in *any* federal investigation into *any* offense, no matter whether the investigation is pending or merely contemplated, or whether the offense subject to investigation is criminal or civil," the plurality reasoned that before it opted for the "harsher alternative," Congress must speak "in language that is clear and definite."  *Id.* at 548 (internal quotation marks omitted).

b.  Justice Alito concurred in the judgment on narrower grounds.[13]  Observing that the statutory "question is close," Justice Alito reasoned that the combined effect of "the statute's list of nouns, its list of verbs, and its title" favored the plurality's conclusion.  *Yates*, 574 U.S. at 549 (Alito, J., concurring).  Section 1519's nouns suggested that "'tangible object'" in that provision "should refer to something similar to records or documents."  *Id.* at 550.  Similarly, Section 1519's list of verbs are "closely associated with filekeeping," and at least one verb phrase—"'makes a false entry in'"—"makes no sense outside of filekeeping."  *Id.* at 551.  Finally, Section 1519's title—"Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," § 1519—suggested that "no matter how other statutes might be read," Section 1519 "does not cover every noun in the universe with tangible form."  *Id.* at 552.

---

"otherwise involves" provisions applied only to "*similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'"  *Begay*, 553 U.S. at 142.

[13] Under the rule announced in *Marks v. United States*, 430 U.S. 188 (1977), Justice Alito's concurrence represents the binding holding as the narrowest opinion among those concurring in the judgment.  *See id.* at 193.

c.  Justice Kagan, joined by three other Justices, dissented.  In her view, the term "'tangible object'" in Section 1519 was "broad, but clear"; it encompassed, as it would in "everyday language," "any object capable of being touched."  *Yates*, 574 U.S. at 553 (Kagan, J., dissenting). Reviewing Section 1519's text and context demonstrated that "Congress said what it meant and meant what it said."  *Id.* at 555.  Moreover, Justice Kagan reasoned, when Congress in Section 1519 used a "broad term" such as "tangible object," an interpretation that provided "immunity" to defendants who destroyed non-documentary evidence had "no sensible basis in penal policy."  *Id.* at 558.

2.  The decision in *Yates* does not unsettle the straightforward interpretation of Section 1512(c)(2) articulated above because the "familiar interpretive guides" on which the plurality (and to some extent Justice Alito) relied to narrow the scope of Section 1519 do not apply to Section 1512(c)(2).

Consider first, as the plurality did, Section 1512's statutory title.  *See Yates*, 574 U.S. at 539-40 (plurality opinion); *see also id.* at 552 (Alito, J., concurring) (considering Section 1519's title).  Even leaving aside the "the wise rule" that neither "the title of a statute" nor "the heading of a section" can "limit the plain meaning of the text," *Brotherhood of R.R. Trainmen*, 331 U.S. at 528-29, Section 1512's title, "Tampering with a witness, victim, or an informant," provides no reason to narrow the interpretation of Section 1512(c)(2).  *See supra*, at 15-17.  For one thing, Congress named that title 20 years before it enacted 1512(c) in the Sarbanes-Oxley Act, and then simply opted not to rename Section 1512 to reflect either of the two new obstruction prohibitions added in Section 1512(c).  Section 1512's overarching title therefore does not have the same interpretive force as Section 1519's title, which was enacted by the same Congress that enacted the rest of Section 1519.  *See Yates*, 574 U.S. 541 n.4 (plurality opinion).  Additionally, whereas

Section 1519's title within the Sarbanes-Oxley Act, "Criminal penalties for altering documents," suggested a narrow focus on document destruction, *see id.* at 539-40, Section 1512(c)'s title within the Sarbanes-Oxley Act reflected both the document-destruction prohibition in Section 1512(c)(1) *and* the broader catch-all obstruction provision in Section 1512(c)(2): "Tampering with a record *or otherwise impeding an official proceeding*." Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 807 (emphasis added; capitalization altered).

Similarly inapposite here is Section 1512(c)(2)'s placement within Chapter 73. *See Yates*, 574 U.S. at 540-41 (plurality opinion). Whereas Congress enacted Section 1519 as a standalone prohibition and placed it at the end of the chapter "together with specialized provisions expressly aimed at corporate fraud and financial audits," it instead inserted Section 1512(c) within the "pre-existing" Section 1512. *Id.* at 541 (plurality opinion). So situated, Section 1512(c)(2)'s function as a catch-all obstruction prohibition is consistent with Section 1512's role as a "broad proscription" on obstructive acts. *See id.* (plurality opinion).

