**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | **1:21-CR-00119-CJN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GARRET MILLER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT OPPOSITION TO THE GOVERNMENT'S MOTION FOR RECONSIDERATION OF THE COURT'S RULING DISMISSING COUNT THREE OF THE INDICTMENT

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS .......................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

    I.     Reconsideration standard in criminal cases .............................................................. 3

    II.    Reconsideration is not warranted on account of the Court's application of the rule of lenity ......................................................................................................................... 4

        A.   "The Court erred" is not a basis for reconsideration ..................................... 5

        B.   The government reargues the same lenity theories .......................................... 6

        C.   The government is wrong on the merits ......................................................... 6

            1.   The government fails to address the principle that courts exercise restraint in addressing the reach of federal criminal statutes ............................................ 7

            2.   The Court did not err by using the word "serious" rather than "grievous" ........ 8

            3.   The government misunderstands *Miller*'s analysis of § 1512(c)'s text ........... 10

            4.   This Court's opinion was plainly correct on statutory context and history ...... 18

    III.   Pretrial dismissal was not "premature" ..................................................................... 22

CONCLUSION .................................................................................................................... 24

CERTIFICATE OF SERVICE .............................................................................................. 26

Defendant Garret Miller, through his counsel, submits this opposition to the government's Motion for Reconsideration of the Court's Ruling Dismissing Count Three of the Indictment.  ECF No. 75.  The government has not shown that the Court "patently misunderstood a party, made a decision outside the adversarial issues presented to the Court by the parties, [or] made an error not of reasoning but of apprehension," nor has it pointed to "a controlling or significant change in the law or facts since the submission of the issue to the Court." *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015) (internal quotation and citation omitted).  The reconsideration motion must therefore be denied.

But even if the government faced a less forbidding standard, overturning the settled law of the case would not be warranted.  Repeating general arguments it made in opposition to Miller's motion to dismiss Count Three, the government fails to counter the Court's particular reasons for concluding that there are only two plausible constructions of 18 U.S.C. § 1512(c)(2), that the better one did not support Count Three, and that "at the very least" the Court was left with "serious ambiguity in a criminal statute."

## **ARGUMENT**

## I.     **Reconsideration standard in criminal cases**

Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, "Courts in this District have . . .entertained motions for reconsideration in criminal cases by importing the standards of review applicable in motions for reconsideration in civil cases." *Hassanshahi*, 145 F. Supp. 3d at 80 (citing *United States v. Trabelsi*, 2015 U.S. Dist. LEXIS 1175272, 2015 WL 5175882, at *2 (D.D.C. 2010); *United States v. Slough*, 61 F. Supp. 3d 103, 107 (D.D.C. 2014); *United States v. Cabrera*, 699 F. Supp. 2d 35, 39 (D.D.C. 2010); *United*

*States v. Sunia*, 643 F. Supp. 2d 51, 60-61 (D.D.C. 2009); *United States v. Libby*, 429 F. Supp. 2d 46, 46-47 (D.D.C. 2006)).

With respect to interlocutory decisions, "courts in this district have . . . adopted the standard from civil cases that reconsideration of an interlocutory decision is available 'as justice requires.'" *Hassanshahi*, 145 F. Supp. 3d at 80 (citing *Trabelsi*, 2015 U.S. Dist. LEXIS 117572, at *2). To determine what "justice requires," the Court considers whether it "'patently misunderstood a party, made a decision outside the adversarial issues presented to the Court by the parties, [or] made an error not of reasoning but of apprehension,'" or whether there has been "'a controlling or significant change in the law or facts since the submission of the issue to the Court.'" *Id.* (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

Motions for reconsideration are committed to the sound discretion of the district court. *Hassanshahi*, 145 F. Supp. 3d at 80. The moving party bears the burden to show that reconsideration "is appropriate and that harm or injustice would result if reconsideration were denied." *Id.* (internal quotation and citation omitted). A motion for reconsideration is "'not simply an opportunity to reargue facts and theories upon which a court has already ruled.'" *Id.* (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).

## II.    Reconsideration is not warranted on account of the Court's application of the rule of lenity

The government argues that the Court should reconsider its decision as it "erred by applying the rule of lenity to Section 1512(c)(2) because, as many other judges have concluded after examining the statute's text, structure, and history, there is no genuine—let alone 'grievous' or 'serious'—ambiguity." ECF No. 75, p. 7. The government fails to carry its reconsideration burden for several reasons.

### A. "The Court erred" is not a basis for reconsideration

In the first place, reconsideration is not warranted based on the government's argument that the "Court erroneously applied the rule of lenity in this case." ECF No. 75, p. 9. Rather, its burden is to show either that the Court "patently misunderstood a party, made a decision outside the adversarial issues presented to the Court by the parties, [or] made an error *not of reasoning* but of apprehension,'" or that there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Hassanshahi*, 145 F. Supp. 3d at 80 (internal quotation and citation omitted) (emphasis added). The government does not contend that the Court misunderstood the government's arguments, made a decision outside the adversarial issues presented to the Court, or made an error "not of reasoning but of apprehension." ECF No. 75, pp. 9-21. To the contrary, the Court benefitted from multiple rounds of briefing on Miller's motion to dismiss Count Three, as well as oral argument. ECF Nos, 34, 35, 47, 59, 60, 63.

