## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **No. 21-CR-119 (CJN)** |
| | : | |
| **GARRET MILLER,** | : | |
| **Defendant.** | : | |

## GOVERNMENT'S REPLY IN SUPPORT OF RECONSIDERATION OF THE COURT'S RULING DISMISSING COUNT THREE OF THE INDICTMENT

Miller fails to overcome the compelling reasons that this Court should reconsider its decision concluding that a defendant violates 18 U.S.C. § 1512(c)(2) only when that individual "take[s] some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding" and dismissing Count Three on the ground that no allegations showed that defendant Garret Miller took any such action. Memorandum Opinion ("*Miller*" or "Mem. Op."), ECF 72, at 28-29. Reconsideration of the substantive ruling in *Miller* is appropriate because that ruling is inconsistent with decisions from every other judge on this Court to have considered the issue. That inconsistency means proving a violation of Section 1512(c)(2) requires additional facts in this case (and other Section 1512(c)(2) cases in front of this Court) but not in any case before any of the other judges of this Court. Moreover, with one exception, the Court's ruling in *Miller* did not address the opinions from other judges of this Court, some of whom have explicitly disagreed with this Court after *Miller* issued. Reconsideration of the Court's disposition is independently appropriate because, even if the Court adheres to its substantive limitation on Section 1512(c)(2)'s scope, dismissal is not the proper means to enforce that limitation.

## I.      Reconsideration is appropriate here.

This Court should reconsider its decision in *Miller* to "correct" the Court's "own alleged errors" and to "prevent[] unnecessary burdens" on the court of appeals.  *United States v. Ibarra*, 502 U.S. 1, 5 (1991) (per curiam).   Reconsideration is additionally appropriate here given a "significant change in the law . . . since the submission of the issue."  *United States v. Caldwell*, 21-cr-28, 2022 WL 203456, at *1 (D.D.C. Jan. 24, 2022) (internal quotation marks omitted).  As noted in the government's reconsideration motion, every other judge of this Court to consider this issue has concluded that Section 1512(c)(2) "prohibits obstruction by means *other than* document destruction."  *United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006, at *5 (D.D.C. Dec. 10, 2021) (Friedrich, J.); *see* ECF 75 at 5-6 (citing cases).  At the time the reconsideration motion was filed, one judge had disagreed with *Miller* in a footnote, *United States v. Puma*, 21-cr-454, 2022 WL 823079, at *12 n.4 (D.D.C. Mar. 19, 2022) (Friedman, J.), and another judge indicated her disagreement with *Miller* orally when delivering a "brief ruling" denying a defendant's post-trial motion for judgment of acquittal, *see United States v. Reffitt*, 21-cr-32, Trial Tr. 1498, 1502-05 (Mar. 8, 2022) (Friedrich, J.) (attached as Exhibit A to the reconsideration motion).  Since the reconsideration motion was filed, judges have continued to reject *Miller*'s reasoning.  *See, e.g.*, *United States v. Hughes*, No. 21-cr-106, Minute Order denying motion to dismiss count charging Section 1512 (D.D.C. May 9, 2022) (Kelly, J.) (rejecting the "narrow reading" of Section 1512(c)(2) and agreeing with an opinion that "directly responded to and rejected the logic employed in *Miller*"); *United States v. Hale-Cusanelli*, No. 21-cr-37, Transcript of motion to dismiss hearing at 4-8 (D.D.C. May 6, 2022) (McFadden, J.) (attached as Exhibit D); *United States v. Reffitt*, No. 21-cr-32, 2022 WL 1404247, at *7-*10 (D.D.C. May 4, 2022) (Friedrich, J.);  *United States v. McHugh*, No. 21-cr-453, 2022 WL 1302880, at *2-*13 (D.D.C. May 2, 2022) (Bates, J).

