1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,
                                        Criminal Action
4              Plaintiff,              No. 1:21-cr-0037

5          vs.                          Washington, DC
                                        May 6, 2022
6    TIMOTHY LOUIS HALE-CUSANELLI,
                                        10:01 a.m.
7              Defendant.
     _____/
8

9        TRANSCRIPT OF PRETRIAL CONFERENCE & ARRAIGNMENT
          BEFORE THE HONORABLE TREVOR N. McFADDEN
10              UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12

13   For the Government:    KAREN SEIFERT
                            KIMBERLY PASCHALL
                            KATHRYN FIFIELD
14                             U.S. Attorney's Office for the
                               District of Columbia
15                             555 Fourth Street, NW
                               Washington, DC 20530
16

17   For the Defendant:    JONATHAN CRISP
                             Crisp & Associates, LLC
18                           4031 North Front Street
                             Harrisburg, PA 17110
19

20

21

22

23   Court Reporter:       JEFF M. HOOK
                             Official Court Reporter
                             U.S. District & Bankruptcy Courts
24                           333 Constitution Avenue, NW
                             Room 4700-C
25                           Washington, DC 20001

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Your Honor, this is criminal case

3    21-37, United States of America vs. Timothy Cusanelli.

4    Counsel, please come forward to identify yourselves for the

5    record, starting with the Government.

6          **MS. SEIFERT:**  Good morning, Your Honor.  Karen

7    Seifert for the United States.  With me at counsel table is

8    Kate Fifield and Kim Paschall.

9          **THE COURT:**  Good morning, ladies.

10         **MR. CRISP:**  Good morning, Your Honor.  Jonathan

11   Crisp on behalf of Timothy Hale-Cusanelli.

12         **THE COURT:**  Good morning, gentlemen.  And I should

13   say in light of the CDC's recent directives on COVID, I

14   don't require people to wear masks in my courtroom.

15   Obviously you're welcome to do so if you wish.

16         I wanted to address the two outstanding motions in

17   limine, and then talk about our proposed -- the proposed

18   voir dire questions.  Anything else that the Government

19   believes we should be handling today?

20         **MS. SEIFERT:**  No, Your Honor.

21         **THE COURT:**  Okay.  And Mr. Crisp, does that all

22   make sense to you?

23         **MR. CRISP:**  It does, Your Honor.  Thank you.

24         **THE COURT:**  Okay.  Before the Court is

25   Mr. Hale-Cusanelli's motion to dismiss count one of the

1    superseding indictment, and that's ECF number 62.  The Court

2    will deny the motion for the following reasons.  First,

3    Mr. Hale-Cusanelli argues that any alleged obstruction of

4    the certification of the Electoral College vote does not

5    constitute an official proceeding.  The Court rejects this

6    argument, because 18 U.S.C. 1515 defines official proceeding

7    for purposes of 1512(c) as "a proceeding before Congress."

8         Central to this definition is the meaning of the

9    word proceeding.  In the lay sense, proceeding means "the

10   carrying on of an action or series of actions."  That's from

11   Oxford English dictionary, third edition, 2007.  In the

12   legal sense, proceeding means "the business conducted by a

13   court or other official body; a hearing."  That's from

14   Black's Law Dictionary, 11th edition, 2019.

15        Under either the lay or legal definition, the

16   certification of the Electoral College vote is an official

17   proceeding because it "has the trappings of a formal hearing

18   before an official body.  There is a proceeding officer --

19   "presiding officer," excuse me, "a process by which

20   objections can be heard, debated, and ruled upon, and a

21   decision -- the certification of the results -- that must be

22   reached before the session can be adjourned.  Indeed, the

23   certificates of electoral results are akin to records or

24   documents that are produced during judicial proceedings, and

25   any objections to these certificates can be analogized to

1   evidentiary objections."  That's from United States vs.

2   Sandlin, 2021 WL 5865006 at *4 from this district

3   December 10th, 2021.  Additionally, the Court notes that

4   every other judge in this district to consider this issue

5   has reached the same conclusion.

6          Second, Mr. Hale-Cusanelli argues that section

7   1512(c)(2)'s prohibition is limited to obstruction tied to

8   documentary or tangible evidence.  The Court disagrees for

9   the following reasons.  Because the statute does not define

10  obstruct, the Court looks "first to the word's ordinary

11  meaning."  That's from Schindler Elevator Corp. vs. United

12  States ex rel. Kirk, 563 U.S. 401, page 407, from 2011.  To

13  obstruct is to prevent or to hinder something's passage or

14  progress according to the Oxford English dictionary, third

15  edition, 2004.  These verbs are broad enough to cover not

16  only the destruction or alteration of evidence used in a

17  proceeding, but also impeding the proceeding itself.

18  Looking at the context of the statute confirms this

19  interpretation.  Sections (c)(1) and (c)(2) are linked by

20  the word otherwise.  Otherwise means in a different way or

21  by other causes or means according to Black's Law

22  Dictionary, 11th edition, 2019.

23         Thus, Mr. Hale-Cusanelli can violate 1512(c) by

24  either, one, altering, destroying or concealing documents

25  and other objects, or two, violating it "in a different way"

1    or "by other causes or means."  So 1512 gives fair warning

2    that a crime will occur in a different manner than in

3    1512(c)(1) if Mr. Hale-Cusanelli obstructs, influences or

4    impedes any official proceeding.  The different verbs used

5    in 1512(c) confirm this.  The verbs in (c)(1) have as their

6    object a "record, document, or other object...for use in an

7    official proceeding."  The verbs in (c)(2) have as their

8    object "any official proceeding."  It is most natural to

9    read the statute to say that (c)(1) is about interfering

10   with the evidence used in an official proceeding, and (c)(2)

11   is about interfering with the proceeding itself.

12        More, this interpretation avoids many of the

13   superfluidity concerns raised by the defendant and by Judge

14   Nichols in his opinion in United States vs. Miller, 2022 WL

15   823070 at *12 from this district on March 7th, 2022.

16   Section 1512(c)(1) and much of the rest of 1512 concern the

17   destruction of evidence.  But under the interpretation the

18   Court proposes, 1512(c)(2) concerns interference with an

19   official proceeding itself.  This interpretation is also

20   consistent with decisions in other circuits that have upheld

21   convictions under 1512(c)(2) for crimes other than

22   destruction of physical evidence, as the Government notes in

23   its motion to dismiss at page 17.

24        Finally, the Court notes that Begay vs. United

25   States, 553 U.S. 137 from 2008, and United States vs. -- or

1   Yates vs. United States, 574 U.S. 528 from 2015, do not

2   counsel otherwise.  Mr. Hale-Cusanelli relies heavily on

3   Begay to interpret the word otherwise.  But the meaning of

4   that word plays a relatively minor role in Begay.  Indeed,

5   the Court -- that is the Supreme Court, said that "the word

6   otherwise can (we do not say must...) refer to a crime that

7   is similar to the listed examples in the same respect" -- or

8   "in some respects, but different in others."  And that's

9   from page 144 on Begay.

10          Yates relied on the doctrine of ejusdem generis to

11  interpret the meaning of the phrase tangible object.  But

12  there, tangible object appeared in the same list -- indeed,

13  in the same sentence -- as the other words that the Court

14  used to give its meaning.  That's from page 531 in Yates.

15  But here, the verbs in (c)(2) do not appear in a list with

16  the words in (c)(1).  They're separated by a semicolon and

17  the word or, and they appear on a separate line in a

18  separately numbered paragraph.

19          Third, Mr. Hale-Cusanelli uses the legislative

20  history of 1512 to support his interpretation.  I'm

21  unpersuaded.  To start, the Court has already noted that the

22  plain language of the statute supports reading (c)(2) to

23  refer to conduct other than tampering with evidence.  "Even

24  the most formidable argument concerning the statute's

25  purposes cannot overcome the clarity found in the statute's

1   text, and only rarely have we relied on legislative history

2   to constrict the otherwise broad application of a statute

3   indicated by its text."  That's from Lindeen vs. the SEC,

4   825 F.3d 646, page 655 from the D.C. Circuit in 2016.

5             Mr. Hale-Cusanelli argues that Congress would not

6   have added 1512(a)(2)(B) just three months after (c)(2).

7   But this argument fails because (a)(2)(B) criminalizes the

8   altering or destruction of documents or testimony.

9   Subsection (c)(2) deals with interfering with a proceeding

10  itself.

11            Next, Mr. Hale-Cusanelli argues that the purpose

12  of (c)(2) was to target corporate malfeasance of the type

13  perpetrated by Enron in the late 1990s and early 2000s.

14  Thus, he says, the Court should not apply (c)(2) beyond that

15  context.  But "that Congress acted due to concerns about the

16  document destruction and the integrity of investigations of

17  corporate criminality does not define the statute's scope.

18  Statutes often reach beyond the principal evil that animated

19  them."  That's, again, from Sandlin at *9.  More, "what

20  little legislative history exists should not be given much

21  weight because it comes in the form of floor statements."

22  That's from United States vs. Montgomery, 2021 WL 6134591 at

23  *15 out of this district on December 28, 2021 discussing

24  this statute, but citing NLRB vs. Southwest General, 137 S.

25  Ct. 929, page 943 from 2017.

1    Fourth, Mr. Hale-Cusanelli argues that the statute

2  is ambiguous, and, under the rule of lenity, ambiguities

3  must be construed in his favor.  As an initial matter, I

4  note that the rule of lenity only applies when there is a

5  grievous ambiguity or uncertainty about the statute.  That's

6  from Barber vs. Thomas, 560 U.S. 474, page 488 from 2010.

7  As the Court's analysis has made clear, there is no such

8  grievous ambiguity here; nor can Mr. Hale-Cusanelli credibly

9  claim surprise at this result.  The verbs in (c)(2) clearly

10  cover obstructive acts aimed at official proceedings.  It

11  would strain credulity for Mr. Hale-Cusanelli to express

12  surprise that stopping an official proceeding from taking

13  place would be covered by a statute that makes it a crime to

14  obstruct, influence or impede any official proceeding or

15  attempt to do so.

16    Similarly, his interpretation would lead to the

17  absurd result that destroying a document used or considered

18  by Congress in the Electoral College vote count would

19  qualify as obstruction of the proceeding, but interfering

20  with the proceeding itself would not constitute obstruction.

21  The rule of lenity does not require the Court to adopt such

22  a strained interpretation of the statute.

23    Finally, he relies on United States vs.

24  Poindexter, 951 F.2d 369 from the D.C. Circuit in 1991, to

25  argue that the word corruptly is vague on its face.  When

1    considering a vagueness challenge, the touchstone is whether

2    the statute, either standing alone or as construed, made it

3    reasonably clear at the relevant time that the defendant's

4    conduct was criminal.  That's from United States vs. Lanier,

5    520 U.S. 259, page 267 from 1997.  Poindexter found the word

6    corruptly was vague "in the absence of some narrowing

7    gloss."  That's from page 398 in Poindexter.  Here, there is

8    a narrowing gloss, because corruptly applies directly to

9    behavior that obstructs, influences or impedes an official

10   proceeding.

11            As Judge Friedrich noted in Sandlin, "Courts have

12   since cabined Poindexter's holding to its facts, and have

13   not read it as a broad indictment of the use of the word

14   corruptly in the various obstruction of justice statutes."

15   That's from page *9 in Sandlin quoting United States vs.

16   Fokker Services, 818 F.3d 733, page 741 from the D.C.

17   Circuit in 2016.

18            Finally, the Court notes that multiple other

19   judges in this court have considered Poindexter and have

20   similarly found that it does not apply to a motion to

21   dismiss an obstruction count.  And I'm looking to Montgomery

22   at page *18.  For all these reasons, the Court denies the

23   motion to dismiss the obstruction count.

24            I will now consider the motion to exclude 404(b)

25   evidence; that's ECF 63.  Rule 404(b) bars evidence of any

1    other wrong if introduced to prove a person's character.

2    That evidence is admissible for another purpose, however,

3    such as proving motive, opportunity, intent, preparation or

4    knowledge.  At issue are prior statements by

5    Mr. Hale-Cusanelli where he expressed a desire for a civil

6    war to "provide a clean slate" for the United States.  In

7    other words, he said he would "purge Congress.  None of them

8    have any purpose or use."  This is all from the Government's

9    opposition at pages three and four.  And according to the

10   Government, Mr. Hale-Cusanelli also said he thought the 2020

11   election was fraudulent and that President Biden did not

12   win.

13            However, Mr. Hale-Cusanelli also made derogatory

14   statements about Jews and statements complimentary of the

15   Nazis.  According to the Government, they say these

16   statements arise from his belief in Jewish control of major

17   institutions.  Many of these statements are found in the

18   Government's opposition, ECF 68.  They also reference

19   statements that he made that are derogatory of women and

20   minorities.  The Government seeks to introduce these

21   statements, at least as to the -- what he said about the

22   civil war and Jews.  The Government argues that statements

23   about -- or that these statements show his motive for

24   participating in January 6 to impede congressional

25   certification of the Electoral College votes.

1       The Court considers first the applicability of

2  Rule 404(b) to these statements.  Because Mr. Hale-Cusanelli

3  has raised an objection, the Court next determines whether

4  Rule 403 bars introduction of the statements.  And I'm

5  looking for this to United States vs.Miller, 895 F.2d 1431,

6  page 1435 from the D.C. Circuit in 1990.  Rule 403 allows

7  the Court to exclude relevant evidence if "its probative

8  value is substantially outweighed by a danger of," among

9  other things, "unfair prejudice" and "confusing the issues."

10 The term unfair prejudice refers to the capacity of some

11 evidence to "lure the factfinder into declaring guilt on a

12 ground different from proof specific to the offense

13 charged."  That's from Old Chief vs. United States, 519 U.S.

