APPEAL,CAP,CAT B

# U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: <u>1:21−cr−00119−CJN</u>−1

Case title: USA v. MILLER

Magistrate judge case number:  1:21−mj−00117−ZMF *SEALED*

Date Filed: 02/12/2021

Assigned to: Judge Carl J. Nichols

**<u>Defendant (1)</u>**

**GARRET MILLER**
         represented by **Camille Wagner**
WAGNER PLLC
1629 K Street
Suite 300
Washington, DC 20006
202−630−8812
Email: law@myattorneywagner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clinton Broden**
BRODEN & MICKELSEN
2600 State Street
Dallas, TX 75204
214−720−9552
Fax: 214−720−9594
Email: clint@texascrimlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| 18 U.S.C. 231(a)(3); CIVIL DISORDER; Civil Disorder (1−2) | |
| 18:231(a)(3); CIVIL DISORDER; Civil Disorder (1s−2s) | |
| 18:231(a)(3); CIVIL DISORDER; Civil Disorder (1ss−2ss) | |

18 U.S.C. 1512(c)(2) and 2; TAMPERING
WITH A WITNESS, VICTIM OR
INFORMANT; Obstruction of an Official
Proceeding and Aiding and Abetting
(3)

18:1512(c)(2) and 2; TAMPERING WITH
A WITNESS, VICTIM OR
INFORMANT; Obstruction of an Official
Proceeding and Aiding and Abetting
(3ss)

18 U.S.C. 111(a)(1);
ASSAULTING/RESISTING/IMPEDING
OFFICERS/EMPLOYEES; Assaulting,
Resisting, or Impeding Certain Officers
(4)

18:111(a)(1);
ASSAULTING/RESISTING/IMPEDING
OFFICERS/EMPLOYEES; Assaulting,
Resisting, or Impeding Certain Officers
(4s)

18:111(a)(1);
ASSAULTING/RESISTING/IMPEDING
OFFICERS/EMPLOYEES; Assaulting,
Resisting, or Impeding Certain Officers
(4ss)

18 U.S.C. 875(c); INTERSTATE
COMMUNICATIONS – THREATS;
Interstate Threats to Injure or Kidnap
(5–6)

18:875(c); INTERSTATE
COMMUNICATIONS – THREATS;
Interstate Threats to Injure or Kidnap
(5s–6s)

18:875(c); INTERSTATE
COMMUNICATIONS – THREATS;
Interstate Threats to Injure or Kidnap
(5ss–6ss)

18 U.S.C. 1752(a)(1); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Entering and Remaining in a Restricted
Building or Grounds
(7)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Entering and Remaining in a Restricted
Building or Grounds
(7s)

18:1752(a)(1); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Entering and Remaining in a Restricted
Building or Grounds
(7ss)

18 U.S.C. 1752(a)(2); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Disorderly and Disruptive Conduct in a
Restricted Building or Grounds
(8)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Disorderly and Disruptive Conduct in a
Restricted Building or Grounds
(8s)

18:1752(a)(2); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Disorderly and Disruptive Conduct in a
Restricted Building or Grounds
(8ss)

18 U.S.C. 1752(a)(3); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Impeding Ingress and Egress in a
Restricted Building or Grounds
(9)

18:1752(a)(3); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Impeding Ingress and Egress in a
Restricted Building or Grounds
(9s)

18:1752(a)(3); TEMPORARY
RESIDENCE OF THE PRESIDENT;
Impeding Ingress and Egress in a
Restricted Building or Grounds
(9ss)

40 U.S.C. 5104(e)(2)(D); FEDERAL
STATUTES, OTHER; Disorderly Conduct
in a Capitol Building
(10)

40:5104(e)(2)(D); VIOLENT ENTRY
AND DISORDERLY CONDUCT ON
CAPITOL GROUNDS; Disorderly
Conduct in a Capitol Building
(10s)

40:5104(e)(2)(D); VIOLENT ENTRY
AND DISORDERLY CONDUCT ON
CAPITOL GROUNDS; Disorderly
Conduct in a Capitol Building

(10ss)

40 U.S.C. 5104(e)(2)(E); FEDERAL
STATUTES, OTHER; Impeding Passage
Through the Capitol Grounds or Buildings
(11)

40:5104(e)(2)(E); VIOLENT ENTRY
AND DISORDERLY CONDUCT ON
CAPITOL GROUNDS; Impeding Passage
Through the Capitol Grounds or Buildings
(11s)

40:5104(e)(2)(E); VIOLENT ENTRY
AND DISORDERLY CONDUCT ON
CAPITOL GROUNDS; Impeding Passage
Through the Capitol Grounds or Buildings
(11ss)

40 U.S.C. 5104(e)(2)(G); FEDERAL
STATUTES, OTHER; Parading,
Demonstrating, or Picketing in a Capitol
Building
(12)

40:5104(e)(2)(G); VIOLENT ENTRY
AND DISORDERLY CONDUCT ON
CAPITOL GROUNDS; Parading,
Demonstrating, or Picketing in a Capitol
Building
(12s)

40:5104(e)(2)(G); VIOLENT ENTRY
AND DISORDERLY CONDUCT ON
CAPITOL GROUNDS; Parading,
Demonstrating, or Picketing in a Capitol
Building
(12ss)


**Highest Offense Level (Opening)**

Felony


**Terminated Counts**                                    **Disposition**

18:1512(c)(2) and 2; TAMPERING WITH
A WITNESS, VICTIM OR
INFORMANT; Obstruction of an Official
Proceeding and Aiding and Abetting
(3s)


**Highest Offense Level (Terminated)**

Felony

4

| **Complaints** | **Disposition** |
| --- | --- |
| COMPLAINT in Violation of<br>18:1752(a)(1), (2), 40:5104(e)(2)(G),<br>18:1512(c)(2), 18:231(a)(3) and 18:875(c) | |

---

**Plaintiff**

**USA**                                    represented by   **Amanda Jawad**
DOJ–USAO
211 W. Fort Street
Suite 2001
Detroit, MI 48226
(313) 226–9116
Email: amanda.jawad@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Benjamin Edward Kringer**
DOJ–USAO
United States Attorney's Office
555 4th Street NW
Washington, DC 20001
202–256–2397
Email: benjamin.kringer@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**David Lieberman**
DOJ–CRM
Appellate
950 Pennsylvania Avenue NW
Suite 1264
Washington, DC 20530
202–262–6805
Email: david.lieberman@usdoj.gov
*TERMINATED: 12/30/2021*
*Designation: Assistant U.S. Attorney*

**Elizabeth C. Kelley**
U.S. ATTORNEY'S OFFICE
555 4th Street, N.W.
Washington, DC 20350
202–252–7238
Email: elizabeth.kelley@usdoj.gov
*TERMINATED: 11/30/2021*
*Designation: Assistant U.S. Attorney*

**James Pearce**
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION APPELLATE

SECTION
Department of Justice, Criminal Division
950 Pennsylvania Ave NW
Suite 1250
Washington, DC 20530
(202) 532–4991
Fax: (202) 305–2121
Email: james.pearce@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Stephen James Rancourt**
DOJ–USAO
Northern District of Texas
1205 Texas Avenue
Suite 700
Lubbock, TX 79412
806–472–7351
Email: stephen.rancourt@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 01/19/2021 | 1 | | SEALED COMPLAINT as to GARRET MILLER (1). (Attachments: # 1 Statement of Facts) (zstd) [1:21–mj–00117–ZMF *SEALED*] (Entered: 01/19/2021) |
| 01/19/2021 | 3 | | MOTION to Seal Case by USA as to GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(zstd) [1:21–mj–00117–ZMF *SEALED*] (Entered: 01/19/2021) |
| 01/19/2021 | 4 | | ORDER granting 3 Motion to Seal Case as to GARRET MILLER (1). Signed by Magistrate Judge Zia M. Faruqui on 1/19/2021. (zstd) [1:21–mj–00117–ZMF *SEALED*] (Entered: 01/19/2021) |
| 01/19/2021 | 5 | | Amended Complaint by USA as to GARRET MILLER re 1 Complaint (Sealed) (Attachments: # 1 Amended Statement of Facts)(zstd) [1:21–mj–00117–ZMF *SEALED*] (Entered: 01/25/2021) |
| 01/19/2021 | 7 | | Amended MOTION to Seal Case by USA as to GARRET MILLER. (zstd) (Additional attachment(s) added on 1/25/2021: # 1 Text of Proposed Order) (zstd). [1:21–mj–00117–ZMF *SEALED*] (Entered: 01/25/2021) |
| 01/19/2021 | 8 | | ORDER granting 7 Motion to Seal Case as to GARRET MILLER (1). Signed by Magistrate Judge Zia M. Faruqui on 1/19/2021. (zstd) [1:21–mj–00117–ZMF *SEALED*] (Entered: 01/25/2021) |
| 01/20/2021 | | | Arrest of GARRET MILLER in US DISTRICT COURT OF THE NORTHERN DISTRICT OF TEXAS. (zltp) [1:21–mj–00117–ZMF *SEALED*] (Entered: 02/16/2021) |
| 01/29/2021 | 9 | | Rule 5(c)(3) Documents Received as to GARRET MILLER from US DISTRICT COURT OF THE NORTHERN DISTRICT OF TEXAS Case |

| | | | |
|---|---|---|---|
| | | | Number 3:21–MJ–00052–BN (zltp) [1:21–mj–00117–ZMF *SEALED*] (Entered: 02/16/2021) |
| 02/12/2021 | 10 | | INDICTMENT as to GARRET MILLER (1) count(s) 1–2, 3, 4, 5–6, 7, 8, 9, 10, 11, 12. (zltp) (Entered: 02/16/2021) |
| 02/16/2021 | | | Case unsealed as to GARRET MILLER (bb) (Entered: 03/01/2021) |
| 03/02/2021 | 12 | | NOTICE OF ATTORNEY APPEARANCE Elizabeth C. Kelley appearing for USA. (Kelley, Elizabeth) (Entered: 03/02/2021) |
| 03/18/2021 | 13 | | MOTION for Leave to Appear Pro Hac Vice Camille Wagner *F. Clinton Broden F. Clinton Broden* Filing fee $ 100, receipt number ADCDC–8311751. Fee Status: Fee Paid. by GARRET MILLER. (Attachments: # 1 Declaration declaration of out–of–state attorney, # 2 Exhibit certificate of good standing)(Wagner, Camille) (Entered: 03/18/2021) |
| 03/19/2021 | 14 | | MOTION to Revoke *Detention Order* by GARRET MILLER. (Attachments: # 1 Exhibit motion to revoke detention order attachments, # 2 Text of Proposed Order proposed order)(Wagner, Camille) (Entered: 03/19/2021) |
| 03/23/2021 | | | MINUTE ORDER as to GARRET MILLER. Upon review of Defendant's 14 Motion to Revoke Detention Order, it is hereby ORDERED that the Government shall file any response by **March 26, 2021**. The Government's response should clarify how and whether it plans to transport Defendant to the District of Columbia. It is further ORDERED that the Parties shall appear for oral argument via teleconference at **4 P.M. on April 1, 2021**. Speedy Trial as GARRET MILLER is excluded from March 21, 2021 to April 1, 2021, in the interests of justice. Signed by Judge Carl J. Nichols on March 23, 2021. (lccjn3) (Entered: 03/23/2021) |
| 03/23/2021 | | | Set/Reset Deadlines/Hearings as to GARRET MILLER: Government Response due by 3/26/2021. Status Conference set for 4/1/2021 at 04:00 PM in Telephonic/VTC before Judge Carl J. Nichols. (zcal) (Entered: 03/24/2021) |
| 03/25/2021 | 15 | | MOTION for Extension of Time to File Response/Reply as to 14 MOTION to Revoke *Detention Order* by USA as to GARRET MILLER. (Kelley, Elizabeth) (Entered: 03/25/2021) |
| 03/25/2021 | | | MINUTE ORDER. Upon review of the government's 15 Motion for Extension of Time, it is hereby ORDERED that the Motion is GRANTED. The government shall file its response to Defendant's 14 Motion to Revoke Detention Order by **March 29, 2021**. Signed by Judge Carl J. Nichols on March 25, 2021. (lccjn3) (Entered: 03/25/2021) |
| 03/25/2021 | | | Set/Reset Deadlines as to GARRET MILLER: Government Response due by 3/29/2021. (zcal) (Entered: 03/26/2021) |
| 03/29/2021 | 16 | | Memorandum in Opposition by USA as to GARRET MILLER re 14 MOTION to Revoke *Detention Order* (Kelley, Elizabeth) (Entered: 03/29/2021) |
| 03/30/2021 | 17 | | MOTION to Continue , MOTION to Exclude *Time* by USA as to GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Kelley, Elizabeth) (Entered: 03/30/2021) |
| 03/30/2021 | | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER. The Court having considered Defendant's 13 Motion For Admission Pro Hac Vice of F. Clinton Broden, and it appearing to the Court that the attorney referenced therein meets the requirements for *pro hac vice* admission under Local Civil Rule 83.2(d), it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that F. Clinton Broden is ADMITTED to practice before the Court *pro hac vice*. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions**. Signed by Judge Carl J. Nichols on March 30, 2021. (lccjn3) (Entered: 03/30/2021) |
| 03/31/2021 | 18 | | REPLY to Opposition re 14 MOTION to Revoke *Detention Order (Reply)* by GARRET MILLER. (Attachments: # 1 Exhibit Attachment to Reply Motion)(Wagner, Camille) Modified event title on 4/5/2021 (znmw). (Entered: 03/31/2021) |
| 03/31/2021 | 19 | | NOTICE OF ATTORNEY APPEARANCE: Clinton Broden appearing for GARRET MILLER (Broden, Clinton) (Entered: 03/31/2021) |
| 03/31/2021 | 20 | | RESPONSE by GARRET MILLER re 17 MOTION to Continue MOTION to Exclude *Time* (Broden, Clinton) (Entered: 03/31/2021) |
| 03/31/2021 | 21 | | SUPPLEMENT by GARRET MILLER re 14 MOTION to Revoke *Detention Order* (Attachments: # 1 Attachment A)(Broden, Clinton) (Entered: 03/31/2021) |
| 04/01/2021 | | | Minute Entry and Order for proceedings held before Judge Carl J. Nichols: Telephone Motion Hearing as to GARRET MILLER held on 4/1/2021 re 17 and 18 / Arraignment as to GARRET MILLER (1): Count 1−2,3,4,5−6,7,8,9,10,11,12 held on 4/1/2021. Not Guilty Plea as to all counts. Government's Motion 17 ; Granted in Part and Denied in Part. Defendant's Motion 18 ; Denied for reasons set forth on the record. Further Order to be issued by the Court. Speedy Trial as to GARRET MILLER is Excluded from 4/1/2021 to 5/3/2021, in the Interest of Justice, XT. Status Conference set for 5/3/2021 at 02:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clint Broden and Camille Wagner; US Attorney: Elizabeth Kelley. (zcal) (Entered: 04/01/2021) |
| 04/01/2021 | 22 | | ORDER. Signed by Judge Carl J. Nichols on April 1, 2021. (lccjn3) (Entered: 04/01/2021) |
| 04/05/2021 | 23 | | Unopposed MOTION for Protective Order by USA as to GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Kelley, Elizabeth) (Entered: 04/05/2021) |
| 04/05/2021 | 24 | | Unopposed MOTION for Disclosure *of 6(e) and Sealed Materials* by USA as to GARRET MILLER. (Kelley, Elizabeth) (Entered: 04/05/2021) |
| 04/06/2021 | | | MINUTE ORDER. Upon review of the government's 23 Motion for Protective Order, it is hereby ORDERED that the Motion is DENIED without prejudice. While the Court is otherwise prepared to approve the proposed Protective Order, paragraph 4.d, for the filing of documents under seal, appears to be inconsistent with Local Rule of Criminal Procedure 49(f)(6)(i), which requires an accompanying motion for leave to file under seal. Signed by Judge Carl J. Nichols on April 6, 2021. (lccjn3) (Entered: 04/06/2021) |

