## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Crim No. 1:21-cr-00119-CJN** |
| | : | |
| | : | |
| **GARRET MILLER,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO REOPEN DETENTION HEARING

The United States of America (the "government") files its response to the Defendant's

Motion to Reopen Detention Hearing dated August 22, 2022 (ECF No. 95) as follows:

### PROCEDURAL HISTORY

On January 6, 2021, Garret Miller forcibly entered the United States Capitol during a

violent rebellion against the United States Government.   Ultimately, law enforcement ejected

Miller from the building.   In the days that followed, Miller used social media to call for the

assassination of a member of Congress and demanded a public hanging for the law enforcement

officer who fatally shot his fellow rioter Ashli Babbitt.   He also circulated photographs of the

officer he believed shot Ms. Babbitt and stated that it was "huntin [sic] season" against the

officer in order to take revenge for Miller's "sister in battle."

On January 20, 2021, Miller was arrested on a sealed complaint in the Northern District

of Texas.   *See* ECF No. 9 at 2.   The government moved to detain, and on January 25, 2021, the

magistrate judge in the Northern District of Texas held a detention hearing and remanded Miller

to custody.   ECF No. 9 at 31, N.D. TX Case No. 3:21-MJ-052-BN.

Miller was charged in a twelve-count indictment on February 12, 2021, alleging violations of 18 U.S.C. § 231(a)(3) (Counts 1 and 2), 18 U.S.C. § 1512(c)(2) and 2 (Count 3); 18 U.S.C. § 111(a)(1) (Count 4); 18 U.S.C. § 875(c) (Counts 5 and 6); 18 U.S.C. § 1752(a)(1)-(3) (Counts 7-9); 40 U.S.C. § 5104(e)(2)(D) (Count 10); 40 U.S.C. § 5104(e)(2)(E) (Count 11); and 40 U.S.C. § 5104(e)(2)(G) (Count 12).[1]

On March 19, 2021, Miller filed a Motion to Revoke the Detention Order, and ten days later the government filed a Memorandum in Opposition.   ECF Nos. 14, 16.   On April 1, 2021, the Court conducted a bond review hearing, and decided that Miller was a danger to the community and should be detained pending trial.

On October 25, 2021, Miller filed a Sealed Motion re Reopen Detention Hearing.   ECF No. 55.   The government filed a Sealed Opposition to Miller's Motion.   The Court held a hearing and on December 22, 2021, denied Miller's motion.   ECF No. 68.   The Court noted that its April 2021 determination:

> [w]as based on the totality of Miller's conduct, including that he showed a disregard for violence occurring around the Capitol, failed to follow police orders, resisted officers, made threats against Congresswoman Ocasio-Cortez, and had specifically formulated and articulated plans to track and potentially kill a U.S. Capitol police officer, in addition to his lack of remorse upon arrest.

*Id*. at 2.   The Could therefore held that Miller was "a sufficient danger to the community that pretrial detention was necessary," and that "[t]he document on which Miller now relies does little to upset that determination."   *Id*. at 3.

---

[1]  Miller was subsequently charged in two Superseding Indictments, but those indictments include the same charges and counts as the original Indictment.   *See* ECF Nos. 30, 61.

In June 2021, Miller filed a Motion to Dismiss Count Three of the Indictment, charging violations of 18 U.S.C. § 1512(c)(2) and 2.   ECF No. 34.   Following briefing from both parties, the Court Granted Miller's Motion and issued a Memorandum Opinion on March 7, 2022.   ECF No. 72.   Following a denial of the government's Motion for Reconsideration, the government filed an interlocutory appeal.   ECF No. 88.   After a status conference on August 5, 2022, Miller has filed another Motion to Reopen Detention, arguing (1) Miller's detention conditions are particularly onerous; (2) it is doubtful whether Miller will be sentenced to more than 24 months imprisonment even after a conviction; and (3) Miller's prolonged detention has deprived him of the ability to assist in his own defense.   ECF No. 95.   The government responds as follows.

### A. <u>Miller has Presented No New Information that has a Material Bearing on Whether there are Conditions that Will Reasonably Assure the Safety of the Community</u>

Pursuant to the Bail Reform Act, in assessing whether to detain a defendant, the "judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account information available concerning:"

(1)     The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)     The weight of the evidence against the person;

(3)     The history and characteristics of the person, including:

(A)     The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

3

        (B)     Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

   (4)     The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Detention hearings can be reopened at any time before trial only where "the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

The Bail Reform Act does not include general conditions of confinement as a factor for courts to consider when deciding whether to detain or release a defendant pending trial in a criminal case.  A defendant's personal experiences during confinement *could* be relevant to the statutory analysis if they affected a particular defendant's "physical and mental condition" so as in turn to reduce the defendant's dangerousness.  *See* 18 U.S.C. § 3142(g)(3)(A); *cf. United States v. Lee*, 451 F. Supp. 3d 1, 7 (D.D.C. 2020) ("[T]he relevant statutory inquiry is ***not*** the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial).  Rather, the statute requires the Court to evaluate "*the danger*" that "*would be posed by the person's release*.") (emphases in original); *United States v. Gallagher*, Criminal No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) ("In some circumstances, clearly, a particular defendant's medical condition could reduce that defendant's risk of flight or danger to the community, and the health condition would

4

therefore fall within the factors appropriately considered in the context of § 3142(g). Absent those circumstances, however, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g) analysis.").

