**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-119 (CJN)** |
| **v.** | : | |
| | : | |
| **GARRET MILLER,** | : | |
| | : | |
| **Defendant.** | : | |

**TRIAL BRIEF**

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and the legal issues that may be brought before the Court. At trial, the government will introduce a variety of evidence including, but not limited to, video evidence, testimony from law enforcement witnesses, and evidence collected from the defendant's phone and social media accounts.

As described below, the parties have agreed to certain stipulations and will continue to coordinate to find ways to streamline the case. Where there are matters in dispute, this trial brief sets forth the parties' respective positions.

### a. The Government's Statement of the Case

#### i. January 6 Capitol Riot and the Defendant's Actions

On January 6, 2021, thousands of people descended on the U.S. Capitol and interrupted the joint session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. The government's evidence will briefly set the stage for the riot in which the defendant participated, and then focus on the defendant's criminal conduct and intent that day.

As the Court is aware, Vice President Michael Pence, as the President of the Senate, was present at the Capitol to preside over the joint session and Senate proceedings.  On that day, Secret Service was present for the protection of the Vice President, and physical barriers and law enforcement officers surrounded the U.S. Capitol building and grounds.  At all relevant times, the United States Capitol building and its grounds—including the Capitol Plaza on the east front of the grounds—were closed to members of the public.

 The defendant, Garret Miller, was among the group of rioters who illegally entered the U.S. Capitol grounds that day after a large crowd on the East Front overwhelmed the police line that was attempting to hold the outer perimeter of the restricted area.  After the breach of the outer perimeter, United States Capitol Police (USCP) officers fell back to form a line on the staircase that leads up to the entrance of the Capitol building known as the Rotunda Doors (also referred to as the Columbus Doors).

Following the breach of the outer perimeter, defendant crossed the Capitol Plaza and ran towards the USCP police line that had formed on the steps.  The defendant moved to the front of the crowd that was face-to-face with the officers on the steps.  The defendant then broke through the police line and was restrained and handcuffed.  It was only after the crowd of rioters surged past the police line that defendant was released from custody and instructed by law enforcement to leave.

Rather than leave the Capitol grounds, the defendant joined the mob that forced their way past USCP officers who were attempting to keep the crowd from entering through the Rotunda Doors.  After entering the building at approximately 2:43 PM, the defendant made his way into the Capitol Rotunda where he recorded video of himself inside the building.

At approximately 3:06 PM, officers from the USCP and the Metropolitan Police Department (MPD) formed a police line inside the Rotunda in an effort to move rioters out of the room.  While some rioters left willingly and without incident, the defendant was not one of them.  Rather than following commands to leave the Rotunda, defendant remained in front of the police line and refused to give ground.  After grabbing at an officer's baton and stating that he would not back up, defendant forcibly resisted as several officers attempted to move him back.  It took two officers to knock defendant off his feet in order to get him to give ground in compliance with their instructions.  Even after getting knocked over, defendant returned to the police line where he continued to ignore law enforcement's commands and attempted to hold his ground.  After officers again attempted to push him back, the defendant had to be restrained by another rioter as defendant banged his flagpole against the floor of the Rotunda and shouted in the direction of the law enforcement officers who were trying to get him to move back.

After exiting the Capitol, defendant took to social media where he glorified the events of the day and acknowledged that he and other rioters had overwhelmed the police and pushed their way through.  Only hours after lawmakers were forced to evacuate from the Senate and House chambers for their safety, and in response to Congresswoman Alexandria Ocasio-Cortez statement to "Impeach," defendant sent a threatening message ("Assassinate AOC") directly to the Congresswoman.

### ii.    The Government's Anticipated Evidence

The government will call Captain Ron Ortega from the USCP who will provide an overview of the Capitol building and grounds and set the stage for what occurred there on January 6, 2021.  Accompanying video evidence will show what occurred as the Capitol grounds and building were breached.

The government's presentation will also include testimony from Retired Lieutenant Patrick Kelley and Officer Jonathan Sacks of the United States Capitol Police.  Lieutenant Kelley and Officer Sacks dealt directly with the defendant when he was taken into custody after breaking through the police line on the stairs leading up to the Columbus Doors.  Their testimony will be accompanied by video and photographs that capture the defendant outside the Capitol on the East Front.  Likewise, the government plans to call USCP officer Marc Carrion, who defendant pushed his way past to enter the building.

MPD Sergeant Quenterra Carey and Officer Travis Coley will testify about their interactions with defendant inside the Capitol Rotunda and his resistance to their efforts to get him to step away from the police line and exit the building.  Sergeant Carey is named in Count Four and is expected to testify that defendant forcibly resisted, opposed, impeded, intimidated, or interfered with her while she was engaged in the performance of her official duties.

