# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | **1:21-CR-00119-CJN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GARRET MILLER,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Garret Miller replies briefly to the government's Sentencing Memorandum (the "Memorandum") in order to address discreet issues raised in the Memorandum.

### I. Factual Inaccuracies

The Memorandum contains two factual inaccuracies, the first of which is understandable.

First, the Memorandum makes references to text messages Mr. Miller purportedly sent to his mother. *See* Memorandum at 7, 10. The messages were sent to "Cahti Mom" with a 614 area code. These messages were actually sent to a friend's mother named "Cahti." On the other hand, Mr. Miller's mother, Cathy Miller, spells her name ending in a "y" and has a 214 area code for the Dallas area

where she has lived most of her life.

The second factual inaccuracy is harder to understand.  The government tells this Court that Mr. Miller makes reference to "looking forward" to fighting "soft" law enforcement officials.  *See* Memorandum at 1-2 ("[H]e 'looked forward' to fighting what he called the 'soft' *law enforcement officers* in Washington, D.C." (emphasis added)), 8.  The Memorandum cites "Government's Trial Exhibit 505.4, at page 2" for this proposition.  Nevertheless, it is clear from this exhibit that Mr. Miller is referencing the fighting of ANTIFA members, *not* law enforcement officials.  *See* Attachment A**.**

## II.  Belated Guideline Objection

In the draft presentence report, the Probation Officer properly applied U.S.S.G. § 2B2.3 to the violation of 18 U.S.C. § 1752 (a)(2) set forth in Count 8.  The Probation Officer likewise correctly applied this guideline in the final presentence report.  The government, for the first time, objects to this application in its Memorandum and argues that U.S.S.G. § 2A2.4 should be applied to the violation of 18 U.S.C. § 1752 (a)(2) set forth in Count 8,  *See* Memorandum at 35-36.

To begin with, the government has waived this objection by not raising it in its objections to the draft presentence report.  That aside, the belated objection is without merit.

The government correctly notes that "2A2.4 and 2B2.3 are the two Guidelines listed in the Statutory Index for a 1752 offense." There are, in fact, five purportedly separate criminal violations set forth in 18 U.S.C. § 1752 (a)(1)-(5). The government argues that "the gravamen of an [(a)(2) offense] is the impediment of police officers." *See* Memorandum at 36. In fact, however, the gravamen of an (a)(2) offense is disorderly or disruptive conduct in the vicinity of a restricted building or ground that disrupts a government function. Nowhere does this offense mention "impediment of police officers" and, here, Mr. Miller's Factual Basis admits that the facts supporting the violation of Count 8 was the disruption of the counting of the electoral college.[1]

In contrast, the gravamen of 18 U.S.C. § 1752 (a)(4) is an "act of physical violence against any person." It seems patently obvious that the Sentencing Commission recognized that, when that violence proscribed in (a)(4) was against a police officer, *that* is the situation when U.S.S.G. § 2A2.4 would apply as opposed to a disruptive trespass under (a)(2) when U.S.S.G. § 2B2.3 would apply.

### III. Disparity Comparisons

In order to justify its recommended 48-month sentence in this case, the government cites to four other January 6 cases (one of which had two co-defendants).

---

[1]"While inside the Capitol Rotunda Mr. Miller engaged in disruptive conduct in that he engaged in a disturbance which interrupted the normal course of government process. Moreover, he did this with the intent to impede or disrupt the counting of the Electoral College vote...." Doc 128 (Factual Basis for Guilty Pleas to Counts 1,2,7, 8,9,10,11,12 and 13)at 2-3.

*See* Memorandum at 46-49.  Not surprisingly, their description of those cases in its Memorandum in this case is significantly more tepid than how it described those cases in the sentencing memorandums filed in the actual cases.

It first bears noting that the defendants in the first three cases were sentenced after jury trials.

In *United States v. Anthony Williams*, D.D.C 21-cr-377 (BAH), Williams received a 60-month sentence after his conviction at trial and after having expressed no remorse whatsoever.  Williams:

•Helped rioters climb bicycle racks so that he and the other rioters could overrun the police on the Northwest stairs.

•Stole water bottles that Capitol police officers had stored to be used for decontamination if they were hit with chemical irritants.

•Entered the Capitol through the Senate door with the first large wave of rioters to breach the Capitol.