That reading, moreover, is consistent with how the *Yates* plurality opinion describes Section 1512(c). *See* 574 U.S. at 541-43, 545. Contrasting the term "other object" in the document-destruction provision in Section 1512(c)(1) with "tangible object" in Section 1519, the plurality concluded that Section 1512(c)(1)'s later enactment suggested Congress intended it to reach more broadly than Section 1519. *Id.* at 542-43; *id.* at 545 n.7 ("Congress designed § 1519 to be interpreted apart from § 1512, not in lockstep with it."). And if Congress intended Section 1512(c)(1) to cover more ground than Section 1519, Section 1512(c)'s text and structure make plain that it further intended Section 1512(c)(2) to cover more ground than Section 1512(c)(1).

The plurality, 574 U.S. at 544-45, and Justice Alito, *id.* at 550, also drew support for their narrowing construction of Section 1519 from interpretive canons, but those canons do not help the

defendants here.  "Where a general term follows a list of specific terms, the rule of *ejusdem generis* limits the general term as referring only to items of the same category."  *United States v. Espy*, 145 F.3d 1369, 1370-71 (D.C. Cir. 1998).  Section 1519's structure—a list of specific terms ("record" and "document) followed by a more general term ("tangible object")—in a singular provision is susceptible to that analysis.  *Yates*, 574 U.S. at 545-56 (plurality opinion); *id.* at 549-50 (Alito, J., concurring).  But Section 1512(c)'s structure differs significantly: it includes one numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive "or," and then a separate numbered provision containing the separate catch-all obstruction prohibition.  "The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).  Furthermore, in the same way that the *ejusdem generis* canon does not apply to the omnibus clause in Section 1503 that is "one of . . . several distinct and independent prohibitions" rather than "a general or collective term following a list of specific items to which a particular statutory command is applicable," *Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part), it has no application to Section 1512(c)(2), which embodies the same structure.  *Cf. Loughrin*, 573 U.S. at 359 (distinguishing the mail fraud statute (18 U.S.C. § 1341), which "contains two phrases strung together in a single, unbroken sentence," from the bank fraud statute (18 U.S.C. § 1344), which comprised "two clauses" with "separate numbers, line breaks before, between, and after them, and equivalent indentation—thus placing the clauses on an equal footing and indicating that they have separate meanings").

The Supreme Court's decision in *Begay v. United States*, 553 U.S. 137, on which the *Yates* plurality in part relied (*see supra*, note 12), does not suggest a different conclusion with respect to Section 1512(c)(2).  The statutory provision at issue in *Begay* included a list of specified crimes

("any crime . . . that is . . . burglary, arson, or extortion, or involves use of explosives") followed, in the same sentence, by a more general category ("or otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)); the Supreme Court held that the "otherwise involves" provision covered only crimes "similar" to those in the enumerated list.  *See* 553 U.S. at 142-43.  In Section 1512(c)(2), by contrast, "the 'otherwise' phrase . . . stands alone, unaccompanied by any limiting examples" in a provision that "is plainly separate and independent of" Section 1512(c)(1).  *Ring*, 628 F. Supp. 2d at 224 n.17.  "Thus, just as *Begay* did not define the 'otherwise' clause" in Section 924(e)(2)(B)(ii) "in terms of the independent and preceding" Section 924(e)(2)(B)(i), Section 1512(c)(2)'s "use of 'otherwise'" should not be construed "as limited by § 1512(c)(1)'s separate and independent prohibition on evidence-tampering."  *Id.*; *see De Bruhl-Daniels*, 491 F. Supp. 3d at 251 ("[Section 1512(c)(2)] does not appear as a broad catch-all term at the end of a list that must be wrangled into conformity with congressional intent using a canon of construction" but instead "exists as a potent, independent, and unequivocal catch-all provision that reaches all manner of obstructive conduct related to an official proceeding.").

The *noscitur a sociis* canon is similarly inapplicable here.  That canon is used only to construe terms that are "of obscure or doubtful meaning," not to change the meaning of unambiguous terms that are simply broad.  *Russell Motor Car Co.,* 261 U.S. at 520.  Moreover, the canon may be invoked only "when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning."  *S. D. Warren Co. v. Maine Bd. of Env't Prot.,* 547 U.S. 370, 378 (2006) (internal quotation marks omitted); *see Beecham v. United States,* 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well.").  As noted above, the first and

second clauses of Section 1512(c) are not items in a list of related terms; rather, they are distinct offenses phrased in the disjunctive. 18 U.S.C. § 1512(c). That structure therefore does not lend itself to application of *noscitur a sociis*. *See De Bruhl-Daniels*, 491 F. Supp. 3d at 251 (declining to apply the *noscitur a sociis* canon to Section 1512(c)).