Nor does the government show a controlling or significant change in the law or facts since the submission of Miller's motion to dismiss Count Three. Instead, the government points to inconsistent decisions by judges in the same district court. ECF No. 75, pp. 5-6. But, of course, those decisions are not "controlling" with respect to this Court, in this and every other context. *E.g.*, *McAllister v. District of Columbia*, 53 F. Supp. 3d 55, 59 (D.D.C. 2014) (rejecting motion for reconsideration based on argument that new district court decisions constituted an "intervening change in controlling law" because those decisions were not controlling); *Young America's Foundation v. Gates*, 560 F. Supp. 2d 39, 49 n. 4 (D.D.C. 2008) (clarifying that other district court decisions are "only persuasive, and not binding, authority").

For those reasons alone, the government's reconsideration motion should not have been filed and must be denied. *Hassanshahi*, 145 F. Supp. 3d at 80.

### B.  The government reargues the same lenity theories

The government "simply . . . reargue[s] facts and theories upon which [the] court has already ruled." *Hassanshahi*, 145 F. Supp. 3d at 80.  It contends that "[t]he rule of lenity . . . does not come into play when a law merely contains some degree of ambiguity or is difficult to decipher. It continues that the rule of lenity 'only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.'" ECF No. 75, p. 8 (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010)).  The government made exactly the same argument, with the same case citations, in multiple briefs, in opposing Miller's motion to dismiss Count Three.  ECF No. 35, p. 12 n. 2; ECF No. 63-1, pp. 38-39.  The reconsideration motion adds no new "theories" to the government's lenity arguments.  ECF No. 75, pp. 8-10.  The government simply contends that because the Court did not agree with the government's position, the Court did not apply the rule of lenity correctly.  *Id.* at 9 ("The Court erroneously applied the rule of lenity.").  The reconsideration motion must also be denied for this reason.  *Hassanshahi*, 145 F. Supp. 3d at 80.

### C.  The government is wrong on the merits

Even if the Court were to apply a *de novo* standard of review to its own decision—the standard advanced by the government in all but name—reconsideration would not be warranted. The government's lenity argument has two components.  The first is semantic and requires little attention.  The second amounts to an attempt to relitigate the Court's entire § 1512(c)(2) analysis— from text, to structure, to the development of the statute over time—through the lens of the rule of lenity.  Both fail.

**1. The government fails to address the principle that courts exercise restraint in addressing the reach of federal criminal statutes**

Before turning to the government's arguments, the Court should notice what its motion omits. The Court's decision rested in part on the principle that "federal courts have 'traditionally exercised restraint in assessing the reach of a federal criminal statute.'" Mem. Op. at 9 (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995)). The Court added that this "'prudent rule of construction' continues with force today." *Id.* (quoting *Dowling v. United States*, 473 U.S. 207, 214 (1985)).

Though the restraint principle was a basis for the Court's decision, the government has nothing to say about it. That is not surprising. On this principle "[t]he Supreme Court's message is unmistakable: Courts should not assign federal criminal statutes a 'breathtaking' scope when a narrower reading is reasonable." *United States v. Dubin*, 27 F.4th 1021, 1041 (5th Cir. 2022) (Costa, J., dissenting) (quoting *Van Buren v. United States*, ___ U.S. ___, 141 S. Ct. 1648, 1661, 210 L. Ed. 2d 26 (2021)).

Interpretative restraint has played a vital role recently in the Supreme Court's criminal case docket. *Van Buren*, 141 S. Ct. at 1661 (holding that the Computer Fraud and Abuse Act should not be read in a way that "would attach criminal penalties to a breathtaking amount of commonplace ... activity"); *Kelly v. United States*, ___ U.S. ___ , 140 S. Ct. 1565, 1568, 206 L. Ed. 2d 882 (2020) (refusing to expand federal fraud statutes to "criminalize all [ ] conduct" that involves "deception, corruption, [or] abuse of power"); *Marinello v. United States*, ___ U.S. ___, 138 S. Ct. 1101, 1107, 1110, 200 L. Ed. 2d 356 (2018) (rejecting expansive reading of tax obstruction law that would "transform every violation of the Tax Code into [a felony] obstruction charge"); *McDonnell v. United States*, 579 U.S. 550, 136 S. Ct. 2355, 2372–73, 195 L. Ed. 2d 639 (2016) (rejecting "expansive interpretation" of bribery law and refusing to construe it "on the

assumption that the Government will 'use it responsibly'"); *Yates*, 574 U.S. at 540 (rejecting an "across-the-board ban on the destruction of physical evidence of every kind"); *Bond v. United States*, 572 U.S. 844, 863, 134 S. Ct. 2077, 189 L. Ed. 2d 1 (2014) (rejecting government's interpretation of chemical weapons ban when it would transform statute "into a massive federal anti-poisoning regime that reaches the simplest of assaults"); *Skilling v. United States*, 561 U.S. 358, 410–11, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010) (adopting a "reasonable limiting construction" of honest-services wire fraud statute and "resist[ing] the Government's less constrained construction absent Congress' clear instruction otherwise"); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703, 125 S. Ct. 2129, 161 L. Ed. 2d 1008 (2005) (exercising "restraint" in interpreting obstruction statute to avoid criminalizing "innocuous" acts of persuasion).