Although none of those rulings represents "controlling law," *McAllister v. District of Columbia*, 53 F. Supp. 3d 55, 59 (D.D.C. 2014) (internal quotation marks omitted), it is surely "significant" that this Court stands as the sole outlier among all the judges on this Court to have ruled on the issue both before and after *Miller* issued.[1]

Two related factors militate in favor of reconsideration of the Court's substantive conclusion about the scope of Section 1512(c)(2).  First, the Court in *Miller* addressed only one of the contrary opinions from judges on this Court.  *See* Mem. Op. 16, 18 n.8, 22, 26 (citing *United States v. Montgomery*, No. 21-cr-46, 2021 WL 6134591 (D.D.C. Dec. 28, 2021)).  Reconsideration would permit the Court the opportunity to consider in full the "persuasive authority" issued by other judges of this Court.  *See United States v. Drummond*, 98 F. Supp. 2d 44, 50 n.5 (D.D.C. 2000) (noting that within-Circuit district court cases are not binding but "[o]f course" are "persuasive authority").  Second, reconsideration resulting in an interpretation consistent with other judges of this Court would ensure that all defendants charged under Section 1512(c)(2) are treated alike until the court of appeals has an opportunity on post-conviction review to consider the merits of their challenges to the statute's scope.

Finally, reconsideration is independently proper here to consider the second ground on which the government seeks relief, namely, that dismissal is not the proper remedy even if the Court does not reconsider its substantive ruling.  Reconsideration is appropriate where a court may have "overlooked" a "matter[]" that "might reasonably be expected to alter the conclusion reached by the Court."  *Bolden v. Ashcroft*, 515 F. Supp. 2d 127, 135 (D.D.C 2007) (internal quotation marks omitted).  The government preserved the argument that the Court should not dismiss Count

---

[1] *Miller* is incorrect when he claims (Opp. 6) that the government "reargues the same lenity theories" in the reconsideration motion.  That motion addresses the flaws in this Court's statutory analysis and does not rely on any "lenity theories."  *See infra*, note 2.

Three even if it interpreted Section 1512(c)(2) to require a nexus to documents or records, *see* ECF 75 at 23 n.7, and Miller does not argue otherwise. But the Court did not benefit from detailed briefing or argument on that issue. A reconsideration motion is thus appropriate to address an issue the parties did not fully present to the Court and to identify pertinent legal authorities the Court may not have considered.

## II.   The Court's lenity ruling is flawed.

Because the "traditional tools of statutory interpretation" yield a "superior interpretation" that Section 1512(c)(2) "prohibits acts which obstruct, influence, or impede an official proceeding 'in a different way' from the interference with documents or evidence covered by paragraph (c)(1), regardless of how that obstruction is accomplished," *McHugh*, 2022 WL 1302880, at *12, resort to the rule of lenity is unnecessary. *See* ECF 75 at 8-21. None of Miller's counterarguments in support of this Court's interpretation has merit.

First, Miller contends (Opp. 7-8) that "the government has nothing to say" (*id*. at 7) about the Court's "obligation to exercise restraint" under cases such as *United States v. Aguilar*, 515 U.S. 593 (1995). *See* Mem. Op. 7-9. But the principle of restraint announced in *Aguilar* does not dictate the narrow interpretation of Section 1512(c)(2)'s scope that Miller advocates and the Court adopted. In *Aguilar*, for example, the Supreme Court adopted a "nexus" requirement for the omnibus clause in 18 U.S.C. § 1503; that same nexus requirement already restrains the reach of Section 1512(c)(2), entirely separate from the Court's ruling at issue here. *See* ECF 75 at 16. Similarly, the term "corruptly" in Section 1512(c)(2) incorporates a requirement that a defendant must use unlawful or wrongful means or act with an unlawful or wrongful purpose, or both. *See Reffitt*, 2022 WL 1404247, at *7. Those limiting features in Section 1512(c)(2) ensure that the statute does not take on "'breathtaking'" (Opp. 7) scope. *See Montgomery*, 2021 WL 6134591, at

4

*20 (noting that Section 1512(c)(2)'s *mens rea* requirement "draws the line between lawful and criminal obstruction or influence of a congressional proceeding").[2]