14 172, page 180 from 1997.

15       I'll first dispense with a preliminary matter.

16 The Government argues that these statements are intrinsic to

17 the mens rea element of the obstruction count.  If so, Rule

18 404(b) does not apply according to United States vs. Badru,

19 97 F.3d 1471, page 1474 out of the D.C. Circuit in 1996.

20 The Court declines to opine here on the intrinsic/extrinsic

21 distinction urged by the Government.  For one thing, the

22 D.C. Circuit has in the past expressed dissatisfaction with

23 that distinction.  And I'm looking for that to United States

24 vs. Alexander, 331 F.3d 116, page 125 from 2003.  For

25 another, the Government has already provided reasonable

1    notice required under Rule 404(b)(3) that it intends to use

2    404(b) evidence.  The Court takes from that notice that

3    404(b) applies to all the evidence at issue, meaning there's

4    no need to decide the intrinsic/extrinsic distinction.

5           The Court agrees with the Government that

6    Mr. Hale-Cusanelli's political and civil war-related

7    statements are admissible under Rule 404(b).  He's charged

8    with obstructing certification of election results and

9    entering a restricted area to do so.  Statements about his

10   desire for civil war, a revolution, or a clean slate help

11   explain why Mr. Hale-Cusanelli might want to obstruct the

12   certification, and why he may have been there at the

13   Congress on January 6th.  Put simply, he might have joined

14   the riot because he saw decertification as a way to achieve

15   his avowed hopes of a change in government.

16          A jury could thus infer from these statements that

17   the defendant's motive -- could infer from these statements

18   the defendant's motive in joining the riot on January 6th.

19   Establishing motive is a well-established non-propensity

20   purpose for introducing evidence under Rule 404(b).  See

21   United States vs. McGill, 815 F.3d 846, page 883 from the

22   D.C. Circuit in 2016.  Rule 403 does not bar those

23   statements.  For the reasons discussed, they are highly

24   probative of his motive for being at the Capitol on

25   January 6th.  And any prejudice is not unfair in the context

1    of this case.  To be sure, a jury may react negatively to

2    these statements.  But any prejudice stems from a central

3    question in this case, whether he corruptly obstructed a

4    congressional proceeding.  Thus, the probative force of

5    these statements creates any prejudice resulting from them.

6    That prejudice is therefore not unfair.  See United States

7    vs. Wilkins, 538 F.Supp.3d 49, page 73 from this district in

8    2021.

9         As to Mr. Hale-Cusanelli's comments about Jews,

10   minorities and women, the Court will assume that they also

11   are relevant to his motive and are therefore admissible

12   under Rule 404(b).  The Court makes that assumption, because

13   Rule 403 bars introduction of those statements regardless.

14   First, I believe they are of limited probative value.  The

15   Government wishes to show the jury that part of

16   Mr. Hale-Cusanelli's motive was to overturn a government

17   that he believes is controlled by Jews.  But

18   Mr. Hale-Cusanelli's other statements about sparking a civil

19   war and wanting a clean slate already show a subversive

20   motive.  Indeed, those statements are more directly related

21   to the charges than his anti-Semitic statements.  His animus

22   towards Jews is therefore cumulative and somewhat tangential

23   to the desire to overturn an election.

24        Second, his statements about Jews will likely

25   evoke a strong negative emotional response from any

1    reasonable juror.  Decent society abhors anti-Semitic

2    remarks.  Anyone who hears them will almost automatically

3    make negative assumptions about the speaker that will make

4    it difficult for the juror to separate that impression from

5    guilt or innocence as to a particular charge.  As the D.C.

6    Circuit has noted, discussions about racial bias "threaten

7    the fairness of a trial."  That is united States vs. Doe,

8    903 F.2d 16, page 22 from 1990.  The Court cannot "treat

9    lightly the risk that racial bias may influence a jury's

10   verdict in this criminal case," from page 21.

11           That potential for influence is present here.  The

12   visceral reaction to the defendant's statements is exactly

13   the kind of response that might "lure the jury" into

14   declaring him guilty.  That's United States vs. Ring, 706

15   F.3d 460, page 472 from this circuit in 2013.  Specifically,

16   the jury might judge Mr. Hale-Cusanelli for being a bigot

17   rather than obstructing an official proceeding or entering a

18   restricted area.  I also looked to United States vs.

19   Hazelwood, 979 F.3d 398, page 413 from the Sixth Circuit in

20   2020.

21           And Mr. Hale-Cusanelli's alleged statements are

22   odious enough that, as Justice Cardozo would say, their

23   "reverberating clang" might "drown all weaker sounds"

24   presented by the rest of the evidence.  That's from Shepard

25   vs. United States, 290 U.S. 96, page 104 from 1933.  Because

1    Mr. Hale-Cusanelli's statements about Jews and the Nazi

2    party are unfairly prejudicial to him and are of limited

3    probative value, the Court holds that Rule 403 bars their

4    admission.

5            Accordingly, his motion to exclude 404(b) evidence

6    is denied to the extent the Government seeks to introduce

7    his prior statements about overturning the government or

8    otherwise impeding its continued existence.  But the motion

9    is granted as to his alleged statements about Jews, the Nazi

10   party, minorities or women.  The unfair prejudice of those

11   statements substantially outweighs their probative value, so

12   they must be excluded under Rule 403.

13           Does the Government have any question about either

14   of my rulings?

15           **MS. SEIFERT:**  Your Honor, on the 404(b) ruling, as

16   I think the Court can appreciate, some of the lines are not

17   as easy to draw between what is in category A, the

18   acceptable evidence, and what is in category B, the evidence

19   the Court has excluded.  What I would ask is if the Court

20   will give the Government an opportunity to present the Court

21   with a transcript of the statements that the defendant has

22   made, and then the Court -- the Government can highlight

23   which statements might fall into I think both categories.

24   And the Court can make a pretrial ruling with respect to

25   that.  So the Government will produce that probably at the

1    end of next week to the Court and defense counsel.

2              THE COURT:  All right, that's fine.  I'd just ask

3    you talk with Mr. Crisp first and see if you all can agree

4    on -- I'd like to think it should be relatively -- I mean,

5    if there's talk about race, religion or women or Nazis, I

6    think those should be excised.  If it's talking about a

7    political party, about civil war, I think those come in.  So

8    I think there's a relatively clear delineation that the two

9    sides can work out, but I'm certainly happy to review

10   anything that there's still a question on.

11             MS. SEIFERT:  Thank you, Your Honor.  I think

12   there's just a couple very few where there's a comparison of

13   President Biden to certain groups that you say evidence

14   should not be brought in on.  And that's what we would want

15   to be discussing with the defense.  Other than that, no

16   questions.

17             THE COURT:  Mr. Crisp, any questions on my

18   rulings?

19             MR. CRISP:  No, Your Honor.

20             THE COURT:  Let's talk next about your proposed

21   voir dire questions.  I do have some concerns about these.

22   I know most of you -- well, some of you, anyway, don't have

23   a lot of experience in the D.C. district courts or certainly

24   in front of me, and my voir dire tends to go differently

25   from what you've suggested here.

1    As an initial matter, I'll mention we don't

2    necessarily have the ceremonial courtroom.  That means we

3    may have 75 people or so in an era of COVID all packed in

4    here.  So I want this to go quickly.  I don't think this is

5    in anybody's interest for a long, drawn out process.  I just

6    want to go through what you all have suggested and see if we

7    can whittle them down.

8    First, on one, your first question, I think it's a

9    fair question.  I'm just trying to think about -- I want to

10   make sure people realize we're talking about this specific

11   case and not January 6th in general.  Because I think

12   everybody -- just about everybody will probably have heard

13   something about the January 6th cases.  So I'm planning to

14   say:  Do you know or have you heard anything about this

15   specific case.

16   Does that make sense to you, Ms. Seifert?

17   **MS. SEIFERT:**  No objection.

18   **THE COURT:**  And Mr. Crisp?

19   **MR. CRISP:**  No objection, Your Honor.  I guess the

20   only question is because I think -- while this is not an

21   Oath Keeper case, it certainly has had more notoriety for

22   the reasons we've just discussed under the 404 issues.  Can

23   we make it a little specific without tipping our hats in

24   that regard?  Because I think that may trigger people in a

25   way -- you know, I don't have something off the top of my

1    head, but something along the lines of:  Has anyone heard

2    about Mr. Hale-Cusanelli, and about caricatures or things

3    that may have come up or his political beliefs, things of

4    that nature.  I don't obviously want to open the door, but

5    my concern is somebody's going to be in the middle of trial

6    saying oh, shoot, I did hear about this case and I feel a

7    particular way.  Do you understand what I'm saying?

8         THE COURT:  I do.  Let's keep going through this.

9    If you have an idea -- I mean, obviously you have questions

10   later on about January 6th.  I do think it's appropriate for

11   us to get into them to a certain extent.  But I don't want

12   to -- I don't think we need endless questions or something

13   that is going to trigger a yes response from everyone.  But

14   if you have thoughts later on about how to thread that

15   needle, I'm happy to hear from you.

16        MR. CRISP:  Based on the Court's ruling, I believe

17   some of my questions are superfluous at this point.

18        THE COURT:  All right.  I think I'm fine with the

19   rest of the questions in part one.  I'm honestly inclined to

20   strike all of part two.  I just don't ask those typical --

21   these type of nitty-gritty background questions about

22   people.  I've never seen those asked in a case that I've

23   argued or a case that I've presided over.  I'm really

24   uncomfortable doing that now when, as I said, we have so

25   many people packed into a courtroom during COVID.

1      So you all may or may not know, you'll receive --

2   the information you receive will state the person's

3   occupation, so you're already going to have one of those

4   things anyway.  But I'm not interested in going through

5   children and whatnot.  I don't know if there's one or two

6   questions in here that you think are specifically necessary.

7   I'm happy to hear from you about whittling this down.

8   Otherwise, I'm inclined just to strike part two.

9      Ms. Seifert?

10     **MS. SEIFERT:**  Yes, Your Honor.  1I, J, K, L and M

11  are all just related to ability to hear, see, sit.  Those

12  are familiar to counsel as ones that are often used in this

13  Court, so we would ask those to be included.

14     **THE COURT:**  Do we not kind of get at those

15  elsewhere, at least in part?  You're right, we do

16  normally -- I thought I had seen something else that looked

17  similar.

18     **MS. SEIFERT:**  So there is -- and I apologize, Your

19  Honor.  There is, in questions 10 and 11 in part one,

20  questions about hardship or physical health.  So perhaps it

21  would make sense to add the COVID like callout, if you will,

22  to question 10.  And that might make that --

23     **THE COURT:**  So I've been specifically not asking

24  about COVID.  And I'll tell you, A, we're doing screening

25  about that before people come; and B, I think anybody who's

1    really concerned will make that very evident to me whether I

2    ask the question or not.

3              MS. SEIFERT:  Okay.

4              THE COURT:  I just don't want to invite people

5    saying that they've heard of somebody who might have COVID

6    and therefore they can't possibly be on the jury.

7              MS. SEIFERT:  Fair enough.  And on 10 and 11 -- I

8    guess in 10, the only other thing that could be added is

9    either the -- the understanding of English.

10             THE COURT:  Yes, all right.  So I'll figure out a

11   way to get I in there.

12             MS. SEIFERT:  And then the only other one that

13   I've often seen in any trials, Your Honor, is part two,

14   question five, opinions about prosecutors, defense

15   attorneys, police officers, the federal government.

16             THE COURT:  Do we not have -- oh, I guess we ask

17   kind of -- yeah, we ask about whether you have strong

18   feelings about the police.  So again, that --

19             MS. SEIFERT:  Typically, Your Honor, I have seen

20   that question asked after question four, does anyone work

21   for the group of a law enforcement agency.  And then usually

22   there's like a follow up that is do you have strong feelings

23   about anyone in that group -- prosecutors, defense attorneys

24   and so forth, that would make it difficult for you to render

25   a fair judgment in this case.

1      **THE COURT:**  Right.  So how is that different --

2  you already kind of have this in 1-8.

3      **MS. SEIFERT:**  So I think we would just expand

4  1-8 -- so 1-8 is slightly different because that's just

5  police officer testimony.  I think the question is wider

6  with respect to government, prosecutors, defense attorneys

7  and police officers.  So it could be either an addendum to 8

8  or it could be an addendum, I think, to 4.  But frankly, if

9  the Court wants to exclude it, it's usually something

10  defense asks for.

11      **THE COURT:**  Well, yes, I guess they want to know

12  if people don't like defense attorneys.

13      **MS. SEIFERT:**  That as well, yes.

14      **THE COURT:**  Although that's much less common than

15  police officers around here.  So I'm going to find my normal

16  questions and insert those, but we'll have something that

17  looks a lot like 1-8 and then the reverse.

18      **MR. CRISP:**  Your Honor, if I may just jump in real

19  quick?

20      **THE COURT:**  Yes.

21      **MR. CRISP:**  Is your normal question something akin

22  to:  Does anyone give greater weight or credibility to the

23  testimony of a police officer because they are a police

24  officer, something along those lines?  That's what I would

25  typically see or would request something akin to that.

1    That's what I'm driving at.  Does that make sense?

2              **THE COURT:**  Yes.  I forget if it uses that exact

3    language.  I think we get to that point.  And I know if --

4    whether or not it's in my initial question, I think the

5    initial question would flag that as a follow up where I

6    would then ask somebody if they're going to be able to

7    follow my instruction that there's good police officers and

8    bad police officers, and you need to consider the officers

9    in front of you and not preconceived notions.

10             **MR. CRISP:**  Thank you.

11             **THE COURT:**  Anything that you particularly are

12   dying to have from part two, Mr. Crisp?