| 04/07/2021 | 25 | | Unopposed MOTION for Protective Order by USA as to GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Kelley, Elizabeth) (Entered: 04/07/2021) |
|---|---|---|---|
| 04/15/2021 | 26 | | ORDER granting 25 Motion for Protective Order as to GARRET MILLER. Signed by Judge Carl J. Nichols on April 15, 2021. (lccjn3) (Entered: 04/15/2021) |
| 04/21/2021 | | | MINUTE ORDER. Upon review of the government's 24 Motion to Disclose, it is hereby ORDERED that the Motion is GRANTED. The government may provide Defendant with discovery materials protected by Federal Rule of Criminal Procedure 6(e) and sealed materials covered by the 26 Protective Order governing discovery. Signed by Judge Carl J. Nichols on April 21, 2021. (lccjn3) (Entered: 04/21/2021) |
| 04/22/2021 | 27 | | ENTERED IN ERROR.....RESPONSE by GARRET MILLER re 25 Unopposed MOTION for Protective Order *Attachment A* (Broden, Clinton) Modified on 4/28/2021 (zstd). (Entered: 04/22/2021) |
| 04/22/2021 | | | NOTICE OF CORRECTED DOCKET ENTRY: as to GARRET MILLER re 27 Response to motion was entered in error and counsel was instructed to refile said pleading. The document should be a notice of filing (zstd) (Entered: 04/28/2021) |
| 04/28/2021 | | | Set/Reset Hearings as to GARRET MILLER: Status Conference RESET for 5/3/2021 at 09:30 AM in Telephonic/VTC before Judge Carl J. Nichols. (zcal) (Entered: 04/28/2021) |
| 04/28/2021 | 28 | | ENTERED IN ERROR.....NOTICE *of Attachment A* by GARRET MILLER re 25 Unopposed MOTION for Protective Order (Broden, Clinton) Modified on 5/8/2021 (zstd). (Entered: 04/28/2021) |
| 04/28/2021 | | | NOTICE OF CORRECTED DOCKET ENTRY: as to GARRET MILLER re 28 Notice (Other) was entered in error and counsel was instructed to refile said pleading. The document cannot be file alone, a notice of filings needs to be the main document and defendant's acceptance of the Protective Order will be the attachment (zstd) (Entered: 05/08/2021) |
| 04/29/2021 | | | MINUTE ORDER as to GARRET MILLER (1). The Court was advised on April 29, 2021 that GARRET MILLER, who is currently detained, has been transported to the local jurisdiction. Upon review of the docket in this jurisdiction, the docket in the jurisdiction of arrest, and after consultation with counsel where necessary, the Court has confirmed that GARRET MILLER: has had a full Rule 5 initial appearance in the jurisdiction of arrest; has retained counsel; has been ordered held without bond pending trial; has been charged by Indictment; and has been arraigned. As such, there are no pending matters necessitating action by a magistrate judge. The parties are directed to contact the assigned District Judge to schedule a status hearing, if one has not yet been set. The parties are instructed to address any requests to toll the Speedy Trial Act to the assigned District Judge. Signed by Magistrate Judge G. Michael Harvey on 4/29/2021. (zpt) (Entered: 04/29/2021) |
| 05/03/2021 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Status Conference as to GARRET MILLER held on 5/3/2021. Speedy Trial as to GARRET MILLER is Excluded from 5/3/2021 to 5/26/2021, in the Interest |

| | | | |
|---|---|---|---|
| | | | of Justice, XT. Status Conference set for 5/26/2021 at 04:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clinton Broden and Camille Wagner; US Attorney: Elizabeth Kelley. (zcal) (Entered: 05/03/2021) |
| 05/10/2021 | 29 | | NOTICE *of Defendant's Acceptance of the Protective Order* by GARRET MILLER re 25 Unopposed MOTION for Protective Order (Attachments: # 1 Attachment A)(Broden, Clinton) (Entered: 05/10/2021) |
| 05/12/2021 | 30 | | SUPERSEDING INDICTMENT as to GARRET MILLER (1) count(s) 1s−2s, 3s, 4s, 5s−6s, 7s, 8s, 9s, 10s, 11s, 12s. (zstd) (Entered: 05/14/2021) |
| 05/26/2021 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Status Conference/Arraignment as to GARRET MILLER (1): Counts 1s−2s,3s,4s,5s−6s,7s,8s,9s,10s,11s,12s held on 5/26/2021. Not Guilty Plea as to all counts. Speedy Trial as to GARRET MILLER (1) is Excluded from 5/26/2021 to 6/9/2021, in the Interest of Justice, XT. Status Conference set for 6/9/2021 at 04:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Nancy Meyer; Defense Attorney: Clinton Broden; US Attorney: Elizabeth Kelley. (zcal) (Entered: 05/26/2021) |
| 06/09/2021 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Status Conference as to GARRET MILLER held on 6/9/2021. Speedy Trial as to GARRET MILLER is Excluded from 6/9/2021 to 6/29/2021, in the Interest of Justice, XT. Status Conference set for 6/29/2021 at 10:00 AM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Bryan Wayne; Defense Attorney: Clinton Broden and Camille Wagner; US Attorney: Elizabeth Kelley. (zcal) (Entered: 06/09/2021) |
| 06/24/2021 | 32 | | MOTION for Discovery *and for an Evidentiary Hearing in Support of Defendant's Claim of Selective Prosecution as It Relates to Counts One, Two and Four of the Superseding Indictment* by GARRET MILLER. (Attachments: # 1 Attachments 1−31)(Broden, Clinton) (Entered: 06/24/2021) |
| 06/24/2021 | 33 | | MOTION for an Evidentiary Hearing by GARRET MILLER. (See docket entry 32 to view document). (zstd) (Entered: 06/25/2021) |
| 06/28/2021 | 34 | | MOTION to Dismiss Count *Three of the Superseding Indictment for Failure to State an Offense and Memorandum of Law in Support Thereof* by GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Broden, Clinton) (Entered: 06/28/2021) |
| 06/29/2021 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Telephone Status Conference as to GARRET MILLER held on 6/29/2021. Government Response to Motion 34 due by 7/12/2021. Defense Reply due by 7/19/2021. Government Response Motion 32 / 33 due by 7/22/2021. Defense Reply due upon notification to the Court. Speedy Trial as to GARRET MILLER is Excluded from 6/29/2021 to after motions have been briefed. Status Conference set for 8/30/2021 at 10:00 AM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clinton Broden and Camille Wagner; US Attorney: Elizabeth Kelley. (zcal) (Entered: 06/29/2021) |

| 07/09/2021 | 35 | | Memorandum in Opposition by USA as to GARRET MILLER re 34 MOTION to Dismiss Count *Three of the Superseding Indictment for Failure to State an Offense and Memorandum of Law in Support Thereof* (Kelley, Elizabeth) (Entered: 07/09/2021) |
| --- | --- | --- | --- |
| 07/12/2021 | 36 | | NOTICE OF ATTORNEY APPEARANCE Amanda Jawad appearing for USA. (Jawad, Amanda) (Entered: 07/12/2021) |
| 07/14/2021 | 37 | | NOTICE *of Memorandum Regarding Status of Discovery* by USA as to GARRET MILLER (Jawad, Amanda) (Entered: 07/14/2021) |
| 07/16/2021 | 38 | | REPLY by GARRET MILLER re 35 Memorandum in Opposition (Broden, Clinton) (Entered: 07/16/2021) |
| 07/22/2021 | 39 | | Memorandum in Opposition by USA as to GARRET MILLER re 32 MOTION for Discovery *and for an Evidentiary Hearing in Support of Defendant's Claim of Selective Prosecution as It Relates to Counts One, Two and Four of the Superseding Indictment* (Kelley, Elizabeth) (Entered: 07/22/2021) |
| 08/04/2021 | 40 | | NOTICE *of Filing Discovery Letter* by USA as to GARRET MILLER (Attachments: # 1 Discovery Letter)(Kelley, Elizabeth) (Entered: 08/04/2021) |
| 08/06/2021 | 41 | | Unopposed MOTION to Exclude *Time under the Speedy Trial Act* by USA as to GARRET MILLER. (Kelley, Elizabeth) (Entered: 08/06/2021) |
| 08/09/2021 | 42 | | NOTICE *of Filing Discovery Letter* by USA as to GARRET MILLER (Attachments: # 1 Discovery Letter)(Kelley, Elizabeth) (Entered: 08/09/2021) |
| 08/10/2021 | | | MINUTE ORDER. Upon review of Defendant's 32 33 34 pretrial motions, the Parties are hereby ORDERED to appear via teleconference for an oral argument on the Motions at **2 pm ET on August 24, 2021**. It is further ORDERED that the government's 41 Unopposed Motion to Exclude Time is hereby GRANTED, as Defendant's substantive pretrial motions have tolled the Speedy Trial Act as a matter of law. *See* 18 U.S.C. § 3161(h)(1)(D). Signed by Judge Carl J. Nichols on August 10, 2021. (lccjn3) (Entered: 08/10/2021) |
| 08/11/2021 | 43 | | Consent MOTION to Continue *Oral Argument* by USA as to GARRET MILLER. (Kelley, Elizabeth) (Entered: 08/11/2021) |
| 08/12/2021 | | | MINUTE ORDER. Upon review of the Parties' 43 Consent Motion to Continue Oral Argument, it is hereby ORDERED that the Motion is GRANTED. Accordingly, the oral argument on Defendant's pretrial 32 33 34 motions is continued until **September 16, 2021**, at **11:00 am ET**, and the status hearing scheduled for August 30, 2021, is VACATED. It is further ORDERED that the time between June 24, 2021, (the date Defendant filed his first pretrial 32 motion) and September 16, 2021, is excluded from calculations under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(D). Signed by Judge Carl J. Nichols on August 12, 2021. (lccjn3) (Entered: 08/12/2021) |
| 08/20/2021 | 44 | | NOTICE OF ATTORNEY APPEARANCE David Lieberman appearing for USA. (Lieberman, David) (Entered: 08/20/2021) |
| 09/03/2021 | 45 | | NOTICE OF ATTORNEY APPEARANCE James Pearce appearing for USA. (Pearce, James) (Entered: 09/03/2021) |
| 09/09/2021 | 46 | | |

| | | | |
|---|---|---|---|
| | | | ENTERED IN ERROR.....Unopposed MOTION to Continue *Evidentiary Hearing* by GARRET MILLER. (Broden, Clinton) Modified on 9/10/2021 (zstd). (Entered: 09/09/2021) |
| 09/09/2021 | 47 | | SUPPLEMENT by GARRET MILLER re 34 MOTION to Dismiss Count *Three of the Superseding Indictment for Failure to State an Offense and Memorandum of Law in Support Thereof* (Broden, Clinton) (Entered: 09/09/2021) |
| 09/09/2021 | 48 | | Amended Unopposed MOTION to Continue *Evidentiary Hearing* by GARRET MILLER. (Broden, Clinton) Modified text on 9/10/2021 (zstd). (Entered: 09/09/2021) |
| 09/09/2021 | | | NOTICE OF CORRECTED DOCKET ENTRY: as to GARRET MILLER re 46 Unopposed MOTION to Continue *Evidentiary Hearing* was entered in error and counsel refiled said pleading. The correct document is filed at DE # 48. (zstd) (Entered: 09/10/2021) |
| 09/10/2021 | 49 | | NOTICE *of Filing Discovery Letter* by USA as to GARRET MILLER (Attachments: # 1 Discovery Letter)(Kelley, Elizabeth) (Entered: 09/10/2021) |
| 09/13/2021 | 50 | | NOTICE *of Filing Discovery Letter* by USA as to GARRET MILLER (Attachments: # 1 Discovery Letter)(Kelley, Elizabeth) (Entered: 09/13/2021) |
| 09/13/2021 | | | MINUTE ORDER. Upon consideration of Defendant's 48 Unopposed Motion to Continue Evidentiary Hearing, it is hereby ORDERED that the Motion is GRANTED. The oral argument on Defendant's pretrial 32 33 34 motions is continued until November 10, 2021, at 10:00 am ET. The status hearing scheduled for September 16, 2021, is VACATED. It is further ORDERED that the time between September 16, 2021 and November 10, 2021, is excluded from calculations under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(D). Signed by Judge Carl J. Nichols on September 13, 2021. (lccjn3) (Entered: 09/13/2021) |
| 09/27/2021 | 51 | | NOTICE *of Filing Discovery Letter* by USA as to GARRET MILLER (Attachments: # 1 Discovery Letter)(Kelley, Elizabeth) (Entered: 09/27/2021) |
| 10/25/2021 | 52 | | NOTICE *of Status of Discovery as of October 21, 2021* by USA as to GARRET MILLER (Kelley, Elizabeth) (Entered: 10/25/2021) |
| 10/25/2021 | 53 | | NOTICE *of Filing* by USA as to GARRET MILLER (Attachments: # 1 Exhibit 1, # 2 Exhibit 1A, # 3 Exhibit 2, # 4 Exhibit 3)(Kelley, Elizabeth) Modified text on 10/26/2021 (zstd). (Entered: 10/25/2021) |
| 10/26/2021 | 55 | | MOTION to Determine Whether to Seal Defendant's Motion to Reopen Detention Hearing by GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Broden, Clinton) (Entered: 10/26/2021) |
| 10/27/2021 | | | MINUTE ORDER as to GARRET MILLER. Upon review of Defendant's 54 Sealed Motion to Reopen Detention Hearing, it is hereby ORDERED that the Government shall file any response by November 5, 2021. The Government should also address if the Motion should remain sealed. Defendant's reply, if any, is due November 10, 2021. Argument will be conducted on November 12, 2021, at 10:00 am. The argument will be conducted telephonically unless any party files a request for in–person or video argument by November 5. Signed by Judge Carl J. Nichols on October 27, 2021. (lccjn3) (Entered: 10/27/2021) |