The defendant fails to meet the stringent standard to warrant release once detained.   He offers no new information that is material to the detention decision.   The onus is on the defendant to demonstrate why the Court's prior dangerousness analysis is no longer valid.   The passage of time alone does not itself require the Court to update its dangerousness analysis. *See United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (length of a defendant's "current or potential future detention" not relevant under the reopening provision in Section 3142(f)(2) because it "is not material to the issue of risk of flight or dangerousness").   But the defendant offers no reason other than timing to warrant release.   The Court should deny the defendant's request for release because there has been no change since the hold determination that decreases the defendant's danger to the community.

Garret Miller is as dangerous to the community as the day he was arrested on the instant offense and subsequently ordered detained by both the magistrate judge in the Northern District of Texas and by this Court.   The government has previously discussed Miller's conduct both before, during, and after the January 6, 2021, insurrection at length when previously opposing his release. *See* Government's Opposition to Defendant's Motion to Revoke Magistrate Judge's Detention Order, ECF No. 16 at 3-7.   Today, he is the same Garret Miller who threatened to assassinate a United States Congresswoman mere hours after he participated in the violent storming of the Capitol, to which he admitted bringing riot gear, rope, and a grappling hook.   He is the same individual who called for the hunting and public execution of a law enforcement officer.   And he

is the same individual who, when confronted with the possibility of arrest, told another individual that "it might be time for me to…be hard to locate."   *Id*. at 6.   Nothing resulting from this delay has changed those factors.

While the government previously noted that several firearms were found during Miller's arrest in Texas, *see* ECF No. 16 at 7, subsequent investigation revealed that one of those firearms was a prohibited weapon.   On December 5, 2017, Miller filled out an ATF form 4473 from a Federal Firearms Licensee (FFL) in Plano, Texas, to purchase an American Tactical Imports, model Omni Hybrid, multicaliber receiver, serial number NS042288.   Government's Exhibits 1 and 2.[2]   The firearm was sold with a collapsible stock and was categorized by the FFL dealer as a rifle.   Government's Exhibit 3 at 2.   By the time the firearm was recovered from Miller's residence on January 20, 2021, the firearm had been outfitted with an 8.5-inch barrel, making the firearm fall under the purview of the National Firearms Act.   Government's Exhibit 4 at 2.   Miller did not register this rifle as required by law.   *Id*.   Therefore, on January 20, 2021, Miller was committing the federal offense of Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d).[3]   This Court should consider Miller's danger to the community not only as it relates to his possession of several firearms and other weapons, as previously discussed, but also that his possession of one of these firearms was in violation of federal law.

---

[2] All government exhibits referenced herein were previously provided to defense counsel via discovery on August 9, 2021.
[3] Possession of an Unregistered Firearm carries a potential punishment of imprisonment of not more than 10 years and a fine of $10,000.   18 U.S.C. § 5871.

**B.  Miller's Conclusion that, if Convicted, He Would be Sentenced to No More Than 24 Months Imprisonment is Misplaced**

In arguing for release, Miller asserts that, in the event of conviction, it is unlikely he would be sentenced to incarceration of more than 24 months, and that his conduct is less culpable than that of other defendants who have already been sentenced.   Def. Mtn. p. 11-20. As an initial matter, and as noted above, such a timing consideration is not relevant to the factors under Section 3142(g).   But his assertion is flawed in any event.   In all the cases Miller cites, the defendants entered guilty pleas.   Assuming Miller elects to proceed to trial, he will not receive a three-point reduction for acceptance of responsibility.   With a Criminal History Category I, the government calculates Miller's advisory guideline range on the felony charges alone, if convicted, as follows:

**Counts One and Two: 18 U.S.C. § 231(a)(2)**

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2A2.2(b)(2)(C) | Dangerous Weapon Brandished | +3 |
| U.S.S.G. § 3A1.2(b) | Official Victim Adjustment | +6 |
| | **Total** | **23** |
| | **Estimated Range: 46-57 Months** | |

**Count Four: 18 U.S.C. § 111(a)(1)**

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2A2.2(b)(2)(C) | Dangerous Weapon Brandished | +3 |
| U.S.S.G. § 3A1.2(b) | Official Victim Adjustment | +6 |
| | **Total** | **23** |
| | **Estimated Range: 46-57 Months** | |

**Counts Five and Six: 18 U.S.C. § 875(c)**

| | | |
|---|---|---|
| U.S.S.G. § 2A6.1(a)(1) | Base Offense Level | 12 |
| U.S.S.G. § 2A6.1(b)(1) | Intent to Carry Out Threat | +6 |
| U.S.S.G. § 2A6.1(b)(2) | More than Two Threats | +2 |
| | **Total** | **20** |
| | **Estimated Range: 33-41 Months** | |