The government will present much of its evidence through video that captured the defendant on the Capitol grounds on January 6, 2021.  The government anticipates introducing exhibits of footage from the U.S. Capitol Police CCTV cameras and MPD body worn cameras (BWC) as well as open-source footage from the internet.  The open-source videos will be corroborated by USCP Camera footage and MPD body worn camera footage, and by officers who are visible in the footage.

Defendant's cellphone was recovered by law enforcement and subsequently downloaded. The government anticipates introducing into evidence photographs and videos from the Capitol grounds which help track defendant's movements throughout the day and capture what he was witnessing.  The government also plans on introducing photographs and screenshots the defendant saved to his phone in the aftermath of January 6 in order to show his state of mind and his

motivation for sending threats over the internet.  Law enforcement also recovered physical items worn by defendant on the Capitol grounds on January 6 that the government anticipates entering into evidence.

Finally, the government will present the testimony of Kevin Palomino, a Special Agent with the Department of Homeland Security, Federal Protective Service, assigned to the Federal Bureau of Investigation (FBI), North Texas Joint Terrorism Task Force (JTFF).  Agent Palomino investigated this case, arrested the defendant on January 20, 2021, and executed a search warrant on the defendant's residence that same day.  Agent Palomino has reviewed the extraction of data from the defendant's cell phone, the return from a search warrant for the defendant's social media accounts, and has reviewed the USCP footage that captures the defendant in the Capitol building. Given this foundation, Agent Palomino will describe the electronic and other evidence of the defendant's conduct on January 6, 2021, and the electronic messages defendant sent before and after January 6, 2021.[1]

The presentation of evidence described above will prove the charged offenses beyond a reasonable doubt.

### iii.    Anticipated Defenses

According to the defendant, depending upon the Court's resolution of the motion to dismiss based upon multiplicity, defendant may enter guilty pleas to some counts prior to trial.  For the remaining counts, the defendant does not believe the government will be able to establish all of

---

[1]    As it relates to venue for Count Five, the government has proposed a stipulation that Congresswoman Alexandria Ocasio-Cortez was in Washington, D.C. at the time that defendant sent a tweet which read "Assasinate AOC" to a Twitter account used by the congresswoman. If defendant does not stipulate to this fact, the government may decide to call a witness from the congresswoman's office.

the elements of the crimes charged beyond a reasonable doubt.  In addition, as to Counts 5 and 6, defendant does not believe the government can establish venue in the District of Columbia.

### b.  Elements of the Crimes Alleged

Below is a summary of the elements of the crimes alleged in the Third Superseding Indictment.  The parties have included the relevant definitions and citations.  Where the parties have not been able to reach agreement, the government (in blue) and the defendant (in red) have each set forth proposed language.

### COUNT ONE: OBSTRUCTING OFFICERS DURING A CIVIL DISORDER

Count One charges Garret Miller with committing or attempting to commit an act to obstruct, impede, or interfere with a law enforcement officer, that is an officer from the United States Capitol Police, in an entryway to the United States Capitol Building, lawfully carrying out their official duties incident to a civil disorder, which is a violation of 18 U.S.C. § 231(a)(3).

In order to find Miller guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

2. Second, at the time of the defendant's actual or attempted act, the law enforcement officer was engaged in the lawful performance of their official duties incident to and during a civil disorder.

3. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.  In deciding whether the

6

defendant acted knowingly, the Court may consider all of the evidence, including what the defendant did or said.[2]

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.[3]

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia.  It also means commerce wholly within the District of Columbia.[4]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[5]

The term "department" includes executive departments.[6]  The Department of Homeland Security, which includes the United States Secret Service, is an executive department.[7]

The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.[8]

---

[2]     *See* Seventh Circuit Pattern Criminal Jury Instructions; *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005).

[3]     18 U.S.C. § 232(1). *See also* jury instructions in *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101 at 16).

[4]     Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021). *See also* jury instructions in *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101 at 16).

[5]     18 U.S.C. § 232(3).

[6]     18 U.S.C. § 6.

[7]     5 U.S.C. § 101.

[8]     18 U.S.C. § 6.

The term "law enforcement officer" means any officer or employee of the United States or the District of Columbia while engaged in the enforcement or prosecution of any criminal laws of the United States or the District of Columbia.[9]

For the U.S. Capitol Police and Metropolitan Police Department on January 6, 2021, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[10]

Attempt

In Count One, the defendant is also charged with attempting to commit the crime of obstructing officers during a civil disorder. An attempt to obstruct officers during a civil disorder is a federal crime even if the defendant did not actually complete the crime of obstructing officers during a civil disorder.

In order to find the defendant guilty of attempt to commit the crime of obstructing officers during a civil disorder, the Court must find that the government proved beyond a reasonable doubt each of the following elements:

1. First, that the defendant intended to commit the crime of obstructing officers during a civil disorder, as that offense is defined above.