•Celebrated and smoked marijuana with other rioters in the Rotunda while mocking police.

The government's Memorandum filed in *this* case, in support of its effort to compare Mr. Miller's case to Williams' case, completely fails to mention Williams stealing the water bottles the police were going to use for decontamination as well as Williams smoking marijuana in celebration in the Rotunda.  It also fails to mention that Williams had three juvenile delinquency adjudications, and eight adult criminal

convictions, including for burglary and arson, although none received criminal history points because of their age.

In *United States v. Hale-Cusanelli*, D.D.C. 21-cr-37 (TNM), Hale-Cusanelli, received the same 48-month sentence the government now advocates for Mr. Miller to receive.  In that case, however, not only did Hale-Cusanelli go to trial and not accept any responsibility, he testified falsely at trial in an attempt to obstruct justice. For example, he testified at trial that he did not know that Congress sat in the U.S. Capitol building.  Hale-Cusanelli:

> •Was an avowed White-Supremacist who sported a "Hitler mustache" at trial.  As the government noted in the Sentencing Memorandum it filed in *that* case but completely ignores when discussing *that* case -viz-a-viz *this* case: "Hale-Cusanelli subscribes to White-Supremacist and Nazi-Sympathizer ideologies that drive his enthusiasm for another civil war...."

> •Was a former Army reservist and security contractor who held a "Secret" level security clearance when he and others sieged the Capitol.

> •Was at the front of a mob that attacked police and smashed windows and doors to breach the Capitol.

> •Unsuccessfully intervened in an arrest of a rioter by trying to pull the rioter away from the officer.

In addition to failing to mention Hale-Cusanelli's White Supremacist and Anti-Semitic rants when attempting to compare his case to Mr. Miller's case, the government also fails to mention Hale-Cusanelli's history of violence which it was

quick to point out in the Sentencing Memorandum it filed in *that* case: "Hale-Cusanelli's background reflects a proclivity towards violence, as stated above. Hale-Cusanelli has been arrested more than once in connection with violent incidents and in the possession of a variety of weapons, including a homemade potato gun, a push dagger, and a knife with which he allegedly stabbed his mother's boyfriend."

In *United States v. Matthew Bledsoe*, D.D.C. 21-cr-204 (BAH), Bledsoe was convicted at trial and, like Hale-Cusanelli, he attempted to obstruct justice by committing perjury at trial. The government's Sentencing Memorandum in *this* case does not mention that Bledsoe walked around the halls outside the House Chamber while Members of the House of Representatives and staff were trapped inside the House Gallery with he and other rioters obstructing their paths to safety. The government's Sentencing Memorandum in *this* case does not mention that Bledsoe joined a mob shouting "Nancy! Nancy! Nancy!" while making their way through the Capitol. In addition, the government's Sentencing Memorandum in *this* case fails to mention Bledsoe's criminal history. In the end, Bledsoe's sentencing guidelines were also significantly higher (70-87 months) than Mr. Miller's sentencing guidelines Nevertheless, despite that fact that the government purports to believe that Bledsoe's case is comparable to the instant case, it recommends a two-level upward variance in this case rather than the 22-39 month that was awarded in *Bledsoe*.

In *United States v. Mault* and *United States v. Mattice*, D.D.C. 21-cr-657 (BAH), both Mault, an Army veteran, and Mattice sprayed police officers with dangerous chemicals (*e.g.,* Mattice "held his thumb on the canister, discharging chemicals at police officers for about ten seconds") and then Mattice claimed he was "not spraying police, but rather was spraying other rioters in defense of police." Moreover, Mattice and Mault *both* repeatedly lied to the FBI when they were interviewed following their arrests.   Nevertheless, despite spraying police with dangerous chemicals and then lying to FBI agents (*i.e.* attempting to obstruct justice), the government recommends that Mr. Miller be given a higher sentence than Mault and Mattice.

Respectfully submitted,

/s/ F. Clinton Broden
F. Clinton Broden
TX. Bar No. 24001495
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
(214) 720-9552
(214) 720-9594 (facsimile)
clint@texascrimlaw.com

Attorney for Defendant
Garret Miller

## **CERTIFICATE OF SERVICE**

I, F. Clinton Broden, certify that on February 21, 2023, I caused a copy of the

above document to be served via electronic filing on all counsel of record:


/s/ F. Clinton Broden
F. Clinton Broden