Finally, the *Yates* plurality's reliance on the rule of lenity has no application here.[14] The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *see Shular v. United States*, 140 S. Ct. 779, 789 (2020) (Kavanaugh, J., concurring). There is no grievous ambiguity here. Section 1512(c)(2)'s text, structure, history, and purpose make clear that it functions as a broad catch-all prohibition on obstructive conduct that covers "otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *Petruk*, 781 F.3d at 447 (internal quotation marks omitted).

The plurality also found the rule of lenity "relevant" in part given the absence of limiting principles under a broad construction of Section 1519. *See Yates*, 574 U.S. at 548. But neither of the features that constrain Section 1512(c)(2)'s reach—the government's requirement to establish that the defendant acted "corruptly" and a nexus to a contemplated official proceeding, *see supra*, 17-22—is present in Section 1519. Section 1519 requires that the defendant act "knowingly" and "with the intent to impede, obstruct, or influence," 18 U.S.C. § 1519, but does not impose the more

---

[14] Justice Alito did not rely on several features that guide the plurality opinion, including the rule of lenity. *See* 574 U.S. at 549 (noting that the case "should be resolved on narrow grounds," namely, "the statute's list of nouns, its list of verbs, and its title," but not discussing the Sarbanes-Oxley Act, Section 1519's placement within Chapter 73, the Supreme Court's decision in *Begay*, or the rule of lenity). It follows that that his controlling opinion, *see supra* note 13, makes even more clear that Section 1512(c)(2) should not be interpreted differently than its text and structure would suggest.

stringent "corruptly" *mens rea*.  And courts of appeals have uniformly concluded that Section 1519 does not include a "nexus" requirement.  *See United States v. Scott*, 979 F.3d 986, 992 (2d Cir. 2020) (Supreme Court's decisions in *Marinello*, *Arthur Andersen*, and *Aguilar* do not "overrule[]" existing circuit precedent that Section 1519 "does not have a nexus requirement"); *United States v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012) (declining to extend nexus requirement from Section 1503 and 1512(b)(2) to Section 1519; *United States v. Kernell*, 667 F.3d 746, 753-55 (6th Cir. 2012); *United States v. Yielding*, 657 F.3d 688, 712-14 (8th Cir. 2011); *see also* S. Rep. No. 107-146, at 14-15 ("[Section 1519] is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter.").[15]

To be sure, no court appears to have applied Section 1512(c)(2) to conduct precisely akin to the defendants' alleged actions, namely, confronting and assaulting law enforcement officers as they forced their way into the Capitol—and all the way into the Gallery of the Senate Chamber—in an effort to halt or delay a congressional proceeding.  Even if Section 1512(c)(2)'s application to this case was "not expressly anticipated by Congress," that alone "does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command."  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal quotation marks and brackets omitted).  That is so even if the statute's application in a particular case "reaches 'beyond the principal evil' legislators may have intended or expected to address."  *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)).  And any policy-based suggestion "that the current scheme should be altered," *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768,

---

[15] The defendants' rule-of-lenity argument (Supp. Br. 43-45), which relies heavily on the *Yates* plurality's analysis, fails for the same reasons.

778 (2020), ought to be addressed to Congress, not this Court, *see, e.g.*, *United States v. Rodgers*, 466 U.S. 475, 484 (1984) ("Resolution of the pros and cons of whether a statute should sweep broadly or narrowly is for Congress.").

**VI.     Even if Section 1512(c)(2) required that the obstructive act relate to documentary or tangible evidence, the defendants' alleged conduct would be covered.**

At a bare minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding.  If, for example, the defendants had corruptly blocked the vehicle carrying the election returns to the Capitol for congressional examination at the certification proceeding, that conduct would clearly fit within Section 1512(c)(2).  Section 1512(c)(2) would likewise cover blocking a bus carrying the Members of Congress to the Capitol to examine the election returns at the certification proceeding.  And it just as readily covers displacing the Members of Congress from the House and Senate Chambers, where they would examine and discuss those returns and other records.

No court following *Yates* has adopted an interpretation of Section 1512(c)(2) that limits it to document-focused obstructive conduct.  *See, e.g.*, *Petruk*, 781 F.3d at 447-48; *De Bruhl-Daniels*, 491 F. Supp. 3d at 251; *Cervantes*, 2021 WL 2666684, at *6.  But even were this Court to adopt the limitation that Section 1512(c)(2) "requires some nexus to tangible evidence," *Singleton*, 2006 WL 1984467, at *3, or a "tangible object," *Hutcherson*, 2006 WL 270019, at *2, or "some conduct that impairs the integrity and availability of *some evidence*," Supp. Br. 21, the defendants' alleged conduct would still fall within the scope of Section 1512(c)(2) because the defendants "otherwise obstruct[ed], influence[d], or impede[d]" Congress's ability to review documents that it was

40

constitutionally and statutorily required to receive and act upon, thereby obstructing the certification of the Electoral College vote.