The government's novel construction of § 1512(c)(2) would create felony liability on account of *any act* that "obstructs" or "influences" any proceeding of Congress, "corruptly." The government defines "corruptly" to mean "wrongfully" or "evilly." Taken together, then, the government contends that the statute reaches any act that influences Congress wrongfully. The Court appropriately applied the principle of interpretive restraint in rejecting this breathtakingly overbroad construction of § 1512(c)(2).

## 2. The Court did not err by using the word "serious" rather than "grievous"

The Court determined that, under current lenity doctrine, "the rule of lenity applies to instances of 'grievous' ambiguity, *see Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring) (collecting citations), a construction that is arguably in tension with the rule's historical origins." Mem. Op. at 9 (citing 1 William Blackstone, *Commentaries*, *88 ("Penal statutes must be construed strictly.")). After considering the text, structure and

development of § 1512(c)(2) over time, the Court concluded that it was left with "serious ambiguity in a criminal statute." *Id.* at 28.  The government appears to contend that the Court erred by using the word "serious" instead of "grievous" in this portion of its opinion.  ECF No. 75, p. 9.

As "serious" is a synonym of "grievous," the government is mistaken. *Grievous*, def. 3, Merriam-Webster Online Dictionary (2022) (defining "grievous" to mean "serious, grave"), https://www.merriam-webster.com/dictionary/grievous.   But so far from prejudicing the government, the Court's decision may have turned against the government despite, not because of, its adjectival framing of current lenity doctrine.  Justice Kavanaugh's concurrence in *Shular* observed that the "Court has repeatedly explained that the rule of lenity applies only in cases of 'grievous' ambiguity. . ." 140 S. Ct. at 788.  But the Justice also allowed that "the Court has not always been perfectly consistent in its formulations." *Id.*  Indeed, the Justice's accompanying string citation was itself not perfectly consistent with the Court's recent lenity decisions, for it omitted *Yates v. United States*, 575 U.S. 528, 135 S. Ct. 1074, 191 L. Ed. 2d 64 (2015).  *Shular*, 140 S. Ct. at 788 *Id.* n. 2.  In 2015, the Supreme Court applied the rule of lenity to § 1519 after finding some "doubt" about whether the statute reached the defendant's conduct—not "grievous" ambiguity.   *Yates*, 575 U.S. at 547-48 ("[I]f our recourse to traditional tools of statutory construction leaves *any doubt* about the meaning of 'tangible object,' as that term is used in § 1519, we would invoke the rule that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'") (quoting *Cleveland v. United States*, 531 U.S. 12, 25, 121 S. Ct. 365, 148 L. Ed. 2d 221 (2000) (emphasis added)).  The "any doubt" formulation traces to Justice Scalia's dissent in *Abramski v. United States*, where the Justice observed that "contrary to the miserly [grievous ambiguity] approach, the rule of lenity applies whenever, after all legitimate tools of interpretation have been exhausted, a reasonable doubt persists regarding whether

Congress has made the defendant's conduct a federal crime." 573 U.S. 169, 204 (2014) (Scalia, J., dissenting) (cleaned up).

The lack of "perfect consistency" is why this Court recently applied the rule of lenity in a case after finding plain "ambiguity" in the criminal statute, not "grievous" ambiguity. *United States v. Guertin*, 2022 U.S. Dist. LEXIS 12485, at *8 (D.D.C. Jan. 24, 2022) (citing *Yates*, 574 U.S. at 547-48) (McFadden, J.).  In sum, it is itself ambiguous at best whether "grievous" ambiguity, or the *Yates* "any doubt" formulation, is the current governing standard for the rule of lenity.

### 3.   The government misunderstands *Miller*'s analysis of § 1512(c)'s text

The Court observed that § 1512(c)(2) cannot be read alone.  On its own, subsection (c)(2) would criminalize "whoever corruptly. . . *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so. . ." (emphasis added).  Thus, it must be read together with subsection (c)(1), and the term "otherwise" is critical to determining how the subsections differ. Mem. Op. at 11.  That yielded three possible readings of (c)(2).