Second, Miller argues (Opp. 10-18) that the government "misunderstands" (*id.* at 10) this Court's textual analysis of Section 1512(c)(2).  But the issue is not one of misapprehension; rather, the government (and every other judge on this Court to have considered the issue) understands but disagrees with the Court's (and Miller's) interpretation of Section 1512(c)(2)'s reach.  Miller claims first (Opp. 10-11) that "otherwise" as used in the statute is surplusage unless understood to mean "'in a different, but fundamentally similar, way.'"  *See McHugh*, 2022 WL 1302880, at *4. But Miller provides no sound reason why that non-intuitive understanding of "otherwise" should prevail over the far more "natural interpretation" that "otherwise" means "in a different way," *id.*, or, as applied to the interplay of Sections 1512(c)(1) and (c)(2), "by means *other than* document destruction," *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021) (internal quotation marks omitted); *see* ECF 75 at 10-12.

Relatedly, Miller invokes (Opp. 12-16) the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), to support his reading of "otherwise."  Miller faults (Opp. 13) the government's efforts to distinguish the residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), from Section 1512(c)(2) as focused on "visual formatting" not "grammar."  But Section 1512(c)(2) is "grammatically distinct from" Section 1512(c)(1) because, although the two sections share a subject and adverb ("whoever corruptly"), Section 1512(c)(2) "contains an independent list of verbs that take a different object ('any official proceeding') from

---

[2] Miller takes issue (Opp. 8-10) with what he understands to be the government's argument that the Court erred by finding "serious" but not "grievous" ambiguity.  But the reconsideration motion does not depend on a difference (if any) between "serious" ambiguity and "grievous" ambiguity. *See* ECF 75 at 6-7 ("[T]here is no genuine—let alone *'grievous' or 'serious'*—ambiguity.") (emphasis added).

the verbs" in Section 1512(c)(1).  *McHugh*, 2022 WL 1302880, at *5.  It follows that Section 1512(c)(2) is a poor fit for application of the *ejusdem generis* canon that *Begay* applied to the ACCA residual clause and that Miller urges (Opp. 13-14) be applied to Section 1512(c).  *See McHugh*, 2022 WL 1302880, at *5 (explaining that the *ejusdem generis* canon on which *Miller* relied is "irrelevant" because rather than the "'A, B, C, or otherwise D'" structure found in the ACCA residual clause, Section 1512(c) "follows the form '(1) A, B, C, or D; or (2) otherwise E, F, or G'").

In short, "*Begay* cannot bear the weight" that *Miller* "assigns to it."  *McHugh*, 2022 WL 1302880, at *5.  Not only is Section 1512(c)(2) grammatically and structurally different than the ACCA residual clause, *Reffitt*, 2022 WL 1404247, at *8; *McHugh*, 2022 WL 1302880, at *5, but the "remarkably agnostic" view on "otherwise" that the Supreme Court adopted in *Begay* for purposes of the ACCA residual clause, *Montgomery*, 2021 WL 6134591, at *11, suggests, if anything, that "*the government's* interpretation of 'otherwise' is the word's more natural reading," *McHugh*, 2022 WL 1302880, at *5 n.9.  And notwithstanding that *Begay*'s atextual engrafting of a requirement of "purposeful, 'violent,' and 'aggressive'" conduct, 553 U.S. at 144-45, failed to "bring[] clarity" to the residual clause, *Johnson v. United States*, 576 U.S. 591, 600 (2015), Miller nonetheless urges (Opp. 16) the Court to focus on *Begay*'s (now abrogated) "core holding."  That approach would likely engender "the very ambiguity" this Court "purports to avoid."  ECF 75 at 15-16.