13             **MR. CRISP:**  Other than that, no, Your Honor.

14             **THE COURT:**  Okay.  So I'm otherwise going to

15   strike part two.  So part three, here's where we get to the

16   January 6th questions.  I do think it's appropriate for us

17   to probe a bit on this.  I am trying to look for a way that

18   we can do something that is not going to trigger every

19   person to answer yes.  And so part three, question one:  Do

20   you or someone you know have any direct or indirect

21   connection to the events at the U.S. Capitol on January 6th,

22   2021.  I feel like -- indirect connection, I feel like

23   everybody has some sort of indirect connection, so I kind of

24   would like to strike the indirect.  If there's another way

25   you can think of to get to -- I just don't know what

1    indirect means honestly.  I'm afraid everybody is going to

2    answer yes for desire to be truthful.

3            Ms. Seifert, do you have thoughts about another

4    way to kind of cabin that question?

5            **MS. SEIFERT:**  What came to mind for counsel, Your

6    Honor, was personal connection.  Though, frankly, one could

7    have watched the events and had a personal connection in the

8    sense that they responded in a certain way.  But that does

9    tie it a little bit more directly to the person.

10           **THE COURT:**  I like that.

11           **MR. CRISP:**  I was going to say personal or

12   professional involvement.  Because watching it wouldn't

13   necessarily make it -- they wouldn't be involved

14   necessarily.  I still think it's relevant to ask if they've

15   watched video, and particularly --

16           **THE COURT:**  We'll get to number two.  So number

17   one will be:  Do you or someone you know have any personal

18   or professional connection to the events at the U.S.

19   Capitol?  And I just want to say, do you or someone close to

20   you.  I'm not interested in second cousins once removed.

21           So number two, I think I'm fine with number two.

22   I think you talked about watching video, and I think I'll

23   emphasize that.  That kind of suggests a greater degree of

24   interest.

25           Mr. Crisp, do you think -- so to be clear, anybody

1    answering yes will somehow or another -- you know, you'll

2    have an opportunity to talk with those people who are

3    answering yes to this.  So in light of that, I'm wondering

4    if we need three.

5              **MR. CRISP:**  The only reason I'd want to maybe

6    narrow it down -- so would we do individual voir dire at

7    that point or are we --

8              **THE COURT:**  Yes.

9              **MR. CRISP:**  -- going to still do it in a group

10   setting?  Okay.  So I would say three would be relevant in

11   an individual setting but not necessarily in a group

12   setting.

13             **THE COURT:**  Ms. Seifert, are you comfortable with

14   that?

15             **MS. SEIFERT:**  That's fine, Your Honor.  It does

16   don on me that the defendant's appearance may be a little

17   bit different than it was on the day or it was in the news.

18   So I would just leave for defense counsel to determine how

19   he wants to address that with the Court or with the jurors.

20             **THE COURT:**  And I think four is clearly

21   appropriate.  So I'll tell you on five and six, I'm inclined

22   to give five but not six.

23             Ms. Seifert, do you want to be heard on five, why

24   I should not give five?

25             **MS. SEIFERT:**  Your Honor, our position is

1    typically that the questions should be more generic and not

2    really focused on the facts themselves.  So this, to me,

3    kind of presupposes a factual basis, and that's why I think

4    it's not appropriate.  I mean, the jurors coming in are not

5    necessarily going to know anything about -- let's assume for

6    a minute that some of them don't know what was going on in

7    the Capitol that day.  It's sort of planting that seed now,

8    which seems a little bit unorthodox just because typically

9    we're asking them about what their opinions are or what

10   their beliefs are before they come in the door.  So to us,

11   that seems unnecessary at this point.

12            **THE COURT:**  Okay.  Mr. Crisp.

13            **MR. CRISP:**  Your Honor, I think obviously that's

14   going to be a main crux of this.  If they have a fixed

15   opinion as to what someone would have been doing, I think

16   that would make it difficult to be fair and impartial as to

17   what would be a significant component of the intent here.

18   So it's my opinion that -- you know, I'm not asking whether

19   or not he in particular could have, that would be something

20   later for trial.  But if someone thinks the only reason I'm

21   going to be there is to do X, Y or Z, that would be

22   problematic.

23            **THE COURT:**  Okay.  And do you want to be heard on

24   six?

25            **MR. CRISP:**  Is the Government's -- or is your

1    concern -- just so I can be responsive to your reasoning,

2    what is your reasoning for saying nay?

3            **THE COURT:**  I don't know if you're intending -- if

4    that's to be the basis of your defense, but I'm pretty

5    uncomfortable with inserting President Trump into this.  It

6    feels like it's making -- going to add a political element

7    to it.  It also is very fact-specific to the Government's

8    concern that has not related to the charges, and just it

9    feels well afield of anything that I'm aware of in this

10   case.

11           **MR. CRISP:**  Sure.  And I wanted to make sure that

12   the Government or Your Honor did not think we were looking

13   for a public -- I'm drawing a blank here.  We weren't trying

14   to invoke any obedience to orders or --

15           **THE COURT:**  Could you pull the microphone a little

16   closer to you, Mr. Crisp?

17           **MR. CRISP:**  Sure.  So understanding Your Honor's

18   concern, I'm fine with that.  I can go at that a different

19   way.  And if I believe it's relevant as we go in there, I'll

20   raise it at sidebar.

21           **THE COURT:**  Okay.  So I'm going to strike six.  I

22   understand the Government's concern about five, but I think

23   this is an unusual case with a high degree of juror general

24   awareness of the matter.  And I think this Electoral College

25   count seems pretty directly relevant to the lead charge

1     here, so I'm going to give question five.

2             MS. SEIFERT:  Your Honor, might I suggest that you

3     add at the beginning of the sentence something like:  Are

4     you aware of what Congress -- what congressional activity

5     was occurring on January 6th, and if so -- or something of

6     that nature?  I do think there may be jurors who don't

7     really know anything about an electoral count.  And so if

8     they don't, then like the answer should be no to this

9     question.  And I want the answer to be no, because otherwise

10    everyone's going to raise their hand because it seems so

11    vague as to what they're supposed to answer.

12            THE COURT:  I hear what you're saying.  I think

13    what I'd prefer to do is kind of direct them to answer no

14    if -- give me language, though.

15            MS. SEIFERT:  It could be something --

16            THE COURT:  Rather than a compound question.

17            MS. SEIFERT:  Right.  If you could add:  If you

18    are unaware of the reason why Congress was gathered on

19    January 6th of 2021, answer no to this question.

20            THE COURT:  All right.  Any concerns with that,

21    Mr. Crisp?

22            MR. CRISP:  No, Your Honor, I shouldn't have an

23    issue if you wanted to add a question before that that would

24    be -- that gets to their knowledge about whether they

25    understood the Electoral College count was occurring.  And

1    then to the extent that people say yes, I know it was

2    occurring at the Capitol, then to those individuals who said

3    yes, I am aware, do you think it's possible so that it

4    eliminates some confusion there.  So in other words -- yeah,

5    I'm sorry, I'm thinking out loud here -- does anyone know

6    that the Electoral College count was occurring in the

7    Capitol on January 6th, 2021 at the time immediately

8    preceding the riots?  And if everyone raises their hand,

9    then I would ask that question.

10        And if we had half a dozen who raised their hands,

11   then I would say:  For those who have said they were aware,

12   do you think it's possible?  Because obviously if they

13   didn't know, the fact that they didn't know would establish

14   that they certainly think it's possible because they didn't.

15   Does that address the Government's concern in that respect

16   as well?

17        **MS. SEIFERT:**  So I think, again, the Government's

18   concern with this type of question is we're sort of assuming

19   that the jurors know something before.  So I would make it

20   more general, something more like:  Are you aware of the

21   reasons why Congress was gathered at the Capitol on

22   January 6th of 2021?  If the answer is yes, do you think

23   it's possible that someone went into the Capitol but did not

24   themselves know why Congress was gathering on that day?

25        **THE COURT:**  All right.  So I think what I'm going

1    to do is just add on:  If you are unaware of the Electoral

2    College certification, you should answer no to this

3    question.

4              **MS. SEIFERT:**  That's fine also for the Government.

5              **MR. CRISP:**  That sounds good, Judge.  Thank you.

6              **THE COURT:**  But I hear your concern.  So number --

7    part four, I'm frankly not inclined to give any of these

8    questions.

9              Mr. Crisp, I think several of these you don't want

10   asked anymore, but I'm happy to hear you if you do want

11   them.

12             **MR. CRISP:**  Certainly one through three I'm

13   withdrawing based on the Court's ruling.  I think four

14   through seven still have relevance, because this is what the

15   Government is addressing.  And I think it gets to the same

16   idea that we're dealing with in the earlier question as to

17   number five:  That the Government's trying to establish that

18   because a person has a particular political belief and

19   expresses things, that they may or may not be willing to

20   follow through with it.  You know, you can express distrust,

21   you can express outrage.  But again, if someone thinks --

22   well, if someone makes a statement, no matter how extreme,

23   they must mean it.  And that's not always the case.

24             **THE COURT:**  Ms. Seifert, do you want to be heard?

25             **MS. SEIFERT:**  So on four and five, Your Honor, I

1    think frankly the Court, if it's inclined to give them,

2    could combine them and say something more general like:  Do

3    you think a person's political beliefs or statements about

4    their political beliefs can be made without intending to

5    take action to further those beliefs, something of that

6    nature.  It's still very general.  I mean, I'm not sure that

7    that completely solves the problem.  You could add in the

8    distrust of the Government.  Though, again, I think that's a

9    little bit loaded, so it's not as typical as what I think

10   the Court normally asks.  But we don't specifically object

11   to that, though I think one question would make more sense.

12          On six and seven, frankly, I find those questions

13   to be very confusing, and I think the jurors will find them

14   to be confusing.  It almost feels like an analogy that

15   defense is going to put in their opening, and I just don't

16   think the jurors are going to be able to follow that.

17          **THE COURT:**  I'm not going to give these questions.

18   I agree on six and seven.  I don't understand them myself,

19   to tell you the truth.  On four and five, A, I think

20   everybody understands that people can disagree with the

21   Government and it doesn't necessarily mean you want to

22   overthrow it.  I just -- I think this is going to invite

23   more political commentary than is necessary or appropriate.

24   So I'm going to -- I'm not going to give part four.

25          So part five, on one, I've got to tell you, I

1    think it's kind of unlikely that this is going to be an

2    issue.  I've never had to give this instruction before.

3            Is either side really concerned that there's going

4    to be an issue here?  I don't know, are you presenting a lot

5    of text messages or something?

6        **MS. SEIFERT:**  The Government is going to present

7    the contents of defendant's phone, which were obtained

8    pursuant to a warrant.  I don't understand the defense to be

9    objecting to that warrant.  But if they are, then I think --

10   I suppose this could be relevant.  But I guess I would leave

11   that -- if they're not objecting to the warrant itself, then

12   I don't think one is necessary.

13       **THE COURT:**  Mr. Crisp?

14       **MR. CRISP:**  (Shaking head to indicate no.)

15       **THE COURT:**  Okay, so we won't give one.

16       **MR. CRISP:**  I shook my head no for the record,

17   Your Honor.  I apologize.

18       **THE COURT:**  Number two is fine.  Numbers three and

19   four, I don't give these.  Obviously there's a lot of rules

20   that I lay out to the jury.  I think they're subsumed within

21   question five, which I will give, just that the jury needs

22   to follow my instructions.  But I'm not going to ask them

23   one-by-one about my instructions and whether they'll

24   following those.

25       **MR. CRISP:**  I'm sorry, Your Honor, you said -- for

1    three and four, obviously we're talking about Fifth

2    Amendment concerns.  Do you have a question that says

3    something akin to that?

4              THE COURT:  Yes, I think number five.  And I'm

5    happy to tweak five if you want.  But I do tell jurors that

6    they -- the veniremen that they're going to need to follow

7    my instructions, do you have any problem with following the

8    judge's instructions on the law.  But I don't go through

9    each of those instructions and say are you going to follow

10   that.

11             MR. CRISP:  So you don't specifically say if he

12   were to fail to testify or not testify, that --

13             THE COURT:  Correct.

14             MR. CRISP:  So just note my objection.  I would

15   like to have something in there, because I generally see

16   that.  And I think sometimes you do get individuals who

17   think that they should, and it just becomes a question in

18   that regard.  So that's one that I've had more than a few

19   over the years people raise their hands.  So I wanted to --

20   if he doesn't get up and testify, I'm going to have

21   questions as to why and think he might be guilty.

22             THE COURT:  I make that -- I think I make quite

23   clear in my instructions that you're not supposed to hold

24   that against the defendant.  Obviously, if somebody suggests

25   concerns about being able to follow my questions, you're

1   welcome to get into that.  But I'm not going to ask them to

2   go through each of his rights.

3           So I think we're good to go.  I will circulate to

4   you all in the next week or so what I think is the clean

5   version.  And honestly, I'm not quite sure how we'll do just

6   the mechanics of this, because it's going to depend in large

7   part in which room we're in.  So I might try to do -- either

8   send you an e-mail or maybe we'll do a phone call between

9   now and then once I know just to -- so you all are familiar

10  with the mechanics.

11          **MR. CRISP:**  What's the size of the venire at this

12  point?

13          **THE COURT:**  Ms. Chaclan, do we have 75?

14          **DEPUTY CLERK:**  It's 65.

15          **THE COURT:**  65, okay.  So that's larger than our

16  normal.  I've talked with several of my colleagues.  I'm

17  highly optimistic that that will be enough based on the

18  other juries we've had so far in the January 6th cases.