| 10/27/2021 | | | Set/Reset Deadlines/Hearings as to GARRET MILLER: Response due by 11/5/2021. Reply due by 11/10/2021. Motion Hearing RESET for 11/12/2021 at 10:00 AM in Telephonic/VTC before Judge Carl J. Nichols. (zcal) (Entered: 10/28/2021) |
| 10/28/2021 | | | Set/Reset Hearings as to GARRET MILLER: Motion Hearing RESET for 11/22/2021 at 12:30 PM in Telephonic/VTC before Judge Carl J. Nichols. (zcal) (Entered: 10/28/2021) |
| 11/05/2021 | 57 | | Unopposed MOTION to Exclude *Time under the Speedy Trial Act* by USA as to GARRET MILLER. (Kelley, Elizabeth) (Entered: 11/05/2021) |
| 11/09/2021 | | | MINUTE ORDER. Upon consideration of the United States' 57 Unopposed Motion to Exclude Time Under the Speedy Trial Act, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that the time between November 10, 2021 and November 22, 2021, is excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(D). Signed by Judge Carl J. Nichols on November 9, 2021. (lccjn3) (Entered: 11/09/2021) |
| 11/10/2021 | 61 | | SECOND SUPERSEDING INDICTMENT as to GARRET MILLER (1) count(s) 1ss−2ss, 3ss, 4ss, 5ss−6ss, 7ss, 8ss, 9ss, 10ss, 11ss, 12ss. (bb) (Entered: 11/17/2021) |
| 11/15/2021 | 59 | | SECOND SUPPLEMENT by GARRET MILLER re 34 MOTION to Dismiss Count *Three of the Superseding Indictment for Failure to State an Offense and Memorandum of Law in Support Thereof* (Attachments: # 1 Attachment A)(Broden, Clinton) Modified text on 11/15/2021 (zstd). (Entered: 11/15/2021) |
| 11/15/2021 | 60 | | MOTION for Leave to File *Supplemental Authority* by USA as to GARRET MILLER. (Attachments: # 1 Proposed Supplemental Authority)(Jawad, Amanda) (Entered: 11/15/2021) |
| 11/17/2021 | 63 | | MOTION for Leave to File *Supplemental Brief in Response to Defendant's Second Supplement to Motion to Dismiss Count Three* by USA as to GARRET MILLER. (Attachments: # 1 Exhibit A)(Jawad, Amanda) (Entered: 11/17/2021) |
| 11/22/2021 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Video Motion Hearing/Arraignment as to GARRET MILLER (1): Counts 1ss−2ss,3ss,4ss,5ss−6ss,7ss,8ss,9ss,10ss,11ss, and 12ss held on 11/22/2021. NOT GUILTY Plea as to all counts. Motions 32−34, 54−55; taken under advisement. Speedy Trial as to GARRET MILLER is Excluded from 11/22/2021 to 12/21/2021, in the Interest of Justice, XT. status Conference set for 12/21/2021 at 02:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clinton Broden and Camille Wagner; US Attorney: Elizabeth Kelley, Amanda Jawad, David Lieberman, and James Pearce. (zcal) (Entered: 11/22/2021) |
| 11/30/2021 | 64 | | NOTICE OF WITHDRAWAL OF APPEARANCE by USA as to GARRET MILLER (Kelley, Elizabeth) (Entered: 11/30/2021) |
| 12/17/2021 | 66 | | NOTICE OF ATTORNEY APPEARANCE Benjamin Edward Kringer appearing for USA. (Kringer, Benjamin) (Entered: 12/17/2021) |
| 12/21/2021 | 67 | | ORDER as to 32 Motion for Discovery and for an Evidentiary Hearing. Signed by Judge Carl J. Nichols on December 21, 2021. (lccjn3) (Entered: 12/21/2021) |

| 12/21/2021 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Video Status Conference as to GARRET MILLER held on 12/21/2021. Speedy Trial as to GARRET MILLER is Excluded from 12/21/2021 to 1/27/2022, in the Interest of Justice, XT. Status Conference set for 1/27/2022 at 02:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clinton Broden and Camille Wagner; US Attorney: Amanda Jawad and Ben Kringer. (zcal) (Entered: 12/21/2021) |
| 12/22/2021 | 68 | | REDACTED ORDER. Signed by Judge Carl J. Nichols on December 22, 2021. (lccjn3) Modified on 12/22/2021 to correct order title (zcal). (Entered: 12/22/2021) |
| 12/30/2021 | 69 | | NOTICE OF WITHDRAWAL OF APPEARANCE by USA as to GARRET MILLER (Lieberman, David) (Entered: 12/30/2021) |
| 01/26/2022 | 70 | | NOTICE of Memorandum Regarding Status of Discovery by USA as to GARRET MILLER (Jawad, Amanda) (Entered: 01/26/2022) |
| 01/27/2022 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Video Status Conference as to GARRET MILLER held on 1/27/2022. Speedy Trial as to GARRET MILLER is Excluded from 1/27/2022 to 3/8/2022, in the Interest of Justice, XT. Status Conference set for 3/8/2022 at 02:00 PM in Telephonic/VTC before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clinton Broden; US Attorney: Amanda Jawad and Ben Kringer. (zcal) (Entered: 01/27/2022) |
| 02/15/2022 | 71 | | NOTICE of Memorandum Regarding Status of Discovery by USA as to GARRET MILLER (Kringer, Benjamin) (Entered: 02/15/2022) |
| 03/07/2022 | 72 | | MEMORANDUM OPINION as to 34 Motion to Dismiss Count Three. Signed by Judge Carl J. Nichols on March 7, 2022. (lccjn3) Modified on 3/15/2022 to correct document type (zcal). (Entered: 03/07/2022) |
| 03/07/2022 | 73 | | ORDER as to 34 Motion to Dismiss Count Three and 63 Motion for Leave to File a Supplemental Brief. Signed by Judge Carl J. Nichols on March 7, 2022. (lccjn3) (Entered: 03/07/2022) |
| 03/07/2022 | 74 | | Supplemental Brief by USA as to GARRET MILLER re 59 Second Supplement (zstd) (Entered: 03/10/2022) |
| 03/08/2022 | | | Minute Entry for proceedings held before Judge Carl J. Nichols: Video Status Conference as to GARRET MILLER held on 3/8/2022. Speedy Trial as to GARRET MILLER is Excluded from 3/8/2022 to 10/11/2022, in the Interest of Justice, XT. Proposed Pretrial Order due by 4/7/2022. Jury Selection / Jury Trial set for 10/11/2022 at 09:00 AM in Courtroom 19– In Person before Judge Carl J. Nichols. Bond Status of Defendant: Defendant remains Committed; Court Reporter: Lorraine Herman; Defense Attorney: Clinton Broden; US Attorney: Benjamin Kringer. (zcal) (Entered: 03/08/2022) |
| 04/01/2022 | 75 | | MOTION for Reconsideration re 73 Order, 72 Order by USA as to GARRET MILLER. (Attachments: # 1 Exhibit Ex. A (Reffitt trial transcript), # 2 Exhibit Ex. B (Reffitt trial transcript), # 3 Exhibit Ex. C (Miller hearing transcript))(Pearce, James) (Entered: 04/01/2022) |

| 04/07/2022 | 76 | | Consent MOTION for Order Governing Pretrial Deadlines by USA as to GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Jawad, Amanda) (Entered: 04/07/2022) |
|---|---|---|---|
| 04/11/2022 | 77 | | MOTION for Extension of Time to File Response/Reply as to 75 MOTION for Reconsideration re 73 Order, 72 Order by GARRET MILLER. (Broden, Clinton) (Entered: 04/11/2022) |
| 04/14/2022 | | | MINUTE ORDER as to GARRET MILLER. Upon consideration of MILLER's 77 Motion to Extend Time, it is hereby ORDERED that the Motion is GRANTED. The United States has not opposed MILLER's request for an extension. It is thus ORDERED that MILLER shall file a Response to the United States' 75 Motion no later than April 28, 2022. Signed by Judge Carl J. Nichols on April 14, 2022. (lccjn3) (Entered: 04/14/2022) |
| 04/14/2022 | | | Set/Reset Deadlines as to GARRET MILLER: Response due by 4/28/2022 (zcal) (Entered: 04/15/2022) |
| 04/21/2022 | 78 | | SCHEDULING ORDER. Signed by Judge Carl J. Nichols on April 21, 2022. (lccjn3) (Entered: 04/21/2022) |
| 04/21/2022 | | | Set/Reset Deadlines/Hearings as to GARRET MILLER: Exhibit List due by 9/15/2022. Motions due by 8/12/2022. Proposed Voir Dire due by 9/15/2022. Proposed Jury Instructions due by 9/15/2022. Pretrial Statement due by 9/15/2022. Responses due by 8/26/2022 Replies due by 9/2/2022. Witness List due by 9/15/2022. Pretrial Conference set for 9/9/2022 at 10:00 AM in Courtroom 19– In Person before Judge Carl J. Nichols. Pretrial Conference set for 9/29/2022 at 10:00 AM in Courtroom 19– In Person before Judge Carl J. Nichols. (zcal) (Entered: 04/21/2022) |
| 04/28/2022 | 79 | | NOTICE OF ATTORNEY APPEARANCE Stephen James Rancourt appearing for USA. (Rancourt, Stephen) (Entered: 04/28/2022) |
| 04/28/2022 | 80 | | RESPONSE by GARRET MILLER re 75 MOTION for Reconsideration re 73 Order, 72 Order (Broden, Clinton) (Entered: 04/28/2022) |
| 05/02/2022 | 81 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 75 MOTION for Reconsideration re 73 Order, 72 Order *Dismissing Count Three of the Indictment* by USA as to GARRET MILLER. (Attachments: # 1 Text of Proposed Order)(Rancourt, Stephen) (Entered: 05/02/2022) |
| 05/02/2022 | 82 | | MOTION for Leave to File *Supplemental Authority to its Motion For Reconsideration of the Court's Ruling Dismissing Count Three of the Indictment* by USA as to GARRET MILLER. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Rancourt, Stephen) (Entered: 05/02/2022) |
| 05/03/2022 | | | MINUTE ORDER as to GARRET MILLER. Upon consideration of the United States' 81 Unopposed Motion for Extension of Time, it is hereby ORDERED that the Motion is GRANTED. The United States shall file its reply in support of its Motion for Reconsideration on or before May 12, 2022. Signed by Judge Carl J. Nichols on May 3, 2022. (lccjn3) (Entered: 05/03/2022) |
| 05/03/2022 | | | Set/Reset Deadlines as to GARRET MILLER: Reply due by 5/12/2022. (zcal) (Entered: 05/04/2022) |
| 05/04/2022 | 83 | | |

|  |  |  | MOTION for Leave to File *Supplemental Authority to its Motion for reconsideration of the Court's Ruling Dismissing Count Three of the Indictment* by USA as to GARRET MILLER. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Rancourt, Stephen) (Entered: 05/04/2022) |
|---|---|---|---|
| 05/12/2022 | 84 |  | REPLY TO OPPOSITION to Motion by USA as to GARRET MILLER re 75 MOTION for Reconsideration re 73 Order, 72 Order (Attachments: # 1 Exhibit D (Hale−Cusanelli MTD hrg. transcript))(Pearce, James) (Entered: 05/12/2022) |
| 05/25/2022 | 85 |  | MOTION for Leave to File *Supplemental Authority* by USA as to GARRET MILLER. (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Rancourt, Stephen) (Entered: 05/25/2022) |
| 05/27/2022 | 86 |  | MEMORANDUM OPINION. Signed by Judge Carl J. Nichols on May 27, 2022. (lccjn3) (Entered: 05/27/2022) |
| 05/27/2022 | 87 |  | ORDER. Signed by Judge Carl J. Nichols on May 27, 2022. (lccjn3) (Entered: 05/27/2022) |
| 06/22/2022 | 88 |  | NOTICE OF APPEAL (Interlocutory) by USA as to GARRET MILLER re 73 Order. Fee Status: No Fee Paid. Parties have been notified. (Danello, Elizabeth) (Entered: 06/22/2022) |

# United States District Court for the District of Columbia

UNITED STATES OF AMERICA         )
                                 )
                    vs.          )        Criminal No. __21-cr-119 (CJN)__
                                 )
Garret Miller                    )

## NOTICE OF APPEAL

Name and address of appellant:          United States of America

Name and address of appellant's attorney:   Elizabeth H. Danello, Assistant US Attorney
                                             Office of the US Attorney for DC
                                             601 D Street, NW Room 6.232
                                             Washington, DC  20253

Offense:   18 USC sec. 231(a)(3), 1512(c)(2),2, 111(a)(1), 875(c), 1752(a)(1),(2),(3), 40 USC secs. 5104(e)(2)(D),(E),(G)

Concise statement of judgment or order, giving date, and any sentence:

   Order, entered on March 7, 2022, dismissing Count Three; Order, entered May 27,
   2022, denying motion for reconsideration

Name and institution where now confined, if not on bail:   DC Jail (CTF Unit)

   I, the above named appellant, hereby appeal to the United States Court of Appeals for the
District of Columbia Circuit from the above-stated judgment.