Should the court of appeals reinstate Count Three, and he be convicted of that offense, Miller's advisory guideline range would increase further:

**Count Three: 18 U.S.C. § 1512(c)(2)**

| | | |
|---|---|---|
| U.S.S.G. § 2J1.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2J1.2(b)(1)(B) | Causing or Threatening Injury | +8 |
| U.S.S.G. § 2J1.2(b)(2) | Substantial Interference | +3 |
| | **Total** | **25** |
| | **Estimated Range: 57-71 Months** | |

While the government acknowledges the delay the interlocutory appeal has caused, the defendant continues to face the possibility of a significant sentence, far beyond the time that he has spent in pretrial detention.   Both this Court and a magistrate judge in Texas have concluded, correctly, that Miller poses a danger to the community.   The defendant does not identify any evidence that changes that calculus.

## C.   Miller's Pretrial Detention Has Not Deprived Him of His Sixth Amendment Right to Counsel

The defendant lastly argues for release based on a purported violation of the Sixth Amendment right to counsel.   The defendant claims that "the government has dumped an unprecedented amount of discovery on the January 6 defendants" and that "Mr. Miller has only been given sporadic access to a laptop computer to review the discovery since the matter was first discussed." Def. Mot. p. 21.

As an initial matter, as with the other constitutional claims, the Court lacks authority to release the defendant on grounds of a Sixth Amendment violation, which is unrelated to the reasons for his pretrial detention.

A judge may "reopen[ ]" a detention hearing at any time before trial if he or she finds, first, that "information exists that was not known" to the detainee at the time of the original hearing and, second, that that information has a "material bearing" on "the issue of whether there are conditions of release that reasonably assure the appearance of the person" or "the safety of the community."

8

18 U.S.C. § 3142(f)(2).   This reconsideration provision, however, is inapplicable here because the defendant's Sixth Amendment claim relates only to "the difficulties [he] might encounter in preparing for trial," which "have absolutely nothing to do with whether he is a risk of flight or a danger to the community." *United States v. Stanford*, 722 F. Supp. 2d 803, 811 (S.D. Tex.), *aff'd*, 394 F. App'x 72 (5th Cir. 2010) (interpreting identical federal provision, *see* 18 U.S.C. § 3142(f)); *see also United States v. Petters*, 2009 WL 205188, **1-3 (D. Minn. Jan. 28, 2009) (same). Indeed, as the U.S. Supreme Court has made clear, "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Even if this Court had the authority to release the defendant based on a Sixth Amendment violation, he has not demonstrated one. The defendant fails to state with specificity how the conditions at the jail have meaningfully affected his ability to communicate with his attorney, or why release is the appropriate remedy.   *See Lee*, Crim. No. 2018-CF1-008210, at 39 (Ex. 4) (in denying oral motion related to Sixth Amendment Claim, the court noted that "the only specific response that the Court was given was last week that counsel met with the defendant for three hours; they were there to discuss the case and spent a significant amount of time discussing conditions," and found "at this point, without more, the Court doesn't find that that rises to the level of a constitutional violation with only those representations by the counsel and no other evidence of any other impairment"); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("not every restriction on counsel's time or opportunity to investigate or consult with his client or otherwise prepare for trial violates a defendant's Sixth Amendment right to counsel").

The defendant's contention that the government has "dumped" discovery on him is incorrect.   As the Court is aware, the government has created a mechanism for January 6 defendants and their counsel to review "global" discovery produced for all January 6 cases.   That discovery, understandably, is voluminous.   However, in this case, as in all other January 6 cases, the government has also produced discovery specific to the defendant.   The government has provided defense counsel numerous volumes of discovery specifically relating to the defendant, including his FBI manifest and serials, open-source and closed-circuit television clips purporting to show the defendant's conduct inside and outside the U.S. Capitol, grand jury materials specific to the defendant, returns from warrants on the defendant's social media accounts, and materials related to the execution of the search warrant on the defendant's residence.   In addition to meeting its global discovery obligations, the government has exercised all due diligence to telegraph for the defendant what evidence it intends to use at trial, which is far less voluminous than the global discovery.   Miller's alleged inability to access discovery should be an issue taken up with the U.S. Marshals and the pretrial detention center, and not form the basis upon which he seeks release.

### D. <u>Conclusion</u>

The government respectfully requests that this Court deny Miller's Motion to Reopen Detention.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By:     _____
Stephen J. Rancourt
Texas Bar No. 24079181
Assistant United States Attorney, Detailee
601 D Street, NW
Washington, D.C. 20530
(806) 472-7398
stephen.rancourt@usdoj.gov


**Certificate of Service**

I, Stephen J. Rancourt, certify that on August 29, 2022, I caused a copy of the to be

served on counsel of record via electronic filing.


_____
Stephen J. Rancourt
Assistant United States Attorney

11