2. Second, that the defendant took a substantial step toward committing obstructing officers during a civil disorder, which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, the Court may not find Miller guilty of attempt to commit obstructing officers during a civil disorder merely because he thought about it. The

---

[9]     18 U.S.C. § 232(7).

[10]    *See* 2 U.S.C. §§ 1961, 1967; *see also* jury instructions in *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101 at 17).

Court must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, the Court may not find Miller guilty of attempt to commit obstructing officers during a civil disorder merely because he made some plans to or some preparation for committing that crime. Instead, the Court must find that the defendant took some firm, clear, undeniable action to accomplish his intent to obstruct officers during a civil disorder. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.[11]

### COUNT TWO: OBSTRUCTING OFFICERS DURING A CIVIL DISORDER

Count Two charges Garret Miller with committing or attempting to commit an act to obstruct, impede, or interfere with a law enforcement officer, that is officers from the Metropolitan Police Department, in the United States Capitol Building Rotunda, lawfully carrying out their official duties incident to a civil disorder, which is a violation of 18 U.S.C. § 231(a)(3). The elements and definitions are the same as in Count One.

### COUNT THREE: OBSTRUCTION OF AN OFFICIAL PROCEEDING AND AIDING AND ABETTING

The elements of this offense are not included for Count Three because the Court granted defendant's motion to dismiss Count Three on March 7, 2022. ECF No. 73.

### COUNT FOUR: ASSAULTING, RESISTING, OR IMPEDING CERTAIN OFFICERS

Count Four charges Garret Miller with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer and employee of the United States, and any person

---

[11]     Seventh Circuit Pattern Criminal Jury Instructions; Third Circuit Pattern Jury Instructions 7.01.

assisting such an officer and employee, while the officer is engaged in the performance of his official duties, which is a violation of 18 U.S.C. § 111(a)(1).

In order to find Miller guilty of this offense, the Court must find that the government proved the following elements beyond a reasonable doubt:

1. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Q.C., an officer from the Metropolitan Police Department.

2. Second, the defendant did such acts forcibly.

3. Third, the defendant did such acts intentionally.

4. Fourth, Q.C. was an officer or an employee of the United States who was then engaged in the performance of his official duties, or a person assisting such an officer or employee in the performance of that officer's duties.

5. Fifth, the defendant acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count Two.

The defendant acted "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. A threat to use force at some unspecified time in the future is not sufficient to establish that the defendant acted forcibly.[12]

Sergeant Q.C. is an officer of the Metropolitan Police Department and that it was a part of the official duty of such officer to assist federal officers in protecting the U.S. Capitol complex on January 6, 2021 and detaining individuals who lacked authorization to enter the restricted area around the complex. It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was, at that time, assisting federal officers in carrying out an official duty so long as it is established beyond a reasonable doubt that the victim was, in fact, assisting a federal officer acting in the course of his duty and

---

[12]    Tenth Circuit Pattern Criminal Jury Instructions (2021), § 2.09.

that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.[13]

> ➤ Additional Language Proposed by the Government

The six actions listed in 18 U.S.C. § 111(a)(1) ("assaults, resists, opposes, impedes, intimidates, or interferes") each require the defendant to act "forcibly."[14]  In addition to proscribing assault, the statute includes five other prohibited acts which involve behavior that threatens federal officers or obstructs their official activities but is not necessarily assault.[15]  The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so.  A finding that one used force (or attempted or threatened to use it) isn't the same as a finding that he attempted or threatened to inflict injury.  In order to find that the defendant committed an "assault," the Court must find beyond a reasonable doubt that the defendant acted forcibly and that the defendant intended to inflict or intended to threaten injury.

---

[13]     *United States v. Feola*, 420 U.S. 671, 684 (1975).

[14]     *See United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) ("a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc."). *Arrington*'s emphasis on Section 111(a)'s disjunctive formulation supports the view that the statute punishes a broad range of conduct beyond assaults.

[15]     *See United States v. Stands Alone*, 11 F.4th 532, 535-37 (7th Cir. 2021) ("A proper reading of the text militates against defining resist, oppose, impede, intimidate, and interfere merely as synonyms of 'assault.'"); *United States v. Briley*, 770 F.3d 267, 273-274 (4th Cir. 2014) ("We must ... ascribe meaning to the five remaining verbs."); *United States v. McCaughey*, et al, No. 21-cr-040 (TNM) (endorsing interpretation of 111(a) in *Stands Alone* and *Briley*, pp. 13-14 of transcript of Sept. 13, 2022 oral verdict). *See also United States v. Williams*, 602 F.3d 313, 317 (5th Cir. 2010) ("[T]he dual purpose of the statute, which, the Supreme Court has noted, is not simply to protect federal officers by punishing assault, but also to 'deter interference with federal law enforcement activities' and ensure the integrity of federal operations by punishing obstruction and other forms of resistance."); *United States v. Gagnon*, 553 F.3d 1021, 1026 (6th Cir. 2009) ("Congress's drafting makes clear that § 111's purpose is to protect federal officers and certain employees from a broader range of harmful conduct than just common-law assault.").