The certification of the Electoral College vote is rooted in federal constitutional and statutory law that requires the creation and consideration of various documents. Under the Twelfth Amendment, the state Electors must "vote by ballot," marking one set of ballots for the individual voted for as President and "distinct ballots" for the vice-presidential selection. U.S. Const. amend. XII. The Electors must then create "lists" of the presidential and vice-presidential candidates who received votes, "which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States." *Id.* These certified lists, or "certificates," are then opened by the President of the Senate "in the presence of the Senate and House of Representatives." *Id.* After opening them, the President of the Senate hands the certificates to two appointed "tellers," who in turn create a new "list" that comprises "the votes as they shall appear from the said certificates." 3 U.S.C. § 15. During the reading of the certificates, the President of the Senate must open the floor to objections; any objection "shall be made in writing . . . and shall be signed by at least one Senator and one Member of the House of Representatives." *Id.* Congress's certification of the Electoral College vote, therefore, operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and, potentially, written objections.

Had the defendants sought to alter or destroy any of those documents, they also would have violated Section 1512(c)(1). Instead, the defendants allegedly sought to stop the Members of Congress from reviewing those constitutionally and statutorily mandated documents at a proceeding to certify the results of the 2020 presidential election. Because the defendant's alleged conduct thus precluded a full and fair examination of physical or documentary evidence at an official proceeding, the indictment's allegations would satisfy any extratextual "requirement" in

41

Section 1512(c)(2) "for some nexus to a document or other tangible evidence." *Singleton*, 2006 WL 1984467, at *5.

The defendants' claim (Supp. Br. 23-26) that Electoral College vote certificates and other related documents are not "evidence" fails in two distinct respects. First, to the extent Section 1512(c)(2) is construed as a residual clause linked to Section 1512(c)(1), that latter provision refers not to "evidence," but instead to "a record, document, or other object" that that will be "use[d]" in an official proceeding. 18 U.S.C. § 1512(c)(1). Not every "record, document, or other object" that is "use[d]" in an official proceeding will necessarily amount to "evidence." For example, the "Journal" of "Proceedings" that each House must maintain and occasionally publish, *see* U.S. Const. art. 1, § 5, is a document or record that is used in official (*i.e.*, congressional) proceedings regardless of whether the information that Journal contains constitutes "evidence." And in the defendants' case, there is no question that the Electoral College certificates were "use[d]" in the certification proceeding on January 6.

The defendants' argument also fails on its own terms. They suggest a distinction (Supp. Br. 24) between "evidence," which tends to prove or disprove a fact, and a "vote," which reflects an "opinion." But if an alleged obstructive act is tampering with or otherwise rendering unavailable votes, then those votes become evidence. The same would be true in the defendants' case, where they are alleged to have tampered with the official proceeding in which those votes are counted and certified. Equally flawed is the defendants' contention (*id.* at 24-25) that the certificates do not amount to evidence because they are not akin to a "witness to an alleged crime" or establish "some conduct [that] has violated the law." Witness testimony and documents need not be incriminating to qualify as evidence; admissible evidence may, for example, establish a person's presence in a certain location or a potential motive for criminal conduct. Finally, the

defendants liken (Supp. Br. 25-26) the certification of the Electoral College vote to the filing of a mandamus petition, arguing that such a petition in the hands of a filing clerk is not evidence. But if a mob surged into the courthouse to prevent the clerk from filing the petition in an effort to forestall the relief sought in that petition, it would qualify as evidence under those circumstances. The same is true of the certificates in the defendants' case.

## CONCLUSION

For the reasons given here and in the government's opposition to the defendants' motion to dismiss (ECF 41), the Court should deny that dismissal motion.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:

/s/ James I. Pearce
James I. Pearce
Capitol Breach Appellate Coordinator
United States Attorney's Office
NC Bar No. 44691
555 Fourth Street, N.W.
Washington, DC 20530
James.Pearce@usdoj.gov
(202) 532-4991

Elizabeth C. Kelley
Assistant United States Attorney
United States Attorney's Office
D.C. Bar No. 1005031
555 Fourth Street, N.W.
Washington, DC 20530
Elizabeth.Kelley@usdoj.gov
(202) 252-7238

James D. Peterson
Trial Attorney
United States Department of Justice
VA Bar No. 35373
1331 F Street N.W.
6th Floor
Washington, D.C. 20530
(202) 353-0796
James.d.peterson@usdoj.gov