The Court noted that when § 1512(c)(2) became law, "otherwise" had three different plausible definitions in this context: "'in a different way or manner: differently'"; "'in different circumstances: under other conditions'"; and "'in other respects.'" Mem. Op. at 11 (quoting *Otherwise*, *Webster's Third New Int'l Dictionary of the English Language Unabridged* (2002)). The Court determined that the government's argument made use of the first definition—"in a different way or manner"—to argue not only that subsection (c)(2) covered all acts of obstructing, influencing and impeding an official proceeding beyond those specifically enumerated in (c)(1), but also that (c)(2) encompassed the very acts in (c)(1) itself (and the rest of § 1512 into the bargain).  Thus, under the government's construction, the only question was whether Miller

"corruptly . . . obstruct[ed], influenc[ed], or imped[ed] any official proceeding, or attempt[ed] to do so." Mem. Op. at 12.  The Court called this the "clean break" reading of § 1512(c)(2).  *Id.*

The Court found inconsistency in the clean break construction.  Both parties agreed that § 1512(c)(2) cannot be read alone, given the term "otherwise." Indeed, the contrary authority from this district on which the government most relies is in agreement.  *United States v. Sandlin*, 2021 U.S. Dist. LEXIS 237131, at *14 (D.D.C. Dec. 10, 2021) ("Subsections (c)(1) and (c)(2) *are linked by the word 'otherwise.'*") (emphasis added); *see also United States v. Caldwell*, 2021 U.S. Dist. LEXIS 243756, at *43 n. 6. (D.D.C. Dec. 20, 2021) ("[T]he subsections are separated by the word 'otherwise,' which connects the two provisions. . .").   But if, as the government would have it, the only question is whether Miller "corruptly . . . obstruct[ed], influenc[ed], or imped[ed] any official proceeding, or attempt[ed] to do so," the word "otherwise" not only does no work to "link" subsection (c)(2) to (c)(1)—it is "pure surplusage." Mem. Op. at 12.  "[U]nder this reading, subsection (c)(2) would have the same scope and effect as if Congress had instead omitted the word 'otherwise.'" *Id*.

To these points, the government rejoins that "overlap is not uncommon in criminal statutes." ECF No. 75, p. 12.  The government misunderstands.  The issue is not merely complete overlap between subsection (c)(2) and (c)(1), although that is a separate flaw in its interpretation. Again, the problem is that if the only (c)(2) question is whether Miller "corruptly . . . obstruct[ed], influenc[ed], or imped[ed] any official proceeding. . ." the term "otherwise" does not "impl[y] a relationship [between (c)(2) and] something else": an element common to all the definitions of that word.  Mem. Op. at 12.[1]

---

[1] The government adds that interpreting § 1512(c)(2) in its favor "does not foreclose a defendant from arguing that his conduct falls outside Section 1512(c)(2)'s scope because his document destruction or evidence concealment is

The Court also correctly held that the clean break interpretation was inconsistent with *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). Mem. Op. at 12-16. The government contends the Court's reading of *Begay* was "flawed in several respects." ECF No. 75, p. 13.

First, the government argues that the Armed Career Criminal Act statutory provision in *Begay* had "an entirely different structure than 1512(c)(2)." ECF No. 75, p. 13. Unlike the "otherwise" clause in the ACCA, the "otherwise" clause in Section 1512(c)(2) is "set off by both a semicolon and a line break." *Id.* For the Court's convenience, Miller displays both "otherwise" clauses here:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year. . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is **burglary, arson, or extortion, involves use of explosives**, *or otherwise* involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis and emboldening added).

> (c) Whoever corruptly—
>
> (1) **alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so**, **with the intent to impair the object's integrity or availability for use in an official proceeding**; *or*
>
> (2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis and emboldening added).

---

prohibited and punishable only under Section 1512(c)(1)." ECF No. 75, p. 12. That is a strange argument. The validity of its interpretation does not turn on the extent to which it "forecloses a defendant from arguing" something.

The government's suggestion that the "semicolon and line break" separating the "or otherwise" phrase in § 1512(c)(2) is sufficient to distinguish *Begay* from this case is mistaken. The question of statutory meaning concerns grammar, not visual formatting. The sentence, "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another," cannot be correctly interpreted without the emboldened phrase in § 924(e)(2)(B)(ii) that immediately precedes "or otherwise." Identically, the sentence, "Whoever corruptly. . .or otherwise obstructs, influences or impedes any official proceeding, or attempts to do so. . .," cannot be correctly interpreted without the emboldened phrase in § 1512(c)(1) that immediately precedes "or otherwise." The semicolon and line break do not change the meaning of the sentence that is segmented by them. The statute in *Begay* shows the error of the government's "line break" argument. The government would presumably agree that Section 924(e)(2)(B)(ii) cannot be read without reference to § 924(e)(2)(B)—despite the "line break" between them.[2] The government's semicolon and line break argument was rejected in another decision on which it relies. *Caldwell*, 2021 U.S. Dist. LEXIS 243756, at *43 n. 6.