Miller next argues (Opp. 16-17) that court of appeals' decisions support his interpretation of Section 1512(c)(2) because none of those decisions has held that Section 1512(c)(2) "reaches acts that are not intended to affect the integrity or availability of evidence in an official proceeding."  That argument is incorrect.  *See Montgomery*, 2021 WL 6134591, at *17

("Defendant[s] are mistaken in positing that the Section 1512(c)(2) caselaw uniformly involves efforts to falsify or interfere with the flow of evidence.") (citing *United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007)).  Furthermore, that argument defends a limiting interpretation of Section 1512(c)(2) that is different from that the Court in fact adopted in *Miller*.  The Court concluded that liability attaches under Section 1512(c)(2) not if a defendant takes required action "with respect to *any* kind of evidence, object or non-object," Opp. 18 (emphasis in original), but rather, only where an individual "take[s] some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding."  Mem. Op. 28. No published decision from any court has ever read into Section 1512(c)(2) such a nexus-to-documents limitation.  *See* ECF 75 at 15 & n.3.[3]

Miller's reliance (Opp. 18-22) on Section 1512(c)(2)'s "statutory context and history" fares no better.  In Miller's view (Opp. 18), the Court correctly treated a broader interpretation of Section 1512(c) as "'[an] elephant'" in a "'mousehole.'"  But the "'mouseholes' canon surely does not instruct courts to second-guess the plain meaning of a statute just because the judge can imagine other ways it could have been organized."  *See McHugh*, 2022 WL 1302880, at *8 n.14.  In any event, Congress's placement of Section 1512(c)(2) among the "broad proscriptions," *Yates v. United States*, 574 U.S. 528, 541 (2015) (plurality opinion), in Section 1512 generally, and its specific placement at the end of the three provisions (Sections 1512(a), 1512(b), and 1512(c)) defining at least 20-year felonies but before the only other provision in Section 1512 that defines

---

[3] As the motion for reconsideration noted, such a limitation has been applied only in two unpublished district court cases from outside the circuit.  *See* ECF 75 at 15 & n.3 (citing *United States v. Singleton*, No. 06-cr-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006); *United States v. Hutcherson*, No. 05-cr-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006)); *see also McHugh*, 2022 WL 1302880, at *2 (likening the interpretation in *Miller* to the interpretations adopted in *Singleton* and *Hutcherson*).  Neither Miller nor this Court, however, have even cited those cases in support of their position.

a less serious crime (Section 1512(d)), is fully consistent with its role as a catch-all provision designed to reach the most serious obstructive conduct not already encompassed by other obstruction prohibitions. *See McHugh*, 2022 WL 1302880, at *8 n.14.

Miller largely repeats (Opp. 18-19) this Court's discussion of "substantial superfluity problems" (Mem. Op. 21) but overlooks the "simple" explanation: when Congress enacted the "direct obstruction" provision in Section 1512(c)(2), *see* ECF 75 at 19 n.5, that provision necessarily included the "indirect obstruction prohibited" in the rest of Section 1512. *McHugh*, 2022 WL 1302880, at *8. As Judge Bates explained, Congress in Section 1512(c)(2) did not "*duplicate* pre-existing provisions . . . but instead *expanded* the statute to include additional forms of obstructive conduct, necessarily creating overlap with the section's other, narrower prohibitions." *Id.* Congress was not required to repeal those pre-existing prohibitions and rewrite Section 1512 "to create a single, blanket obstruction offense" just to avoid overlap. *Id.* at *9. In other words, Section 1512(c)(2) "creates only explicable and indeed inevitable overlap rather than outright redundancy," such that the "purported superfluity" in Section 1512 "simply does not justify displacing the provision's ordinary meaning." *Id.* at *10. Moreover, as Judge Bates also correctly observed, "[e]ven" the Court's "narrower interpretation" of Section 1512(c)(2) would give rise to superfluity concerns; therefore the canon against surplusage, which "merely favors that interpretation which *avoids* surplusage, not the construction substituting one instance of superfluous language for another," does not counsel in favor of the Court's interpretation. *Id.* at *9 (quoting *United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013)); *see* ECF 75 at 18-19.