19          Anything else we should be discussing,

20  Ms. Seifert?

21          **MS. SEIFERT:**  Your Honor, may I impose on you for

22  a couple minutes since I haven't appeared before you for

23  trial to ask some logistical questions?

24          **THE COURT:**  Okay.

25          **MS. SEIFERT:**  Does the Court start at 9:30 every

1    day, and if so, is there a time in advance for counsel to

2    raise any issues for the day?

3            THE COURT:   It depends.   So yeah, we'll fluctuate

4    kind of between 9:00 and 9:30 depending on how far -- how

5    much progress we're making and if I think there are going to

6    be issues.   But yeah, if it looks like there might be an

7    issue, often I would have the jury come at 9:30 and you all

8    come at 9:00.   And certainly if you think we should get

9    together beforehand, please flag that the night before and

10   we'll do that.

11           MS. SEIFERT:   Does the Court typically have a time

12   that it takes its lunch recess?

13           THE COURT:   It just depends on how we're going

14   with the evidence.

15           MS. SEIFERT:   Does the Court do its charging

16   conference during trial or before trial?   Because the

17   Government typically likes to have the instructions, at

18   least if there are any issues with the instructions on the

19   elements, completed before opening.

20           THE COURT:   I think you all agreed on the

21   instructions, right?   Yeah, so I will do a final review, but

22   my brief -- they look right to me, so I would expect them to

23   be more or less as you all have suggested.   Obviously, if

24   things come up at trial, we'll deal with it.   I think we

25   would have a formal charge conference during trial, but I'll

1    tell you that -- and I appreciate the parties working

2    together on this, I'm inclined to give them as you all have

3    suggested.

4            MS. SEIFERT:  And is the Court anticipating that

5    there will be an audience allowed to sit in the courtroom

6    during the trial?

7            THE COURT:  Absolutely.

8            MS. SEIFERT:  Will the Court have a public line

9    open in addition?

10           THE COURT:  No.

11           MS. SEIFERT:  That's what I thought.  The last

12   question is does the Court want us to choose alternate seat

13   numbers now or to wait?

14           THE COURT:  Yes, thanks for suggesting that.

15           MS. SEIFERT:  And how many alternates?

16           THE COURT:  Yeah, I usually do two.  Ms. Seifert,

17   remind me, how long are you expecting your case-in-chief to

18   last?

19           MS. SEIFERT:  I think two to three days, Your

20   Honor, is -- I think three would be the longest.  My hope is

21   we're wrapped up before the holiday.

22           THE COURT:  What's the holiday?

23           MS. SEIFERT:  Memorial Day is the following

24   Monday.

25           THE COURT:  Oh, I see.  I was looking at the

1    wrong --

2            **MS. SEIFERT:**  I'm concerned there might be travel

3    plans.  But if we can assuage the jurors' concerns on that

4    and tell them we're hoping to be done by Friday.  Of course,

5    that's only the Government's case.  I don't know what

6    defense has in store.

7            **THE COURT:**  So you're expecting two to three days.

8    Mr. Crisp, what's your sense?

9            **MR. CRISP:**  A day to a day and a half, Your Honor.

10           **THE COURT:**  I'm sorry, I couldn't hear you.

11           **MR. CRISP:**  Yes, a day to a day and a half.

12           **THE COURT:**  So I was not planning to sit on Friday

13   because I have a lot of other matters.  But I would like to

14   try to wrap the case up, so I'm just going to tell you all

15   to be -- A, if it's to the jury, I'll definitely have the

16   jury deliberating that Friday.  I may well try to finish up

17   on Friday, so you should plan to be available and to have

18   trial on that Friday.  But obviously, possibly we'll be done

19   by then and I might need to push it.  I'm just going to have

20   to ask you all to be flexible on that.

21           Mr. Crisp, would you like to pick an alternate?

22           **MR. CRISP:**  Alternate, you mean alternate numbers

23   of the jurors?

24           **THE COURT:**  Jurors.

25           **MR. CRISP:**  Four.

1          **THE COURT:**  Four.  And Ms. Seifert?

2          **MS. SEIFERT:**  Number nine.

3          **THE COURT:**  Okay.  So I will expect to use the

4    jury box, and we'll have two alternates.  Number four will

5    be our first, and number nine will be our second.

6          **MS. SEIFERT:**  Your Honor, I just -- Your Honor can

7    wait to think about this, but I would just say that it

8    might -- depending on the number of travel plans that people

9    have, it might make sense if there are too many people with

10   travel plans over the weekend, if Friday was not a date that

11   they were sitting and they were to come back and deliberate

12   starting on Tuesday.  I typically don't like that, because

13   of course then they get the evidence and have to wait for so

14   long.  But we'll see what they say about their travel plans.

15         **THE COURT:**  Yeah, we can talk about that.  As I

16   say, I think we're going to have more than enough jurors

17   with the 65, so let's chat as they're going through.  Maybe

18   we'll -- in the past I've bumped some folks to the back of

19   our list who may not be fully available.

20         Mr. Crisp, anything else you think we should be

21   discussing today?

22         **MR. CRISP:**  The only concern I had was logistics

23   in terms of getting in.  There are days when it takes 25, 30

24   minutes to get in.  Is there an attorney entrance that I can

25   use, that's possible to use?

1      **THE COURT:**  I don't think so.

2      **MS. SEIFERT:**  Attorneys are able to pass through

3   security with their bar card, if they are barred in the

4   district I believe, Your Honor.  But I'm not sure about

5   other bars.  So I would just have Mr. Crisp talk with the

6   security officers at the 3rd Street entrance.

7      **THE COURT:**  Honestly, I'm not quite sure how that

8   works.

9      **MR. CRISP:**  Is there anything that Your Honor can

10   do?  Otherwise I'm going to be here close to an hour

11   beforehand every morning.  I can't bring water in, I

12   can't -- you know, so I don't know.  I know that you

13   normally can.  That's the only concern I really have.  It's

14   just going to take an exorbitant amount of time to get in,

15   and court personnel don't have that concern.

16      **MS. SEIFERT:**  Again, I think if counsel shows his

17   bar card to the security officers, this might take care of

18   itself.

19      **THE COURT:**  Why don't you chat with them.

20      **MR. CRISP:**  Sure, that sounds good.

21      **THE COURT:**  Make sure you have Ms. Chaclan's

22   number.  If you do get caught up, give her a call and we'll

23   try to fish you out.  But you shouldn't be calling right

24   before.

25      **MR. CRISP:**  No, I understand.

1      MS. SEIFERT:  I think the Court is aware --

2      MR. CRISP:  I think that's the only primary

3   concern, so thank you.

4      MS. SEIFERT:  For Mr. Crisp's awareness, I think

5   the other entrance on the other side of the building is

6   typically a shorter line.

7      THE COURT:  Yeah, the Marshall Park one.  Let me

8   say, I expect attorneys to chat with Ms. Chaclan beforehand

9   and make sure you're comfortable with our courtroom

10  technology here.  I do want you all to use the Elmo and the

11  electronics as much as possible, and not be going back and

12  forth to the witness stand showing the witness exhibits.

13  We've got -- so you all know, we have little monitors for

14  the jurors, so they'll be able to have a good view of

15  anything you're electronically displaying.  So I try to do

16  it that way.

17      I believe we have to arraign the defendant on the

18  superseding indictment.

19      MS. SEIFERT:  May I ask one technical question

20  before we do that, Your Honor?

21      THE COURT:  Okay.

22      MS. SEIFERT:  With consent of counsel, does the

23  Court permit pre-admission of exhibits before the witness

24  takes the stand?

25      THE COURT:  Yes, if you all are -- if you've

1    agreed on exhibits, that would be great.  And I think I've

2    said before, but I do want witness lists from both parties

3    and exhibit lists the morning of trial.  You should have

4    your exhibits premarked.

5              Sir, if you could approach the podium.

6              **DEPUTY CLERK:**  Timothy Hale-Cusanelli, in criminal

7    case 21-37 in which you are charged by a superseding

8    indictment on count one, obstruction of an official

9    proceeding and aiding and abetting; count two, entering and

10   remaining in a restricted building or grounds; count three,

11   disorderly and disruptive conduct in a restricted building

12   or grounds; count four, disorderly conduct in a Capitol

13   building; and count five, parading, demonstrating or

14   picketing in a Capitol building, do you waive the formal

15   reading of the indictment, and how do you wish to plead?

16             **THE DEFENDANT:**  I plead not guilty.

17             **THE COURT:**  Sir, typically your attorney responds

18   on your behalf.  Sorry, I should have made that clear.

19             **MR. CRISP:**  We will waive the reading; and to all

20   counts, not guilty.

21             **THE COURT:**  Thanks, folks.  I will see you on

22   May 23rd at 9:00 o'clock, let's assume here.  I'll let you

23   know if it's going to be upstairs.  As I said, I'll let you

24   know depending on where we are any logistics on the voir

25   dire.

1          **MS. SEIFERT:**  Thank you, Your Honor.

2          **MR. CRISP:**  Thank you.

3          **THE COURT:**  Thanks.

4      (Proceedings adjourned at 11:04 a.m.)

1                    **C E R T I F I C A T E**

2

3              I, **Jeff M. Hook, Official Court Reporter**,

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9         May 10, 2022

10            **DATE**                          **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

'
's appeal

's [1]   4/7

0

0037 [1]   1/4

1

1-8 [3]   21/2 21/4
21/17
1-8 is [1]   21/4
10 [4]   19/19 19/22
20/7 20/8
104 [1]   14/25
10:01 [1]   1/6
10th [1]   4/3
11 [2]   19/19 20/7
116 [1]   11/24
11:04 a.m [1]   41/4
11th [2]   3/14 4/22
12 [1]   5/15
125 [1]   11/24
137 [2]   5/25 7/24
1431 [1]   11/5
1435 [1]   11/6
144 [1]   6/9
1471 [1]   11/19
1474 [1]   11/19
15 [1]   7/23
1512 [12]   3/7 4/7
4/23 5/1 5/3 5/5
5/16 5/16 5/18 5/21
6/20 7/6
1515 [1]   3/6
16 [1]   14/8
17 [1]   5/23
17110 [1]   1/18
172 [1]   11/14
18 [2]   3/6 9/22
180 [1]   11/14
1933 [1]   14/25
1990 [2]   11/6 14/8
1990s [1]   7/13
1991 [1]   8/24
1996 [1]   11/19
1997 [2]   9/5 11/14
1:21-cr-0037 [1]
1/4
1I [1]   19/10

2

20001 [1]   1/25
2000s [1]   7/13
2003 [1]   11/24
2004 [1]   4/15
2007 [1]   3/11
2008 [1]   5/25
2010 [1]   8/6
2011 [1]   4/12
2013 [1]   14/15
2015 [1]   6/1
2016 [3]   7/4 9/17
12/22
2017 [1]   7/25
2019 [2]   3/14 4/22
2020 [2]   10/10
14/20
2021 [9]   4/2 4/3
7/22 7/23 13/8
22/22 27/19 28/7

28/22
2022 [3]   1/5 5/14
5/15
20530 [1]   1/15
21 [1]   14/10
21-37 [2]   2/3 40/7
22 [1]   14/8
23rd [1]   40/22
25 [1]   37/23
259 [1]   9/5
267 [1]   9/5
28 [1]   7/23
290 [1]   14/25

3

30 [1]   37/23
331 [1]   11/24
333 [1]   1/24
369 [1]   8/24
37 [2]   2/3 40/7
398 [2]   9/7 14/19
3rd [1]   38/6

4

401 [1]   4/12
403 [6]   11/4 11/6
12/22 13/13 15/3
15/12
4031 [1]   1/18
404 [13]   9/24 9/25
11/2 11/18 12/1
12/2 12/3 12/7
12/20 13/12 15/5
15/15 17/22
407 [1]   4/12
413 [1]   14/19
460 [1]   14/15
4700-C [1]   1/24
472 [1]   14/15
474 [1]   8/6
488 [1]   8/6
49 [1]   13/7

5

519 [1]   11/13
520 [1]   9/5
528 [1]   6/1
531 [1]   6/14
538 [1]   13/7
553 [1]   5/25
555 [1]   1/15
560 [1]   8/6
563 [1]   4/12
574 [1]   6/1
5865006 [1]   4/2

6

6134591 [1]   7/22
62 [1]   3/1
63 [1]   9/25
646 [1]   7/4
65 [3]   33/14 33/15
37/17
655 [1]   7/4
68 [1]   10/18
6th [13]   12/13
12/18 12/25 17/11
17/13 18/10 22/16
22/21 27/5 27/19
28/7 28/22 33/18

7

706 [1]   14/14
73 [1]   13/7
733 [1]   9/16
741 [1]   9/16
75 [2]   17/3 33/13
7th [1]   5/15

8

815 [1]   12/21
818 [1]   9/16
823070 [1]   5/15
825 [1]   7/4
846 [1]   12/21
883 [1]   12/21
895 [1]   11/5

9

903 [1]   14/8
929 [1]   7/25
943 [1]   7/25
951 [1]   8/24
96 [1]   14/25
97 [1]   11/19
979 [1]   14/19
9:00 [2]   34/8 40/22
9:00 and [1]   34/4
9:30 and [1]   34/7
9:30 depending [1]
34/4
9:30 every [1]
33/25