__June 22, 2022__                          United States of America
DATE                                       APPELLANT
                                           Elizabeth H. Danello
                                           ATTORNEY FOR APPELLANT

GOVT. APPEAL, NO FEE   [✓]
CJA, NO FEE            [ ]
PAID USDC FEE          [ ]
PAID USCA FEE          [ ]
Does counsel wish to appear on appeal?                 YES [ ]      NO [ ]
Has counsel ordered transcripts?                       YES [ ]      NO [✓]
Is this appeal pursuant to the 1984 Sentencing Reform Act?   YES [ ]      NO [✓]

17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>GARRET MILLER,<br><br>      *Defendant*. | Criminal Action No. 1:21-cr-00119 (CJN) |

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss Count Three, ECF No. 34.

Accordingly, for the reasons given in the contemporaneously published Memorandum Opinion, ECF No. 72, it is hereby

**ORDERED** that Miller's Motion for Leave to File a Supplemental Brief, ECF No. 63, is **GRANTED**; and

**ORDERED** that Miller's Motion to Dismiss Count Three, ECF No. 34, is **GRANTED**. Count Three is **DISMISSED WITHOUT PREJUDICE** from the Second Superseding Indictment, ECF No. 59.

DATE:  March 7, 2022

CARL J. NICHOLS
United States District Judge

1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

GARRET MILLER,

*Defendant*.

Criminal Action No. 1:21-cr-00119 (CJN)

## MEMORANDUM OPINION

On January 6, 2021, as a joint session of Congress convened in the U.S. Capitol to certify the vote count of the Electoral College, thousands of people, many of whom had marched to the Capitol following a rally at which then-President Donald Trump spoke, gathered outside. ECF No. 1-1; *United States v. Montgomery*, No. 21-cr-46, 2021 WL 6134591, at *2 (D.D.C. 2021). Things soon turned violent. *See* ECF No. 1-1. By approximately 2:00 p.m., rioters had broken through the protective lines of the Capitol Police, assaulting officers and breaking windows in the process. *Id.* The violence escalated, often cheered on by certain members of the mob. *Id.* And the rioters soon stormed through the halls of Congress, forcing members of the House of Representatives, the Senate, and the Vice President to flee. *Id.* "The rampage left multiple people dead, injured more than 140 people, and inflicted millions of dollars in damage to the Capitol." *Trump v. Thompson*, 20 F.4th 10, 15 (D.C. Cir. 2021).

The government alleges that Defendant Garret Miller was an active participant in these events. On May 12, 2021, a grand jury returned a second superseding indictment that charges Miller with twelve different criminal offenses, several of which are felonies. The government asserts that Miller predicted the likelihood of violence on January 6; pushed past officers to gain entrance to the Capitol; posted videos and pictures on social media from inside; and made various

1

self-incriminating statements in the days thereafter.  *See infra* at 3–4.  The government has also proffered evidence that Miller made several threats on social media following January 6, including to Representative Alexandria Ocasio-Cortez and a Capitol Police Officer.  *See id.* at 4–5.

Miller has filed several pretrial motions.  He moved to revoke the detention order that had been entered by the District Court for the Northern District of Texas.  ECF No. 14.  The Court denied that request on the ground that no conditions of release could reasonably ensure the safety of the community were Miller to be released before trial.  *See* Minute Entry of April 1, 2021.  Miller also moved for discovery and for an evidentiary hearing regarding what he claimed was the government's selective prosecution of him as compared to the protestors in Portland, Oregon, ECF No. 32, 33.  The Court denied those motions.  ECF No. 67.

Still pending is Miller's Motion to Dismiss Count Three of the Superseding Indictment ("Mot."), ECF No. 34, in which Miller seeks to dismiss one of the twelve counts in the Second Superseding Indictment.  For the reasons discussed below, the Court agrees with Miller that his conduct does not fit within the scope of the statute he is charged with violating, 18 U.S.C. § 1512(c)(2).

BACKGROUND

### A.  January 6, 2021[1]

At approximately 1:00 p.m. on January 6, 2021, a joint session of Congress convened in the U.S. Capitol.  ECF No. 1-1 at 1.  Its purpose was to certify the vote count of the Electoral College, as required by the Twelfth Amendment and the Electoral Count Act, 3 U.S.C. § 15.  Then-

---

[1] The facts in this subsection are meant for background only.  The Court's analysis of Miller's Motion to Dismiss is limited to the Indictment alone.  *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109–10 (D.D.C. 2016) (citing *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015)).

2

Vice President Michael Pence, as President of the Senate, presided over the joint session. ECF No. 1-1 at 1.

The proceedings started relatively smoothly. After about thirty minutes, the Senate returned to its chambers so the two houses could separately consider an objection from the State of Arizona. *Montgomery*, 2021 WL 6134591, at *2. During this period, the mob mentioned above—having marched to the Capitol following a rally at which then-President Donald Trump spoke, *id.*—started to form outside, ECF No. 1-1 at 1.

The Capitol is a secure building, guarded at all times by the United States Capitol Police. *Id.* But on January 6, 2021, the Capitol Police had taken extra precautions, erecting temporary and permanent barriers around the building's perimeter. *Id.* The Capitol Police also closed the entire exterior plaza of the building to the public. *Id.*

Those extra precautions were not enough. The mob soon turned violent. *See id.* Rioters broke through the protective lines of the Capitol Police, assaulted officers, and shattered windows in the process. *Id.* Members of the House of Representatives, the Senate, and the Vice President fled as rioters mobbed the halls. *Id.* All the while, looting and destruction continued, *see id.*, producing devastating results, *see Thompson*, 20 F.4th at 15–16.

The government alleges that Miller was part of this violent mob, pushing past officers to gain entrance to the building. ECF No. 1-1 at 2, 5. The government alleges that he foresaw the violence coming, as he posted to Facebook four days before that he was "about to drive across the country for this [T]rump shit. On Monday . . . Some crazy shit going to happen this week. Dollar might collapse . . . civil war could start . . . not sure what to do in DC." *Id.* at 2.[2] It further alleges that Miller posted videos to his Twitter account from the Capitol rotunda, showing rioters waving

---

[2] It is unclear whether the ellipses are Miller's own or added by the government.

flags of support for then-President Trump. *Id.* Miller allegedly captioned the video as being "From inside [C]ongress." *Id.* And he is claimed to have posted a selfie of himself inside the Capitol. When a commentor wrote "bro you got in?! Nice!" Miller allegedly replied, "just wanted to incriminate myself a little lol." *Id.* at 4.

The government contends that Miller made several additional incriminating social-media posts in the days following the attack on January 6. When individuals on Twitter claimed that those who stormed the Capitol were "paid infiltrators" or "antifa," Miller is alleged to have consistently corrected them: "Nah we stormed it. We where [sic] gentle. We where [sic] unarmed. We knew what had to be done." *Id.* at 6. And when others asked him if he was in the building, he allegedly responded, "Yah . . . we charged . . . We where [sic] going in . . . No matter what . . . Decided before the [T]rump speech . . . I charged the back gates myself with an anti[-]masker." *Id.*

The government also alleges that Miller made several threats on social media following January 6. Regarding Representative Alexandria Ocasio-Cortez, he tweeted, "Assassinate AOC." *Id.* at 8. And when discussing the shooting of a woman by a Capitol Police Officer during the riot, Miller is alleged to have written, "We going to get a hold [sic] of [the officer] and hug his neck with a nice rope[.]" *Id.* at 9. When the person with whom he was chatting responded, "Didn't you say you were a Christian or some lie?," Miller is alleged to have typed, "Justice . . . Not murder . . . Read the commandment . . . there[']s a difference." *Id.* He also is alleged to have made several additional comments about "huntin[g]" this police officer. *See id.* And he is alleged to have later written in a Facebook chat, "Happy to make death threats so I been just off the rails tonight lol." *Id.*

### B. Miller's Indictment

For purposes of Miller's Motion to Dismiss Count III, the Court must assume as true the allegations contained in the Indictment—but may rely only on those allegations. *United States v. Akinyoyenu*, 199 F. Supp. 3d. 106, 109–10 (D.D.C. 2016) (citing *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015)).  The Second Superseding Indictment, and particularly Count Three, is quite sparse.  It provides:

<u>**COUNT THREE**</u>

> On or about January 6, 2021, within the District of Columbia and elsewhere, **GARRET MILLER**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

Second Superseding Indictment ("Indictment"), ECF No. 61 at 2–3.[3]  The Indictment further specifies that this is an alleged violation of 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 2, what the government titles "Obstruction of an Official Proceeding and Aiding and Abetting" the same.  *Id.* at 3.  The Indictment provides no other facts in support of this Count.

### C. Miller's Motion to Dismiss

Miller moves to dismiss only Count Three.  *See generally* Mot.  The statute he is charged with violating, 18 U.S.C. § 1512(c)(2), provides:

**(c)** Whoever corruptly—

> **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or

---

[3] Miller moved to dismiss Count Three of the First Superseding Indictment, ECF No. 30, but the language of Count Three is identical in the Second Superseding Indictment.  His original Motion is thus not moot.  *See United States v. Goff*, 187 Fed. App'x 486, 491 (6th Cir. 2006).

>    (**2**) otherwise obstructs, influences, or impedes any official proceeding,
>         or attempts to do so,

> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c).[4]   Miller presents various objections to Count III, either in his own briefs or by adopting arguments made by other January 6 defendants.

First, Miller claims that Congress's certification of the 2020 presidential election was not an "official proceeding." Mot. at 8–11. He argues that because the certification was not judicial in nature, it was not a "proceeding" at all. Miller marshals several definitions of "proceeding" to support this position. *See id.*

Second, Miller argues that § 1512(c)(2) must be read as a catchall to the narrowly focused subsection preceding it, § 1512(c)(1)—not as an untethered, wholly unrelated crime. *See* Miller's Second Supplemental Brief ("Sec. Supp."), ECF No. 59 at 3–7. In Miller's view, since § 1512(c)(1) is narrowly tailored to evidence spoliation, and "specific examples enumerated prior to [a] residual clause are typically read as refining or limiting in some way the broader catch-all term used in the residual clause," *id.* at 4, § 1512(c)(2) must be limited to "conduct [that] undermined the official proceeding's truth-finding function through actions impairing the integrity and availability of evidence," *id.* at 7 (quotations omitted).

Finally, Miller argues that the mens rea requirement of § 1512(c)(2)—that the criminal act be committed "corruptly"—lacks a limiting principle, and is thus unconstitutionally vague as applied to him. Sec. Supp. at 7–16. "Corruptly," he notes, is not defined in the statute, and relying

---

[4] Count Three also charges a violation of 18 U.S.C. § 2. That section states that anyone who "commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). In the context of Count III, a violation of § 2 is thus dependent on some violation of § 1512(c)(2)—the only offense against the United States charged in Count III.

6

on *United States v. Pointdexter*, 951 F.2d 369 (D.C. Cir. 1991), he argues that it is unconstitutionally vague here. Sec. Supp. at 9–14.

The government contends that Miller's alleged conduct fits comfortably within § 1512(c)(2). Relying on the statute's definition of "official proceeding" as including "a proceeding before Congress," 18 U.S.C. § 1515(a)(1)(B), the government argues that the certification of the electoral vote was plainly a proceeding before Congress. *See generally* Opp. to Def.'s Mot. to Dismiss ("Resp."), ECF No. 35. As to the scope of § 1512(c)(2), the government argues that the statute "comprehensively prohibit[s] conduct that intentionally and wrongfully obstructs official proceedings," and does not require any connection to evidence or documents. Gov't Resp. to Defs.' Joint Supp. Br. ("*Montgomery* Br."), ECF No. 63-1 at 6.[5] And with respect to Miller's vagueness argument, the government contends that, as used here, "corruptly" is not unconstitutionally vague—and indeed that the Court of Appeals and Supreme Court have rejected vagueness challenges to convictions under statutes requiring that a defendant acted "corruptly." *Id.* at 17–20.

For each contention, Miller notes that the Court is under an obligation to exercise restraint in construing criminal laws and to apply the rule of lenity should genuine ambiguity persist. Mot. at 7 & n.1. The government does not challenge either of these interpretive principles. *See generally Montgomery* Br.

---

[5] In response to Miller's Second Supplemental Brief, the government lodged in this case the brief it filed in *United States v. Montgomery*, No. 21-cr-46.

7

LEGAL STANDARDS

### A.  Motions to dismiss generally

Before trial, a criminal defendant may move to dismiss a charge based on a "defect in the indictment."  Fed R. Crim. P. 12(b)(3)(B).  "The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged."  *Akinyoyenu*, 199 F. Supp. 3d at 109.  The Court thus bases its analysis only on the language charged in the Indictment and the language of the statute alleged to have been violated.  *See id.* at 109–10 (collecting citations).

### B.  The Court must exercise restraint when assessing the reach of criminal statutes

Because Miller challenges the scope of a federal criminal statute and its application to his alleged conduct, additional interpretive rules apply.  First, federal courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute."  *United States v. Aguilar*, 515 U.S. 593, 600 (1995).  The Supreme Court has urged this restraint "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.' "  *Id.* at 600 (citations omitted); *cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1223–28 (2018) (Gorsuch, J., concurring in part and concurring in judgment).  This "prudent rule of construction" continues with force today.  *Dowling v. United States*, 473 U.S. 207, 214 (1985); *see Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018) (endorsing the rule).