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.[16]

> Additional Definitions Proposed by the Defendant

The acts proscribed by the offense – assault, resist, oppose, impede, intimidate, and interfere with – each require an underlying simple assault. Simple assault means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so. A finding that one used force (or attempted or threatened to use it) isn't the same as a finding that he attempted or threatened to inflict injury. Thus, in addition to finding beyond a reasonable doubt that the defendant acted forcibly, you must also find that the defendant intended to inflict or intended to threaten injury.[17]

## COUNT FIVE: INTERSTATE THREAT TO INJURE OR KIDNAP

Count Five charges Garret Miller with transmitting in interstate commerce a communication containing a threat to Congresswoman Alexandria Ocasio-Cortez by posting to Twitter a post which read "Assasinate AOC" in violation of 18 U.S.C. § 875(c). In order for the Court to find the defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

---

[16]     *See* jury instructions in *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101 at 14); jury instructions in *United States v. Jensen*, No. 21-cr-006 (TJK) (ECF 97 at 30); and definitions applied in bench trial in *United States v. McCaughey*, et al, No. 21-cr-040 (TNM) (p. 8 of transcript of Sept. 13, 2022 oral verdict).

[17]     Tenth Circuit Pattern Criminal Jury Instructions (2021), § 2.09; *United States v. Wolfname*, 835 F.3d 1214, 1217-1219 (10th Cir. 2016) (Finding a "consensus" among courts that a conviction under 18 U.S.C. § 111(a), including for resisting or interfering with an officer, requires at least some form of assault.); *United States v. Chapman*, 528 F.3d 1215, 1231 (9th Cir. 2008) (9th Cir. 2008) (Holding 18 U.S.C. § 111(a) "leaves no room for conviction" that "does involve at least some form of assault."); *United States v. Davis*, 690 F.3d 127, 135 (2d Cir. 2012) (Under the language of 18 U.S.C. § 111(a), the defendant "necessarily must have committed common law simple assault."), *cert. denied* 568 U.S. 1107 (2013).

(1) The defendant knowingly transmitted in interstate commerce the communication charged in the indictment;[18]

(2) The communications contained a true threat;[19] and

(3) The defendant must have either intended to communicate a true threat or knew that that the communication would be perceived as a true threat[20]

The defendant proposes that this third element be modified by adding the italicized text: "The defendant must have either intended to communicate a true threat or knew that that the communication would be perceived as a true threat *by those who the defendant communicated the alleged threat*."

➢ Additional Language Proposed by the Government

A "true threat" is a serious expression of intent to commit unlawful physical violence against another person or a group of people. The communication must be one that a reasonable observer, considering the context and circumstances of the statement, including surrounding communications, would interpret as a true threat.[21] The government does not necessarily have to prove that the defendant actually intended to carry out the threat, or even that the defendant had

---

[18]    *See* Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina, 2020 Online Edition, page 129 available at http://www.scd.uscourts.gov/pji/PatternJuryInstructions.pdf ("...that the defendant transmitted in interstate or foreign commerce a communication"); United States District Court District of Maine, 2022 Revisions to the Pattern Criminal Jury Instructions of the First Circuit, page 147, available at https://www.med.uscourts.gov/sites/med/files/crpjilinks.pdf ("… that the communication was sent in interstate commerce").

[19]    *Virginia v. Black*, 538 U.S. 343, 359 (2003) (defining "true threat" as one "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.")

[20]    *Elonis v. United States*, 135 S. Ct. 2001 (2015) (holding that a conviction under § 875(c) requires a showing that the defendant transmitted the communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat).

[21]    *See United States v. Mabie*, 663 F.3d 322, 331 (8th Cir. 2011) ("[T]he communication must be viewed in textual context and also in the context of the totality of the circumstances in which the communication was made.") (internal quotation omitted). *See also* jury instructions in *United States v. Haas*, 19-cr-486, (N.D. Ill. August 2, 2020).

the capacity to do so.[22]  But a lack of intent or capacity to carry out the threat can be relevant circumstances in deciding whether a communication is a true threat. A threat does not need to be communicated directly to its intended victim, say that the defendant himself would be the one to commit a violent act, or specify when it will be carried out.[23]  Again, however, these circumstances can be relevant in deciding whether a communication is a true threat. A communication is not a true threat if it is merely idle or careless talk, exaggeration, or something said in a joking manner.