Second, the government contends that the "key feature in Section 924(e)(2)(B)(ii) at issue in *Begay*, namely, the four example crimes, is absent in Section 1512(c)(2)." ECF No. 75, p. 13 (internal citation omitted). That is wrong. The interpretive canon to which the government alludes is *ejusdem generis*, *i.e.*, "where general words follow specific words in a statutory enumeration,

---

[2] "Line break" is not even a legal term of statutory construction. It is a literary term denoting where one line of verse ends and another begins, a formatting decision dictated not by meaning but meter and rhyme. *Line break*, Literary Devices, https://literarydevices.com/line-break/#:~:text=A%20line%20break%20refers%20to,completes%20a%20sentence%20or%20cla use. The *Sandlin* court did not explain why it applied a verse term to its legal analysis of § 1512(c)(2). 2021 U.S. Dist. LEXIS 237131, at *14.

the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Yates*, 574 U.S. at 545 (internal quotation and citation omitted).  Though the *ejusdem generis* canon was used in *Begay* to "limit the scope of the ['otherwise'] clause to crimes that are similar to the example[] [crimes] themselves," *Begay*, 553 U.S. at 143, the canon is not limited to lists of *crimes*.  The question in all cases is whether "general words follow specific words in a statutory enumeration." Turning to § 1512(c), displayed above, the Court will notice that the emboldened portion of subsection (c)(1) contains these "specific words in a statutory enumeration": "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so. . ." § 1512(c)(1).  Those specific words are "follow[ed]" by "general words": the italicized words in subsection (c)(2), "or otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so. . ."  Thus, the "key feature in Section 924(e)(2)(B)(ii) at issue in *Begay*" was not "absent in Section 1512(c)(2)" and the Court was correct to apply *Begay*.

The Court's contrary holding in *Caldwell*, which attempted to distinguish *Begay*, was erroneous.  *Caldwell* held that "Section 1512(c)(1) contains a general prohibition on record spoliation; it is not a list of example crimes from which some common feature can be gleaned." *Caldwell*, 2021 U.S. Dist. LEXIS 243756, at *49.  In the first place, subsection (c)(1) is nothing if not a "list of example crimes." Secondly, if the Court intended to suggest that "alters, destroys, mutilates . . . a record" refers to one crime only (spoliation), that would still not account for subsection (c)(1)'s "conceal[ing] a record," which is a crime different from "spoliation." *E.g.*, *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (defining "spoliation" to mean "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation").  Thirdly, a "common feature can

be gleaned" from the example crimes in subsection (c)(1), namely, the feature that the *Caldwell* defendants repeatedly put to the Court but which went unacknowledged in its decision: all the crimes feature action designed to interfere with the integrity or availability of evidence in an official proceeding. Indeed, that "common feature" is spelled out explicitly in subsection (c)(1), since for all the listed crimes the defendant must intend "to impair the object's integrity or availability for use in an official proceeding." § 1512(c)(1).

Third, the government contends this Court's decision erred in finding that the "otherwise" clause in *Begay* was "crucial to that Court's decision" in *Begay*. ECF No. 75, p. 14. It was not the "otherwise" clause that did the work, the government argues; it was the "listed crime examples" and it was Section 924(e)(2)(B)(ii)'s history, "which showed that Congress . . . opted for the specific examples in lieu of a 'broad proposal' that would have covered offenses involving the substantial use of physical force. . ." *Id.* After all, the government argues, the *Begay* "majority '[could] not agree' with the government's argument that 'otherwise' is '*sufficient* to demonstrate that the [crime] examples do not limit the scope of the clause' because 'the word otherwise *can* (we do not say *must*, cf. *post* at [150-52] (Scalia, J. concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others.'" ECF No. 75, p. 14 (quoting *Begay*, 553 U.S. at 144). Declares the government: "A tertiary rationale responding to a party's argument where the majority refrains from adopting a definitive view of 'otherwise' cannot be described as 'crucial.'" *Id*.

The government's argument is mistaken. If *Begay* was "remarkably agnostic" on the significance of the term "otherwise," *United States v. Montgomery*, 2021 WL 6134591, at *11 (D.D.C. Dec. 28, 2021), the Supreme Court likely would not have later focused on Section 924(e)(2)(B)(ii)'s "or otherwise" phrase when characterizing the holding in *Begay*. Yet it did.

*Yates*, 574 U.S. at 546 (referring to *Begay*'s "'otherwise involves' provision"). Anyway, the government's "otherwise" arguments distract from *Begay*'s core holding: that the proximity of the listed crimes "burglary, arson, extortion, or crimes involving the use of explosives" to a general crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was sufficient to "indicate[] that [the 'otherwise' clause] covers only *similar* crimes, rather than *every* crime that "presents a serious potential risk of physical injury to another." *Begay*, 553 U.S. at 142 (emphasis original):

> If Congress meant the latter, i.e., if it meant the statute to be all-encompassing, it is hard to see why it would have needed to include the examples at all. Without them, [§ 924(e)(2)(B)(ii)] would cover *all* crimes that present a "serious potential risk of physical injury." *Ibid*. Additionally, if Congress meant [§ 924(e)(2)(B)(ii)] to include *all* risky crimes, why would it have included [§ 924(e)(2)(B)(i)]? A crime which has as an element the "use, attempted use, or threatened use of physical force" against the person (as [§ 924(e)(2)(B)(i)] specifies) is likely to create "a serious potential risk of physical injury" and would seem to fall within the scope of [§ 924(e)(2)(B)(ii)]. . . .
>
> These considerations taken together convince us that, "to give effect . . . to every clause and word" of this statute, we should read the examples as limiting the crimes that [§ 924(e)(2)(B)(ii)] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves.