Miller also draws support (Opp. 20-21), as this Court did (Mem. Op. 23-28), from Section 1512's historical development and legislative history. As an initial matter, "neither sheds much light" on Section 1512(c)(2)'s scope. *Reffitt*, 2022 WL 1404247, at *9. What illumination

historical context and legislative history does offer favors the view that Section 1512(c)(2) "creates direct liability for an individual's obstructive acts beyond those relating to physical evidence." *Id.* For example, the relevant verbs in Section 1512(c)(2)—"obstruct[]," "influence[]," and "impede[]"—were "likely adapted" from the "expansive prohibitions" on obstruction found in 18 U.S.C. § 1503(a) and 18 U.S.C. § 1505. *See McHugh*, 2022 WL 1302880, at *10. That "broader reading," moreover, finds support in floor statements of the lawmakers that enacted Section 1512(c)(2). *See id.* at *12. And to the extent Congress's enactment of Section 1512(a)(2)(B) just three months after the enactment of Section 1512(c) might tend to undermine the plain-language interpretation of Section 1512(c)(2), *see* Opp. 20-21, the fact that Section 1512(a)(2) was "written and first approved" a year earlier than it was enacted—and therefore nine months before Section 1512(c)(2) was enacted—"somewhat undermines the inference" based on Section 1512(a)(2) that this Court drew in *Miller* about Section 1512(c)(2)'s scope. *McHugh*, 2022 WL 1302880, at *9 n.17.

Finally, Miller disagrees (Opp. 21-22) that his interpretation leads to absurd results. In part, his argument appears to be that another provision, Section 1512(d)(1), which prohibits "intentionally harass[ing] another person" and thereby hindering, delaying, or preventing any person from "attending or testifying in an official proceeding" and which carries a three-year maximum sentence, would cover the non-document related conduct that the government contends that Section 1512(c)(2) otherwise reaches. But Section 1512(d)(1) does not fully capture the conduct at issue in this case (or in many of the cases stemming from the events at the Capitol on January 6, 2021), which was much more extreme than "harass[ment]." Furthermore, Section 1512(d)(1)'s focus on the type of indirect obstruction that Congress moved away from when adopting Section 1512(c) would arguably not cover someone who sought to stop the proceeding

itself without necessarily targeting another person.  More to the point, however, the availability of Section 1512(d)(1) does not illustrate that *Miller* offers a sensible interpretation of Section 1512(c)(2).  If Congress in Section 1512(c)(2) endeavored to create the narrow document-focused provision that *Miller* and this Court suggest, it "did a particularly poor job of drafting" because it would have "effectuated [its] intent in a way that is singularly susceptible to misinterpretation, as evidenced by the overwhelming majority of judges who have construed § 1512(c)(2) broadly." *McHugh*, 2022 WL 1302880, at *11.  And, as Judge Moss has observed, Congress could readily have enacted language that aligns with the narrower view that *Miller* advocates.  *See Montgomery*, 2021 WL 6134591, at *12 (Congress could have enacted a prohibition that covers anyone who "'engages in conduct that otherwise impairs the integrity or availability of evidence or testimony for use in an official proceeding'").  It would be anomalous to impose a limitation on the more expansive language that Congress in fact adopted.

### III.   Pretrial dismissal is premature.

Reconsideration is appropriate even if the Court adheres to its interpretation of Section 1512(c)(2)'s scope because dismissal of Count Three would be premature.  Simply stated, Count Three's allegation "clears th[e] low bar," *see United States v. Sargent*, No. 21-cr-258, 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022) (Hogan, J.), to sufficiently plead a violation of Section 1512(c)(2).  It tracks the "operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  It identifies the official proceeding in question, namely, the Certification of the Electoral College vote, and specifies the constitutional and statutory authorities underpinning that proceeding.  Those provisions, in turn, identify the various ways in which documents and other records are used during the official proceeding.  That is all that is required in an indictment.  *See United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]he validity of an indictment 'is not a question of whether it could have

been more definite and certain.'") (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).