A

a.m [2]   1/6 41/4
abetting [1]   40/9
abhors [1]   14/1
ability [1]   19/11
able [5]   22/6 30/16
32/25 38/2 39/14
above [1]   42/5
above-entitled [1]
42/5
absence [1]   9/6
Absolutely [1]   35/7
absurd [1]   8/17
acceptable [1]
15/18
according [5]   4/14
4/21 10/9 10/15
11/18
Accordingly [1]
15/5
achieve [1]   12/14
acted [1]   7/15
action [3]   1/3 3/10
30/5
actions [1]   3/10
activity [1]   27/4
acts [1]   8/10
add [7]   19/21 26/6
27/3 27/17 27/23
29/1 30/7
added [2]   7/6 20/8
addendum [2]   21/7
21/8
addition [1]   35/9
Additionally [1]
4/3

address [3]   2/16
24/19 28/15
addressing [1]
29/15
adjourned [2]   3/22
41/4
admissible [3]   10/2
12/7 13/11
admission [2]   15/4
39/23
adopt [1]   8/21
advance [1]   34/1
afield [1]   26/9
afraid [1]   23/1
again [6]   7/19
20/18 28/17 29/21
30/8 38/16
against [1]   32/24
agency [1]   20/21
agree [2]   16/3
30/18
agreed [2]   34/20
40/1
agrees [1]   12/5
aiding [1]   40/9
aimed [1]   8/10
akin [4]   3/23 21/21
21/25 32/3
Alexander [1]   11/24
alleged [3]   3/3
14/21 15/9
allowed [1]   35/5
allows [1]   11/6
almost [2]   14/2
30/14
alone [1]   9/2
along [2]   18/1
21/24
alteration [1]   4/16
altering [2]   4/24
7/8
alternate [4]   35/12
36/21 36/22 36/22
alternates [2]
35/15 37/4
Although [1]   21/14
always [1]   29/23
ambiguities [1]   8/2
ambiguity [2]   8/5
8/8
ambiguous [1]   8/2
Amendment [1]   32/2
AMERICA [2]   1/3 2/3
among [1]   11/8
amount [1]   38/14
analogized [1]   3/25
analogy [1]   30/14
analysis [1]   8/7
animated [1]   7/18
animus [1]   13/21
anti [2]   13/21 14/1
anti-Semitic [2]
13/21 14/1
anticipating [1]
35/4
anymore [1]   29/10
apologize [2]   19/18
31/17
appear [2]   6/15
6/17

**A**

appearance [1]   24/16
APPEARANCES [1]   1/11
appeared [2]   6/12   33/22
applicability [1]   11/1
application [1]   7/2
applies [3]   8/4 9/8   12/3
apply [3]   7/14 9/20   11/18
appreciate [2]   15/16 35/1
approach [1]   40/5
appropriate [5]   18/10 22/16 24/21   25/4 30/23
area [2]   12/9 14/18
argue [1]   8/25
argued [1]   18/23
argues [7]   3/3 4/6   7/5 7/11 8/1 10/22   11/16
argument [3]   3/6   6/24 7/7
arise [1]   10/16
around [1]   21/15
arraign [1]   39/17
ARRAIGNMENT [1]   1/9
Associates [1]   1/17
assuage [1]   36/3
assume [3]   13/10   25/5 40/22
assuming [1]   28/18
assumption [1]   13/12
assumptions [1]   14/3
attempt [1]   8/15
attorney [2]   37/24   40/17
Attorney's [1]   1/14
attorneys [6]   20/15   20/23 21/6 21/12   38/2 39/8
audience [1]   35/5
automatically [1]   14/2
available [2]   36/17   37/19
Avenue [1]   1/24
avoids [1]   5/12
avowed [1]   12/15
aware [6]   26/9 27/4   28/3 28/11 28/20   39/1
awareness [2]   26/24   39/4

**B**

back [3]   37/11   37/18 39/11
background [1]   18/21
bad [1]   22/8
Badru [1]   11/18

Bankruptcy [1]   1/23
bar [3]   12/22 38/3   38/17
Barber [1]   8/6
barred [1]   38/3
bars [5]   9/25 11/4   13/13 15/3 38/5
based [3]   18/16   29/13 33/17
basis [2]   25/3 26/4
becomes [1]   32/17
beforehand [3]   34/9   38/11 39/8
Begay [4]   5/24 6/3   6/4 6/9
beginning [1]   27/3
behalf [2]   2/11   40/18
behavior [1]   9/9
belief [2]   10/16   29/18
beliefs [5]   18/3   25/10 30/3 30/4   30/5
believes [2]   2/19   13/17
beyond [2]   7/14   7/18
bias [2]   14/6 14/9
Biden [2]   10/11   16/13
bigot [1]   14/16
bit [5]   22/17 23/9   24/17 25/8 30/9
Black's [2]   3/14   4/21
blank [1]   26/13
body [2]   3/13 3/18
both [2]   15/23 40/2
box [1]   37/4
brief [1]   34/22
bring [1]   38/11
broad [3]   4/15 7/2   9/13
brought [1]   16/14
building [5]   39/5   40/10 40/11 40/13   40/14
bumped [1]   37/18
business [1]   3/12

**C**

cabin [1]   23/4
cabined [1]   9/12
call [2]   33/8 38/22
calling [1]   38/23
callout [1]   19/21
came [1]   23/5
can [27]   3/20 3/22   3/25 4/23 6/6 8/8   15/16 15/22 15/24   16/3 16/9 17/7   17/22 22/18 22/25   26/1 26/18 29/20   29/21 30/4 30/20   36/3 37/6 37/15   37/24 38/9 38/13
capacity [1]   11/10
Capitol [10]   12/24   22/21 23/19 25/7

28/2 28/7 28/21   28/23 40/12 40/14
card [2]   38/3 38/17
Cardozo [1]   14/22
care [1]   38/17
caricatures [1]   18/2
carrying [1]   3/10
case [18]   2/2 13/1   13/3 14/10 17/11   17/15 17/21 18/6   18/22 18/23 20/25   26/10 26/23 29/23   35/17 36/5 36/14   40/7
case-in-chief [1]   35/17
cases [2]   17/13   33/18
categories [1]   15/23
category [2]   15/17   15/18
caught [1]   38/22
causes [2]   4/21 5/1
CDC's [1]   2/13
central [2]   3/8   13/2
ceremonial [1]   17/2
certain [3]   16/13   18/11 23/8
certainly [6]   16/9   16/23 17/21 28/14   29/12 34/8
certificates [2]   3/23 3/25
certification [7]   3/4 3/16 3/21 10/25   12/8 12/12 29/2
certify [1]   42/4
Chaclan [2]   33/13   39/8
Chaclan's [1]   38/21
challenge [1]   9/1
change [1]   12/15
character [1]   10/1
charge [3]   14/5   26/25 34/25
charged [3]   11/13   12/7 40/7
charges [2]   13/21   26/8
charging [1]   34/15
chat [3]   37/17   38/19 39/8
chief [2]   11/13   35/17
children [1]   19/5
choose [1]   35/12
circuit [10]   7/4   8/24 9/17 11/6   11/19 11/22 12/22   14/6 14/15 14/19
circuits [1]   5/20
circulate [1]   33/3
citing [1]   7/24
civil [6]   10/5   10/22 12/6 12/10   13/18 16/7
claim [1]   8/9

clang [1]   14/23
clarity [1]   6/25
clean [4]   10/6   12/10 13/19 33/4
clear [6]   8/7 9/3   16/8 23/25 32/23   40/18
clearly [2]   8/9   24/20
close [2]   23/19   38/10
closer [1]   26/16
colleagues [1]   33/16
College [8]   3/4   3/16 8/18 10/25   26/24 27/25 28/6   29/2
COLUMBIA [2]   1/1   1/14
combine [1]   30/2
comfortable [2]   24/13 39/9
coming [1]   25/4
commentary [1]   30/23
comments [1]   13/9
common [1]   21/14
comparison [1]   16/12
completed [1]   34/19
completely [1]   30/7
complimentary [1]   10/14
component [1]   25/17
compound [1]   27/16
concealing [1]   4/24
concern [13]   5/16   18/5 26/1 26/8   26/18 26/22 28/15   28/18 29/6 37/22   38/13 38/15 39/3
concerned [3]   20/1   31/3 36/2
concerning [1]   6/24
concerns [8]   5/13   5/18 7/15 16/21   27/20 32/2 32/25   36/3
conclusion [1]   4/5
conduct [4]   6/23   9/4 40/11 40/12
conducted [1]   3/12
conference [3]   1/9   34/16 34/25
confirm [1]   5/5
confirms [1]   4/18
confusing [3]   11/9   30/13 30/14
confusion [1]   28/4
Congress [10]   3/7   7/5 7/15 8/18 10/7   12/13 27/4 27/18   28/21 28/24
congressional [3]   10/24 13/4 27/4
connection [6]   22/21 22/22 22/23   23/6 23/7 23/18
consent [1]   39/22

**C**

consider [3]   4/4
9/24 22/8
considered [2]   8/17
9/19
considering [1]   9/1
considers [1]   11/1
consistent [1]   5/20
constitute [2]   3/5
8/20
Constitution [1]
1/24
constrict [1]   7/2
construed [2]   8/3
9/2
contents [1]   31/7
context [3]   4/18
7/15 12/25
continued [1]   15/8
control [1]   10/16
controlled [1]
13/17
convictions [1]
5/21
Corp [1]   4/11
corporate [2]   7/12
7/17
corruptly [5]   8/25
9/6 9/8 9/14 13/3
counsel [10]   2/4
2/7 6/2 16/1 19/12
23/5 24/18 34/1
38/16 39/22
count [14]   2/25
8/18 9/21 9/23
11/17 26/25 27/7
27/25 28/6 40/8
40/9 40/10 40/12
40/13
counts [1]   40/20
couple [2]   16/12
33/22
course [2]   36/4
37/13
court [53]
Court's [3]   8/7
18/16 29/13
courtroom [5]   2/14
17/2 18/25 35/5
39/9
courts [3]   1/23
9/11 16/23
cousins [1]   23/20
cover [2]   4/15 8/10
covered [1]   8/13
COVID [6]   2/13 17/3
18/25 19/21 19/24
20/5
cr [1]   1/4
creates [1]   13/5
credibility [1]
21/22
credibly [1]   8/8
credulity [1]   8/11
crime [3]   5/2 6/6
8/13
crimes [1]   5/21
criminal [5]   1/3
2/2 9/4 14/10 40/6

criminality [1]
7/17
criminalizes [1]
7/7
CRISP [18]   1/17
1/17 2/11 2/21 16/3
16/17 17/18 22/12
23/25 25/12 26/16
27/21 29/9 31/13
36/8 36/21 37/20
38/5
Crisp's [1]   39/4
crux [1]   25/14
Ct [1]   7/25
cumulative [1]
13/22
CUSANELLI [22]   1/6
2/3 2/11 3/3 4/6
4/23 5/3 6/2 6/19
7/5 7/11 8/1 8/8
8/11 10/5 10/10
10/13 11/2 12/11
14/16 18/2 40/6
Cusanelli's [7]
2/25 12/6 13/9
13/16 13/18 14/21
15/1

**D**

D.C [9]   7/4 8/24
9/16 11/6 11/19
11/22 12/22 14/5
16/23
danger [1]   11/8
date [2]   37/10
42/10
day [10]   24/17 25/7
28/24 34/1 34/2
35/23 36/9 36/9
36/11 36/11
days [3]   35/19 36/7
37/23
DC [3]   1/5 1/15
1/25
deal [1]   34/24
dealing [1]   29/16
deals [1]   7/9
debated [1]   3/20
December [2]   4/3
7/23
December 10th [1]
4/3
December 28 [1]
7/23
Decent [1]   14/1
decertification [1]
12/14
decide [1]   12/4
decision [1]   3/21
decisions [1]   5/20
declaring [2]   11/11
14/14
declines [1]   11/20
defendant [6]   1/7
1/17 5/13 15/21
32/24 39/17
defendant's [6]   9/3
12/17 12/18 14/12
24/16 31/7
defense [12]   16/1

16/15 20/14 20/23
21/6 21/10 21/12
24/18 26/4 30/15
31/8 36/6
define [2]   4/9 7/17
defines [1]   3/6
definitely [1]
36/15
definition [2]   3/8
3/15
degree [2]   23/23
26/23
deliberate [1]
37/11
deliberating [1]
36/16
delineation [1]
16/8
demonstrating [1]
40/13
denied [1]   15/6
denies [1]   9/22
deny [1]   3/2
depend [1]   33/6
depending [3]   34/4
37/8 40/24
depends [2]   34/3
34/13
derogatory [2]
10/13 10/19
desire [4]   10/5
12/10 13/23 23/2
destroying [2]   4/24
8/17
destruction [5]
4/16 5/17 5/22 7/8
7/16
determine [1]   24/18
determines [1]   11/3
dictionary [4]   3/11
3/14 4/14 4/22
different [10]   4/20
4/25 5/2 5/4 6/8
11/12 21/1 21/4
24/17 26/18
differently [1]
16/24
difficult [3]   14/4
20/24 25/16
dire [5]   2/18 16/21
16/24 24/6 40/25
direct [2]   22/20
27/13
directives [1]   2/13
directly [4]   9/8
13/20 23/9 26/25
disagree [1]   30/20
disagrees [1]   4/8
discussed [2]   12/23
17/22
discussing [4]   7/23
16/15 33/19 37/21
discussions [1]
14/6
dismiss [4]   2/25
5/23 9/21 9/23
disorderly [2]
40/11 40/12
dispense [1]   11/15
displaying [1]

39/15
disruptive [1]
40/11
dissatisfaction [1]
11/22
distinction [3]
11/21 11/23 12/4
district [12]   1/1
1/1 1/10 1/14 1/23
4/2 4/4 5/16 7/23
13/7 16/23 38/4
distrust [2]   29/20
30/8
doctrine [1]   6/10
document [3]   5/6
7/16 8/17
documentary [1]   4/8
documents [3]   3/24
4/24 7/8
Doe [1]   14/7
don [1]   24/16
done [2]   36/4 36/18
door [2]   18/4 25/10
down [3]   17/7 19/7
24/6
dozen [1]   28/10
draw [1]   15/17
drawing [1]   26/13
drawn [1]   17/5
driving [1]   22/1
drown [1]   14/23
due [1]   7/15
during [5]   3/24
18/25 34/16 34/25
35/6
dying [1]   22/12