Running parallel to this principle is the rule of lenity.  "[T]he rule of lenity is venerable," *United States v. Nasir*, 17 F.4th 459, 472 (3d Cir. 2021) (en banc) (Bibas, J., concurring), having arisen to mitigate draconian sentences in England and having been firmly established in English law by the time of Blackstone, *id.* at 473.  "[I]t took root in our law soon thereafter."  *Id.*

8

"Under the rule of lenity, courts construe penal laws strictly and resolve ambiguities in favor of the defendant," *id.*, so long as doing so would not "conflict with the implied or expressed intent of Congress," *Liparota v. United States*, 471 U.S. 419, 427 (1985).  Under current doctrine, the rule of lenity applies to instances of "grievous" ambiguity, *see Shular v. United States*, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J., concurring) (collecting citations), a construction that is arguably in tension with the rule's historical origins, *see* 1 William Blackstone, *Commentaries* \*88 ("Penal statutes must be construed strictly.").  *See also Wooden v. United States*, ___ U.S. ___, ___ (2022) (Gorsuch, J., concurring in judgment) (slip op. at 9–12); *but see id.* (Kavanaugh, J., concurring) (slip op. at 1–4).

## I. CONGRESSIONAL CERTIFICATION OF ELECTORAL COLLEGE RESULTS IS AN "OFFICIAL PROCEEDING"

Miller's first argument is that the Congressional certification of the Electoral College was not an "official proceeding."  Mot. at 8–11.  But this argument essentially ignores that, as used in § 1512, "official proceeding" is a defined term, and its definition covers the Congressional certification of Electoral College results.

18 U.S.C. § 1515(a)(1) provides that, "[a]s used in section[] 1512 . . . *the term 'official proceeding' means . . . a proceeding before the Congress.*"  18 U.S.C. § 1515(a)(1)(B) (emphasis added).  A "proceeding" is "a particular thing done: affair, transaction, negotiation," as in "an illegal proceeding" or "business proceedings."  *Proceeding*, def. f, *Merriam-Webster's Unabridged Dictionary* (2021).  The certification of the Electoral College is, of course, "a particular thing done" before Congress.

Miller argues that the "legal," as opposed to "lay," understanding of "proceeding" should control here.  Mot. at 9; *see also United States v. Ermoian*, 752 F.3d 1165, 1170 (9th Cir. 2013).  But Black's Law Dictionary—the leading authority on "legal" uses of words—defines a

"proceeding" as "[t]he business conducted by a court or other official body; a hearing." *Proceeding*, def. 4, Black's Law Dictionary (11th ed. 2019).  The certification of the Electoral College results by Congress is "business conducted by a[n] . . . official body."  *Id.*  Indeed, it is business required by both the Twelfth Amendment and the Electoral Count Act.  *See* U.S. Const. Amend. XII; 3 U.S.C. § 15.

To be sure, several definitions of the word "proceeding"—whether "lay" or "legal" definitions—focus on judicial proceedings.  *See, e.g.*, *Proceeding*, def. 1, Black's Law Dictionary (11th ed. 2019) ("The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment").  But context matters, and it makes little if any sense, in the context here, to read "a proceeding before Congress" as invoking only the judicial sense of the word "proceeding."  After all, the only proceedings of even a quasi-judicial nature before Congress are impeachment proceedings, and Miller has offered no reason to think Congress intended such a narrow definition here.

\*       \*       \*

Miller's Indictment thus properly alleges an involvement with an official proceeding—"that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18."  Indictment at 2–3.  On that ground, at least, his Motion to Dismiss fails.

## II. MILLER'S ALLEGED CONDUCT DOES NOT FIT WITHIN THE SCOPE OF SECTION 1512(C)(2)

Miller's second challenge is broader:  he argues that § 1512(c)(2) does not make criminal his alleged actions on January 6.  In order to assess the merits of this challenge, the Court must determine what conduct § 1512(c)(2) prohibits and whether Miller's alleged actions fall within that prohibition.  Applying the traditional tools of statutory interpretation—text, structure, and the

development of the statute over time—the Court concludes that three readings of the statute are possible, and two are plausible.  This is therefore a circumstance in which the Court must "exercise[ ] restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and "resolve ambiguities in favor of the defendant," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring) (citing *Liparota*, 471 U.S. at 427).

### A.  The text of § 1512(c) supports three possible readings of the statute

The Court begins, as it must, with the text.  Recall what § 1512(c) proscribes:

> **(c)**  Whoever corruptly—
>
> > **(1)**  alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
> >
> > **(2)**  *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).  Miller is charged with violating only subsection (2).

Reading § 1512(c)(2) alone is linguistically awkward.  That is because of the adverbial use of the word "otherwise," such that § 1512(c)(2), on its own, makes criminal "whoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so."  The parties are therefore in agreement that the meaning of "otherwise" is critical to determining what § 1512(c)(2) covers.  They differ, however, over what that meaning is, and whether or how the word "otherwise" ties § 1512(c)(2) to the prior subsection—§ 1512(c)(1).

*Otherwise as a clean break between subsections*.  When § 1512(c) became law, "otherwise" had three different definitions that are plausible in this context:  "in a different way or manner: differently"; "in different circumstances: under other conditions"; and "in other respects." *Otherwise*, *Webster's Third New Int'l Dictionary of the English Language Unabridged* (2002).

Relying on the first definition—"in a different way or manner"—and the breadth of the terms in § 1512(c)(2), the government suggests that "otherwise" essentially serves as a clean break between subsections (c)(1) and (2), and thus the only question is whether Miller "corruptly . . . obstruct[ed], influence[d], or impede[d] any official proceeding, or attempt[ed] to do so."  Under this reading, there would be no relationship between subsections (c)(1) and (c)(2) at all.

There are a number of problems with this interpretation.  *First*, it ignores that "otherwise" has several different (though related) definitions, each of which implies a relationship to something else—here, subsection (c)(1).

*Second*, and more important, this interpretation does not give meaning to the word "otherwise."  When possible, of course, the Court must give effect to every word in a statute. *Setser v. United States*, 566 U.S. 231, 239 (2012).  But if § 1512(c)(2) is read as wholly untethered to § 1512(c)(1), then "otherwise" would be pure surplusage.  In other words, under this reading, subsection (c)(2) would have the same scope and effect as if Congress had instead omitted the word "otherwise."

*Third*, reading "otherwise" in this way is inconsistent with *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).  There, the Supreme Court considered whether drunk driving was a "violent felony" under the Armed Career Criminal Act.  The ACCA defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a risk of physical injury to another." *Begay*, 553 U.S. at 139–40 (quoting 18 U.S.C. § 924(e)(2)(B)(ii) (2000)) (emphasis added).  Crucial to the Court's analysis was thus what "otherwise" meant.

12

Both the five-Justice majority and Justice Scalia concluded that the ACCA's use of the word "otherwise" in some way tethered the text preceding the word to the text following it; the majority and Justice Scalia differed only in *how* it did so.  The majority opinion concluded that the text preceding "otherwise" influenced the meaning of the text that followed:  it "limit[ed] the scope of the clause to crimes that are *similar to the examples themselves*."  *Begay*, 553 U.S. at 143 (emphasis added).  The Court thus held that "driving under the influence" fell outside of the ACCA's "violent felony" definition because it was not like burglary, arson, or extortion.  *Id.* at 142.

As for Justice Scalia, he agreed with the majority that "otherwise" tethered the text preceding it to the text following, but he disagreed regarding how they related.  In Justice Scalia's view, "by using the word 'otherwise' the writer draws a substantive connection between two sets only on one specific dimension—*i.e.*, whatever *follows* 'otherwise.'"  *Id.* at 151 (Scalia, J., concurring in judgment) (emphasis added).  Thus, in Justice Scalia's view, the text before "otherwise" did not limit the text that follows it.[6]

Justice Alito dissented.  In the dissent's view, the "offenses falling within the residual clause must be similar to the named offenses in one respect only:  They must 'otherwise'—which is to say, 'in a different manner'—'involv[e] conduct that presents a serious potential risk of physical injury to another.'"  *Id.* at 159 (Alito, J., dissenting) (citations omitted) (modification in original).  As a result, Justice Alito concluded, the only question was whether drunk driving "involv[es] conduct that presents a risk of physical injury to another"—and, Justice Alito

---

[6] Justice Scalia had previously advanced this position in his dissent in an earlier ACCA case.  *See James v. United States*, 550 U.S. 192, 218 (2007) (Scalia, J., dissenting).

13

concluded, it does.  *Id.*  This position, of course, is very similar to the interpretation suggested by the government here.  *See Montgomery* Br. at 7–8.  But it garnered only three votes.

The Court recognizes that certain courts of appeals have adopted this clean-break reading of "otherwise" in § 1512(c)(2), but the Court is not persuaded that those decisions are correct. Take *United States v. Petruk*, 781 F.3d 438 (8th Cir. 2015), for example.  That decision's textual analysis is curt, and only one paragraph discusses the statutory language:

> While we acknowledge that § 1512(c)(1) is limited to obstruction relating to "a record, document, or other object," § 1512(c)(2) is not so limited. Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ("otherwise") manner compared to § 1512(c)(1) if the defendant "obstructs, influences, or impedes any official proceeding" without regard to whether the action relates to documents or records.  *See* Webster's New World College Dictionary 1021 (4th ed. 2007) (defining "otherwise" as "in another manner; differently").   Thus, § 1512(c)(2) "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)."   *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (citation omitted) (internal quotation marks omitted); *see also Aguilar*, 515 U.S. at 598 (interpreting similar language in 18 U.S.C. § 1503(a) as a "catchall" omnibus clause that is "far more general in scope than the earlier clauses of the statute").

*Id.* at 446–47.

The decision in *Petruk* does not mention, let alone discuss, the Supreme Court's decision in *Begay*.  Moreover, it relies on an incorrect reading of the Court's decision in *Aguilar*.  In particular, as reflected in the quotation above, *Petruk* described *Aguilar* as having "interpret[ed]" a clause in 18 U.S.C. § 1503 as a "'catchall' omnibus clause that 'is far more general in scope than the earlier clauses of the statute.'"  *Id.* (quoting *Aguilar*, 515 U.S. at 598).  But that language from *Aguilar* came at the *beginning* of the Supreme Court's opinion, when the Court was merely explaining how "[t]he statute is structured."  *Aguilar*, 515 U.S. at 598.  The actual opinion in *Aguilar* went on to *reject* such a broad reading of the "omnibus clause," instead adopting

"decisions of Courts of Appeals [that] have . . . place[d] metes and bounds on the very broad language of the catchall provision." *Id.* at 599–600.  And *Aguilar* explained the Court's traditional restraint in assessing the reach of criminal statutes as support for this holding.  *See id.* at 600.[7]

*Subsection (c)(1) provides examples of conduct that violates subsection (c)(2).*  The government also presents an alternative reading of the statute:  that subsection (c)(1) contains specific examples of conduct that is unlawful under subsection (c)(2).  On this interpretation, the word "otherwise" in § 1512(c)(2) does tether the two subsections together, with the text preceding the word—subsection (c)(1)—providing examples that fit within (c)(2)'s broader scope.  Under this reading, a common element in, or link between, the subsections is that the unlawful conduct must relate to an "official proceeding."  *See Montgomery*, 2021 WL 6134591 at *12.

This interpretation solves several of the problems posed by the interpretation discussed above.  It acknowledges that "[b]y using the word 'otherwise,' Congress indicated a substantive connection between" the text preceding and the text following the word.  *United States v. Begay*, 470 F.3d 964, 980 (McConnell, J., dissenting in part), *overruled by Begay*, 553 U.S at 148.  And it is consistent with Justice Scalia's concurrence in *Begay.*

But this interpretation has other problems.  If Congress intended for the common, linking element in both subsections to be the pendency of an "official proceeding," then the use of "otherwise" in § 1512(c)(2) would be superfluous.  After all, both subsections include the term

---

[7] The Seventh Circuit's decision in *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013), similarly misconstrued *Aguilar*.  *See id.* at 809 (relying on *Aguilar* as having "interpret[ed] similar language in 18 U.S.C. § 1503 as an 'Omnibus Clause . . . prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice' and concluding that the language is 'general in scope.'")  And, in any event, the scope of § 1512(c)(2) was not before the Seventh Circuit in *Burge*; the question there was whether an official proceeding needed to be *pending* for a defendant to violate the statute.  *Id.*  The Seventh Circuit later relied on *Burge* in *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)—which did not even involve a prosecution under § 1503, let alone § 1512(c)(2).

15

"official proceeding," suggesting that the common link should be something other than the pendency of an official proceeding; otherwise there would be no reason to repeat the term in both subsections.

Moreover, while this approach echoes Justice Scalia's concurrence in *Begay*, there are important differences between § 1512(c) and the ACCA. With respect to the ACCA, "burglary, arson, and extortion"—the specific crimes listed before the word "otherwise"—are paradigmatic examples of crimes that "involve[ ] conduct that presents a risk of physical injury to another." There is thus a relative parity between the two sides of "otherwise" in the ACCA that makes Justice Scalia's view potentially compelling. But not so with § 1512(c)(2). As the government argues, and other courts have recognized, *see, e.g.*, *Montgomery*, 2021 WL 6134591, at *10, "obstruct," "influence," and "impede," are quite broad terms. In contrast, "alter[ing], destroy[ing], mutilat[ing], or conceal[ing]" a record or document is a relatively narrow and discrete prohibition; that is, those are very limited ways in which to obstruct, influence or impede an official proceeding. Without some limitation, the text following "otherwise" is extraordinarily broad in relation to the text preceding it.

The structure of § 1512(c) cuts against this reading, as well. To say that the text of § 1512(c)(1) provides merely *examples* of crimes that fit within § 1512(c)(2)'s scope is to say that the principal (indeed, only) criminal offense in subsection (c) is listed in its second subsection. That turns expectation on its head and is, at the very least, not how a reasonable reader would expect a statute to be organized—a flaw when talking about any statute, but especially a criminal one. *Cf. Dimaya*, 138 S. Ct. at 1223–28 (Gorsuch, J., concurring in part and concurring in judgment).