To send a communication in "interstate commerce" means to send it from a place in one state to a place in another state. This requirement is satisfied when a communication was transmitted or received over the internet.[24]

The government must also establish by a preponderance of the evidence that venue is proper for this charge in the District of Columbia.[25]  This can be accomplished by showing that the recipient of the threat was in the District of Columbia when the threat was received, or by showing that the effects of the offense were felt in the District of Columbia.[26]

---

[22]     *See United States v. Dysart*, 705 F.2d 1247, 1256 (10th Cir. 1983) (in case involving § 871 threat against President it was not necessary for the government to prove that defendant actually intended to carry out the threat); *United States v. Hunt*, 573 F. Supp. 3d 779, 798 (E.D.N.Y. 2021) (government not required to show defendant took any steps to carry out the alleged threats against Congresswoman Ocasio-Cortes in case involving threats under 18 U.S.C. § 115(a)(1)(B)).

[23]     *United States v. Howard*, 947 F.3d 936, 946 (6th Cir. 2020) (jury instruction was proper where court instructed that "[t]he government is not required to prove the defendant made the targeted individual feel threatened or that the targeted individual even knew about the threat against him.").

[24]     *See, e.g.*, *United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (recognizing that "the Internet is an instrumentality and channel of interstate commence"); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam) (recognizing the same); *United States v. MacEwan*, 445 F.3d 237, 245 (3d Cir. 2006); *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (same). *See also* jury instructions in *United States v. Haas*, 19-cr-486, (N.D. Ill. August 2, 2020).

[25]     *See* 18 U.S.C. § 3237(a); *United States v. Lam Kwong–Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991).

[26]     *United States v. Hagar*, 822 F. App'x 361, 370 (6th Cir. 2020) (finding that venue for 875(c) counts was proper in Northern District of Ohio because the emails that defendant sent from his home in Oregon went to his former employer's headquarters in Northern District of

➢ Additional Language Proposed by the Defendant

A "true threat" is a serious expression of intent to commit unlawful physical violence against another person or a group of people.  To be a "true threat" the alleged threat on its face and in the circumstances under which it is made must be so unequivocal, unconditional, immediate and specific as to the person or group of people threatened, as to convey a gravity of purpose and imminent prospect of execution.[27]  Also, to be a "true threat" the communication must be one made in the context or under the circumstance such that a reasonable person would foresee that the statement would be interpreted by those to whom the statement was communicated as true threat.   Finally, a communication is not a "true threat" if it is idle or careless talk, exaggeration, something said in a joking manner or political hyperbole no matter if it is crude or offensive.[28]

Under the First Amendment to the United States Constitution, advocating violence against another cannot be considered a "true threat" except "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."[29]

In addition to the above, the government must establish that venue is proper for this charge in the District of Columbia.  The government must prove, by a preponderance of the evidence, that

---

Ohio);  *United States v. Jeffries*, 692 F.3d 473, 483 (6th Cir. 2012) (venue was proper in the Eastern District of Tennessee, where victims received threatening YouTube video via the internet sent from the Western District of Tennessee) (abrogated on other grounds by *Elonis*, 575 U.S. 723).

[27]     *United States v. Kelner,* 534 F.2d 1020 (2d Cir.), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976); *New York e.x re. Spitzer v. Operation Rescue National*, 273 F.3d 184, 196-97 (2d Cir. 2001).

[28]     *See, e.g.,* 5th Cir. Pattern Jury Instructions at 224 (2019) ("as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner."); 8th Cir. Pattern Jury Instructions at 252 ("as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner."); Tenth Cir. Pattern Jury Instructions (2021) at 143, 145, 147, and 149 ("as distinguished from words used as mere political argument, idle talk, exaggeration, or something said in a joking manner.").

[29]     *Brandenburg v. Ohio*, 395 U.S. 444 (1969).

15

the communication alleged to contain the "true threat" was transmitted from or transmitted to the District of Columbia.[30]

## COUNT SIX: INTERSTATE THREAT TO INJURE OR KIDNAP

The elements of this offense are not included for Count Six because the government will be moving to dismiss Count Six without prejudice.

## COUNT SEVEN: ENTERING OR REMAINING IN A RESTRICTED BUILDING OR GROUNDS[31]

Count Seven charges Garret Miller with entering or remaining in a restricted building or grounds, which is a violation of 18 U.S.C. § 1752(a)(1).

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2. Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.[32]

The term "knowingly" has the same meaning as described in Count 1.

---

[30]   18 U.S.C. § 3237(a) ("Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.")

[31]   18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021).

[32]   18 U.S.C. § 1752(c)(1). *See also United States v. Robertson*, No. 21-cr-34 (CRC) (ECF 86 at 20); *United States v. Thompson*, No. 21-cr-161 (RBW) (ECF 83 at 31); *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM) (ECF 84 at 32).