*Begay*, 553 U.S. at 143 (emphasis original).

It is no different here. If Congress meant § 1512(c)(2) to cover any act that obstructs, influences or impedes an official proceeding, "it is hard to see why it would have needed to include" subsection (c)(1) at all. Indeed, it is hard to see why it would have needed the rest of § 1512. *Begay* made an identical point about what would happen to § 924(e)(2)(B)(i) if the government's construction of § 924(e)(2)(B)(ii) were correct. 553 U.S. at 143.

The government contends that "in the nearly 20 years since Congress enacted Section 1512(c)(2), no reported cases have adopted [*Miller*'s] interpretation, and for good reason." ECF No. 75, p. 15. It adds, "Every reported case—both in the courts of appeals and in district courts—

has interpreted Section 1512(c)(2)" in the manner the government proposes.  *Id.* at 16.  These points are quite misleading.  In fact, no court has ever held that § 1512(c)(2) reaches acts that are not intended to affect the integrity or availability of evidence in an official proceeding.  Every decision cited by the government concerns a defendant who took an action to impair evidence or make it unavailable in an official proceeding:

- *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (soliciting tips from corrupt law enforcement to evade surveillance constituted evidence sufficient for jury to find "efforts were out of a desire *to influence what evidence came before the grand jury*") (emphasis added);

- *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation evidence sufficient to find purpose was to "*thwart evidence from reaching the investigation*") (emphasis added);

- *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (attempting to obtain false statement *to be used in pending federal charges* sufficient to satisfy § 1512(c)(2));

- *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (making false statements "*directly to the grand jury itself*" sufficient to satisfy § 1512(c)(2)) (emphasis original);

- *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (false responses to interrogatories *that were filed in the official proceeding* sufficient to satisfy § 1512(c)(2));

- *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (making false statements to outside counsel "so that counsel *would provide misleading information to the grand jury*") (emphasis added).

The precedent "supporting" the government's argument is limited to the narrow point that some courts have construed § 1512(c)(2) to reach interference with non-object evidence such as testimony.  The government has not cited any case where the statute, titled "Tampering with a witness, victim, or an informant," has been interpreted to reach conduct that has *no connection to the integrity or availability of any kind of evidence*.  There is none.  But that is what the government needs to sustain its charge.

Just as the Second Superseding Indictment fails to "allege, let alone imply, that Miller took some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote," Mem. Op. at 29, it similarly fails to allege that Miller took such action with respect to *any* kind of evidence, object or non-object.  Second Superseding Indictment, ECF No. 61.  Thus, even if § 1512(c)(2) reached acts that interfere with the integrity or availability of non-object evidence, reconsideration would not be warranted on account of the bare allegation that Miller "push[ed] past officers to gain entrance to the building." Mem. Op. at 3.

### 4.  This Court's opinion was plainly correct on statutory context and history

This Court painstakingly and thoughtfully analyzed § 1512's structure, its historical development and its legislative history.  Mem. Op. at 20-28.  The government argues that the Court "erred in several respects" in applying those interpretative tools.  ECF No. 75, p. 17.  Those interpretive methods, it says, only "reinforce [the government's] straightforward interpretation of Section 1512(c)(2)'s scope." *Id.*  Here, the government's arguments merit even less attention.

First, this Court aptly observed that the government's construction of § 1512(c)(2) presumes Congress would "hide [an] elephant in [a] mousehole." Mem. Op. at 21.  The other subsections of the statute criminalize discrete conduct in narrow contexts; subsection (c)(1) continues that focus.  If subsection (c)(2) covered *any* act that obstructs, influences, or impedes an official proceeding, it would be the "only provision in § 1512 not to have a narrow focus." *Id.*  The Court might have added that it would also be the only provision in § 1512 that has no connection to the integrity or availability of evidence (object or non-object) in a proceeding.  The government contends that this "reasoning is inconsistent with *Yates*" because the Court alluded in that case to "broad proscriptions" to be found generally in Chapter 73 sections other than § 1519.  *Yates*, 574

at 541.  Of course, it is not clear what section, much less subsection, *Yates* was alluding to in this nonessential passage of a case not concerning § 1512.  The government adds that "Section 1512(c)(2) reaches more broadly precisely because other provisions in Section 1512 leave gaps that Section 1512(c)(2) fills." ECF No. 75, p. 18.  The Court will notice that the government does not explain where those "gaps" lie among Section 1512(a), (b), (c)(1), and (d).