Miller appears to argue (Opp. 23) that Count Three is deficient because it lacks certain "essential facts." Although some cases involve a crime "that must be charged with greater specificity," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007), Section 1512(c)(2) is not one of them. The paradigmatic example comes from *Russell v. United States*, 369 U.S. 749 (1962), where the defendant was charged under a statute that makes it a crime for a witness called before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." 2 U.S.C. § 192. The indictment's failure in *Russell* to identify the subject of the congressional hearing rendered it insufficient because "guilt" under that statute "depend[ed] so crucially upon such a specific identification of fact." *Russell*, 369 U.S. at 764. That feature is not present here because guilt under Section 1512(c)(2) does not depend on any such "specific identification of fact." *See Resendiz-Ponce*, 549 U.S. at 110 (not applying *Russell* to the illegal re-entry statute at issue in that case because guilt did not turn upon "'a specific identification of fact'"); *Williamson*, 903 F.3d at 131 (not applying *Russell* to statute criminalizing threats against federal officers); *see also United States v. Apodaca*, 275 F. Supp. 3d 123, 153-56 & n.17 (D.D.C. 2017) (not applying *Russell* to statute criminalizing use of firearms in connection with drug trafficking crimes).[4] Count Three sufficiently alerts Miller to the charge against him and fully encompasses the narrower interpretation of Section 1512(c)(2). *See* ECF 75 at 22-24.

Miller's argument also overlooks the proper channel to enable him to obtain the putatively "essential" facts he seeks to discover: a bill of particulars. *See* Fed. R. Crim. P. 7(f). To be sure,

---

[4] Miller's belated speculation (Opp. 23) that the grand jury did not hear the "essential facts" lacks merit. Count Three's reference to the laws undergirding the Certification proceeding—laws that make clear that that proceeding involves the use of documents—ensures that the grand jury found probable cause to conclude that Miller had "taken some action with respect to a document, record, or other object," Mem. Op. 28, in order to corruptly obstruct the official proceeding.

a "bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770. But a valid indictment—such as the indictment in this case—"can be clarified through a bill of particulars." *United States v. Hillie*, 227 F. Supp. 3d 57, 81 (D.D.C. 2017). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Saffarinia*, 422 F. Supp. 3d 269, 274 (D.D.C. 2019) (quoting *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)); *see United States v. Reffitt*, No. 21-cr-32, Minute Order (D.D.C. Nov. 19, 2021) (ordering government to file a bill of particulars "that sets forth the means by which" the defendant "'corruptly . . . obstruct[ed], influence[d], or impede[d] any official proceeding'"). Indeed, every case that Miller cites for the proposition (Opp. 23) that judges on this Court "have found indictments insufficient under Rule 7 for not alleging essential facts" involved not the dismissal of the count in question but instead a bill of particulars. *See, e.g.*, *United States v. Bazezew*, 783 F. Supp. 2d 160, 167-68 (D.D.C. 2011); *United States v. Palfrey*, 499 F. Supp. 2d 34, 51-52 (D.D.C. 2007); *United States v. Ramirez*, 54 F. Supp. 2d 25, 29-30 (D.D.C. 1999); *United States v. Trie*, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998); *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997); *see also United States v. Brown*, No 07-cr-75, 2007 WL 2007513, at *16 (D.D.C. July 9, 2007). To the extent Miller is entitled to additional information about Count Three "to adequately prepare for and avoid surprise at trial," *Bazezew*, 783 F. Supp. 2d at 167, the proper avenue to obtain that relief is through a bill of particulars, not dismissal.

## IV.    Conclusion

For the foregoing reasons, the Court should reconsider its ruling and reinstate Count Three.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:  */s/ James I. Pearce*
      James I. Pearce
      Appellate Counsel to the Capitol Siege
      Section
      United States Attorney's Office
      NC Bar No. 44691
      555 Fourth Street, N.W.
      Washington, DC 20530
      James.Pearce@usdoj.gov
      (202) 532-4991

      */s/ Stephen J. Rancourt*
      STEPHEN J. RANCOURT
      Assistant United States Attorney
      District of Columbia Detailee
      Texas Bar Number 24079181
      Benjamin E. Kringer
      District of Columbia Detailee
      DC Bar No. 482852
      (806) 472-7398
      Stephen.Rancourt@usdoj.gov


May 12, 2022