**E**

e-mail [1]   33/8
earlier [1]   29/16
early [1]   7/13
easy [1]   15/17
ECF [3]   3/1 9/25
10/18
edition [4]   3/11
3/14 4/15 4/22
either [8]   3/15
4/24 9/2 15/13 20/9
21/7 31/3 33/7
ejusdem [1]   6/10
election [3]   10/11
12/8 13/23
electoral [10]   3/4
3/16 3/23 8/18
10/25 26/24 27/7
27/25 28/6 29/1
electronically [1]
39/15
electronics [1]
39/11
element [2]   11/17
26/6
elements [1]   34/19
Elevator [1]   4/11
eliminates [1]   28/4
Elmo [1]   39/10
else [4]   2/18 19/16
33/19 37/20
elsewhere [1]   19/15
emotional [1]   13/25

emphasize hearing

**E**

emphasize [1]   23/23
end [1]   16/1
endless [1]   18/12
enforcement [1]
20/21
English [3]   3/11
4/14 20/9
enough [5]   4/15
14/22 20/7 33/17
37/16
Enron [1]   7/13
entering [3]   12/9
14/17 40/9
entitled [1]   42/5
entrance [3]   37/24
38/6 39/5
era [1]   17/3
establish [2]   28/13
29/17
established [1]
12/19
Establishing [1]
12/19
Even [1]   6/23
events [3]   22/21
23/7 23/18
everybody [5]   17/12
17/12 22/23 23/1
30/20
everyone [2]   18/13
28/8
everyone's [1]
27/10
evidence [21]   4/8
4/16 5/10 5/17 5/22
6/23 9/25 9/25 10/2
11/7 11/11 12/2
12/3 12/20 14/24
15/5 15/18 15/18
16/13 34/14 37/13
evident [1]   20/1
evidentiary [1]   4/1
evil [1]   7/18
evoke [1]   13/25
ex [1]   4/12
exact [1]   22/2
exactly [1]   14/12
examples [1]   6/7
excised [1]   16/6
exclude [4]   9/24
11/7 15/5 21/9
excluded [2]   15/12
15/19
excuse [1]   3/19
exhibit [1]   40/3
exhibits [4]   39/12
39/23 40/1 40/4
existence [1]   15/8
exists [1]   7/20
exorbitant [1]
38/14
expand [1]   21/3
expect [3]   34/22
37/3 39/8
expecting [2]   35/17
36/7
experience [1]
16/23

explain [1]   12/11
express [3]   8/11
29/20 29/21
expressed [2]   10/5
11/22
expresses [1]   29/19
extent [3]   15/6
18/11 28/1
extreme [1]   29/22
extrinsic [2]   11/20
12/4

**F**

F.2d [3]   8/24 14/5
14/8
F.3d [7]   7/4 9/16
11/19 11/24 12/21
14/15 14/19
F.Supp.3d [1]   13/7
face [1]   8/25
fact [2]   26/7 28/13
fact-specific [1]
26/7
factfinder [1]
11/11
facts [2]   9/12 25/2
factual [1]   25/3
fail [1]   32/12
fails [1]   7/7
fair [5]   5/1 17/9
20/7 20/25 25/16
fairness [1]   14/7
fall [1]   15/23
familiar [2]   19/12
33/9
far [2]   33/18 34/4
favor [1]   8/3
federal [1]   20/15
feel [3]   18/6 22/22
22/22
feelings [2]   20/18
20/22
feels [3]   26/6 26/9
30/14
few [2]   16/12 32/18
FIFIELD [2]   1/13
2/8
Fifth [1]   32/1
figure [1]   20/10
final [1]   34/21
Finally [3]   5/24
8/23 9/18
find [3]   21/15
30/12 30/13
fine [7]   16/2 18/18
23/21 24/15 26/18
29/4 31/18
finish [1]   36/16
first [9]   3/2 4/10
11/1 11/15 13/14
16/3 17/8 17/8 37/5
fish [1]   38/23
five [15]   20/14
24/21 24/22 24/23
24/24 26/22 27/1
29/17 29/25 30/19
30/25 31/21 32/4
32/5 40/13
fixed [1]   25/14
flag [2]   22/5 34/9

flexible [1]   36/20
floor [1]   7/21
fluctuate [1]   34/3
focused [1]   25/2
Fokker [1]   9/16
folks [2]   37/18
40/21
follow [9]   20/22
22/5 22/7 29/20
30/16 31/22 32/6
32/9 32/25
following [5]   3/2
4/9 31/24 32/7
35/23
For the Defendant [1]
1/17
force [1]   13/4
foregoing [1]   42/4
forget [1]   22/2
form [1]   7/21
formal [3]   3/17
34/25 40/14
formidable [1]   6/24
forth [2]   20/24
39/12
forward [1]   2/4
found [4]   6/25 9/5
9/20 10/17
four [14]   10/9
20/20 24/20 29/7
29/13 29/25 30/19
30/24 31/19 32/1
36/25 37/1 37/4
40/12
Fourth [2]   1/15 8/1
frankly [5]   21/8
23/6 29/7 30/1
30/12
fraudulent [1]
10/11
Friday [6]   36/4
36/12 36/16 36/17
36/18 37/10
Friedrich [1]   9/11
front [3]   1/18
16/24 22/9
fully [1]   37/19
further [1]   30/5

**G**

gathered [2]   27/18
28/21
gathering [1]   28/24
general [6]   7/24
17/11 26/23 28/20
30/2 30/6
generally [1]   32/15
generic [1]   25/1
generis [1]   6/10
gentlemen [1]   2/12
gets [2]   27/24
29/15
given [1]   7/20
gives [1]   5/1
gloss [2]   9/7 9/8
good [9]   2/6 2/9
2/10 2/12 22/7 29/5
33/3 38/20 39/14
government [30]
1/12 2/5 2/18 5/22

10/10 10/15 10/20
10/22 11/16 11/21
11/25 12/5 12/15
13/15 13/16 15/6
15/7 15/13 15/20
15/22 15/25 20/15
21/6 26/12 29/4
29/15 30/8 30/21
31/6 34/17
Government's [9]
10/8 10/18 25/25
26/7 26/22 28/15
28/17 29/17 36/5
granted [1]   15/9
great [1]   40/1
greater [2]   21/22
23/23
grievous [2]   8/5
8/8
gritty [1]   18/21
ground [1]   11/12
grounds [2]   40/10
40/12
group [4]   20/21
20/23 24/9 24/11
groups [1]   16/13
guess [5]   17/19
20/8 20/16 21/11
31/10
guilt [2]   11/11
14/5
guilty [4]   14/14
32/21 40/16 40/20

**H**

HALE [28]   1/6 2/11
2/25 3/3 4/6 4/23
5/3 6/2 6/19 7/5
7/11 8/1 8/8 8/11
10/5 10/10 10/13
11/2 12/6 12/11
13/9 13/16 13/18
14/16 14/21 15/1
18/2 40/6
HALE-CUSANELLI [3]
1/6 2/11 40/6
half [3]   28/10 36/9
36/11
hand [2]   27/10 28/8
handling [1]   2/19
hands [2]   28/10
32/19
happy [5]   16/9
18/15 19/7 29/10
32/5
hardship [1]   19/20
Harrisburg [1]   1/18
hats [1]   17/23
Hazelwood [1]   14/19
head [3]   18/1 31/14
31/16
health [1]   19/20
hear [8]   18/6 18/15
19/7 19/11 27/12
29/6 29/10 36/10
heard [8]   3/20
17/12 17/14 18/1
30/5 24/23 25/23
29/24
hearing [2]   3/13

**H**

hearing... [1]   3/17
hears [1]   14/2
heavily [1]   6/2
help [1]   12/10
here's [1]   22/15
high [1]   26/23
highlight [1]   15/22
highly [2]   12/23
 33/17
hinder [1]   4/13
history [3]   6/20
 7/1 7/20
hold [1]   32/23
holding [1]   9/12
holds [1]   15/3
holiday [2]   35/21
 35/22
honestly [4]   18/19
 23/1 33/5 38/7
Honor [34]   2/2 2/6
 2/10 2/20 2/23
 15/15 16/11 16/19
 17/19 19/10 19/19
 20/13 20/19 21/18
 22/13 23/6 24/15
 24/25 25/13 26/12
 27/2 27/22 29/25
 31/17 31/25 33/21
 35/20 36/9 37/6
 37/6 38/4 38/9
 39/20 41/1
Honor's [1]   26/17
HONORABLE [1]   1/9
HOOK [3]   1/22 42/3
 42/10
hope [1]   35/20
hopes [1]   12/15
hoping [1]   36/4
hour [1]   38/10

**I**

idea [2]   18/9 29/16
identify [1]   2/4
immediately [1]
 28/7
impartial [1]   25/16
impede [2]   8/14
 10/24
impedes [2]   5/4 9/9
impeding [2]   4/17
 15/8
impose [1]   33/21
impression [1]   14/4
inclined [6]   18/19
 19/8 24/21 29/7
 30/1 35/2
included [1]   19/13
indeed [4]   3/22 6/4
 6/12 13/20
indicate [1]   31/14
indicated [1]   7/3
indictment [5]   3/1
 9/13 39/18 40/8
 40/15
indirect [5]   22/20
 22/22 22/23 22/24
 23/1
individual [2]   24/6

24/11
individuals [2]
 28/2 32/16
infer [2]   12/16
 12/17
influence [3]   8/14
 14/9 14/11
influences [2]   5/3
 9/9
information [1]
 19/2
initial [4]   8/3
 17/1 22/4 22/5
innocence [1]   14/5
insert [1]   21/16
inserting [1]   26/5
institutions [1]
 10/17
instruction [2]
 22/7 31/2
instructions [9]
 31/22 31/23 32/7
 32/8 32/9 32/23
 34/17 34/18 34/21
integrity [1]   7/16
intending [2]   26/3
 30/4
intends [1]   12/1
intent [2]   10/3
 25/17
interest [2]   17/5
 23/24
interested [2]   19/4
 23/20
interference [1]
 5/18
interfering [4]   5/9
 5/11 7/9 8/19
interpret [2]   6/3
 6/11
interpretation [7]
 4/19 5/12 5/17 5/19
 6/20 8/16 8/22
into [8]   11/11
 14/13 15/23 18/11
 18/25 26/5 28/23
 33/1
intrinsic [3]   11/16
 11/20 12/4
intrinsic/extrinsic [1]
 11/20 12/4
introduce [2]   10/20
 15/6
introduced [1]   10/1
introducing [1]
 12/20
introduction [2]
 11/4 13/13
investigations [1]
 7/16
invite [2]   20/4
 30/22
invoke [1]   26/14
involved [1]   23/13
involvement [1]
 23/12
issue [7]   4/4 10/4
 12/3 27/23 31/2
 31/4 34/7
issues [5]   11/9

17/22 34/2 34/6
 34/18

**J**

January [14]   10/24
 12/13 12/18 12/25
 17/11 17/13 18/10
 22/16 22/21 27/5
 27/19 28/7 28/22
 33/18
January 6th [13]
 12/13 12/18 12/25
 17/11 17/13 18/10
 22/16 22/21 27/5
 27/19 28/7 28/22
 33/18
JEFF [3]   1/22 42/3
 42/10
Jewish [1]   10/16
Jews [8]   10/14
 10/22 13/9 13/17
 13/22 13/24 15/1
 15/9
joined [1]   12/13
joining [1]   12/18
JONATHAN [2]   1/17
 2/10
judge [6]   1/10 4/4
 5/13 9/11 14/16
 29/5
judge's [1]   32/8
judges [1]   9/19
judgment [1]   20/25
judicial [1]   3/24
jump [1]   21/18
juries [1]   33/18
juror [3]   14/1 14/4
 26/23
jurors [11]   24/19
 25/4 27/6 28/19
 30/13 30/16 32/5
 36/23 36/24 37/16
 39/14
jurors' [1]   36/3
jury [12]   12/16
 13/1 13/15 14/13
 14/16 20/6 31/20
 31/21 34/7 36/15
 36/16 37/4
jury's [1]   14/9
justice [2]   9/14
 14/22

**K**

KAREN [2]   1/12 2/6
Kate [1]   2/8
KATHRYN [1]   1/13
keep [1]   18/8
Keeper [1]   17/21
Kim [1]   2/8
KIMBERLY [1]   1/13
kind [11]   14/13
 19/14 20/17 21/2
 22/23 23/4 23/23
 25/3 27/13 31/1
 34/4
Kirk [1]   4/12
knowledge [2]   10/4
 27/24

**L**

ladies [1]   2/9
language [3]   6/22
 22/3 27/14
Lanier [1]   9/4
large [1]   33/6
larger [1]   33/15
last [2]   35/11
 35/18
late [1]   7/13
later [3]   18/10
 18/14 25/20
law [4]   3/14 4/21
 20/21 32/8
lay [3]   3/9 3/15
 31/20
lead [2]   8/16 26/25
least [3]   10/21
 19/15 34/18
leave [2]   24/18
 31/10
legal [2]   3/12 3/15
legislative [3]
 6/19 7/1 7/20
lenity [3]   8/2 8/4
 8/21
less [2]   21/14
 34/23
light [2]   2/13 24/3
lightly [1]   14/9
likely [1]   13/24
likes [1]   34/17
limine [1]   2/17
limited [3]   4/7
 13/14 15/2
Lindeen [1]   7/3
line [3]   6/17 35/8
 39/6
lines [3]   15/16
 18/1 21/24
linked [1]   4/19
list [3]   6/12 6/15
 37/19
listed [1]   6/7
lists [2]   40/2 40/3
little [8]   7/20
 17/23 23/9 24/16
 25/8 26/15 30/9
 39/13
LLC [1]   1/17
loaded [1]   30/9
logistical [1]
 33/23
logistics [2]   37/22
 40/24
long [3]   17/5 35/17
 37/14
longest [1]   35/20
look [2]   22/17
 34/22
looked [2]   14/18
 19/16
looking [6]   4/18
 9/21 11/5 11/23
 26/12 35/25
looks [3]   4/10
 21/17 34/6
lot [5]   16/23 21/17
 31/4 31/19 36/13