*Subsection (c)(2) is a residual clause for subsection (c)(1).* A third interpretation of the statute—implied, at least, by Miller's arguments—is that subsection (c)(2) operates as a residual clause or catchall for the prohibition contained in subsection (c)(1). Under this reading, the word "otherwise" links the two subsections, but the link or commonality is found in the conduct prescribed by subsection (c)(1).

This interpretation is consistent with *Begay*. In particular, the *Begay* majority opinion rejected the government's argument "that the word 'otherwise' is *sufficient* to demonstrate that the examples [preceding 'otherwise'] do not limit the scope of the clause [following 'otherwise']." *Begay*, 553 U.S. at 144 (emphasis in original); *contra Montgomery* Br. at 8 ("Section 1512(c)(2) criminalizes the same *result* prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when the result is accomplished by a different *means*, *i.e.*, by conduct other than destruction of a document, record, or other object."). To be sure, *Begay* acknowledged that "otherwise" could sometimes have that meaning, but it made clear that it did not *always* have such a limited role. As the Court put it, "the word 'otherwise' *can* (we do not say *must*, cf. *post*, at [150–51] (Scalia, J., concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others." *Begay*, 553 U.S. at 144.

Moreover, the Court *held* that "the provision's listed examples"—that is, the text before "otherwise"—". . . indicate[ ] that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis in original). Justice Scalia himself understood that to be the holding, noting that the majority "read[s] the residual clause to mean that the unenumerated offenses must be similar to the enumerated offenses not only in the degree of risk they pose, but also 'in kind,'

17

despite the fact that 'otherwise' means that the *common* element of risk must be presented 'in a *different* way or manner.'" *Id.* at 151 (Scalia, J., concurring in judgment) (emphasis in original).[8]

Under this interpretation, subsection (c)(2) operates to ensure that by delineating only certain specific unlawful acts in subsection (c)(1)—"alter[ation], destr[uction], mutilat[ion], or conceal[ment]"—Congress was not underinclusive. Compare, for example, § 1519. That statute targets anyone who "alters, destroys, mutilates, conceals, *covers up, falsifies, or makes a false entry in* any record, document, or tangible object" for certain purposes in the context of department or agency investigations. 18 U.S.C. § 1519 (emphasis added). The highlighted acts are additional ways in which an individual can corruptly act on a "record, document, or tangible object" that are not covered by subsection (c)(1) but would be covered, on this reading, by subsection (c)(2).

To be sure, while the ACCA and § 1512(c)(2) both use the word "otherwise," there are key differences between those statutes. Perhaps most importantly, the ACCA has no line break or semicolon before its use of "otherwise." The government therefore argues that § 1512(c)(2) is more like the statute at issue in *Loughrin v. United States*, 573 U.S. 351 (2014), in which the Supreme Court pointed to "two clauses hav[ing] separate numbers, line breaks before, between, and after them, and equivalent indentation" as "placing the clauses visually on an equal footing and indicating that they have separate meanings," *id.* at 359; *Montgomery* Br. at 36.

---

[8] Another court has concluded that "*Begay*'s discussion of the word 'otherwise' is remarkably agnostic," and that the Supreme Court "placed little or no weight on the word 'otherwise' in resolving the case." *Montgomery*, 2021 WL 6134591 at *11. The Court does not read the *Begay* decision as so limited. That particular sentence is a response to Justice Scalia's view (rejected by the majority) regarding the use of "otherwise." As noted above the line, Justice Scalia recognized that the majority had "read[ ] the residual clause to mean that the unenumerated offenses must be similar to the enumerated offenses not only in the degree of risk they pose, but also 'in kind.'" *Begay*, 553 U.S. at 151 (Scalia, J., concurring in judgment).

*Loughrin* dealt with a challenge to a conviction under the federal bank-fraud statute, 18 U.S.C. § 1344, which provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.  A jury convicted Loughrin of violating § 1344(2) for cashing false checks at a Target, but it did so without finding that he acted with "intent to defraud a financial institution"— the language of § 1344(1).  *See Loughrin*, 573 U.S. at 354–55.  The Court held that such proof was not required for a conviction under § 1344(2).  *See id.* at 355–58.

The statute in *Loughrin* is different from § 1512(c) in important ways.  Most obviously, subsection (2) of the bank-fraud statute does not include the adverb "otherwise," and thus the Court did not even address the primary interpretive question here.  One might even conclude that the fact that Congress did *not* include the word "otherwise" in § 1344(2) suggests that it was aware of how to write broad prohibitions untethered to the text before it.

But the statutes are also similar.  After all, both have separate numbering and line breaks, and as *Loughrin* makes clear, such choices matter.  And when writing § 1512(c), Congress did opt for this drafting technique.

*    *    *

In sum, looking just to the text of 18 U.S.C. § 1512(c), there are three possible, and two quite plausible, interpretations.  It is possible that subsections (c)(1) and (c)(2) are not related at

19

all (though this is not a very plausible interpretation).  Subsection (c)(1) may contain just examples of the much broader prohibition contained in subsection (c)(2).  Or subsection (c)(2) may be limited by subsection (c)(1).  Based solely on the text of § 1512(c), the third option seems to present the fewest interpretive problems.  But it is not abundantly clear that that interpretation is the correct one.

While the text is this Court's lodestar, however, it is not the only factor it must consider.  "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."  *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122 (1850)).  The Court thus turns next to structure.

### B.  The statutory context suggests that subsection (c)(2) has a narrow scope

The structure and scope of § 1512 also suggest that subsection (c)(2) has a narrow focus. In particular, the other subsections of the statute criminalize fairly discrete conduct in narrow contexts.[9]  As examples, subsection (a) criminalizes, among other things, killing another person to prevent the attendance of a person at an official proceeding, 18 U.S.C. § 1512(a)(1)(A), or using physical force (or a threat of it) against a person with the intent to cause someone to withhold testimony from an official proceeding, *id.* § 1512(a)(2)(B)(i).  Subsection (b), in turn, focuses on verbal conduct, such as knowingly using threats with intent to influence, delay, or prevent some testimony at an official proceeding.  *Id.* § 1512(b)(1).  And subsection (d) criminalizes the intentional harassment of a person and thereby hindering, delaying, preventing, or dissuading any person from attending or testifying in an official proceeding.  *Id.* § 1512(d)(1).

---

[9] The title of the section is "Tampering with a witness, victim, or an informant."  And while that might not describe subsection (c), it also captures the narrow, evidentiary focus of the rest of the statute.

Subsection (c)(1) continues the statute's focus on specific and particularized actions, albeit in a slightly different manner. Instead of making unlawful an individual's action with respect to *another* person to achieve some illicit end—as subsections (a), (b), and (d) do—subsection (c)(1) prohibits an individual from taking certain actions *directly*. It prohibits "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object, or attempt[ing] to do so, with intent to impair the object's integrity or availability for use in an official proceeding." *Id.* § 1512(c)(1). Unlike the other subsections of § 1512, it does not require action directed at another person. But like the other subsections of § 1512, it homes in on a narrow, focused range of conduct.

If, however, the scope of subsection (c)(2) is not limited by subsection (c)(1)—if "otherwise" either signals a clean break or means subsection (c)(1) is only an example fitting within (c)(2)'s scope—it would introduce something of an internal inconsistency: subsection 1512(c)(2) would be the only provision in § 1512 not to have a narrow focus. Indeed, the government has relied on the breadth of (c)(2)'s terms to form the basis of its argument. And this inconsistency would come in the oddest of places: in a subsection of a subsection nestled in the middle of the statute. At a minimum, a reader would not expect to find in a statute that is otherwise narrowly (and consistently) tailored a criminal prohibition of exceptionally broad scope, especially in that location. Congress does not hide elephants in mouseholes, *see Whitman v. Am. Trucking Ass'n, Inc.*, 531 U.S. 457, 468 (2001), but this seems precisely that.

A different reading would also create substantial superfluity problems. After all, if subsection (c)(2) is not limited by subsection (c)(1), then the majority of § 1512 would be unnecessary. At a minimum, conduct made unlawful by at least eleven subsections—§§ 1512(a)(1)(A),    1512(a)(1)(B),    1512(a)(2)(A),    1512(a)(2)(B)(i),    1512(a)(2)(B)(iii),

1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1)—

would also run afoul of § 1512(c)(2).  To be sure, superfluity is not typically, by itself, sufficient

to require a particular statutory interpretation.  *See Hubbard v. United States*, 514 U.S. 695, 714

n.14 (1995).  But here, such substantial overlap within the same section suggests that Congress did

not mean § 1512(c)(2) to have so broad a scope.

Another court has sought to allay this overlap concern by pointing to the language Congress

could have used:

> [I]t would have been easy for Congress to craft language to achieve the goal
> that Defendants now hypothesize.  Congress, for example, could have
> substituted Section 1512(c)(2) with the following: "engages in conduct that
> otherwise impairs the integrity or availability of evidence or testimony for
> use in an official proceeding."  The fact that Congress, instead, enacted
> language that more generally—and without the limitations that Defendants
> now ask the Court to adopt—criminalized efforts corruptly to obstruct
> official proceedings speaks volume.

*Montgomery*, 2021 WL 6134591, at *12.  That is certainly true, and in fact is why the Court does

not believe that there is a single obvious interpretation of the statute.  But it is also the case that

reading § 1512(c)(1) as limiting the scope of § 1512(c)(2) avoids many of these structural or

contextual issues altogether.  Under such a reading, § 1512(c)(2) operates as a catchall to the

narrow prohibition Congress created in § 1512(c)(1)—not as a duplicate to nearly all of § 1512.[10]

---

[10] Perhaps another way of reading § 1512(c)(2) without creating substantial superfluity problems
would be as creating "direct" liability for the other types of conduct covered by § 1512—that is,
that it makes criminal an individual doing directly those things for which the rest of § 1512 requires
action directed at another person.  Neither party presses this argument (or anything like it), so the
Court does not address it further.  But the Court does note that, while this reading might eliminate
some superfluity, placing this kind of catchall in a subsection of a subsection in the middle-back
of § 1512 is still unintuitive.

### C.  The historical development of § 1512 suggests that § 1512(c)(2) operates as a catchall to § 1512(c)(1)

Prior to the enactment of subsection 1512(c) in 2002, § 1512 made criminal only actions directed at other persons.  For example, at that time subsection (b)(2) provided:

> **(b)**  Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades *another person*, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> **(2)** cause or induce any person to—
>
> **(A)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;
>
> **(B)** alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
>
> **(C)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
>
> **(D)** be absent from an official proceeding to which such person has been summoned by legal process; . . .
>
> shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. §§ 1512(b)(1) (1996).  Other subsections similarly prohibited conduct directed at causing or influencing "another person" to take improper action.  *Id.* §§ 1512(a)(1)(A)–(C), 1512(c)(1)–(4).  This created a gap in the statutory scheme:  § 1512 made it unlawful to cause "another person" to take certain steps—such as to "alter, destroy, mutilate, or conceal an object"— but did not make it unlawful for a person to take such action directly.

Section 1512(c) filled that gap, and took much of its language from § 1512(b).  Compare the two provisions:

| | |
|---|---|
| **(b)** Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to | **(c)** Whoever corruptly—<br><br>**(1)** *alters, destroys, mutilates, or conceals a record, document, or other object, or* |

do so, or engages in misleading conduct toward another person, with intent to—

(**2**) cause of induce any person to—

    (**A**) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

    (**B**) *alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding*;

    (**C**) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

    (**D**) be absent from an official proceeding to which such person has been summoned by legal process; . . .

shall be fined under this title or imprisoned not more than ten years, or both.

*attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding*; or

(**2**) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(2) (1996) (left) (emphasis added); 18 U.S.C. § 1512(c) (2002) (right)

(emphasis added). Just three months later, the same Congress added § 1512(a)(2)(B), which again

drew on § 1512(b):

(**b**) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(**2**) cause or induce any person to—

    (**A**) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(**a**)

. . .

(**2**) Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

    (**B**) cause or induce any person to—

        (**i**) withhold testimony, or withhold a record, document, or other

24

**(B)** *alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding*;

**(C)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

**(D)** be absent from an official proceeding to which such person has been summoned by legal process; . . .

shall be fined under this title or imprisoned not more than ten years, or both.

object, from an official proceeding;

**(ii)** *alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding*;

**(iii)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

**(iv)** be absent from an official proceeding to which such person has been summoned by legal process; . . .

shall be punished as provided in paragraph (3).

18 U.S.C. § 1512(b)(2) (1996) (left) (emphasis added); 18 U.S.C. § 1512(a)(2)(B) (2002) (right) (emphasis added).

A fair inference is that, by adding subsection (c) to fill the gap in § 1512, and by drawing heavily from a single provision out of four already included in subsection (b), Congress intended subsection (c) to have a narrow, limited focus—just like subsection (b)(2)(B). The only difference is that subsection (c) does not include the requirement of acting through another person. That the same Congress further adopted *all* of § 1512(b)(2) in § 1512(a)(2)(B)—rather than just one sub-subsection of § 1512(b)(2)—further suggests that its enactment of §1512(c)(1) was intended to be narrow. Perhaps just as important, if subsection 1512(c)(2) is as broad as the government contends here, there would have been no need for the very same Congress to add § 1512(a)(2)(B) just three months later.

25

**D.  If anything, the legislative history supports a narrow reading of subsection (c)(2)**

"Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011).  The government relies on legislative history, but it does not support the government's position.

Section 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745. "The Sarbanes-Oxley Act, all agree, was prompted by the exposure of Enron's massive accounting fraud and revelation that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535–36 (2015) (plurality opinion).  As discussed above, while § 1512(b) "made it an offense to 'intimidat[e], threate[n], or corruptly presuad[e] *another person*' to shred documents," the statute did not prohibit individuals from shredding documents themselves. *Id.* at 536 (emphasis added). The Senate Report for the Act identified this statutory loophole:

> Indeed, even in the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107–146, p. 7 (2002).