## COUNT EIGHT: DISORDERLY OR DISRUPTIVE CONDUCT IN A RESTRICTED BUILDING OR GROUNDS

Count Eight charges Garret Miller with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of 18 U.S.C. § 1752(a)(2).

In order for the Court to find the defendant guilty of this offense, the government must prove each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" is conduct that tends to disturb the public peace, offend public morals, or undermine public safety, as well as conduct where a person is behaving riotously in a lawless or unruly way and in manner that is not according to order or rule. "Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[33]

The term "restricted building or grounds" has the same meanings as described in Count 7, and the term "knowingly" has the same as defined in Count 1.

## COUNT NINE: IMPEDING INGRESS AND EGRESS IN A RESTRICTED BUILDING OR GROUNDS

Count Nine charges Garret Miller with impeding ingress and egress in a restricted building or grounds, which is a violation of 18 U.S.C. § 1752(a)(3).

---

[33]    *United States v. Rivera,* 2022 WL 2187851, *5 (D.D.C. June 17, 2022).

In order for the Court to find the defendant guilty of this offense, the government must prove each of the following elements beyond a reasonable doubt:

1. First, that the defendant obstructed or impeded ingress or egress to or from any restricted building or grounds.

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

The term "restricted building or grounds" has the same meaning as described in Count 7, and the term "knowingly" has the same meaning as described in Count 1.

**COUNT TEN: ENGAGING IN DISORDERLY CONDUCT IN A CAPITOL BUILDING**

Count Ten charges Garret Miller with disorderly or disruptive conduct in a Capitol Building, which is a violation of 40 U.S.C. § 5104(e)(2)(D).

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

3. Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.  The terms "disorderly conduct" "disruptive conduct" have the same definitions as described in Count Eight and the term "knowingly" has the same definition as described in Count 1. A defendant acts "willfully" if he knew his conduct was unlawful and intended to do something that the law forbids. That is, to find that defendant acted "willfully," the Court must find that the evidence proved beyond a reasonable doubt that the defendant acted with a purpose to disobey or disregard the law. "Willfully" does not, however,

require proof that the defendant had any evil motive or bad purpose other than the purpose to disobey or disregard the law, nor does it require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[34]

## COUNT ELEVEN: IMPEDING PASSAGE THROUGH THE CAPITOL GROUNDS OR BUILDINGS

Count Eleven charges Garret Miller with impeding passage through the Capitol Grounds or Buildings, which is a violation of 40 U.S.C. § 5104(e)(2)(E).

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant obstructed or impeded passage through or within any of the United States Capitol Buildings.

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

3. Third, that the defendant acted willfully and knowingly.

The terms "obstructed" or "impeded" have their ordinary meanings. The terms "United States Capitol Buildings" and "willfully" have the same meanings as described above in Count 10.  The term "knowingly" has the same meaning as described in Count 1.

## COUNT TWELVE: PARADING, DEMONSTRATING, OR PICKETING IN A CAPITOL BUILDING

Count Twelve charges Garret Miller with parading, demonstrating, or picketing in a capitol building, which is a violation of federal law, 40 U.S.C. § 5104(e)(2)(G).

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

---

[34]     40 U.S.C. § 5104; *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

1. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2. Second, the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[35] The terms "United States Capitol Buildings" and "willfully" have the same meaning as in Count Ten. The term "knowingly" has the same meaning as described in Count 1.

**COUNT THIRTEEN: OBSTRUCTING OFFICERS DURING A CIVIL DISORDER**

Count Thirteen charges Garret Miller with committing or attempting to commit an act to obstruct, impede, or interfere with a law enforcement officer, that is an officer from the United States Capitol Police, outside the United States Capitol Building, lawfully carrying out their official duties incident to a civil disorder, which is a violation of 18 U.S.C. § 231(a)(3). The elements and definitions are the same as in Count One.

**c. Trial Stipulations**

The parties are mutually committed to trying the case expeditiously and have stipulated to the facts below.[36]

### 1. *United States Capitol Police Closed Circuit Video Monitoring*

The United States Capitol Police (USCP) operates and maintains closed-circuit video monitoring and recording equipment (CCTV) that captures locations inside and outside of the U.S.

---

[35]     *See* jury instructions in *United States v. Thompson*, No. 21-cr-161 (RBW) (ECF 83 at 39); jury instructions in *United States v. Hale-Cusanelli*, No. 21-cr-37 (TNM) (ECF 84 at 38); and jury instructions in *United States v. Williams*, No. 21-cr-377 (BAH) (ECF 112 at 11). *see also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

[36]     The government has also proposed stipulations to the following facts: (a) the events at the U.S. Capitol on January 6, 2021 constituted a civil disorder; (b) the civil disorder affected interstate commerce; (c) the civil disorder affected a federally protected function; (d) U.S. Capitol Police

Capitol building and on the Capitol grounds. The video equipment timestamps each recording with the date and time at which the footage is captured. The USCP-controlled CCTV equipment was in good working order on January 6, 2021, and video footage recovered from the CCTV system with the timestamp of January 6, 2021 is footage from January 6, 2021. The events depicted in the video footage are a fair and accurate, the timestamps on the recordings are accurate, and the video footage was not altered or edited in any way. The video footage is authentic in that it is what it purports to be.