Second, the Court held that the government's construction of § 1512(c)(2) would make surplusage of "at least eleven subsections" of § 1512.  Mem. Op. at 21-22.  The government rejoins that the Court should not "worry," as the government's construction of subsection (c)(2) would not "'entirely subsume numerous provisions within the chapter.'" *Id.* at 22 (quoting *Sandlin*, 2021 WL 5865006, at *8).  Here, Miller's counterarguments make themselves.  The canon against surplusage holds that "all words in a statute are to be assigned meaning, and that *nothing* therein is to be construed as surplusage.'" *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (quoting *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)) (emphasis added).  "[T]he canon . . . is strongest when an interpretation would render superfluous *another part* of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013) (emphasis added).  Thus, that the government's construction of § 1512(c)(2) would not "entirely subsume numerous provisions within the chapter" does not relieve the Court of its surplusage "worry." The government does not attempt to show the Court was incorrect in concluding that at least eleven subsections of § 1512 would be rendered superfluous by the government's construction of subsection (c)(2).  By contrast, if § 1512(c)(2) is limited to acts that affect the

integrity or availability of evidence in a proceeding, none of those other subsections are rendered superfluous.[3]

Third, the Court determined that the legislative history of § 1512(c) in the Sarbanes-Oxley Act of 2002 is littered with legislators' statements and reports "regarding the focus of the proposed new subsection on documents and document-shredding." Mem. Op. at 27.  The government neither contests that characterization of the history, nor points to contrary suggestions in the history that support its construction of subsection (c)(2).   Indeed, it concedes that "the legislators who enacted Section 1512(c) . . . undoubtedly had document shredding foremost in mind. . ." ECF No. 75, p. 20.

Instead, the government focuses solely on the Court's "suggest[ion] that Congress would have had no reason to add Section 1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the latter provision" were construed to cover any act that obstructs, impedes or interferes with an official proceeding.  ECF No. 75, p. 19.  The government hazards such a reason:

> Section 1512(a)(2)(B) prohibits the use or threatened use of physical force against "any person" with the intent to "cause or induce any person" to take one of four actions, including "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] an object with intent to impair the integrity or availability of the object for use in an official proceeding." 18 U.S.C. § 1512(a)(2)(B)(ii). But as the Court noted. . . unlike Section 1512(a)(2)(B), Section 1512(c) aimed generally to impose "direct" liability for obstructive conduct that was not directed at intimidating or influencing another person. Understood in that light, Section 1512(a)(2)(B) operates harmoniously with both subsections in Section 1512(c): Section 1512(a)(2)(B)(ii) reaches a defendant's use of force or threatened use of force at *another person* in order to cause that person to destroy documents in connection with an official proceeding; Section 1512(c)(1) reaches a defendant's direct destruction of documents in connection with an official proceeding; and Section 1512(c)(2) reaches a

---

[3] Not to be outdone in a surplusage contest, the government contends that *the Court's* construction creates surplusage. "More troubling, by interpreting Section 1512(c)(2) to require 'some action with respect to a document,' the Court risks rendering Section 1512(c)(2) itself superfluous in light of the broad ban on evidence spoliation in Section 1512(c)(1)." ECF No. 75, p. 18.  Because the Court held that subsection (c)(2) requires an act affecting the integrity or availability of evidence in a proceeding in a different manner than the acts in (c)(1), it is not clear what "risk" the government is vaguely alluding to.  In any case, even if the Court's construction created the "risk" of surplusage in one subsection that would be less than the eleven subsections rendered superfluous by the government's construction.

defendant's non-document-related conduct that obstructs or impedes an official proceeding.

ECF No. 75, pp. 19-20.

It is not hard to see that the government has failed to show why Congress would add Section 1512(a)(2)(B) three months after enacting Section 1512(c)(2) if the government's construction of the latter were correct.  In the government's example, if "Section 1512(c)(2) reaches a defendant's non-document-related conduct that obstructs or impedes an official proceeding," then it would also necessarily encompass "a defendant's use of force or threatened use of force at *another person* in order to cause that person to destroy documents in connection with an official proceeding." ECF No. 75, p. 19.  Thus, if § 1512(c)(2) covers any act that obstructs, influences or impedes an official proceeding, there was no need for Congress to enact Section 1512(a)(2)(B)(ii) three months later.

Fourth, the government contends that the Court's construction of § 1512(c)(2) would "lead to absurd results." ECF No. 75, p. 20. The Court's interpretation "would appear, for example, not to encompass an individual who seeks to 'obstruct[], influence[], or impede[]' a congressional proceeding by explicitly stating that he intends to stop the legislators from performing their constitutional and statutory duties to certify Electoral College vote results by 'dragging lawmakers out of the Capitol by their heels with their heads hitting every step . . .'" *Id.* at 20-21 (citing *United States v. Reffitt*, 21-cr-32-DLF).  This is quite a misleading argument.  To begin with, that subsection (c)(2) specifically would not "encompass [such] an individual" does not make that result "absurd" because at least one other subsection of § 1512 would apply to the posited scenario. § 1512(d)(1) (criminalizing "harass[ing] another person and thereby hinder[ing], delay[ing], prevent[ing], or dissuad[ing] any person from . . . attending or testifying in an official proceeding"). Indeed, the Court in *Reffitt*, on which the government's misleading hypothetical is based, beseeched the government to substitute a § 1512(d)(1) charge for its § 1512(c)(2) charge.  Yet the

government refused, almost certainly because subsection (d)(1) has a three-year statutory sentencing maximum, unlike the 20-year maximum in subsection (c)(2), which the government insists on securing.  In addition, it would not be an "absurd" outcome for an obstruction of justice charge not to apply to a person on the basis that he "explicitly state[ed] that he intends to stop [] legislators" from doing something, because, in the absence of additional facts, that would be to prosecute the person for protected speech.  *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