**L**

loud [1]   28/5
LOUIS [1]   1/6
lunch [1]   34/12
lure [2]   11/11
  14/13

**M**

mail [1]   33/8
main [1]   25/14
major [1]   10/16
makes [3]   8/13
  13/12 29/22
making [2]   26/6
  34/5
malfeasance [1]
  7/12
manner [1]   5/2
many [5]   5/12 10/17
  18/25 35/15 37/9
March [1]   5/15
March 7th [1]   5/15
Marshall [1]   39/7
masks [1]   2/14
matter [6]   8/3
  11/15 17/1 26/24
  29/22 42/5
matters [1]   36/13
may [19]   1/5 12/12
  13/1 14/9 17/3
  17/24 18/3 19/1
  19/1 21/18 24/16
  27/6 29/19 29/19
  33/21 36/16 37/19
  39/19 40/22
May 23rd [1]   40/22
maybe [3]   24/5 33/8
  37/17
McFADDEN [1]   1/9
McGill [1]   12/21
mean [7]   16/4 18/9
  25/4 29/23 30/6
  30/21 36/22
meaning [6]   3/8
  4/11 6/3 6/11 6/14
  12/3
means [7]   3/9 3/12
  4/20 4/21 5/1 17/2
  23/1
mechanics [2]   33/6
  33/10
Memorial [1]   35/23
mens [1]   11/17
mention [1]   17/1
messages [1]   31/5
microphone [1]
  26/15
middle [1]   18/5
might [17]   12/11
  12/13 14/13 14/16
  14/23 15/23 19/22
  20/5 27/2 32/21
  33/7 34/6 36/2
  36/19 37/8 37/9
  38/17
Miller [1]   5/14
mind [1]   23/5
minor [1]   6/4
minorities [3]

10/20 13/10 15/10
minute [1]   25/6
minutes [2]   33/22
  37/24
Monday [1]   35/24
monitors [1]   39/13
Montgomery [2]   7/22
  9/21
months [1]   7/6
more [14]   5/12 7/19
  13/20 17/21 23/9
  25/1 28/20 28/20
  30/2 30/11 30/23
  32/18 34/23 37/16
morning [6]   2/6 2/9
  2/10 2/12 38/11
  40/3
most [3]   5/8 6/24
  16/22
motion [8]   2/25 3/2
  5/23 9/20 9/23 9/24
  15/5 15/8
motions [1]   2/16
motive [9]   10/3
  10/23 12/17 12/18
  12/19 12/24 13/11
  13/16 13/20
Mr. [41]   2/21 2/25
  3/3 4/6 4/23 5/3
  6/2 6/19 7/5 7/11
  8/1 8/8 8/11 10/5
  10/10 10/13 11/2
  12/6 12/11 13/9
  13/16 13/18 14/16
  14/21 15/1 16/3
  16/17 17/18 18/2
  22/12 23/25 25/12
  26/16 27/21 29/9
  31/13 36/8 36/21
  37/20 38/5 39/4
Mr. Crisp [15]   2/21
  16/3 16/17 17/18
  22/12 23/25 25/12
  26/16 27/21 29/9
  31/13 36/8 36/21
  37/20 38/5
Mr. Crisp's [1]
  39/4
Mr. Hale-Cusanelli [18]
  3/3 4/6 4/23 5/3
  6/2 6/19 7/5 7/11
  8/1 8/8 8/11 10/5
  10/10 10/13 11/2
  12/11 14/16 18/2
Mr. Hale-Cusanelli's [6]
  2/25 12/6 13/9
  13/16 13/18 14/21
  15/1
Ms. [11]   17/16 19/9
  23/3 24/13 24/23
  29/24 33/20 35/16
  37/1 38/21 39/8
Ms. Chaclan [1]
  39/8
Ms. Chaclan's [1]
  38/21
Ms. Seifert [9]
  17/16 19/9 23/3
  24/13 24/23 29/24
  33/20 35/16 37/1

much [5]   5/16 7/20
  21/14 34/5 39/11
multiple [1]   9/18
must [5]   3/21 6/6
  8/3 15/12 29/23
myself [1]   30/18

**N**

narrow [1]   24/6
narrowing [2]   9/6
  9/8
natural [1]   5/8
nature [3]   18/4
  27/6 30/6
nay [1]   26/2
Nazi [2]   15/1 15/9
Nazis [2]   10/15
  16/5
necessarily [6]
  17/2 23/13 23/14
  24/11 25/5 30/21
necessary [3]   19/6
  30/23 31/12
need [6]   12/4 18/12
  22/8 24/4 32/6
  36/19
needle [1]   18/15
needs [1]   31/21
negative [2]   13/25
  14/3
negatively [1]   13/1
news [1]   24/17
next [5]   7/11 11/3
  16/1 16/20 33/4
Nichols [1]   5/14
night [1]   34/9
nine [2]   37/2 37/5
nitty [1]   18/21
nitty-gritty [1]
  18/21
NLRB [1]   7/24
non [1]   12/19
non-propensity [1]
  12/19
None [1]   10/7
nor [1]   8/8
normal [3]   21/15
  21/21 33/16
normally [3]   19/16
  30/10 38/13
North [1]   1/18
note [2]   8/4 32/14
noted [3]   6/21 9/11
  14/6
notes [4]   4/3 5/22
  5/24 9/18
notice [2]   12/1
  12/2
notions [1]   22/9
notoriety [1]   17/21
number [14]   3/1
  23/16 23/16 23/21
  23/21 29/6 29/17
  31/18 32/4 37/2
  37/4 37/5 37/8
  38/22
numbered [1]   6/18
numbers [3]   31/18
  35/13 36/22
NW [2]   1/15 1/24

**O**

o'clock [1]   40/22
Oath [1]   17/21
obedience [1]   26/14
object [5]   5/6 5/8
  6/11 6/12 30/10
object...for [1]
  5/6
objecting [2]   31/9
  31/11
objection [4]   11/3
  17/17 17/19 32/14
objections [3]   3/20
  3/25 4/1
objects [1]   4/25
obstruct [4]   4/10
  4/13 8/14 12/11
obstructed [1]   13/3
obstructing [2]
  12/8 14/17
obstruction [9]   3/3
  4/7 8/19 8/20 9/14
  9/21 9/23 11/17
  40/8
obstructive [1]
  8/10
obstructs [2]   5/3
  9/9
obtained [1]   31/7
obviously [10]   2/15
  18/4 18/9 25/13
  28/12 31/19 32/1
  32/24 34/23 36/18
occupation [1]   19/3
occur [1]   5/2
occurring [4]   27/5
  27/25 28/2 28/6
odious [1]   14/22
off [1]   17/25
offense [1]   11/12
Office [1]   1/14
officer [5]   3/18
  3/19 21/5 21/23
  21/24
officers [8]   20/15
  21/7 21/15 22/7
  22/8 22/8 38/6
  38/17
official [18]   1/23
  3/5 3/6 3/13 3/16
  3/18 5/4 5/7 5/8
  5/10 5/19 8/10 8/12
  8/14 9/9 14/17 40/8
  42/3
often [4]   7/18
  19/12 20/13 34/7
Old [1]   11/13
once [2]   23/20 33/9
one [23]   2/25 4/24
  11/21 17/8 18/19
  19/3 19/5 19/19
  20/12 22/19 23/6
  23/17 29/12 30/11
  30/25 31/12 31/15
  31/23 31/23 32/18
  39/7 39/19 40/8
one-by-one [1]
  31/23
ones [1]   19/12

**O**

only [12]   4/16 7/1
8/4 17/20 20/8
20/12 24/5 25/20
36/5 37/22 38/13
39/2
open [2]   18/4 35/9
opening [2]   30/15
34/19
opine [1]   11/20
opinion [3]   5/14
25/15 25/18
opinions [2]   20/14
25/9
opportunity [3]
10/3 15/20 24/2
opposition [2]   10/9
10/18
optimistic [1]
33/17
orders [1]   26/14
ordinary [1]   4/10
others [1]   6/8
otherwise [11]   4/20
4/20 6/2 6/3 6/6
7/2 15/8 19/8 22/14
27/9 38/10
out [8]   7/23 11/9
16/9 17/5 20/10
28/5 31/20 38/23
outrage [1]   29/21
outstanding [1]
2/16
outweighed [1]   11/8
outweighs [1]   15/11
over [3]   18/23
32/19 37/10
overcome [1]   6/25
overthrow [1]   30/22
overturn [2]   13/16
13/23
overturning [1]
15/7
Oxford [2]   3/11
4/14

**P**

PA [1]   1/18
packed [2]   17/3
18/25
page [23]   4/12 5/23
6/9 6/14 7/4 7/25
8/6 9/5 9/7 9/15
9/16 9/22 11/6
11/14 11/19 11/24
12/21 13/7 14/8
14/10 14/15 14/19
14/25
pages [1]   10/9
parading [1]   40/13
paragraph [1]   6/18
Park [1]   39/7
part [15]   13/15
18/19 18/20 19/8
19/15 19/19 20/13
22/12 22/15 22/15
22/19 29/7 30/24
30/25 33/7
participating [1]

10/24
particular [4]   14/5
18/7 25/19 29/18
particularly [2]
22/11 23/15
parties [2]   35/1
40/2
party [3]   15/2
15/10 16/7
PASCHALL [2]   1/13
2/8
pass [1]   38/2
passage [1]   4/13
past [2]   11/22
37/18
people [15]   2/14
17/3 17/10 17/24
18/22 18/25 19/25
20/4 21/12 24/2
28/1 30/20 32/19
37/8 37/9
perhaps [1]   19/20
permit [1]   39/23
perpetrated [1]
7/13
person [3]   22/19
23/9 29/18
person's [3]   10/1
19/2 30/3
personal [4]   23/6
23/7 23/11 23/17
personnel [1]   38/15
phone [2]   31/7 33/8
phrase [1]   6/11
physical [2]   5/22
19/20
pick [1]   36/21
picketing [1]   40/14
place [1]   8/13
plain [1]   6/22
Plaintiff [1]   1/4
plan [1]   36/17
planning [2]   17/13
36/12
plans [4]   36/3 37/8
37/10 37/14
planting [1]   25/7
plays [1]   6/4
plead [2]   40/15
40/16
please [2]   2/4 34/9
podium [1]   40/5
Poindexter [4]   8/24
9/5 9/7 9/19
Poindexter's [1]
9/12
point [5]   18/17
22/3 24/7 25/11
33/12
police [9]   20/15
20/18 21/5 21/7
21/15 21/23 21/23
22/7 22/8
political [8]   12/6
16/7 18/3 26/6
29/18 30/3 30/4
30/23
position [1]   24/25
possible [6]   28/3
28/12 28/14 28/23

37/25 39/11
possibly [2]   20/6
36/18
potential [1]   14/11
pre [1]   39/23
pre-admission [1]
39/23
preceding [1]   28/8
preconceived [1]
22/9
prefer [1]   27/13
prejudice [7]   11/9
11/10 12/25 13/2
13/5 13/6 15/10
prejudicial [1]
15/2
preliminary [1]
11/15
premarked [1]   40/4
preparation [1]
10/3
present [3]   14/11
15/20 31/6
presented [1]   14/24
presenting [1]   31/4
presided [1]   18/23
President [3]   10/11
16/13 26/5
presiding [1]   3/19
presupposes [1]
25/3
pretrial [2]   1/9
15/24
pretty [2]   26/4
26/25
prevent [1]   4/13
primary [1]   39/2
principal [1]   7/18
prior [2]   10/4 15/7
probably [2]   15/25
17/12
probative [6]   11/7
12/24 13/4 13/14
15/3 15/11
probe [1]   22/17
problem [2]   30/7
32/7
problematic [1]
25/22
proceeding [25]   3/5
3/6 3/7 3/9 3/9
3/12 3/17 3/18 4/17
4/17 5/4 5/7 5/8
5/10 5/11 5/19 7/9
8/12 8/14 8/19 8/20
9/10 13/4 14/17
40/9
proceedings [4]
3/24 8/10 41/4 42/5
process [2]   3/19
17/5
produce [1]   15/25
produced [1]   3/24
professional [2]
23/12 23/18
progress [2]   4/14
34/5
prohibition [1]   4/7
proof [1]   11/12
propensity [1]

12/19
proposed [3]   2/17
2/17 16/20
proposes [1]   5/18
prosecutors [3]
20/14 20/23 21/6
prove [1]   10/1
provide [1]   10/6
provided [1]   11/25
proving [1]   10/3
public [2]   26/13
35/8
pull [1]   26/15
purge [1]   10/7
purpose [4]   7/11
10/2 10/8 12/20
purposes [2]   3/7
6/25
pursuant [1]   31/8
push [1]   36/19
put [2]   12/13 30/15

**Q**

qualify [1]   8/19
quick [1]   21/19
quickly [1]   17/4
quite [3]   32/22
33/5 38/7
quoting [1]   9/15