As the plurality opinion in *Yates* explains, 18 U.S.C. § 1519 was originally introduced to plug this gap, *Yates*, 574 U.S. at 535–36, and § 1512(c) was added later, *id.* at 542.  In particular, Senator Lott introduced § 1512(c) on July 10, 2002.  *See Montgomery*, 2021 WL 6134591, at *15. He stated that the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives"—in line with the Enron concern.  148 Cong. Rec. S6542 (daily ed. July 10, 2002).  He later stated that the new subsection "*would enact stronger laws against document shredding.* Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding

is pending and a subpoena has been issued for the evidence that has been destroyed or altered. Timing is very important." *Id.* at S6545 (emphasis added). In Senator Lott's view, his amendment would fill this gap: "So this section would allow the Government to charge obstruction *against individuals who acted alone*, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year." *Id.* (emphasis added) Then-Senator Joseph Biden referred to new subsection (c) as "making it a crime for document shredding," something he thought the pending bill already did. *Id.* at S6546.

Senator Hatch made similar statements regarding the focus of the proposed new subsection on documents and document-shredding, as well as its ties to the then-recent Enron scandal. Senator Hatch explained that "the amendment strengthens an existing federal offense that is often used to prosecute document shredding and other forms of obstruction of justice," noting that current law "does not prohibit an act of destruction committed by a defendant acting alone. While other existing obstruction of justice statutes cover acts of destruction that are committed by an[] individual acting alone, such statutes have been interpreted as applying only where a proceeding is pending, and a subpoena has been issued for the evidence destroyed." *Id.* at S6550. To Senator Hatch, the addition of § 1512(c) "closes this loophole by broadening the scope of Section 1512." *Id.* It "*would permit the government to prosecute an individual who acts alone in destroying evidence, even where the evidence is destroyed prior to the issuance of a grand jury subpoena*." *Id.* (emphasis added). He concluded by noting that the Arthur Andersen prosecutors "had to prove that a person in the corporation corruptly persuaded *another* to destroy or alter documents, and acted with the intent to obstruct an investigation." *Id.* (emphasis added). The new § 1512(c) would ensure "that individuals acting alone would be liable for such criminal acts." *Id.*

27

To the extent it is relevant at all, the weight of this legislative history is inconsistent with the government's position here. It suggests that, in the wake of the Enron scandal, Congress was faced with a very specific loophole: that then-existing criminal statutes made it illegal to cause or induce *another* person to destroy documents, but did not make it illegal to do so by oneself. Congress closed that loop by passing subsection (c), and nothing in the legislative history suggests a broader purpose than that.

### E. Miller's alleged conduct falls outside of § 1512(c)(2)

For all the foregoing reasons, the Court believes there are two plausible interpretations of the statute: either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2). The text, structure, and development of the statute over time suggest that the second reading is the better one. But the first is, at a minimum, plausible.

At the very least, the Court is left with a serious ambiguity in a criminal statute. As noted above, courts have "traditionally exercised restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and have "construe[d] penal laws strictly and resolve[d] ambiguities in favor of the defendant," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring) (citing *Liparota*, 471 U.S. at 427). Applying these principles here "gives citizens fair warning of what conduct is illegal, ensuring that [an] ambiguous statute[] do[es] not reach beyond [its] clear scope." *Nasir*, 17 F.4th at 473 (Bibas, J., concurring). And it makes sure that "the power of punishment is vested in the legislative, not the judicial department." *Id.* (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.)). The Court therefore concludes that § 1512(c)(2) must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.

28

Miller, however, is not alleged to have taken such action.  Instead, Count Three of the Second Superseding Indictment alleges only that he "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18." Indictment at 2–3.  Nothing in Count Three (or the Indictment more generally) alleges, let alone implies, that Miller took some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence Congress's certification of the electoral vote.

The government nevertheless argues that Miller's conduct "'otherwise obstruct[ed], influence[d], or impede[d]' Congress's ability to review documents that it was constitutionally and statutorily required to receive and act upon, thereby obstructing the certification of the Electoral College vote." *Montgomery* Br. at 40–41 (modifications in original).  But none of those facts are set forth in the indictment, and the Court cannot consider them on this Motion to Dismiss. *Akinyoyenu*, 199 F. Supp. 3d at 109–10.  And in any event, the government does not argue that Miller *himself* took or attempted to take any action with respect to those records or documents. Absent such an allegation, the Indictment fails to allege a violation of 18 § U.S.C. 1512(c)(2).

\*     \*     \*

For the foregoing reasons, the Court will grant Miller's Motion to Dismiss Count Three of the Superseding Indictment, ECF No. 34.  An appropriate order will follow.

DATE:  March 7, 2022

CARL J. NICHOLS
United States District Judge

29

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 1:21-cr-00119 (CJN) |
| GARRET MILLER, | |
| *Defendant*. | |

## ORDER

This matter is before the Court on the government's Motion for Reconsideration, ECF No. 75.  Accordingly, for the reasons given in the contemporaneously published Memorandum Opinion, it is hereby **ORDERED** that

The government's Motions for Leave to File Supplemental Authority, ECF Nos. 82, 83, and 85, are **GRANTED**.  And it is further **ORDERED** that

The government's Motion for Reconsideration, ECF No. 75, is **DENIED**.

It is **SO ORDERED**.

DATE:  May 27, 2022

_____
CARL J. NICHOLS
United States District Judge

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

     v.

GARRET MILLER,

        *Defendant*.

Criminal Action No. 1:21-cr-00119 (CJN)

## MEMORANDUM OPINION

In Count Three of a twelve-count Second Superseding Indictment, the United States charged Garret Miller with violating 18 U.S.C. § 1512(c)(2).  *See* Second Superseding Indictment ("Indictment"), ECF No. 61 at 2–3.  On March 7, 2022, the Court granted Miller's Motion to Dismiss, rejecting the government's broad interpretation of that statute.  *United States v. Miller*, ___ F. Supp. 3d ___, 2022 WL 823070 (D.D.C. Mar. 7, 2022).

The government has since moved for reconsideration, arguing that the Court's prior interpretation regarding the scope of § 1512(c)(2) was incorrect.  *See generally* Mot. for Reconsideration ("Mot."), ECF No. 75.  In the alternative, the government contends for the first time that, even if the Court's statutory interpretation is correct, dismissal was not warranted because the Indictment provides Miller with sufficient notice of how he allegedly violated the statute under the Court's interpretation.  *See generally id.*  The Court disagrees on both scores.

### I. RECONSIDERATION OF THE COURT'S PRIOR DECISION ON THE SCOPE OF § 1512(C)(2) IS NOT WARRANTED

The government argues that the Court should reconsider its prior decision because the government did not present the issue of "the degree of ambiguity required to trigger the rule of lenity" in its briefs opposing Miller's motion to dismiss.  *See* Mot. at 8.  But the parties did join

1

issue on this specific question, *see* Opp. to Mot. to Dismiss, ECF No. 35, at 12 n.2 (discussing the degree of ambiguity required to trigger the rule of lenity); *see also* Supp. Br. in Resp. to Def.'s Second Supp., ECF No. 63-1 at 38 (same), and the Court was well aware of and considered the appropriate standard for the application of lenity, *see Miller*, 2022 WL 823070, at *5.  The government has pointed to no intervening change in law.  Because a reconsideration motion is "not simply an opportunity to reargue facts and theories upon which a court has already ruled," the Court concludes that the government's lenity argument is not a basis for reconsideration.  *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80–81 (D.D.C. 2015) (internal quotation marks omitted).

The government also contends that reconsideration is warranted because the Court erred in its interpretation of § 1512(c)(2) and because its decision conflicts with the decisions of other Judges in the District.  *See generally* Reply, ECF No. 84.  The Court has again carefully considered the government's arguments—presented here and in other cases pending before the Court—as to why the government's broad reading of § 1512(c)(2) is the correct one.  The Court has also carefully considered the opinions from other Judges in the District on the issue.[1]  The Court is not

---

[1] The Court notes that those decisions reach the same conclusion but for different reasons.  For example, some opinions do not consider the relevance of the word "otherwise" in the statute at all, *see United States v. McHugh*, ("*McHugh I*"), 2022 WL 296304, at *12 (D.D.C. Feb. 1, 2022) (omitting "otherwise" even from its quotation of the statute); others mention the word but essentially omit any serious discussion of it, *see United States v. Nordean*, 2021 WL 6134595, at *6-7 (D.D.C. Dec. 28, 2021); and others suggest that it presents the key interpretive question, *United States v. McHugh*, ("*McHugh II*"), 2022 WL 1302880, at *4 (D.D.C. May 2, 2022) (concluding "the meaning of 'otherwise' is central to the meaning of § 1512(c)(2)").  Other decisions appear to have concluded that § 1512(c)(1) acts as something of a carveout from § 1512(c)(2)'s otherwise broad terms, *see United States v. Reffit*, 2022 WL 1404247, at *8 (D.D.C. May 4, 2022), *see also United States v. Sandlin*, 2021 WL 5865006, at *5 (D.D.C. Dec. 10, 2021); *United States v. Caldwell*, 2021 WL 6062718, at *12 (D.D.C. Dec. 20, 2021), *reconsideration denied*, 2022 WL 203456 (D.D.C. Jan. 24, 2022); *United States v. Mostofsky*, 2021 WL 6049891, at *11 (D.D.C. Dec. 21, 2021); *United States v. Bingert*, 2022 WL 1659163, at *8–*9 (D.D.C. May 25, 2022), while others interpret "otherwise" to require a link between the subsections that is

persuaded, either by the government's arguments or those other decisions, that the statute is so clear that the rule of lenity is inapplicable. The Court therefore stands on its previous decision concerning the scope of § 1512(c)(2).

## II. DISMISSAL OF THE INDICTMENT IS NOT PREMATURE

The government argues in the alternative that, even under the Court's interpretation of § 1512(c)(2), dismissal was premature because the Indictment satisfies Federal Rule of Criminal Procedure 7(c)(1) and is otherwise constitutional. *See* Mot. at 21–24. The government did not make this argument in its initial opposition to Miller's Motion to Dismiss. *See generally* Mem. in Opp., ECF No. 63-1. But even if the argument has not been forfeited—Miller, for his part, has not argued that the government forfeited this argument—it falls short.

Count Three of the Second Superseding Indictment states:

### COUNT THREE

On or about January 6, 2021, within the District of Columbia and elsewhere, **GARRET MILLER**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18.

(**Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

Indictment at 2–3 (emphasis original). Count Three contains no other allegations, is not preceded by a general facts section, and does not cross-reference any other Counts.

The government contends that the Indictment is nonetheless sufficient, as it "echo[es] the operative statutory text while also specifying the time and place of the offense." Mot. at 21

---

provided through the requirement that the illegal conduct be targeted at an "official proceeding," *see United States v. Montgomery*, 2021 WL 6134591, at *12 (D.D.C. Dec. 28, 2021); *United States v. Grider*, 2022 WL 392307, at *5–6 (D.D.C. Feb. 9, 2022).

3

51

(quoting *United States v. Williamson*, 903 F.3d 124, 140 (D.C. Cir. 2018)).  The government argues that Count Three should be construed as encompassing both the government's interpretation of the statute and the Court's.  Put differently, the government argues that because Count Three echoes the statutory text, it is wholly consistent with the Court's interpretation of the statute (and, presumably, would be consistent with essentially any interpretation).[2]

Miller disagrees.  He argues that an indictment must contain a "definite written statement of the essential facts constituting the offense charged."  Def.'s Resp., ECF No. 80 at 22 (quoting Fed. R. Crim. P. 7(c)(1)) (emphasis omitted).  Miller contends that nothing in Count Three (or in the Indictment more generally) alleges or even implies that he took some action with respect to a document, record, or other object, which is required under the Court's interpretation.  *See id.* at 22–24; *Miller*, 2022 WL 823070, at *15.  Miller also notes that the Indictment does not include the facts essential to the charge, thus robbing him of his opportunity to prepare a proper defense.  *See* Def.'s Resp. at 23.

The Court agrees with Miller.

An indictment must contain the essential facts constituting the charged offense.  Chief Justice John Marshall explained long ago (albeit in the context of an admiralty proceeding to enforce a forfeiture judgment against a schooner and her cargo) that:

> It is not controverted that in all proceedings in the Courts of common law, either against the person or the thing for penalties or forfeitures, the allegation that the act charged was committed in violation of law, or of the provisions of a particular statute will not justify condemnation, unless, independent of this allegation, a case be stated which shows that the law has been violated.  The reference to the statute may direct the attention of the Court, and of the accused, to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offence.  The importance of this principle to a fair administration of justice, to that

---

[2] If the government's argument were correct, it is not apparent why any Judge needed to address what conduct § 1512(c)(2) covers at the motion-to-dismiss stage.

> certainty introduced and demanded by the free genius of our institutions in
> all prosecutions for offences against the laws, is too apparent to require
> elucidation, and the principle itself is too familiar not to suggest itself to
> every gentleman of the profession.

*The Hoppet*, 11 U.S. (7 Cranch) 389, 393 (1813); *see also* Joseph Story, *Commentaries on the Constitution of the United States* § 1779 (1833) ("[T]he indictment must charge the time, and place, and nature, and circumstances, of the offense, with clearness and certainty; so that the party may have full notice of the charge, and be able to make his defense with all reasonable knowledge and ability.").

Courts soon applied this principle in criminal proceedings.  *See* Caleb Nelson, *The Constitutionality of Civil Forfeiture*, 125 YALE L.J. 2446, 2500–01 (2016) (citing *The Hoppet* and noting that the "analogy between penal actions and criminal prosecutions may also have led judges to require more specificity in pleadings than standard civil practice would have demanded"); Note, *Indictment Sufficiency*, 70 COLUM. L. REV. 876, 884 (1970) (describing *The Hoppet* as the origin of the rule that a valid criminal indictment must include a "sufficient description of [the essential elements] to inform [a] defendant as to the nature and cause of his accusation").  As the Supreme Court stated in 1895, "the true test is, not whether [the criminal indictment] might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet."  *Cochran v. United States*, 157 U.S. 286, 290 (1895); *see also United States v. Cruikshank*, 92 U.S. 542, 558 (1875) ("A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."); *id.* at 559 ("[T]he indictment should state the particulars, to inform the court as well as the accused.  It must be made to appear—that is to say, appear from the indictment, without going further—that the acts charged will, if proved, support a conviction for the offence alleged.").