The parties agree that any video obtained from the USCP CCTV can be admitted into evidence at trial without further foundation beyond this stipulation.

### 2.    *United States Capitol Building and Grounds*

By law, the U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol. At the U.S. Capitol, the building itself has 540 rooms covering 175,170 square feet of ground, roughly four acres. The building is 751 feet long (roughly 228 meters) from north to south and 350 feet wide (106 meters) at its widest point. The U.S. Capitol Visitor Center is 580,000 square feet and is located underground on the east side of the Capitol. On the west side of the Capitol building is the West Front, which includes variety of open concrete spaces, a fountain surrounded by a walkway, two

---

Officers and Metropolitan Police Department Officers were engaged in their official duties as officers or employees of the United States on January 6, 2021; (e) in response to Mayor Bowser's order imposing a curfew in the District of Columbia because of the events at the U.S. Capitol, Safeway closed all 12 of its stores in the District of Columbia as of 4 p.m.; (f) the authenticity of open source videos (g) Congresswoman Ocasio-Cortez was present in Washington, DC on January 6 when defendant sent the communication charged in Count Five. If defendant does not stipulate to these facts the government anticipates calling live witnesses to testify.

broad staircases, and multiple terraces at each floor. On January 6, 2021, the inaugural stage scaffolding was on the West Front of the Capitol building. On the East Front are three staircases, porticos on both the House and Senate side, and two large skylights into the Visitor's Center surrounded by a concrete parkway.

### 3.   *Identity*

The factfinder may accept, as if they have been proven beyond a reasonable doubt at trial, that the below photographs are fair and accurate depictions of Garret Miller.  Neither party shall be prohibited from calling witnesses to testify about or introducing evidence to establish any of the facts listed in this stipulation.

  

  

### 4. *Social Media*

The records from Meta Platforms, Inc. (Facebook) are true and accurate copies of the subscriber records, account information, and correspondence such as posts, messages, chats, comments, reactions, and other communication to and from the Facebook account with user name "garret.a.miller," and from the Instagram account with user name "garrmill," which the parties stipulate were created and continuously operated by Defendant Garret Miller from November 1, 2020 through January 20, 2021.

The records from Twitter, Inc. (Twitter) are true and accurate copies of the subscriber records, account information, and correspondence such as posts, messages, chats, comments, reactions, and other communication to and from the Twitter account with user name "garretamiller," which the parties stipulate was created and continuously operated by Defendant Garret Miller from December 27, 2020, through January 20, 2021.

### 5. *Chain of Custody*

As part of this case, the FBI executed an arrest warrant and search warrant with respect to the defendant.  The government and defendant agree and stipulate to the following:

1.  The FBI lawfully seized Government's Exhibits 601.1-601.11 in the course of the arrest and search in this case:

> a.  Two tan ropes and grappling hook;
> b.  A red Make America Great Again hat with bump cap inside;
> c.  A desk calendar with the handwritten words "Big Day Wild!!" written on January 6, 2021;
> d.  A vest of soft body armor;
> e.  A neck gaiter with an American flag print;
> f.  A silver iPhone;
> g.  A black jacket;
> h.  A red and black mouth guard;
> i.  A t-shirt with the image of Donald Trump shirt and the words "January 6. I was there;" and
> j.  A red "Make America Great Again" Beanie.

2.  The FBI maintained proper chain of custody for Government's Exhibits 601.1-601.11.

3.  Government's Exhibit 601.1-601.11 are the items seized by the FBI and are in the same or substantially same condition as the date of their seizure.

### 6. *Standard Protocols for Device Extraction*

As part of this case, the FBI performed a digital forensic extraction of Defendant Garret Miller's cell phone.  The United States and Defendant Garret Miller agree and stipulate to the following:

1.  Garret Miller's cell phone number was ▮▮▮▮▮-5392 from January 1, 2020, through at least January 20, 2021.

2.  On or about January 26, 2022, FBI lawfully obtained Miller's cell phone and retained it as evidence in this case.

3. FBI maintained proper chain of custody for Miller's cell phone throughout the pendency of this case.

4. FBI employed proper and reliable techniques to extract the data from Miller's cell phone.

5. Government Exhibits 702A-777 are accurate and authentic copies of digital content extracted from Miller's cell phone.

### d. Anticipated Stipulated Testimony

The government has proposed submitting the following two transcripts as evidence in this case:[37]

In *United States v. Couy Griffin*, 21-cr-00092-TNM (March 21-22, 2022), United States Secret Service (USSS) Inspector Lanelle Hawa testified regarding the restricted perimeter surrounding the U.S. Capitol building and grounds and the presence of then Vice President Pence within the restricted perimeter from the afternoon of January 6, 2021 until the morning of January 7, 2021.