### III.       Pretrial dismissal was not "premature"

The government's indictment must contain a "definite written statement of *the essential facts* constituting the offense charged. . ." Fed. R. Crim. P. 7(c)(1) (emphasis added).  Therefore, a "valid indictment must: (1) allege the essential facts constituting the offense, (2) allege each element of the offense, so that fair notice is provided, and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Sunia*, 643 F. Supp. 2d 51, 77 (D.D.C. 2009).  "[I]n order to satisfy [the Fifth Amendment's] purpose of giving the defendant notice of the charge against him the indictment must allege the essential elements of the offense." *United States v. Haldeman*, 559 F.2d 31, 123 (D.C. Cir. 1976).

Another function of Rule 7 is "serv[ing] the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).  When the evidence on which a defendant is tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury, a constructive amendment occurs.  *Stirone v. United States*, 361 U.S. 212, 217 (1960).

This Court held that "[n]othing in Count Three (or the Indictment more generally) alleges, let alone implies, that Miller took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence Congress's certification of the electoral vote."

Mem. Op. at 29.  The government now contends that even if its interpretation of § 1512(c)(2) is erroneous, the Second Superseding Indictment is still valid under Rule 7 and may not be dismissed. ECF No. 75, pp. 21-24.  That makes no sense.

The Indictment does not allege facts that the Court has deemed "essential facts constituting the offense." Thus, it does not comport with Rule 7.  *Sunia*, 643 F. Supp. 2d at 77.  It does not put Miller on notice of the facts on which he will be tried and exposes him to a second prosecution for the same offense.  In addition, if the government did not present the essential facts to the grand jury, Miller's presentment right has been violated, which is a "fatal error."  *Stirone*, 361 U.S. at 217.  On many occasions Courts in this district have found indictments insufficient under Rule 7 for not alleging essential facts such as these. *E.g.*, *United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) (indictment fails to allege all overt acts in which any defendant participated so that each defendant may understand the government's view of his alleged role in the conspiracy); *United States v. Ramirez*, 54 F Supp. 2d 25, 90 (D.D.C. 1999) (same); *United States v. Brown*, 2007 U.S. Dist. LEXIS 49169, *45 (D.D.C. July 9, 2007) (indictment failed to allege "specific alleged actions and specifically worded false statements on which the government shall rely in proving its case"); *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007) (indictment failed to identify proceeds allegedly used in support of criminal enterprise); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (indictment failed to allege "which [false] statements [defendant] has to defend against . . ."); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (indictment failed to allege what defendant solicited and received because of official acts performed and to be performed by defendant).

The government asserts that the Court's "conclusion that only the narrower theory is a viable basis for conviction should not result in dismissal of Count Three; instead, the Court would

properly enforce that limitation by permitting conviction on that basis alone." ECF No. 75, p. 22. It adds that, at trial, the government "could" prove that the Certification proceeding "operates through a deliberate and legally prescribed assessment of ballots, lists, certificates, and potentially, written objections." ECF No. 75, p. 23.  Other evidence "could" establish that Miller's conduct had the "'natural and probable effect,' *Aguilar*, 515 U.S. at 599" of "destroying or imperiling the ballots and other paraphernalia from the Certification proceeding." *Id.* at 24.  The government does not understand.  It must present the essential facts constituting the offense to the grand jury and those facts must be *alleged in the Indictment* to put Miller on notice of the charge and to prevent double jeopardy.  The Indictment does not allege any action Miller took with respect to a document, record or other object in order to corruptly obstruct, impede, or influence the joint session of Congress.

Even if the government were correct that its Indictment were somehow valid under Rule 7 despite the *Miller* decision, reconsideration would not be warranted because "harm or injustice" does not result to the government from dismissal.  *Hassanshahi*, 145 F. Supp. 3d at 80.  If the government is correct that it can proceed to trial in this case despite the Court's decision, it could obtain a new indictment that pleads the essential facts required by *Miller*.

## CONCLUSION

For all the foregoing reasons, the government's motion for reconsideration should be denied.

Respectfully submitted,


<u>/s/ F. Clinton Broden</u>
F. Clinton Broden
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

## <u>CERTIFICATE OF SERVICE</u>

I, F. Clinton Broden, certify that, on April 28, 2022, I caused a copy of the above document

to be served by electronic means on:

Elizabeth C. Kelley
United States Attorney's Office
555 4th Street, N.W.
Washington, DC 20350

/s/ F. Clinton Broden
F. Clinton Broden