**R**

race [1]   16/5
racial [2]   14/6
14/9
raise [4]   26/20
27/10 32/19 34/2
raised [3]   5/13
11/3 28/10
raises [1]   28/8
rarely [1]   7/1
rather [2]   14/17
27/16
rea [1]   11/17
reach [1]   7/18
reached [2]   3/22
4/5
react [1]   13/1
reaction [1]   14/12
read [2]   5/9 9/13
reading [3]   6/22
40/15 40/19
real [1]   21/18
realize [1]   17/10
really [6]   18/23
20/1 25/2 27/7 31/3
38/13
reason [3]   24/5
25/20 27/18
reasonable [2]
11/25 14/1
reasonably [1]   9/3
reasoning [2]   26/1
26/2
reasons [6]   3/2 4/9
9/22 12/23 17/22
28/21
receive [2]   19/1
19/2
recent [1]   2/13
recess [1]   34/12

**R**

record [4]   2/5 5/6
31/16 42/5
records [1]   3/23
refer [2]   6/6 6/23
reference [1]   10/18
refers [1]   11/10
regard [2]   17/24
32/18
regardless [1]
13/13
rejects [1]   3/5
rel [1]   4/12
related [4]   12/6
13/20 19/11 26/8
relatively [3]   6/4
16/4 16/8
relevance [1]   29/14
relevant [8]   9/3
11/7 13/11 23/14
24/10 26/19 26/25
31/10
relied [2]   6/10 7/1
relies [2]   6/2 8/23
religion [1]   16/5
remaining [1]   40/10
remarks [1]   14/2
remind [1]   35/17
removed [1]   23/20
render [1]   20/24
Reporter [3]   1/22
1/23 42/3
request [1]   21/25
require [2]   2/14
8/21
required [1]   12/1
respect [4]   6/7
15/24 21/6 28/15
respects [1]   6/8
responded [1]   23/8
responds [1]   40/17
response [3]   13/25
14/13 18/13
responsive [1]   26/1
rest [3]   5/16 14/24
18/19
restricted [4]   12/9
14/18 40/10 40/11
result [2]   8/9 8/17
resulting [1]   13/5
results [3]   3/21
3/23 12/8
reverberating [1]
14/23
reverse [1]   21/17
review [2]   16/9
34/21
revolution [1]
12/10
right [11]   16/2
18/18 19/15 20/10
21/1 27/17 27/20
28/25 34/21 34/22
38/23
rights [1]   33/2
Ring [1]   14/14
riot [2]   12/14
12/18
riots [1]   28/8

risk [1]   14/9
role [1]   6/4
room [2]   1/24 33/7
rule [16]   8/2 8/4
8/21 9/25 11/2 11/4
11/6 11/17 12/1
12/7 12/20 12/22
13/12 13/13 15/3
15/12
ruled [1]   3/20
rules [1]   31/19
ruling [4]   15/15
15/24 18/16 29/13
rulings [2]   15/14
16/18

**S**

same [5]   4/5 6/7
6/12 6/13 29/15
Sandlin [4]   4/2
7/19 9/11 9/15
saw [1]   12/14
saying [5]   18/6
18/7 20/5 26/2
27/12
Schindler [1]   4/11
scope [1]   7/17
screening [1]   19/24
seat [1]   35/12
SEC [1]   7/3
second [4]   4/6
13/24 23/20 37/5
section [2]   4/6
5/16
Sections [1]   4/19
security [3]   38/3
38/6 38/17
seed [1]   25/7
seeks [2]   10/20
15/6
seems [4]   25/8
25/11 26/25 27/10
SEIFERT [11]   1/12
2/7 17/16 19/9 23/3
24/13 24/23 29/24
33/20 35/16 37/1
semicolon [1]   6/16
Semitic [2]   13/21
14/1
send [1]   33/8
sense [10]   2/22 3/9
3/12 17/16 19/21
22/1 23/8 30/11
36/8 37/9
sentence [2]   6/13
27/3
separate [2]   6/17
14/4
separated [1]   6/16
separately [1]   6/18
series [1]   3/10
Services [1]   9/16
session [1]   3/22
setting [3]   24/10
24/11 24/12
seven [3]   29/14
30/12 30/18
several [2]   29/9
33/16
Shaking [1]   31/14

Shepard [1]   14/24
shook [1]   31/16
shoot [1]   18/6
shorter [1]   39/6
show [3]   10/23
13/15 13/19
showing [1]   39/12
shows [1]   38/16
side [2]   31/3 39/5
sidebar [1]   26/20
sides [1]   16/9
significant [1]
25/17
similar [2]   6/7
19/17
similarly [2]   8/16
9/20
simply [1]   12/13
sit [3]   19/11 35/5
36/12
sitting [1]   37/11
six [6]   24/21 24/22
25/24 26/21 30/12
30/18
Sixth [1]   14/19
size [1]   33/11
slate [3]   10/6
12/10 13/19
slightly [1]   21/4
society [1]   14/1
solves [1]   30/7
somebody [3]   20/5
22/6 32/24
somebody's [1]   18/5
somehow [1]   24/1
someone [8]   22/20
23/17 23/19 25/15
25/20 28/23 29/21
29/22
something's [1]
4/13
sometimes [1]   32/16
somewhat [1]   13/22
sorry [4]   28/5
31/25 36/10 40/18
sort [3]   22/23 25/7
28/18
sounds [1]   14/23
29/5 38/20
Southwest [1]   7/24
sparking [1]   13/18
speaker [1]   14/3
specific [5]   11/12
17/10 17/15 17/23
26/7
specifically [5]
14/15 19/6 19/23
30/10 32/11
stand [2]   39/12
39/24
standing [1]   9/2
start [2]   6/21
33/25
starting [2]   2/5
37/12
state [1]   19/2
statement [1]   29/22
statements [34]
7/21 10/4 10/14
10/14 10/16 10/17

10/19 10/21 10/22
10/23 11/2 11/4
11/16 12/7 12/9
12/16 12/17 12/23
13/2 13/5 13/13
13/18 13/20 13/21
13/24 14/12 14/21
15/1 15/7 15/9
15/11 15/21 15/23
30/3
STATES [26]   1/1 1/3
1/10 2/3 2/7 4/1
4/12 5/14 5/25 5/25
6/1 7/22 8/23 9/4
9/15 10/6 11/5
11/13 11/18 11/23
12/21 13/6 14/7
14/14 14/18 14/25
statute [11]   4/9
4/18 5/9 6/22 7/2
7/24 8/1 8/5 8/13
8/22 9/2
statute's [3]   6/24
6/25 7/17
statutes [2]   7/18
9/14
stems [1]   13/2
still [5]   16/10
23/14 24/9 29/14
30/6
stopping [1]   8/12
store [1]   36/6
strain [1]   8/11
strained [1]   8/22
Street [3]   1/15
1/18 38/6
strike [5]   18/20
19/8 22/15 22/24
26/21
strong [3]   13/25
20/17 20/22
Subsection [1]   7/9
substantially [2]
11/8 15/11
subsumed [1]   31/20
subversive [1]
13/19
suggest [1]   27/2
suggested [4]   16/25
17/6 34/23 35/3
suggesting [1]
35/14
suggests [2]   23/23
32/24
superfluidity [1]
5/13
superfluous [1]
18/17
superseding [3]   3/1
39/18 40/7
support [1]   6/20
supports [1]   6/22
suppose [1]   31/10
supposed [2]   27/11
32/23
Supreme [1]   6/5
sure [12]   13/1
17/10 26/11 26/11
26/17 30/6 33/5
38/4 38/7 38/20

**S**

sure... [2]   38/21
39/9
surprise [2]   8/9
8/12

**T**

table [1]   2/7
talk [7]   2/17 16/3
16/5 16/20 24/2
37/15 38/5
talked [2]   23/22
33/16
talking [3]   16/6
17/10 32/1
tampering [1]   6/23
tangential [1]
13/22
tangible [3]   4/8
6/11 6/12
target [1]   7/12
technical [1]   39/19
technology [1]
39/10
tends [1]   16/24
term [1]   11/10
terms [1]   37/23
testify [3]   32/12
32/12 32/20
testimony [3]   7/8
21/5 21/23
thanks [3]   35/14
40/21 41/3
therefore [4]   13/6
13/11 13/22 20/6
thinking [1]   28/5
third [3]   3/11 4/14
6/19
Thomas [1]   8/6
though [4]   23/6
27/14 30/8 30/11
thought [3]   10/10
19/16 35/11
thoughts [2]   18/14
23/3
thread [1]   18/14
threaten [1]   14/6
three [13]   7/6 10/9
22/15 22/19 24/4
24/10 29/12 31/18
32/1 35/19 35/20
36/7 40/10
thus [4]   4/23 7/14
12/16 13/4
tie [1]   23/9
tied [1]   4/7
TIMOTHY [4]   1/6 2/3
2/11 40/6
tipping [1]   17/23
today [2]   2/19
37/21
together [2]   34/9
35/2
top [1]   17/25
touchstone [1]   9/1
towards [1]   13/22
transcript [3]   1/9
15/21 42/4
trappings [1]   3/17

travel [4]   36/2
37/8 37/10 37/14
treat [1]   14/8
TREVOR [1]   1/9
trial [1]   14/7
18/5 25/20 33/23
34/16 34/16 34/24
34/25 35/6 36/18
40/3
trials [1]   20/13
trigger [3]   17/24
18/13 22/18
true [1]   42/4
Trump [1]   26/5
truth [1]   30/19
truthful [1]   23/2
try [5]   33/7 36/14
36/16 38/23 39/15
trying [4]   17/9
22/17 26/13 29/17
Tuesday [1]   37/12
tweak [1]   32/5
two [18]   2/16 4/25
16/8 18/20 19/5
19/8 20/13 22/12
22/15 23/16 23/21
23/21 31/18 35/16
35/19 36/7 37/4
40/9
type [3]   7/12 18/21
28/18
typical [2]   18/20
30/9
typically [9]   20/19
21/25 25/1 25/8
34/11 34/17 37/12
39/6 40/17

**U**

U.S [11]   1/14 1/23
4/12 5/25 6/1 8/6
9/5 11/13 14/25
22/21 23/18
U.S.C [1]   3/6
unaware [2]   27/18
29/1
uncertainty [1]   8/5
uncomfortable [2]
18/24 26/5
under [10]   3/15
5/17 5/21 8/2 12/1
12/7 12/20 13/12
15/12 17/22
understands [1]
30/20
understood [1]
27/25
unfair [5]   11/9
11/10 12/25 13/6
15/10
unfairly [1]   15/2
united [26]   1/1 1/3
1/10 2/3 2/7 4/1
4/11 5/14 5/24 5/25
6/1 7/22 8/23 9/4
9/15 10/6 11/5
11/13 11/18 11/23
12/21 13/6 14/7
14/14 14/18 14/25
unlikely [1]   31/1

unnecessary [1]
25/11
unorthodox [1]   25/8
unpersuaded [1]
6/21
unusual [1]   26/23
up [9]   18/3 20/22
22/5 32/20 34/24
35/21 36/14 36/16
38/22
upheld [1]   5/20
upon [1]   3/20
upstairs [1]   40/23
urged [1]   11/21
use [8]   5/6 9/13
10/8 12/1 37/3
37/25 37/25 39/10
used [6]   4/16 5/4
5/10 6/14 8/17
19/12
uses [2]   6/19 22/2
usually [3]   20/21
21/9 35/16

**V**

vague [3]   8/25 9/6
27/11
vagueness [1]   9/1
value [4]   11/8
13/14 15/3 15/11
various [1]   9/14
venire [1]   33/11
veniremen [1]   32/6
verbs [6]   4/15 5/4
5/5 5/7 6/15 8/9
verdict [1]   14/10
version [1]   33/5
video [2]   23/15
23/22
view [1]   39/14
violate [1]   4/23
violating [1]   4/25
visceral [1]   14/12
voir [5]   2/18 16/21
16/24 24/6 40/24
vote [3]   3/4 3/16
8/18
votes [1]   10/25
vs.Miller [1]   11/5

**W**

wait [3]   35/13 37/7
37/13
waive [2]   40/14
40/19
wanted to [1]   32/19
wants [2]   21/9
24/19
war [6]   10/6 10/22
12/6 12/10 13/19
16/7
war-related [1]
12/6
warning [1]   5/1
warrant [3]   31/8
31/9 31/11
Washington [3]   1/5
1/15 1/25
watched [2]   23/7
23/15

watching [2]   23/12
23/22
water [1]   38/11
way [12]   4/20 4/25
12/14 17/25 18/7
20/11 22/17 22/24
23/4 23/8 26/19
39/16
weaker [1]   14/23
wear [1]   2/14
week [2]   16/1 33/4
weekend [1]   37/10
weight [2]   7/21
21/22
welcome [2]   2/15
33/1
well-established [1]
12/19
weren't [1]   26/13
what's [3]   33/11
35/22 36/8
whatnot [1]   19/5
whittle [1]   17/7
whittling [1]   19/7
who's [1]   19/25
wider [1]   21/5
Wilkins [1]   13/7
willing [1]   29/19
win [1]   10/12
wish [2]   2/15 40/15
wishes [1]   13/15
withdrawing [1]
29/13
within [1]   31/20
without [2]   17/23
30/4
witness [4]   39/12
39/12 39/23 40/2
WL [3]   4/2 5/14
7/22
women [4]   10/19
13/10 15/10 16/5
wondering [1]   24/3
word [9]   3/9 4/20
6/3 6/4 6/5 6/17
8/25 9/5 9/13
word's [1]   4/10
words [4]   6/13 6/16
10/7 28/4
work [2]   16/9 20/20
working [1]   35/1
works [1]   38/8
wrap [1]   36/14
wrapped [1]   35/21
wrong [2]   10/1 36/1

**Y**

Yates [3]   6/1 6/10
6/14
years [1]   32/19