5

This standard is still applicable today.  As then-District Court Judge Jackson recently explained:

> It is axiomatic that "[a] crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances" if the charging document is to comport with the Constitution.  *United States v. Cruikshank*, 92 U.S. 542, 558 (1875); *see also* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation [against him.]").  To satisfy the protections that the Sixth Amendment guarantees, "*facts* are to be stated, not conclusions of law alone." *Cruikshank*, 92 U.S. at 558 (emphasis added).  In other words, "[t]he accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if proved, would establish prima facie the accused's commission of that offense."  *United States v. Silverman*, 745 F.2d 1386, 1392 (11th Cir. 1984) (citation omitted).
>
> "The requirement that an indictment contain a few basic factual allegations accords defendants adequate notice of the charges against them and assures them that their prosecution will proceed on the basis of facts presented to the grand jury."  *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979).  "The . . . generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." [*United States v.*] *Conlon*, 628 F.2d [150,] 155 [(D.C. Cir. 1980)].  Furthermore, and importantly for present purposes, "[i]t is an elementary principle of criminal pleading[ ] that where the definition of an offen[s]e . . . includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must state the species[ ]—it must descend to particulars."  *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971) (first alteration in original) (quoting *Cruikshank*, 92 U.S. at 558).  Thus, an indictment that mirrors the exact language of a criminal statute may nevertheless be dismissed as constitutionally deficient if it is "not framed to apprise the defendant 'with reasonable certainty[ ] of the nature of the accusation against him[.]'" [*United States v.*] *Nance*, 533 F.2d [699,] 701 [(D.C. Cir. 1976)] (quoting [*United States v.*] *Simmons*, 96 U.S. [360,] 362 [(1877)]).

*United States v. Hillie*, 227 F. Supp. 3d 57, 71–72 (D.D.C. 2017) (Jackson, K.B., J.) (noncitation alterations in original).

To be sure, in certain circumstances, an indictment that "echoes the operative statutory text while also specifying the time and place of the offense" can be sufficient.  *Williamson*, 903 F.3d

at 130; *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014).  But those cases involve criminal statutes that are sufficiently precise such that merely echoing the statutory language in the indictment provides enough specificity to apprise a reasonable defendant of his allegedly unlawful conduct.  *See, e.g.*, *Williamson*, 903 F.3d at 130–31 ("[B]y parroting the statutory language and specifying the time and place of the offense and the identity of the threatened officer, the indictment adequately informed Williamson about the charge against him [under 18 U.S.C. § 115(a)(1)] so that he could prepare his defense and protect his double-jeopardy rights."); *Resendiz-Ponce*, 549 U.S. at 107–08 ("[I]t was enough for the indictment in this case to point to the relevant criminal statute [8 U.S.C. § 1326(a)] and allege that '[o]n or about June 1, 2003,' respondent 'attempted to enter the United States of America at or near San Luis in the District of Arizona.'"); *see also Verrusio*, 762 F.3d at 13–14 (approving a much more detailed indictment than mere parroting).

In some circumstances, then, merely echoing the words of a statute and adding the time and location of the alleged offense may be enough.  But when a statute is so broad and general that its terms, without more, fail to inform a reasonable person of the essential conduct at issue, merely echoing that language is *not* enough.  As the Supreme Court has stated, "[*i*]*t is an elementary principle of criminal pleading*, *that where the definition of an offence . . . includes generic terms*, *it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition*; *but it must state the species—it must descend to particulars.*"  *Cruikshank*, 92 U.S. at 558 (emphasis added).  In such cases, "it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Carll*, 105 U.S. 611, 612 (1881); *see also Hess*, 124 U.S. at 487

7

("Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."); *Williamson*, 903 F.3d at 131 ("It is true that, while parroting the statutory language is 'often sufficient,' that is not invariably so."). The government seems to realize that parroting the statute will not always suffice. Indeed, the Indictment includes allegations laying out the "official proceeding" at issue here. *See* Indictment at 2–3 (alleging that Miller disrupted "an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15–18").

To be sure, "neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every *means* by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (emphasis added). And the Federal Rules "were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure." *United States v. Debrow*, 346 U.S. 374, 376 (1953). But an indictment still must include allegations of fact sufficient to make a prima facie case of criminal conduct. That rule "retain[s its] full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure." *Russell*, 369 U.S. at 763.

In the specific context of this statute, under the government's interpretation, just about any *actus reus* could satisfy the statute. *See, e.g.*, Mot. at 10–11; *see also Caldwell*, 2021 WL 6062718, at *13 (noting that "a person outside the Capitol building protesting legislation while it is under consideration by a congressional committee," or a "citizen who emails her congresswoman to urge

her to vote against a judicial nominee" could fall under a broad reading of the statute, but stating without explanation that "no one would seriously contend that such [ ] act[s] violate[ ] section 1512(c)(2)").  Indeed, absent any limiting context, the words "obstruct, influence, and impede" provide essentially no limit on what criminal conduct might be at issue.  *See Miller*, 2022 WL 823070, at *9; *Sandlin*, 2021 WL 5865006, at *5; *see also Caldwell*, 2021 WL 6062718, at *13 (explaining that "[t]he terms 'obstruct,' 'impede,' and especially 'influence,' unless meaningfully limited, sweep in wholly innocent and protected First Amendment conduct.").  This is true in part because those verbs refer to the *effect* that an action has, not to the *act* itself.  *See Sandlin*, 2021 WL 5865006, at *5.  Because many actions (including some constitutionally protected ones) could have the natural and probable effect of at least influencing an official proceeding, those words, without more, provide a defendant little to no guidance as to what conduct is being charged.[3]

---

[3] Other Judges in the District have concluded that the word "corruptly" limits the scope of § 1512(c)(2).  *See, e.g.*, *Sandlin*, 2021 WL 5865006, at *13; Final Jury Instructions, *United States v. Reffitt*, No. 21-cr-32, ECF No. 119, at 25 ("To act 'corruptly,' the defendant must use unlawful means or act with an unlawful purpose, or both."); *Montgomery*, 2021 WL 6134591, at *21 ("The predominant view among the courts of appeals is that the 'corruptly' standard requires at least an 'improper purpose' and an 'intent to obstruct.'").  But this limitation goes to the *mens rea* required by the statute; it does not limit the types of conduct that are made criminal.  *But see* 18 U.S.C. § 1515(b) (defining "corruptly" in § 1505 as "acting with an improper purpose" but specifically "including" only acts with an evidentiary nexus); *United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991) (interpreting "corruptly" in a transitive sense, requiring acts directed towards others).  And much like the different opinions on the scope of the statute, *see supra note* 1, while all Judges to have considered the issue have concluded that the statute's use of the term "corruptly" does not render it unconstitutionally vague, those decisions have not landed on a consistent approach.  For example, some have suggested that "corruptly" means acting "voluntarily and intentionally to bring about an unlawful result or a lawful result by some unlawful method, with hope or expectation of . . . [a] benefit to oneself or a benefit to another person," *Montgomery*, 2021 WL 6134591 at *22 n.5 (quoting *Aguilar*, 515 U.S. at 616–17 (Scalia, J., concurring in part and dissenting in part)), while others have suggested it means, at least, acting with "consciousness of wrongdoing."  *Bingert*, 2022 WL 1659163, at *6 (quoting *Arthur Anderson LLP v. United States*, 544 U.S. 696, 706 (2005)).

In any event, the government has not argued that "corruptly" meaningfully clarifies or limits the conduct charged in the Indictment here.  Although the Court does not now interpret "corruptly" as

As for the Indictment here, it states that Miller "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding."  Indictment at 2.  The charge provides no further detail as to what conduct by Miller the government (or the grand jury, for that matter) considers the *actus reus*.  But that act is an essential element of the crime.[4]

The government responds that Count Three is sufficient because it necessarily encompasses the Court's interpretation of § 1512(c)(2).  *See* Mot. at 21–24.  The Court disagrees. Absent any additional context or specificity, nothing in Count Three informs Miller of what actions he is alleged to have taken with respect to some document, record, or other object.  *See Miller*, 2022 WL 823070, at *15.  And looking to the rest of the Indictment, and assuming that Count Three implicitly incorporates its other charges, the government has pointed to no action alleged in the Indictment's four corners that has a reasonable nexus with a document, record, or other object. The Court cannot presume that the grand jury passed judgment on this essential element of the offense.  *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109–10 (D.D.C. 2016).

The government offers a fallback argument, contending that the Indictment's reference to a specific official proceeding, which itself involved documents, cures the insufficiency.  *See* Reply

---

used in § 1512(c), the Court concludes that the common meanings of "corruptly" are sufficiently capacious so as not to limit or clarify the *actus reus* charged in the Indictment.

[4] Note that the Indictment would be insufficient even under the government's reading of the statute. Indeed, it is perhaps *more* problematic because an even broader set of conduct can be criminal under § 1512(c)(2) on the government's view, thereby providing even less notice to the defendant through language that merely summarizes the statute.

Indictments may cross-reference other counts.  Such cross-references could provide detail that mere parroting of general words of a statute do not.  For example, under the government's interpretation of § 1512(c)(2), a charge of an indictment under that count could incorporate the factual details provided by other charges.  But here there is no such explicit cross-reference, and the Court need not determine whether a charge lacking specificity implicitly cross-references other conduct in the indictment because nothing in this Indictment provides a document nexus.

at 10–11.  Again, the Court disagrees.  The Indictment's reference to the certification of the Electoral College vote is only a reference to the official proceeding in question.  It sheds no light on the *actus reus* that Miller is alleged to have taken.

The government also contends that the preferred remedy to a vague indictment is a bill of particulars, not dismissal.  *See* Reply at 11–12; Transcript of Hearing of May 4, 2022 in *United States v. Lang*, No. 21-cr-53; *see also* Minute Order of November 19, 2021, *United States v. Reffitt*, No. 21-cr-32 (D.D.C.) (ordering a bill of particulars instead of granting a motion to dismiss when the government advanced multiple theories about how the Defendant violated § 1512(c)(2), none of which were described in the Indictment).  But "courts have long held that, while a valid indictment can be clarified through a bill of particulars, *an invalid indictment cannot be saved by one*." *Hillie*, 227 F. Supp. 3d at 81 (emphasis modified); *see also Conlon*, 628 F.2d at 156 ("[I]t is settled that a bill of particulars and a fortiori oral argument cannot cure a defective indictment."); *Nance*, 533 F.2d at 701–02 (same); *Thomas*, 444 F.2d at 922–23 (same).  As then-District Judge Jackson explained:

> A subsequent statement by the government in the form of a bill of particulars does not guarantee that the formal charges brought against the defendant adhere to the facts that the grand jury considered.  *See Nance*, 533 F.2d at 701 (finding that a bill of particulars did not remedy an indictment that lacked "any allegation whatsoever" on a key element of the offense, because merely reciting the words of the statute gave the government "a free hand to insert the vital part of the indictment without reference to the grand jury").  And "to permit the omission [of a material fact] to be cured by a bill of particulars would be to allow the grand jury to indict with one crime in mind and to allow the U.S. Attorney to prosecute by producing evidence of a different crime"; which would, in essence, "usurp the function of the grand jury . . . and, in many cases, would violate due process by failing to give the accused fair notice of the charge he must meet." *Thomas*, 444 F.2d at 922–23.  Therefore, even if the government's subsequent statement might reduce the future risk of double jeopardy, *see, e.g.*, [*United States v.*] *Sanford, Ltd.*, 859 F.Supp.2d [102,] 124 [(D.D.C. 2012)], it cannot "cure" an indictment that fails to provide Defendant with present notice of the charges against him or that potentially thwarts the role

> of the grand jury in bringing those charges in the first place, *see Russell*,
> 369 U.S. at 770 (finding that a bill of particulars cannot cure an imprecise
> and fatally defective indictment); *see also Gaither*[ *v. United States*], 413
> F.2d [1061,] 1067 [(D.C. Cir. 1969)] ("The bill of particulars fully serves
> the functions of apprising the accused of the charges and protecting him
> against future jeopardy, but it does not preserve his right to be tried on a
> charge found by a grand jury.").

*Hillie*, 227 F. Supp. 3d at 81 (Jackson, K.B., J.) (noncitation alterations in original).

In sum, Count Three of the Second Superseding Indictment is far too sparse under any proposed reading of the statute. Miller has a constitutional "right . . . to be informed of the nature and cause of the accusation" against him. U.S. Const. Amend. VI.; *see also* Fed. R. Crim. P. 7(c) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"). And allowing the government to correct that violation with a bill of particulars would simply spawn another constitutional problem, because "[n]o person shall be held to answer for a [felony], unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V.[5]

\*       \*       \*

For the forgoing reasons, the Court **DENIES** the government's Motion to Reconsider.

DATE:  May 27, 2022

CARL J. NICHOLS
United States District Judge

---

[5] The Court observes that some of the January 6 indictments include lengthy fact sections that may even include allegations that provide both an *actus reus* and an adequate nexus to a document, record, or other object. *See, e.g.*, *Caldwell I*, 2021 WL 6062718, at \*13 (D.D.C. Dec. 20, 2021) (listing detailed factual allegations in the Indictment). And others specify the alleged *actus reus* conduct in the count charging a violation of § 1512(c)(2). *See, e.g.*, *United States v. Robertson*, 2022 WL 969546, at \*3 (D.D.C. Feb. 25, 2022) (alleging that the defendants obstructed, influenced, and impeded an official proceeding "by entering and remaining in the United States Capitol without authority and participating in disruptive behavior"). The Court does not, of course, opine on the sufficiency of such indictments, but does note that the government has declined to pursue, or has failed to secure, such an indictment in this case.

12