In *United States v. Webster*, 21-cr-208, Edgar Tippett, who was a district manager at Safeway Stores, Incorporated on January 6, 2021, testified that on January 6, 2021, in response to the city-wide curfew imposed by Mayor Bowser, Safeway closed all of its 12 Washington, D.C. stores at 4:00 p.m., instead of the regularly scheduled time of 11:00 p.m. Safeway's Washington, D.C. sales were between 18 and 47 percent less than they had projected on that day. Mr. Tippett also testified that Safeway's Washington, D.C. stores receive their shipments from a warehouse in Pennsylvania, but because the stores had to close and no employees were working, the scheduled shipments for the remainder of the day on January 6, 2021, could not be delivered.

---

[37]    If defendant does not stipulate to this testimony, the government anticipates calling live witnesses to testify.

To save time, and to focus on the matters that will likely be in dispute, the government plans to offer into evidence a transcript of Inspector Hawa's testimony and the accompanying exhibits from the *Griffin* trial, and Mr. Tippett's testimony and the accompanying exhibits from the *Webster* trial. The testimony from these witnesses is relevant to the third element of Counts 1, 2, and 13 charging the defendant with violations of 18 U.S.C. § 231(a)(3)—*i.e.*, the civil disorder affected either commerce or a federally protected function.

### e.  List of Witnesses

➤ Government Witnesses

1.  Government Witnesses who will be called:

- o  Captain Ron Ortega, United States Capitol Police
- o  Retired Lt. Patrick Kelley, United States Capitol Police
- o  Officer Jonathan Sacks, United States Capitol Police
- o  Officer Marc Carrion, United States Capitol Police
- o  Officer Travis Coley, Metropolitan Police Department
- o  Sergeant Quenterra Carey, Metropolitan Police Department
- o  Special Agent Kevin Palomino, Department of Homeland Security and JTTF

2.  Government Witnesses who may be called:

- o  Former Officer Ryan Salke, United States Capitol Police
- o  Tyng Yang, rioter from Illinois who was inside Capitol with defendant
- o  Staffer from office of Congresswoman Ocasio-Cortez (Will not call if defendant agrees to proposed stipulation)
- o  Safeway Manager (Will not call if defendant agrees to proposed stipulation)
- o  US Secret Service Agent (Will not call if defendant agrees to proposed stipulation)
- o  Leif Hickling, Supervisory IT Specialist at DC USAO

➤ <u>Defense Witnesses</u>

- o  Garret Miller

In addition, defendant incorporates the list of witnesses identified by the government as if fully set out herein and made a part hereof.

    **f.  List of Exhibits**

➢  Government Exhibits

    Please see Attachment A.

➢  Defense Exhibits

    1.    Kathy Griffin threat

    2.    Johnny Depp threat

    3.    Madonna threat

    4.    Snoop Dogg threat

    5.    Julius Caesar play

    6.    Facebook records

    7.    Instagram records

    8.    Twitter records

    9.    Additional Instagram Records

    10.    Quenterra Carey BWC

    11,    0960USC02RotundaNorth_2021-01-06_15h02min09s900ms

In addition, defendant incorporates the list of exhibits identified by the government as if fully set out herein and made a part hereof.

    **g.  Request for Opening Argument**

    The defense believes that opening statements can be limited to five minutes per side.  The government respectfully requests fifteen minutes for an opening statement.

<b>CONCLUSION</b>

    The evidence at trial will show that the defendant was a highly motivated and active participant in the Capitol riot who repeatedly found his way to the front of the crowd to confront

law enforcement even after receiving a second chance and being released from custody.  At trial, the evidence will prove beyond a reasonable doubt that the defendant committed the offenses charged in the Third Superseding Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

DATED:  November 23, 2022          By:     /s/ *Jason M. Crawford*
Jason M. Crawford
Trial Attorney, Detailee
DC Bar No. 1015493
175 N St. NE
Washington, D.C. 20002
(202) 598-1099
Jason.M.Crawford@usdoj.gov

Stephen J. Rancourt
Texas Bar No. 24079181
Assistant United States Attorney, Detailee
601 D Street, NW
Washington, D.C. 20530
(806) 472-7398
stephen.rancourt@usdoj.gov

Victoria A. Sheets
NY Bar No. 5548623
United States Attorney's Office
601 D Street NW
District of Columbia, DC 20530
202-809-2050
victoria.sheets@usdoj.gov